items will be determined in this proceeding. These listings reflect the last known address for each of the listed partners. The address listed for Mr. Louis Coppage is that same Cordova, Tennesee address indicated to be Mr. Beaty's address in Mr. Beaty's letter of November 11, 2000: 92 Timber Creek Dr. #101, Cordova, TN 38018.

**Grounds for Dismissal**

24. All the mechanisms available to the parties under Tax Court Rule 248 to ultimately resolve this matter require some participation by a tax matters partner. Consequently, to continue with this action, it is essential that a functional tax matters partner be in place for each partnership that is a party to this action. Computer Programs Lambda v. Commissioner, 90 T.C. 1124, 1126 (1988).

25. The failure by Louis Coppage, current Tax Matters Partner of the partnerships, to communicate with this Court, counsel for Respondent, or even his own counsel regarding this action is clearly a failure to carry out the responsibilities of a tax matters partner, and constitutes a default on the part of the petitioning partnerships under Tax Court Rule 123 such that a decision should be entered against them.

26. Respondent has not been notified by Mr. Coppage, or any other partner of any of the partnerships, that any of the partnerships have designated a new tax matters partner, in

accordance with Treas. Reg. § 301.6231(a)(7)-1, for any of the taxable years at issue.

27. To date, counsel for Petitioners has not identified any other partners for any of the partnerships willing to serve as tax matter partner.

28. The apparent unwillingness by any other partners of the petitioning partnerships to assume the responsibilities of tax matters partner in this proceeding represents a further failure by the petitioning partnerships to properly prosecute this case and is a further ground under Tax Court Rule 123 upon which this case should be dismissed.

29. Attached as Exhibits C through I, respectively, to the original of this motion, and to the copies served on the Tax Matters Partner and counsel for Petitioners, is a list for each of the partnerships for the 1983 tax year of the partners whose

partnership items have not otherwise become nonpartnership items, including the current address for each partner:

| Exhibit No. | Name of Partnership |
|---|---|
| C | Crowne Oil Technology |
| D | Derringer Oil Tech. Partners 1981 |
| E | Derringer Oil Tech. Partners 1982 |
| F | Dillon Oil Technology Partners |
| G | Drake Oil Technology Partners |
| H | Vanguard Oil Technology Partners |
| I | Vulcan Oil Technology Partners |

(These exhibits are not included in the copies of this motion served on counsel for the participating partners.)

**The Partnership Item Adjustments That Should Be Sustained in the Court's Order of Dismissal and Decision**

30. All the material allegations of fact set forth in the petition for redetermination of partnership administrative adjustments in support of the assignments of error have been denied by Respondent's answer. No issues have been raised upon which the burden of proof is upon Respondent, and the Respondent has not conceded any error assigned in the petition for redetermination of partnership administrative adjustments.

31. No evidence has been adduced in support of the assignments of error raised in the petition.

32. Copies of the Notices of Final Partnership Administrative Adjustments upon which this case is based are attached to the petition in this case, except for Drake Oil Technology Partners and Vulcan Oil Technology Partners, for which the copies of the Notices of Final Partnership Administrative Adjustments attached to the petition are not complete. Complete copies of the Notices of Final Partnership Administrative Adjustments for Drake Oil Technology Partners and Vulcan Oil Technology Partners are attached hereto as Exhibits J and K, respectively.

33. Each of the petitioning partnerships in this case invested in one or more of the following four partnerships (the "Upper Tier Partnerships":

Oil Technology Group/Illinois Basin (also known as Illinois Basin Joint Venture);

Oil Technology Group/San Antonio (also known as San Antonio Joint Venture);

Oil Technology Group/Castaic (also known as Castaic Hills Joint Venture);

Oil Technology Group/Utah (also known as Utah Heavy Oil Project Joint Venture).

Since the Upper Tier Partnerships are each subject to separate partnership proceedings under I.R.C. §§ 6221 through 6233, the proposed adjustments to partnership items in this case, as reflected in the statements starting on page 2, above, do not include partnership items of the Upper Tier Partnerships.

34. Except with regard to Dillon Oil Technology Partners (Dillon), the proposed adjustments to partnership items in this case, as reflected in the statements starting on page 2, above, have been computed based on I.R.C. § 183 in accordance with the opinion in Krause.[1] Accordingly, the income or losses attributable to the Upper Tier Partnerships have been taken into account in the proposed adjustments under I.R.C. § 183(b). This is reflected for the 1983 tax year of each petitioning partnership, except Dillon, in an exhibit to this motion as indicated below:

| Exhibit No. | Partnership |
|---|---|
| L | Crowne Oil Technology Partners |
| M | Derringer Oil Tech. Partners 1981 |
| N | Derringer Oil Tech. Partners 1982 |
| O | Drake Oil Technology Partners |
| P | Vanguard Oil Technology Partners |
| Q | Vulcan Oil Technology Partners |

35. With regard to the 1983 tax year of Dillon, applying I.R.C. § 183 in accordance with the opinion in Krause (taking

[1] No deductions for license fees or associated interest are allowable under section 183 since the Court found in Krause that the license fees paid by the partnerships "were excessive," "did not reflect arm's-length obligations," and "are not to be recognized as legitimate obligations of the partnerships," and that the associated debt obligations "did not constitute genuine debt obligations and are to be disregarded." 99 T.C. at 175.

into account the income or losses attributable to the Upper Tier Partnerships under I.R.C. § 183(b) as reflected in attached Exhibit R) would result in an adjustment to ordinary income of $21,408,225, as shown below:

| Partnership Item | As Reported | As Determined |
|---|---|---|
| Adjustments to Ordinary Income: | | |
| A. Interest Expense | $1,821,560.00 | $0.00 |
| B. Guaranteed Payments | 113,624.00 | 113,624.00 |
| C. Other Deductions: | | |
| 1. License Fee | 19,586,665.00 | 0.00 |
| 2. Miscellaneous | 1,255,937.00 | 1,255,937.00 |
| Total Deductions | $22,777,786.00 | $1,369,561.00 |
| Total Income | 5,370,415.00 | 5,370,415.00 |
| Total Ordinary (Loss)/Income | ($17,407,371.00) | $4,000,854.00 |

36. However, this adjustment would exceed the adjustment to ordinary income of $17,419,617.00 determined in Respondent's Notice of Final Partnership Administrative Adjustment for Dillon's 1983 tax year. Respondent is not here pleading for any increased adjustment to ordinary income with regard to the partnership items of Dillon. Accordingly, the adjustments to partnership items that Respondent has requested this Court to determine with regard to the 1983 tax year of Dillon (at p. 5, above) are limited to those adjustments determined in respondent's Notice of Final Partnership Administrative Adjustment.

**Respondent's Notice to Counsel for Petitioners**

37. On November 13, 2001, counsel for respondent notified counsel for Petitioners of this motion and inquired whether there was any objection to its being granted. Counsel for Petitioners indicated that he had received no instruction from Louis Coppage, Petitioners' Tax Matters Partner, on how to proceed in this action and that he could not state Petitioners' position on the motion.

WHEREFORE, Respondent requests that this motion be granted.

RICHARD W. SKILLMAN
Acting Chief Counsel
Internal Revenue Service

By: ______________________
MARION S. FRIEDMAN
Associate Area Counsel (LMSB)
Tax Court Bar No. FM0245
8701 S. Gessner, Suite 710
Houston, Texas 77074
Telephone: (281) 721-7300

Date: DEC 19 2001

OF COUNSEL:
LINDA BURKE
Division Counsel
(Large and Mid-Size Business)
BERNARD B. NELSON
Area Counsel
(Natural Resources)

Assigned - Swift

ADM. | RECORDED | SERVICE | CAL. | STAT. | S.T. JUDGE | FILES

UNITED STATES TAX COURT
WASHINGTON, D.C. 20217

VULCAN OIL TECHNOLOGY PARTNERS, VANGUARD OIL TECHNOLOGY PARTNERS, DRAKE OIL TECHNOLOGY PARTNERS, DILLON OIL TECHNOLOGY PARTNERS, DERRINGER OIL TECHNOLOGY PARTNERS 1981, DERRINGER OIL TECHNOLOGY PARTNERS 1982, CROWNE OIL TECHNOLOGY PARTNERS, LOUIS COPPAGE, TAX MATTERS PARTNER,

Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent

Docket No. 21530-87

"ELEKTRA/HEMISPHERE"

ORDER AND ORDER OF DISMISSAL AND DECISION

By Order dated March 22, 2002, the Court directed the partners of Crowne Oil Technology Partners, Derringer Oil Technology Partners 1981, Derringer Oil Technology Partners 1982, Dillon Oil Technology Partners, Drake Oil Technology Partners, Vanguard Oil Technology Partners, and Vulcan Oil Technology Partners for their tax year 1983, whose names and addresses appear in Exhibits C through I attached to said Order, to show cause in writing why this case should not be dismissed for failure properly to prosecute. Upon due consideration, and for cause, it is

ORDERED that the Court's show cause order dated March 22, 2002, is hereby made absolute. It is further

ORDERED that respondent's Motion to Dismiss for Lack of Prosecution filed December 20, 2001, is granted. It is further

ORDERED AND DECIDED that the following statement shows the adjustments to the partnership items for the above-named partnerships and for the tax year as follows:

Exhibit "E"

SERVED JUN 13 2002

**Drake Oil Technology Partners - 1983 Tax Year**

| Partnership Item | As Reported | As Determined |
|---|---|---|
| Adjustments to Ordinary Income: | | |
| A. Interest Expense | $3,401,521.00 | $0.00 |
| B. Guaranteed Payments | 156,350.00 | 156,350.00 |
| C. Depreciation | 8,583.00 | 8,583.00 |
| D. Other Deductions: | | |
| 1. License Fee | 18,155,000.00 | 0.00 |
| 2. Miscellaneous | 1,476,651.00 | 1,476,651.00 |
| Total Deductions | $23,198,105.00 | $1,641,584.00 |
| Total Income | 3,189,395.00 | 3,189,395.00 |
| Total Ordinary (Loss)/Income | ($20,008,710.00) | $1,547,811.00 |
| Other Adjustments: | | |
| Net Earnings from Self-Employment | ($7,720.00) | $1,549.00 |
| Unadjusted Basis in ITC Property: | | |
| New - Other - Sec. 48(q) | $0.00 | $0.00 |
| Used - Other - Sec. 48(q) | 0.00 | 0.00 |
| Tax Preference Item: | | |
| Net Investment Income | $2,619,449.00 | $2,619,449.00 |
| Cost Depletion Oil and Gas | $0.00 | $0.00 |
| Oil and Gas Depletion to the Extent of Basis | $0.00 | $0.00 |

It is further

ORDERED that in addition to normal service, the Clerk of the Court shall serve copies of this Order and Order of Dismissal and Decision on those partners of the above-named partnerships whose names and addresses appeared in Exhibits C through I that were made a part of the Court's show cause order.

Stephen J. Swift
Judge

ENTERED: JUN 13 2002

Briefs and Other Related Documents

United States Court of Appeals,
Fifth Circuit.

Alvin C. COPELAND, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE,
Respondent-Appellee.
Patty K. Copeland, also known as Patty K. White,
Petitioner-Appellant,
v.
Commissioner of Internal Revenue,
Respondent-Appellee.

**Nos. 01-60068, 01-60069.**

May 13, 2002.

Taxpayers petitioned for redetermination of income tax deficiencies. The United States Tax Court granted partial summary judgment for government, and taxpayers appealed. The Court of Appeals, Weiner, Circuit Judge, held that: (1) taxpayers could not deduct their initial investments in tax shelter partnerships as losses, but (2) taxpayers were not subject to increased interest rate applicable to disallowed tax-motivated deductions.

Affirmed in part, reversed in part, and remanded.

West Headnotes

**[1] Internal Revenue ⚷4705**
220k4705 Most Cited Cases

**[1] Internal Revenue ⚷4730**
220k4730 Most Cited Cases

Tax Court's determinations of law are reviewed de novo, while its factual findings are reviewed for clear error.

**[2] Internal Revenue ⚷3913**
220k3913 Most Cited Cases

**[2] Internal Revenue ⚷3920**
220k3920 Most Cited Cases

Tax shelters in which taxpayers invested were partnerships for federal tax purposes, and thus taxpayers could not deduct their investments as losses, even though shelters' activities lacked profit objective necessary to make their operating losses deductible; shelters each had formal indicia of partnership status and conducted themselves generally as partnerships. 26 U.S.C.A. §§ 165, 183, 761(a).

**[3] Administrative Law and Procedure ⚷412.1**
15Ak412.1 Most Cited Cases

**[3] Statutes ⚷188**
361k188 Most Cited Cases

In absence of ambiguity, court is not to look beyond plain wording of statute or regulation to divine legislative intent.

**[4] Internal Revenue ⚷4831**
220k4831 Most Cited Cases

Taxpayers whose deductions for losses sustained by partnerships had been disallowed on ground partnerships' activities lacked economic substance were not subject to increased interest rate applicable to disallowed tax-motivated deductions; rate only applied to deductions disallowed under statute which was, in turn, applicable only to individuals and S corporations, not partnerships. 26 U.S.C.A. § 183; 26 U.S.C.(1988 Ed.) § **6621(c)**.

***327** J. Grant Coleman (argued), Len R. Brignac, King, LeBlanc & Bland, New Orleans, LA, for Alvin and Patty Copeland.

Kenneth W. Rosenberg (argued), U.S. Dept. of Justice, Tax Div., Eileen J. O'Connor, Asst. Atty. Gen., U.S. Dept. of Justice, Charles Casazza, Clerk, U.S. Tax Court, Richard W. Skillman, Internal Revenue Service, Washington, DC, for C.I.R.

Thomas E. Redding (argued), Sallie W. Gladney, Teresa Jean Womack, Redding & Associates, Houston, TX, for Cummings, Amicus Curiae.

Appeal from the Decision of the United States Tax Court.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Exhibit "F"

Before JONES, WIENER, and PARKER, Circuit Judges.

WIENER, Circuit Judge:

Petitioners-Appellants Alvin C. Copeland and Patty K. Copeland, also known as Patty K. White (collectively, "Taxpayers") appeal the Tax Court's grant of partial summary judgment to the Commissioner of Internal Revenue ("Commissioner") and the Tax Court's denial of their motion for summary judgment. We conclude that the Tax Court properly denied the Taxpayers' deduction under 26 U.S.C. § 165 ("I.R.C. § 165") for their initial investments in the partnerships, and therefore affirm that ruling. The Tax Court erred, however, in sustaining the Commissioner's imposition of the increased interest rate under 26 U.S.C. § **6621(c)** ("I.R.C. § **6621(c)**"). Because no deduction was disallowed under 26 U.S.C. § 183 (" I.R.C. § 183"), and because the Commissioner proffered no alternative basis for imposing the I.R.C. § **6621(c)** interest rate, the Commissioner may not impose that rate. Accordingly, we reverse the Tax Court's ruling on the I.R.C. § **6621(c)** interest rate, and remand for imposition of a judgment consistent with these rulings.

I. Facts and Proceedings

The disputed tax items and interest charges derive from the following transactions: In 1979, Taxpayers invested $100,000 in Garfield Oil and Gas Associates ("Garfield"), a state-law partnership, and in 1981 they invested $75,000 in Capricorn Company ("Capricorn"), also a state-law partnership. Capricorn invested in another state-law partnership, Cardinal Oil Technology Partners ("Cardinal"), after which Garfield and Cardinal together invested in enhanced oil recovery technology projects. From 1979 to 1982, Garfield and Cardinal reported partnership tax items relating to the investments in the enhanced oil recovery technology projects, and allocated the tax items to the partners, including Taxpayers. Taxpayers filed joint tax returns for the tax years 1979 through 1982, which returns included deductions allocated to the Taxpayers from the Garfield and Capricorn partnerships.

In 1990, the Commissioner issued notices of deficiency to Taxpayers, based on the Commissioner's disallowance of the partnership deductions on Taxpayers' returns. The notice of deficiency also imposed interest at 120% of the usual rate on the Taxpayers' underpayment of tax attributable to the disallowed deductions, employing the Secretary's temporary regulations [FN1] issued pursuant to the then-applicable version of I.R.C. § **6621(c)**. Taxpayers petitioned the Tax Court for a redetermination of the deficiency that year, but, aside from two flurries of activity in which the parties entered their pleadings, stipulated issues, ***328** and made appearances in the Tax Court, there was no further action taken in the Tax Court until 1999.

FN1. Temporary Treasury Reg. § 301.6621-2T.

In the interim, the Tax Court decided *Krause v. Commissioner of Internal Revenue,* [FN2] a case involving various enhanced oil recovery technology partnerships which had engaged in activities and transactions substantially identical to those in which Garfield and Cardinal were involved. [FN3] Following the Tax Court's decision in *Krause,* Taxpayers paid the principal amount of the tax deficiency, but were allegedly unable to afford to pay the interest that had accumulated by that time. When the Tax Court activities in this case resumed in 1999, the court issued an order requiring the parties to show cause "why a decision in this case should not be entered in accordance with the Court's disposition of the issues in [*Krause* ]." That issue was not actually addressed at the show-cause hearing, however. Instead, when the Tax Court learned that Taxpayers were willing to settle the case by paying the standard interest (not the I.R.C. § **6621(c)** increased interest) on the deficiency in a lump-sum payment, the court adjourned the hearing with instructions to the Taxpayers to make the settlement offer within 12 days, and to the Commissioner to file a status report with the court regarding settlement discussions within 30 days. The Tax Court further instructed that (1) if the parties should fail to reach a settlement, they should file a stipulation of facts; (2) the Commissioner should file a motion for summary judgment within 60 days after the status report was due; and (3)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Taxpayers should file a response to the Commissioner's motion within one month thereafter.

FN2. 99 T.C. 132, 1992 WL 178601 (1992), *aff'd sub nom. Hildebrand v. Commissioner of Internal Revenue,* 28 F.3d 1024 (10th Cir.1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995).

FN3. As the Commissioner explains, the Garfield and Cardinal limited partnerships were members of a group of limited partnerships known as the "Elektra/Hemisphere" partnerships. The activities and transactions of Garfield and Cardinal were substantially identical to those of the Elektra/Hemisphere partnerships that were the subject of *Krause.*

The parties did not reach a settlement agreement. In accordance with the Tax Court's instructions, they filed a stipulation of facts, which included an affirmation that the factual findings and legal conclusions made in *Krause* were incorporated by reference, "except for the conclusion that I.R.C. § **6621(c)** applies and [except for] any implication that the [*Krause* ] partnerships are partnerships for federal income tax purposes, notwithstanding that they lack profit objective within the meaning of I.R.C. § 183." In particular, the parties agreed that the *Krause* decision "control [led] the tax treatment of the Partnership Tax Items, as well as the additions to tax asserted in these cases."

The Commissioner then filed a motion for partial [FN4] summary judgment, arguing that the increased rate of interest under I.R.C. § **6621(c)** was properly applied to Taxpayers' underpayment of tax, and that Taxpayers were not entitled to deductions under I.R.C. § 165 for their initial cash investments in the Garfield and Cardinal partnerships. Taxpayers filed their own *329 motion for partial summary judgment, directly opposing both of the Commissioner's contentions.

FN4. In the Stipulation of Facts submitted by the parties jointly, they agreed that "[a]fter resolution of the I.R.C. §§ **6621(c)** and 165 issues, the only disputed issues will be (A) the petitioner Patty K. Copeland's entitlement to innocent spouse relief, (B) the reclassification of interest on petitioner Alvin C. Copeland's 1985 returns and the effect, if any, of such reclassification on the Joint Returns, and (C) the determination and allocation of certain carrybacks to the Joint Returns between petitioners for purposes of determining the amount of their respective deficiencies."

In a Memorandum Opinion, [FN5] the Tax Court granted the Commissioner's motion and denied Taxpayers' counter-motion, sustaining the imposition of the I.R.C. § **6621(c)** interest rate on Taxpayers' underpayment of tax, and disallowing the I.R.C. § 165 deduction for their initial cash investments in the partnerships. The court entered a Decision reflecting this ruling in October 2000, from which Taxpayers timely appealed.

FN5. *Copeland v. Commissioner,* 79 T.C.M. (CCH) 2127 (2000).

## II. Discussion

### A. *Standard of Review*

[1] "The Tax Court's determinations of law--for example, interpretations of statutory language--are reviewed de novo, while its factual findings are reviewed for clear error." [FN6]

FN6. *Stanford v. Commissioner of Internal Revenue,* 152 F.3d 450, 455 (5th Cir.1998) (citing *G.M. Trading Corp. v. Commissioner,* 121 F.3d 977, 980 (5th Cir.1997)).

### B. *Analysis*

#### 1. *I.R.C. § 165 Deduction for Initial Investment*

[2] As the Tax Court observed in its Memorandum

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Opinion, after the *Krause* case was decided, Taxpayers "concede[d] all of the originally claimed tax benefits relating to their investments in the partnerships, and ... [sought] a loss deduction only for the amount of cash they invested in the partnerships." In support of this deduction, they framed their argument to the Tax Court as follows:

> "Unless there is a finding of fact that [Taxpayers'] investment in the Partnerships lacked sufficient profit motive under IRC § 183, [Taxpayers] are entitled to their out-of-pocket investment under IRC § 165. *[Taxpayers] have conceded that if the Partnerships were partnerships for federal income tax purposes, then [Taxpayers] are not entitled to out-of-pocket deductions,* however, [Taxpayers] argue that the Partnerships are not partnerships for federal income tax purposes." [Emphasis added.]

Although Taxpayers have not made the above concession so clear in their appellate briefs and oral arguments to us, they have premised their argument in favor of the deduction *solely* on the assertion that "Garfield and Cardinal are not partnerships for federal income tax purposes." "If an enterprise, such as Garfield and Cardinal, is formed without any profit motive," their reasoning runs, "it cannot be a partnership for federal income tax purposes and the activities of the partnership cannot be imputed to the investors for purposes of determining the applicability of 26 U.S.C. § 183 to the investors. In such cases, a determination of profit motive must be made at the individual investor level." Although this argument is certainly creative, it is without merit.

Section 761(a) defines what a "partnership" is for federal income tax purposes:

> *(a) Partnership.* For purposes of this subtitle, the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate. [FN7]

FN7. 26 U.S.C. § 761(a).

***330** In keeping with this definition, the Tax Court observed that the Garfield and Cardinal limited partnerships

> entered into transactions, formed joint ventures, operated gas wells, and engaged in various other activities. They carried on a financial operation or venture. They are to be treated as partnerships under section 761(a) *even though the underlying activities of the partnerships lacked a profit objective under section 183. The Garfield and Cardinal limited partnerships each had the formal indicia of partnership status and conducted themselves generally as partnerships.* They are to be treated as partnerships.
>
> ...
>
> The parties' stipulation that *activities and transactions of the Garfield and Cardinal limited partnerships were not entered into with a profit objective* does not affect the *status of the partnerships as partnerships for Federal income tax purposes.* [FN8]

FN8. *Copeland,* 79 T.C.M. (CCH), at 2130 (emphasis added).

We agree with the distinction presented by the Tax Court on this issue: "[A] court decision that a partnership *activity* ... lacks a profit objective ... is not equivalent to[ ] a holding that the investors intended to create an entity other than a partnership." [FN9] Even though the *Krause* court determined that the *activities* engaged in by the partnerships lacked a profit objective, none can seriously contend that those who created these business entities did not intend to create entities "by means of which [a] business, financial operation, or venture [would be] carried on." We reject Taxpayers' argument that is premised on the proposition that the determination that the partnership *activities* lacked profit objective stripped the partnerships themselves of partnership *status* for federal income tax purposes. Accordingly, we affirm the Tax Court's determination that the Commissioner properly denied the Taxpayers' deductions for their initial investments in the partnerships.

FN9. *Vanderschraaf v. Commissioner of Internal Revenue,* 74 T.C.M. (CCH) 7, 11 (1997) (emphasis in original).

2. *I.R.C. § 6621(c) Interest*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

In 1984, Congress amended I.R.C. § 6621 to provide for an increased rate of interest on substantial underpayments of tax attributable to tax-motivated transactions. [FN10] As amended by the Tax Reform Act of 1986, I.R.C. § **6621(c)**, which is applicable for the tax years here in question, provided:

FN10. Upon enactment in 1984, this provision was codified as I.R.C. § 6621(d). It was amended and redesignated as I.R.C. § **6621(c)** by the Tax Reform Act of 1986, Pub.L. No. 99-514, 100 Stat. 2744, § 1511(c)(1)(A)-(C). I.R.C. § **6621(c)** applies to interest accruing after December 31, 1984, even if the transaction was entered into before the date of its enactment. Tax Reform Act of 1984, § 144(c), Pub.L. No. 98-369, Div. A, July 18, 1984, 98 Stat. 494. Section **6621(c)** was among several penalty provisions replaced with a single "accuracy-related" penalty by the 1989 Act. *See* H.R.Rep. No. 101-247, at 1388, 1394 (1989), *reprinted in* 1989 U.S.C.C.A.N.1906, 2858-59, 2864. Despite its repeal, I.R.C. § **6621(c)** still applies to tax years prior to 1989.

*(c) Interest on substantial underpayments attributable to tax motivated transactions.*
*(1) In general.* In the case of interest payable under section 6601 with *respect to any substantial underpayment attributable to tax motivated transactions, the rate of interest established under this section shall be 120 percent of the underpayment rate established under this section.*
***331** *(2) Substantial underpayment attributable to tax motivated transactions.* For purposes of this subsection, the term *"substantial underpayment* attributable to tax motivated transactions" *means* any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the *amount of the underpayment for such year so attributable exceeds $1,000.*
*(3) Tax motivated transactions.*
(A) In general. For purposes of this subsection, the term *"tax motivated transaction" means--*
(i) any valuation overstatement (within the meaning of section 6659(c)),
(ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),
(iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092),
(iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and
(v) any sham or fraudulent transaction.
(B) Regulatory authority. *The Secretary may by regulations specify other types of transactions which will be treated as tax motivated for purposes of this subsection* and may by regulations provide that specified transactions being treated as tax motivated will no longer be so treated.... [Emphasis added.]

The Secretary exercised the authority granted in I.R.C. § **6621(c)**(3)(B), and enacted Temporary Regulation § 301.6621-2T ("TTR § 301.6621-2T"), which provides, in relevant part:

Q-2. What is a *tax motivated underpayment?*
A-2. A tax motivated underpayment is the portion of a deficiency (as defined in section 6211) of tax imposed by subtitle A (income taxes) that is attributable to any of the following tax motivated transactions:
(1) ... a valuation overstatement within the meaning of section 6659(c)(1)[ ];
...
(6) *Any deduction disallowed with respect to any other tax motivated transactions (see A-4 of this section).*
...
Q-4. Are any transactions other than those specified in A-2 of this section and those involving the use of accounting methods under circumstances specified in A-3 of this section considered tax motivated transactions under A-2(6) of this section?
A-4. Yes. *Deductions disallowed under the following provisions are considered to be attributable to tax motivated transactions:*
(1) *Any deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit....* [FN11]

FN11. 26 C.F.R. § 301.6621-2T (emphasis added).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

To summarize the foregoing, I.R.C. § **6621(c)** authorized the imposition of 120% of the usual interest rate on underpayments of tax in excess of $1,000, but only if they were attributable to tax motivated transactions *as defined either* in I.R.C. § **6621(c)**(3)(A) *or* in the regulations *332 enacted by the Secretary pursuant to I.R.C. § **6621(c)**(3)(B). Exercising this authority, the Secretary added a sixth category of tax motivated transactions to the five specified by the Congress in I.R.C. § **6621(c** )(3)(A) by promulgating TTR § 301.6621-2T: "Any deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit."

As a threshold matter, Taxpayers argue that the Commissioner abused his discretion by imposing the tax from the date the payment was due, instead of giving them the opportunity "to resolve this matter without payment of interest at the penalty increased rate." At oral argument, they asked specifically that we reverse the Tax Court's decision and render judgment in their favor as to the interest that accrued between the due date of the relevant tax returns and the 1990 notice of deficiency. In support of this request, they argue that the legislative history of I.R.C. § **6621(c)** shows that the section was intended to serve as a tool for managing the Tax Court's docket, by providing incentive for taxpayers to concede to the Commissioner's assessment of tax deficiencies without resorting to litigation. Instead of furthering the legislative intent, Taxpayers argue, the Commissioner's imposition of the I.R.C. § **6621(c)** rate, of which they learned only when they received the notice of deficiency, amounted to a penalty. As noted above, [FN12] I.R.C. § **6621(c)** expressly applies to interest accruing after December 31, 1984, even if the offending *transaction* was entered into before the date of its enactment. According to Taxpayers, the Commissioner's "penalizing" imposition of I.R.C. § **6621(c)** interest is therefore particularly unfair on these facts, because their investment in the partnerships, which is the only transaction for which this penalty could serve any deterrent purpose, pre-dated the enactment of I.R.C. § **6621(c)**.

FN12. *See supra* note 9.

We are not persuaded by Taxpayers' arguments on this point. If I.R.C. § **6621(c)** is applicable at all to Taxpayers' underpayment, it is applicable from the due date of the tax that they have been determined to owe. The initial language of I.R.C. § **6621(c)** references "interest payable under section 6601." I.R.C. § 6601, in turn, states:

> *§ 6601. Interest on underpayment, nonpayment, or extensions of time for payment, of tax.*
>
> *(a) General rule.* If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid *for the period from such last date to the date paid.* [FN13]

FN13. 26 U.S.C. § 6601(a) (emphasis added).

The application of this provision is mechanical, and we find no abuse of discretion by the Commissioner in calculating the interest from the date that Taxpayers' tax deficiency was due.

[3] Neither are we persuaded by Taxpayers' invocation of the legislative intent of I.R.C. § **6621(c** ). In combination, I.R.C. §§ **6621(c)** and 6601 are unambiguous, requiring the imposition of interest starting from "the last such date" of "the period" for which the unpaid tax was due. As the Commissioner emphasizes, in the absence of ambiguity, we are not to look beyond *333 the plain wording of the statute or regulation to divine legislative intent. [FN14]

FN14. *See, e.g., Guilzon v. Commissioner of Internal Revenue,* 985 F.2d 819, 823-24 n. 11 (5th Cir.1993) (citing *Swearingen v. Owens- Corning Fiberglas Corp.,* 968 F.2d 559, 562 (5th Cir.1992)) ("Fifth Circuit law is crystal clear that when, as here, the language of a statute is unambiguous, this Court has no need to and will not defer to extrinsic aids or legislative history.").

Redding & Associates, P.C. Amicus Argument Begins Here

[4] The larger question presented here is the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

propriety of imposing the I.R.C. § **6621(c)** interest rate on Taxpayers' underpayment at all. In contesting the imposition of that rate, Taxpayers argue that the Tax Court erred in failing to analyze whether they, the Taxpayers, had a profit motive when they invested in the subject partnerships. Our close analysis of this argument leads us to conclude that indeed it was error, on these facts, to impose the I.R.C. § **6621(c)** interest rate at all, irrespective of the individual partners' profit motive, because there was no deduction disallowed under § 183, as TTR § 301.6621-2T pellucidly requires. We therefore reverse the Tax Court's ruling and hold that the I.R.C. § **6621(c)** interest rate is inapplicable to Taxpayers' underpayment of tax. [FN15]

FN15. Taxpayers also argue that it was an abuse of discretion for the Commissioner to refuse their settlement offer of a lump-sum payment equal to the amount of interest, calculated at the regular rate, that had accrued. As we conclude that the I.R.C. § **6621(c)** interest rate should not be imposed at all, we need not address their argument premised on the settlement offer.

To repeat, I.R.C. § **6621(c)** interest may be imposed *only* when there is a "substantial" underpayment of tax that is attributable to a tax motivated transaction as defined *either* in I.R.C. § **6621(c)**(3)(A) *or* in the regulations enacted by the Secretary pursuant to I.R.C. § **6621(c)**(3)(B). As any underpayment of $1,000 or more is deemed "substantial," that element of the section is not at issue. And, the Commissioner does not contend that any of the definitional categories of "tax motivated transaction" listed under I.R.C. § **6621(c** )(3)(A) apply. Rather, the *only* kind of tax motivated transaction that is proffered by the Commissioner is the one found in TTR § 301.6621-2T, A4:

> Deductions disallowed under the following provisions are considered to be attributable to tax motivated transactions:
> (1) Any *deduction disallowed* for any period *under [I.R.C.] section 183,* relating to an *activity* engaged in by an *individual* or an *S corporation* that is not engaged in for profit. [Emphasis added.]

The Commissioner maintains that because the Tax Court determined that the partnerships in which Taxpayers invested lacked a profit motive under I.R.C. § 183, the requirements of TTR § 301.6621-2T were met, and it was proper to impose the I.R.C. § **6621(c)** interest rate. This application of TTR § 301.6621-2T, which was adopted by the Tax Court and blessed by the Ninth and Tenth Circuits, impermissibly broadens the reach of this penalty.

Examination of the plain language of TTR § 301.6621-2T establishes that the essential elements of the type of tax motivated transaction *defined by that regulation* are as follows: There must be (1) a deduction (2) that is disallowed under I.R.C. § 183, (3) that is related to an activity engaged in by an individual or an S corporation, and (4) that is not engaged in for profit. Despite this clear and unambiguous regulatory mandate, however, the Commissioner's appellate brief asserts that, "[p]ursuant to [the Secretary's] statutory grant of authority, the Treasury Regulations under I.R.C. § **6621(c)** *adopt the *334 profit motive test* of § 183 as a litmus test for 'tax motivated transactions.' " Similarly, the Tax Court, in its Memorandum Opinion, quoted *Hildebrand v. Commissioner of Internal Revenue,* [FN16] as it insisted:

FN16. 28 F.3d 1024 (10th Cir.1994).

> Section **6621(c)**(1) imposes an increased rate of interest on "any substantial underpayment attributable to tax motivated transactions," which include activities not engaged in for profit. [FN17]

FN17. *Copeland,* 79 T.C.M (CCH), at 2131 (quoting *Hildebrand,* 28 F.3d at 1028).

These statements are both imprecise and flatly incorrect. The TTR § 301.6621-2T definition indisputably requires that a *deduction be disallowed under I.R.C. § 183* before the increased penalty may be imposed, *not* that an *activity* be determined *to lack profit motive* under the *factors* of I.R.C. § 183. Being disallowed under I.R.C. § 183 is *not* congruent with being tested--and found wanting--under the factors set forth in I.R.C. § 183. Indeed, the Taxpayers' deductions were *not* "disallowed under" I.R.C. § 183 but were, as the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Commissioner notes, purportedly found to be lacking in profit motive under the *factors* set forth in the regulations that accompany I.R.C. § 183. More importantly, even if the Commissioner had wanted to disallow the Taxpayers' deductions under I.R.C. § 183 for purposes of TTR § 301.6621- 2T, he could not have done so!

I.R.C. § 183 states:

*§ 183. Activities not engaged in for profit.*
*(a) General rule.* In the case of an *activity engaged in by an individual or an S corporation,* if *such activity* is not engaged in for profit, no deduction *attributable to such activity* shall be allowed under this chapter except as provided in this section. [FN18]

FN18. 26 U.S.C. § 183(a) (emphasis added).

The plain language of the statute thus explicitly cabins its applicability to activities engaged in by *individuals* or *S corporations*--and, by virtue of the traditional maxim of statutory construction, *expressio unis est exclusio alterius* (the expression of one thing is the exclusion of others), precludes the section's applicability to partnerships. Yet the only parties that engaged in an activity for other than profit were the two partnerships: No individual and no S corporation engaged in any activity here, with or without a profit motive.

The Commissioner nevertheless relies on the fact that the Tax Court in *Krause* sustained the Commissioner's disallowance of deductions "under section 183." The deduction having been disallowed "under section 183," argues the Commissioner, leads inexorably to the conclusion that the I.R.C. § **6621(c)** increased interest rate applies. We disagree with the Commissioner's basic premise that these deductions were disallowed "under § 183."

In *Krause,* the Tax Court engaged in an analysis of whether the deductions at issue met the requirements of I.R.C. §§ 162 and 174. [FN19] Those two I.R.C. sections provide, in relevant part:

FN19. *Krause,* 99 T.C. 132, 168, 1992 WL 178601 (1992).

*§ 162. Trade or business expenses.*
*(a) In general.* There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on *any trade or business*.... [FN20]

FN20. 26 U.S.C. § 162(a) (emphasis added).

and

*§ 174. Research and experimental expenditures.*
***335** *(a) Treatment as expenses. (1) In general.* A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his *trade or business* as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction. [FN21]

FN21. 26 U.S.C. § 174(a) (emphasis added).

Both statutes require that the expense be paid or incurred in connection with a "trade or business" before the deduction is allowed. It is well-established that the determination whether an undertaking qualifies as a trade or business involves an inquiry into profit motive:

Congress allows deductions under 26 U.S.C. § 162 for expenses of carrying on activities that constitute a taxpayer's trade or business, [or] under 26 U.S.C. § 174 for research and development expenses in connection with a trade or business....Expenditures may only be deducted under sections 162[and] 174 ... if the facts and circumstances indicate that the taxpayer made them primarily in furtherance of a bona fide profit objective independent of tax consequences. [FN22]

FN22. *Agro Science Co. v. Commissioner of Internal Revenue,* 934 F.2d 573, 576 (5th Cir.1991) (citing 26 C.F.R. § 1.183-2(a) (1990); *Mayrath v. Commissioner,* 357 F.2d 209, 214 (5th Cir.1966); *Drobny v. Commissioner,* 86 T.C. 1326, 1340, 1986 WL 22150 (1986)).

It is equally accepted that in the partnership

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

context, the profit motive inquiry focuses on the partnership, not the individual partners, [FN23] and that the factors in the Treasury Regulations to I.R.C. § 183 (for determining whether an "activity is ... engaged in for profit") may be employed to determine the profit motive required by sections 162 and 174 exists. [FN24] It bears emphasizing, however, that the factors from I.R.C. § 183 are only *tools* for determining the requisite profit objective under I.R.C. §§ 162 and 174; deductions for partnership expenses are not allowed or disallowed directly under I.R.C. § 183 itself.

FN23. *See, e.g., Tallal v. Commissioner of Internal Revenue,* 778 F.2d 275, 276 (5th Cir.1985) ("When the taxpayer is a member of a partnership, we have interpreted 26 U.S.C. § 702(b) to require that business purpose must be assessed at the partnership level.").

FN24. *Id.* (approving the use of the "criteria identified in Treasury Regulation § 1.183-2" for guidance in determining whether a partnership "lacked a bona fide profit objective"). *See also Krause,* 99 T.C. at 168 ("The factors set out in the Treasury regulations under section 183 generally are utilized in determining whether the requisite profit objectives are present under section 162[and] section 174 .").

Despite this truism, however, the Tax Court in *Krause,* after employing the factors from the Regulations under I.R.C. § 183 in its analysis of the deductions claimed under I.R.C. §§ 162 and 174, concluded:

> In summary, presented to us in this case is a chain or multilayered series of obligations, stacked or multiplied on top of each other via the numerous partnerships to produce debt obligations in staggering dollar amounts, using a largely undeveloped and untested product, in a highly risky, very speculative, and non-arm's-length manner in an attempt to generate significant tax deductions for investors. The transactions did not, and do not, constitute legitimate for-profit business transactions.
>
> Losses of the partnerships are *disallowed under section 183....* [FN25]

FN25. *Krause,* 99 T.C. at 175-76 (emphasis added).

***336** The Tax Court's wording to the contrary notwithstanding, however, the deductions were *not* actually disallowed *under* I.R.C. § 183, but under I.R.C. §§ 162 and 174, neither of which are limited--as is § 183--to activities engaged in by individuals and S corporations, to the exclusion of partnerships. [FN26] I.R.C. § 183 provided the *Krause* court with only the *factors* for analysis, not statutory authority to allow or disallow deductions themselves. To say that the deductions are disallowed "under section 183" impermissibly conflates the I.R.C. sections in question and thereby glosses over this crucial distinction.

FN26. Even the Commissioner recognizes this limitation in his appellate brief when he states (emphasis ours): "The regulations under § 183 list a number of factors relevant to the determination of profit motive, and *those factors* have frequently been applied by the courts in determining whether a profit motive exists for all sorts of entities, including partnerships and corporations, *to which the limitations on deductibility of § 183 do not apply.*"

The Tax Court again endorsed this gloss, however, when it considered the instant case. Adopting the rationale offered by the Ninth Circuit, [FN27] the Tax Court stated,

FN27. *See Hill v. Commissioner of Internal Revenue,* 204 F.3d 1214, 1220 (9th Cir.2000). The *Hill* court was, in turn, relying on the Tenth Circuit's reasoning in *Hildebrand v. Commissioner,* 28 F.3d 1024 (10th Cir.1994).

> [T]he Secretary has authority to define certain transactions as tax motivated, *the Secretary has defined transactions lacking a profit motive*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*under section 183 as tax motivated,* the transactions in this case lack a profit motive under section 183, petitioners' activities relating to these transactions are therefore tax motivated. [FN28]

FN28. *Copeland,* 79 T.C.M. (CCH), at 2131 (emphasis added).

That, of course, is *not* what TTR § 301.6621-2T states. Again, that regulation designates as "tax motivated" "[a]ny *deduction disallowed* for any period *under section 183,* relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit"; and, again, the deductions disallowed in *Krause* (which ruling was stipulated to apply here) were *disallowed under § 162 and § 174,* employing only the profit objective factors in the Treasury Regulations accompanying § 183. The Ninth Circuit's and Tax Court's pronouncements that "transactions lacking a profit motive under section 183" constitute tax motivated transactions under I.R.C. § **6621(c)** impermissibly broadens the reach of this punitive interest provision. The definition of a tax motivated transaction found in TTR § 301.6621-2T ineluctably requires that the underpayment of tax be attributable to deduction disallowed under I.R.C. § 183, and such a disallowance simply did not take place in the instant case--nor could it have.

As the foregoing makes clear, we respectfully differ with our fellow circuits regarding the application of I.R.C. § **6621(c)** *via* TTR § 301.6621-2T. [FN29] We are, of course, mindful of the admonition of the Ninth Circuit that "[u]niformity among Circuits is especially important in tax cases to ensure equal and certain administration of the tax system." [FN30] Nevertheless, the plain language of TTR § 301.6621-2T leaves us no choice, for it *337 compels our conclusion. It is certainly conceivable that the Secretary meant to classify as tax motivated any deduction that was determined to lack a profit motive, as the Commissioner and Tax Court contend. Indeed, TTR § 301.6621-2T could have been drafted to do just that: apply when partnership transactions tested for profit motive using the factors from I.R.C. § 183 were found to lack such a profit motive. TTR § 301.6621- 2T, however, unambiguously directs a different analysis. As the Commissioner insisted when arguing that the rules for the starting-date of the interest rate accrual should be mechanically applied, [FN31] when the statutory (or regulatory) language is clear, we must look no further.

FN29. *See, e.g., Hill v. Commissioner of Internal Revenue,* 204 F.3d 1214 (9th Cir.2000); *Hildebrand v. Commissioner of Internal Revenue,* 28 F.3d 1024 (10th Cir.1994).

FN30. *Hill,* 204 F.3d at 1217 (quoting *Pacific First Fed. Sav. Bank v. Commissioner,* 961 F.2d 800, 803 (9th Cir.1992) (quoting *First Charter Financial Corp. v. United States,* 669 F.2d 1342, 1345 (9th Cir.1982))).

FN31. *See supra* note 12 and accompanying text.

Neither do our earlier rulings applying I.R.C. § **6621(c)** compel a different conclusion. In *Heasley v. Commissioner of Internal Revenue,* [FN32] we considered a non-partnership case in which the Commissioner sought to impose the I.R.C. § **6621(c)** interest rate by means of the statutory definition relating to a valuation overstatement, or, alternatively, employing TTR § 301.6621-2T. Having determined earlier in the *Heasley* opinion that the underpayment of tax was not attributable to a valuation overstatement, we considered the alternative basis for the increased interest rate, TTR § 301.6621-2T, and rejected that, as well. Accepting for the purposes of that inquiry the simplified articulation of the test in TTR § 301.6621-2T ("The I.R.S. defines transactions 'not engaged in for profit' as tax-motivated" [FN33]), we advanced to the next step of the analysis and determined that the Tax Court erred in failing to consider the individual taxpayers' profit motive, and, further, that if the Tax Court had conducted the proper inquiry it *would* have found the requisite profit motive. [FN34] The net result, therefore, was the same as in the instant case, albeit for slightly different reasons: disapproval of the Commissioner's attempt to impose the I.R.C. §

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works