**6621(c)** interest rate using TTR § 301.6621-2T.

FN32. 902 F.2d 380 (5th Cir.1990).

FN33. *Heasley,* 902 F.2d at 385.

FN34. *Heasley,* 902 F.2d at 386.

In *Heasley,* we reached that result by implicitly granting the Commissioner's interpretation of TTR § 301.6621-2T for the sake of argument, yet finding that the taxpayers had a profit motive. Here, we never reach the question whether profit motive is to be tested at the individual or partnership level, because we begin (and end) with an examination of that which the *Heasley* court assumed *arguendo*--the Commissioner's interpretation and application of TTR § 301.6621-2T.

Our three subsequent encounters with I.R.C. § **6621(c)** are likewise distinguishable, for none of them implicates TTR § 301.6621-2T. In those three partnership cases, *Lukens v. Commissioner of Internal Revenue,* [FN35] *Chamberlain v. Commissioner of Internal Revenue,* [FN36] and *Durrett v. Commissioner of Internal Revenue,* [FN37] the Commissioner sought to impose the increased interest rate by means of I.R.C. § **6621(c)(3)(A)(v)**, the statutory category of tax motivated transactions implicating *sham* or fraudulent transactions. Sham, though, is *not* the category chosen by the Commissioner in the instant case; rather, the TTR § 301.6621-2T category of disallowance under I.R.C. § 183 is the thrust here. We note in passing that in all ***338** three sham cases, we rested our affirmance of the imposition of the I.R.C. § **6621(c)** interest rate at least in part on the recognition of the Tax Court's factual finding that the individual Taxpayers lacked a profit motive. But again, as explained above, we decline in the instant case even to reach the question of whose profit motive to analyze, because the requisite disallowance of a deduction under I.R.C. § 183 simply did not take place.

FN35. 945 F.2d 92 (5th Cir.1991).

FN36. 66 F.3d 729 (5th Cir.1995).

FN37. 71 F.3d 515 (5th Cir.1996).

To summarize, then, TTR § 301.6621-2T defines a tax motivated transaction, for purposes of I.R.C. § **6621(c)**, as "[a]ny deduction *disallowed* for any period *under section 183,* relating to an *activity engaged in* by an *individual* or an *S corporation* that is not engaged in for profit." The unambiguous plain language of TTR § 301.6621-2T thus expressly limits its applicability to instances in which a deduction has been disallowed under I.R.C. § 183; and that section is itself limited in application to activities of individuals and S corporations. The only role I.R.C. § 183 played in the instant case was to provide analytical tools--the factors found in the Treasury Regulations--for assessing the partnership's profit objective, for purposes of sections 162 and 174. To repeat for emphasis, in promulgating TTR § 301.6621-2T, the Secretary *could* have defined a tax motivated transaction as one for which a *profit motive, as analyzed under the factors of § 183, was found lacking,* but the Secretary did not. Instead, TTR § 301.6621-2T defines a tax motivated transaction as a *deduction that has been disallowed under § 183,* and no such disallowance has been or could have been made in this case. It was therefore error for the Tax Court to adopt unquestioningly the Ninth Circuit's assumption that a finding of a lack of profit motive using the factors of I.R.C. § 183 could, without more, support the imposition of I.R.C. § **6621(c)** interest via TTR § 301.6621- 2T. Accordingly, we reverse the Tax Court's ruling and hold that the I.R.C. § **6621(c)** interest rate cannot be applied to the Taxpayers' underpayment of tax. We therefore remand this action to the Tax Court for entry of an appropriate judgment consistent herewith.

AFFIRMED in part; and REVERSED in part and REMANDED for entry of judgment.

Briefs and Other Related Documents (Back to Top)

•Alvin C. COPELAND, Petitioner - Appellant, v. COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee. Patty F. COPELAND a/k/a Patty K. White, Petitioner - Appellant, v. COMMISSIONER OF INTERNAL REVENUE, Respondent - Appellee., 2001 WL 34091319 (Appellate Brief) (C.A.5 2001), Amicus Brief Supporting Appellants Seeking Reversal

•Alvin C. COPELAND and Patty K. Copeland, A.K.A. Patty K. White, Petitioners- Appellants, v. COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee., 2001 WL 34094536 (Appellate Brief) (C.A.5 July 10, 2001), Brief for the Appellee

290 F.3d 326, 89 A.F.T.R.2d 2002-2462, 2002-1 USTC P 50,420

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**H**

**Briefs and Other Related Documents**

United States Court of Appeals,
Fifth Circuit.

Morris A. **WEINER,** Plaintiff-Appellant-Cross-Appellee,
v.
UNITED STATES of America,
Defendant-Appellee-Cross-Appellant,
Marion S. **Kraemer;** Joyce W. **Kraemer,**
Plaintiffs-Appellants,
v.
United States of America, Defendant-Appellee.

**Nos. 03-20174, 03-20176.**

Oct. 25, 2004.

**Background:** Taxpayers brought separate suits, seeking refunds of income tax and interest paid in connection with their investments in limited partnerships. The United States District Court for the Southern District of Texas, Nancy K. Johnson, United States Magistrate Judge, 2002 WL 575791, imposed additional interest in one case, and in the other case, the Court, Nancy F. Atlas, J., 255 F.Supp.2d 673, ruled for taxpayer. Appeals were taken.

**Holdings:** The Court of Appeals, Edith H. Jones, Circuit Judge, held that:

(1) courts lacked jurisdiction over statute of limitations issue, and

(2) interest was not properly charged.

Affirmed in part, reversed in part, and remanded.

West Headnotes

**[1] Internal Revenue 3910**

220k3910 Most Cited Cases

Federal courts lack jurisdiction to entertain taxpayers' complaints that Notices of Final Partnership Administrative Adjustments (FPAAs) were untimely filed and cannot be basis of assessments against them; FPAA statute of limitations is "partnership item" that must be litigated in partnership level proceeding. 26 U.S.C.A. §§ 6229(a), 7422(h); 26 C.F.R. § 301.6231(a)(3)-1(b).

**[2] Internal Revenue 4831**

220k4831 Most Cited Cases

Interest could not be imposed at rate of 120% of statutory rate on ground of substantial underpayment attributable to "tax motivated transactions," where taxpayers settled the disallowances and paid the delinquent taxes; given multiple reasons provided for the disallowances, it could not be determined whether underpayments were "attributable to" tax motivated transaction. 26 U.S.C.(1988 Ed.) § 6621(c)(1).

***153** Thomas E. Redding (argued), Sallie W. Gladney, Teresa Jean Womack, Redding & Associates, Houston, TX, for all Plaintiffs.

Joan I. Oppenheimer (argued), Richard Bradshaw Farber, U.S. Dept. of Justice, Tax Div. App. Section, Washington, DC, for U.S.

Appeals from the United States District Court for the Southern District of Texas.

Before JOLLY, DAVIS and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appealing in two related cases from separate courts, Morris **Weiner,** Marion **Kraemer,** and Joyce **Kraemer** seek refunds of federal income taxes and interest paid in connection with their investments in various partnerships. Three issues are raised. First is the question whether federal courts have jurisdiction, notwithstanding 26 U.S.C. § 7422(h), to entertain the taxpayers' complaints that Notices of Final Partnership Administrative Adjustments (FPAAs) were untimely filed and cannot be the basis of assessments against them. Second, the taxpayers challenge substantial interest charged against them for "tax-motivated transactions" pursuant to now-repealed § 6621(c). We hold that the courts lacked jurisdiction over the statute of limitations issue and that § 6621(c) interest was improperly charged. The third issue was resolved by a recent decision of this court at odds with the trial courts' decisions. *See* *Beall v. United States,* 336 F.3d 419 (5th Cir.2003) (district courts have jurisdiction to resolve taxpayers' deficiency interest abatement requests under § 6404(e)).

Exhibit "G"

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

*I. The Factual Background*

In the early 1980s, the taxpayers, all high-income professionals, invested in limited partnerships organized by American Agri-Corp ("AMCOR"). **Weiner** was a limited partner in Travertine Flame Associates ("TFA"); Joyce **Kraemer** was a limited partner in Oasis Date Associates ("ODA"); and Marion **Kraemer** was a limited partner in Coachella Fruit Growers ("Coachella"). The partnerships were farming entities that projected tax write-offs of approximately two hundred percent of the amount invested. The taxpayers reported their proportionate share of partnership losses on their 1984, 1985, and 1986 income tax returns.

In 1990 and 1991, the Internal Revenue Service ("IRS") sent each of the partnerships a Notice of FPAA that disallowed farming expenses and other deductions for a number of reasons, including that the partnerships' transactions were "shams" and lacked economic substance. Also in 1991, partners in TFA and ODA commenced a Tax Court action challenging the ***154** adjustments as time-barred. Because **Weiner** and Joyce **Kraemer** were partners in TFA and ODA, they automatically became parties to the suit. *See* 26 U.S.C. § 6226(c).

In early 1997, while the Tax Court cases were still pending, the taxpayers offered to settle their disputed partnership item deductions with the IRS through executions of Forms 870-P(AD). These settlement forms were initially sent to them by the IRS. The settlement agreement purported to disallow sixty-three percent of the deductions, as opposed to a total disallowance. The settlement documents made it clear that the IRS would assess additional tax liability and interest "as provided by law."

After accepting the taxpayers' settlements, the IRS assessed additional tax liability and interest pursuant to § 6621(c) in the following manner: for **Weiner** in 1984--$15,851 in additional tax and $16,663.22 in interest; for the **Kraemers** in 1984--$13,159 in additional tax and $16,599 in interest; for the **Kraemers** in 1986--no additional tax (because they had overpaid) but $4,088 in interest. The taxpayers commenced their separate refund suits in 2000. They argued in motions for summary judgment: (1) that the statute of limitations prevented the 1984 assessments; (2) that additional interest under § 6621(c) was improper as a matter of law; and (3) that the Commissioner had abused his discretion in denying their § 6404(e) abatement of interest claim. The ***Kraemer*** court did not consider the limitations defense because it concluded it lacked subject matter jurisdiction over the issue. The ***Weiner*** court, however, concluded that it did have jurisdiction, and ultimately decided that the statute of limitations had not run. Both courts also determined that they lacked jurisdiction over the interest abatement claims. Both courts denied the taxpayers' summary judgment motions on the § 6621(c) argument and set the issue for bench trials. The **Kraemers** conceded the issue before trial, but **Weiner** presented evidence on the merits and the court ultimately concluded that the interest was improper and ruled in **Weiner's** favor. The instant appeals followed.

*II. The Statutory Background*

This case is governed by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. §§ 6221-6233, which was enacted to "improve the auditing and adjustments of income tax items attributable to partnerships." *Alexander v. United States,* 44 F.3d 328, 330 (5th Cir.1995). TEFRA requires partnerships to file informational returns reflecting the distributive shares of income, gains, deductions, and credits attributable to its partners. *Kaplan v. United States,* 133 F.3d 469, 471 (7th Cir.1998). Accordingly, the individual partners are responsible for reporting their pro rata share of tax on their income tax returns. *Id.; see also* 26 U.S.C. § 701.

TEFRA requires the treatment of all partnership items to be determined at the partnership level. 26 U.S.C. § 6221. While TEFRA defines a "partnership item" in technical terms, the provision generally encompasses items "more appropriately determined at the partnership level than at the partner level." *Id.* § 6231(a)(3). All other items are defined as nonpartnership items. *Id.* § 6231(a)(4).

If the IRS decides to adjust any "partnership items" reflected on the partnership's return, it must notify the individual partners of the adjustment through a Notice of FPAA. *Kaplan,* 133 F.3d at 471. The IRS is given three years from

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

the later of (1) the date a partnership return is due, or (2) the date the partnership return is filed, to issue an FPAA. ***155**26 U.S.C. § 6229(a). The three-year period may be extended by agreement (1) between the Secretary and the partnership's tax matters partner ("TMP") (which binds all partners), or (2) between the Secretary and an individual partner (which binds only that partner). *Id.* § 6229(b)(1). In addition, if the IRS mails an FPAA to the TMP, the three-year period is tolled. *Id.* § 6229(d). This three-year limitations period is at issue in this case.

For ninety days following issuance of an FPAA, the TMP has the exclusive right to file a petition for readjustment of the partnership items in Tax Court, the Court of Federal Claims, or a United States District Court. *Id.* § 6226(a). After expiration of the ninety-day period, other partners are given sixty days to file a petition for readjustment. *Id.* § 6226(b)(1). If a partner's tax liability might be affected by the outcome of the litigation of partnership items, that partner may participate in the proceeding. *Id.* § 6224(a), § 6224(c). The IRS may assess additional tax liability against individual partners within one year of the final conclusion of the partnership's tax determination. *Id.* § 6229(d). The partner may contest the tax liability by paying the assessment and filing a refund action in a United States District Court. However, "[n]o action may be brought [in district court] for a refund attributable to partnership items." *Id.* § 7422(h).

But, if a partner settles his partnership tax liability with the IRS, the partner will no longer be able to participate in the partnership level litigation, and will be bound instead by the terms of the settlement agreement. *Id.* § 6228(a)(4), § 6224(c)(1). In addition, partnership items convert to nonpartnership items when the IRS enters into a settlement agreement with the partner with respect to such items. *Id.* § 6231(b)(1)(C). Thus, if a partner files an action for a refund attributable to partnership items, but those items have been converted through a settlement agreement, the jurisdictional bar of § 7422(h) no longer applies. *Alexander v. United States,* 44 F.3d 328, 331 (5th Cir.1995).

*III. FPAA Statute of Limitations*

The ***Weiner*** and ***Kraemer*** courts reached opposing conclusions, and the parties disagree on whether district courts have jurisdiction to decide the FPAA statute of limitations question in refund actions. [FN1] Generally, district courts have jurisdiction over a taxpayer's refund action. 28 U.S.C. §§ 1340, 1346(a)(1). However, as discussed above, with limited exceptions not applicable here, "[n]o action may be brought for a refund attributable to partnership items (as defined in § 6231(a)(3))." 26 U.S.C. § 7422(h). The more precise question in this case, then, is whether the taxpayers' refund requests are attributable to any partnership item such that the district court would be deprived of jurisdiction.

FN1. The taxpayers also appeal the ***Weiner*** court's decision that, because the 1984 partnership returns were invalid, the statute of limitations did not begin to run. We need not reach this argument.

This court reviews a district court's grant of summary judgment de novo and considers the same criteria that the district court relied upon when deciding the motion. *Mongrue v. Monsanto Co.,* 249 F.3d 422, 428 (5th Cir.2001). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ***156**Fed. R. Civ. P. 56(c). In addition, we review a district court's determination of subject matter jurisdiction de novo. *Calhoun County, Tex. v. United States,* 132 F.3d 1100, 1103 (5th Cir.1998).

[1] The taxpayers' refund claims are based entirely on the theory that the IRS had no authority to assess tax against them in 1990 and 1991 because the FPAA statute of limitations had run for the years 1984 to 1986. Accordingly, to avoid the jurisdictional bar of § 7422(h), the taxpayers argue that the FPAA statute of limitations, found in § 6229(a), is not a "partnership item." [FN2] As noted before, TEFRA defines a "partnership item" as

FN2. Although a partner's settlement agreement with the IRS converts partnership items to nonpartnership items and thereby lifts § 7422(h)'s jurisdictional bar, the conversion did not occur in

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

this case. The Code provides that only those partnership items encompassed by the settlement agreement are converted to nonpartnership items. *See* 26 U.S.C. § 6231(b)(1)(C) (partnership items of a partner shall convert to nonpartnership items when "the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner *with respect to such items* ") (emphasis added). Section 6229(a) was not mentioned in the taxpayers' settlement agreements and thus may not be considered a converted item.

The holding in *Alexander* is not to the contrary. In that case, the taxpayer filed a refund action based on the IRS's admission, in a separate Tax Court proceeding, that the FPAA statute of limitations had run. 44 F.3d at 330. Because it was unnecessary for the court to determine the merits of the statute of limitations question when examining its jurisdiction to hear the refund suit, the court did not examine, as we must in this case, whether the FPAA statute of limitations was a partnership item that deprived the court of jurisdiction. Instead, the court examined the basis for its general grant of jurisdiction over the refund suit. In this regard, the court asked whether "the adjustments called for in the FPAA" were partnership items and determined that the settlement agreement, which settled those items specifically, converted them to nonpartnership items. *Alexander*, 44 F.3d at 331. Thus, the court found that it had jurisdiction to decide the *partner-specific* question of whether the taxpayer's settlement agreement *contractually* barred the refund (an issue not present in this case).

> any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for the purposes of [subtitle F], such item is more appropriately determined at the partnership level than at the partner level.

26 U.S.C. § 6231(a)(3). The taxpayers argue that because § 6229(a), containing the FPAA statute of limitations provision, is found in subtitle F, as opposed to subtitle A, it is not a partnership item. Furthermore, the taxpayers argue that no treasury regulation specifically refers to the limitations issue as a partnership item. *See* 26 C.F.R. § 301.6231(a)(3)- 1(a). The ***Weiner*** court reasoned that this omission, coupled with the fact that § 6229(a) is found only in subtitle F, prevents the FPAA statute of limitations from attaining partnership item status. We disagree with this conclusion.

First, the majority of courts to consider this issue have held that the FPAA statute of limitations issue is a partnership item that must be litigated in a partnership level proceeding. *See* *Chimblo v. Comm'r*, 177 F.3d 119, 125 (2d Cir.1999); *Kaplan v. United States*, 133 F.3d 469, 473 (7th Cir.1998); *Williams v. United States*, 165 F.3d 30 (6th Cir.1998) (unpublished table decision); *Barnes v. United States*, No. 95-57-Civ-ORL-22, 1997 WL 732594, * 3 (M.D.Fla. July 25, 1997), *aff'd*, 158 F.3d 587 (11th Cir.1998); *Thomas v. United States*, 967 F.Supp. 505, 506 (N.D.Ga.1997); *Slovacek v. United States*, 36 Fed. Cl. 250, 255 (1996). These courts have reasoned that because the FPAA limitations ***157** issue affects the partnership as a whole, it should not be litigated in an individual partner proceeding, as such a result would contravene the purposes of TEFRA. *See, e.g.*, *Chimblo*, 177 F.3d at 125. We agree with this reasoning and hold that the district courts lack jurisdiction to consider the taxpayers' statute of limitations argument.

Second, responding to the taxpayers' argument directly, the treasury regulations provide that, for the purposes of subtitle F,

> [t]he term "partnership item" *includes* the accounting practices and the *legal and factual determinations* that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc.

26 C.F.R. § 301.6231(a)(3)-1(b)(emphasis added). As the court in *Slovacek* reasoned, the statute of limitations "might be said to affect the amount, timing, and characterization of income, etc., (partnership items) at the partnership level, if only in a thumbs-up or thumbs-down manner." 36 Fed.Cl. at 255. In this way, the treasury regulations have implicitly included the statute of limitations determination within the definition of "partnership item." [FN3]

FN3. That the FPAA statute of limitations does not

appear in subtitle A does not alone defeat this conclusion. The treasury regulations specifically provide that the term "partnership item" *includes* the legal and factual determinations underlying the amount, timing, and characterization of certain partnership items found in subtitle A. Therefore, this definition is broad enough to include in its parameters legal and factual determinations *not* specifically found in subtitle A.

Third, we find distinguishable two cases the taxpayers rely on. In *Monti v. United States,* 223 F.3d 76, 82 (2d Cir.2000), the court held that a partner's right to seek consistent settlement terms from the IRS was more appropriately considered a nonpartnership item. The Second Circuit relied on several factors to justify this conclusion, among them the fact that the right to consistent settlement terms, located in § 6224(c)(2), is found in subtitle F, as opposed to subtitle A. *Id.* at 82. However, the first and arguably most important factor considered by the *Monti* court in deciding how to categorize a partner's right to consistent settlement terms dealt with the practical realities of that right. The court noted that

> [o]ne partner's right to settlement terms consistent with those granted to another partner is not a partnership item, *because* the question posed requires consideration of the relationship between one partner's situation and another's and the individual's, rather than the partnership's, communications with the IRS. The facts needed to determine whether consistent terms were offered are *facts about the partner,* not facts about the partnership.

*Id.* at 82-83 (emphasis added). Conversely, the FPAA statute of limitations determination challenged in this case deals with facts specific to the partnership. The court need not consider the relationship between one partner and another or an individual's communications with the IRS.

Likewise, the court in *Prochorenko v. United States,* 243 F.3d 1359, 1363 (Fed.Cir.2001), relying on *Monti,* concluded that a partner's right to request consistent settlement terms was not a partnership item. That court opined that

> [w]hether or not the [taxpayers] were entitled to such a reduction is an issue that is entirely dependent on their own unique factual circumstances, and has no effect on and is not affected by the tax liability of any of the other [ ] partners. Accordingly, this is not the type of issue ***158** that is "more appropriately determined at the partnership level."

*Id.* at 1363 (quoting the treasury regulations). Again, the situation in this case is quite the opposite. The timeliness of an FPAA affects the IRS's ability to make adjustments to partnership items, which in turn affects all partners alike. This determination is more appropriately made at the partnership level.

From a practical perspective, a finding of jurisdiction over the statute of limitations issue would create an absurd result that contravenes TEFRA. As was the case here, partners could settle with the IRS and thus eliminate their ability to participate in and be bound by the result of any partnership-level proceeding. But if, as here, [FN4] the Tax Court decided the substantive statute of limitations issue against the partnership, the settling partners could simply bring individual partner-level suits in the district courts and attempt to obtain a different ruling on the statute of limitations issue. Thus, some partners would be required to pay the assessed deficiency, while others would not. The result advocated by the taxpayers here is at odds with TEFRA's goal of consolidating decisions that affect the partnership as a whole.

> FN4. The TMP for TFA and ODA stipulated during the Tax Court litigation that those partnerships' limitations arguments would be governed by the decision in what became known as *Agri-Cal Venture Associates,* 80 T.C.M. (CCH) 295 (2000). TFA and ODA thus became bound by the Tax Court's adverse statute of limitations decision.

Finally, the taxpayers contend that this court's decision in *Alexander* controls the determination whether the FPAA statute of limitations is a partnership or nonpartnership item. In *Alexander,* the taxpayer received an FPAA from the IRS notifying him of an adjustment to partnership items that would affect his tax liability. 44 F.3d at 329. The taxpayer and the IRS eventually entered into a settlement agreement binding the taxpayer to the IRS's treatment of the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

partnership items. Id. at 330. Over a year after making his deficiency payment, however, the taxpayer learned that another partner had challenged the IRS's FPAA adjustments in Tax Court on the basis of the statute of limitations. *Id.* In that proceeding, the IRS conceded that the statute of limitations had expired, and the court entered judgment for the partners. *Id.* Because Alexander had already settled with the IRS, however, the result in the Tax Court did not apply to him. *See* 26 U.S.C. § 6231(b)(1)(c). As a result, he filed his own individual refund action in the district court. The Government defended the suit by arguing that the parties' contractual settlement agreement prevented the taxpayer from bringing any suit for refund. 44 F.3d at 330.

A panel of this court addressed its jurisdiction to determine if the settlement agreement barred the refund suit. This court first noted that § 7422(h) bars suits for refunds that are "attributable to partnership items." Id. at 331. The question then became whether the taxpayer's refund suit was in fact "attributable to" any partnership item. The court noted that while the refund was "at one time attributable to partnership items, that is, to the adjustments called for in the FPAA," the nature of those items was altered by the settlement. Id. Section 6231(b)(1)(C) provides that

> [f]or purposes of this subchapter, the partnership items of a partner ... shall become nonpartnership items as of the date ... the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner with respect to such items[.]

***159** Therefore, the settlement agreement converted the partnership items to nonpartnership items for the purpose of the district court's jurisdiction. [FN5] The taxpayers argue here that this analysis comports with their jurisdictional argument and thus excepts their case from § 7422(h)'s bar.

> FN5. As discussed *supra* in note 1, conversion does not provide a basis for jurisdiction in this case.

However, the *Alexander* court did not address the question whether the court had jurisdiction to consider the *substantive* statute of limitations issue. In *Alexander*, as opposed to this case, the Government *conceded* that the statute of limitations barred the assessments. Thus, once the *Alexander* court found that it had jurisdiction generally over the refund suit, the only substantive issue left to be decided was whether the settlement agreement contractually barred the suit. Id. at 331-32. The settlement agreement in *Alexander*, like the one in this case, required the taxpayers to agree that they would not bring any claim for refund based on the changed treatment of the partnership items. Id. at 330. The court held that the contractual provision did not bar the refund suit because the taxpayer "[did] not base his refund on the treatment of partnership items at all, but rather on the time-barred deficiency assessed as a result of such treatment." Id. at 332. The taxpayers here seize on this language as proof that the statute of limitations question is a nonpartnership issue. However, the *Alexander* court made this statement only in the context of analyzing the *contractual* settlement agreement. The *Alexander* court did not decide whether it had jurisdiction to reach the merits of the statute of limitations argument, because that argument had already been conceded. Thus, *Alexander* does not control the question presented in this case, and this court remains convinced that the district courts lack jurisdiction to decide the FPAA statute of limitations issue. On this issue, the decision of the district court in ***Weiner*** is therefore incorrect, while the ***Kraemer*** decision is correct.

IV. 6621(c) Increased Interest

[2] Despite its repeal in 1989, the draconian interest provision enacted as § 6221(c) continues to dog taxpayers for returns filed during the early 1980s. Consequently, these taxpayers contest the Government's imposition of additional interest pursuant to 26 U.S.C. § 6621(c). [FN6] The provision imposes an interest rate of 120% of the statutory rate on "any substantial underpayment attributable to tax motivated transactions." [FN7] 26 U.S.C. § 6621(c)(1) (1988). A "substantial underpayment" is any underpayment exceeding $1,000 per tax year. *Id.* § 6621(c)(2). Included in the statutory definition of "tax motivated transaction" is "any sham or fraudulent transaction." *Id.* § 6621(c)(3)(A)(v).

> FN6. The **Kraemers** suffered an adverse judgment on this point, while **Weiner** prevailed on the court's finding that he had a profit motive relevant to the assessment of § 6221(c) interest. We do not reach the issue the district court found dispositive.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Defending against the Government's appeal, however, **Weiner** makes, inter alia, the same argument as the **Kraemers.**

FN7. This section was repealed in 1989, but it applies to the tax years in question in this appeal (1984 to 1986).

The taxpayers contend that the trial courts are precluded from upholding the § 6621(c) interest assessment because their underlying settlement agreements do not establish that their underpayments were attributable to "tax motivated transactions." In the FPAAs, the Government ***160** asserted *several* bases for the disallowance of certain deductions. Among them was a "sham or fraudulent transaction," which qualifies as a "tax motivated transaction" for the purposes of 6621(c). 26 U.S.C. § 6621(c)(3)(A)(v). Because the taxpayers settled with the IRS, however, there was never any need for a court to examine the IRS's claimed bases for disallowance and make a determination about their application.

The taxpayers principally rely on *Todd v. Comm'r,* 862 F.2d 540 (5th Cir.1988). *Todd* dealt with the IRS's imposition of the § 6659(a) penalty. However, because both sections employ the same "attributable to" language, the analysis in *Todd* is instructive in the § 6621(c) context. In *Todd,* this court held that the taxpayers' underpayment was not "attributable to" a valuation overstatement and thus § 6659(a)'s penalty did not apply. The taxpayers in *Todd* did not settle with the IRS but instead chose to challenge the IRS's disallowances in the Tax Court. In that proceeding, the Tax Court held that the Todds were not entitled to their deductions and tax credits because the assets had not been put into service during the tax year. *Id.* at 541. On appeal, this court reasoned that because the deductions and credits were disallowed for a reason totally unrelated to any valuation overstatement, the resulting underpayment could not be "attributable to a valuation overstatement." *Id.* at 542.

The court then applied a treasury regulation formula that determines the portion of deductions to which the higher interest rate applies. [FN8] Because the court had already determined that no portion of the disallowed deductions and credits were "attributable to" the valuation overstatement, the two sides of the equation were equal. [FN9] The court noted that "where the deductions and credits ... were inappropriate altogether, the Todds' valuation of the property supposedly generating the tax benefits had no impact whatsoever on the amount of tax actually owed." *Id.* at 543. Or, stated another way, the Todds' underpayment was not "attributable to" a valuation overstatement.

FN8. The formula for determining the amount of underpayment attributable to a valuation overstatement is as follows:
(1) "actual tax liability" (*i.e.,* the tax liability that results from applying all of the IRS's proper adjustments) with
(2) the "actual tax liability" reduced by the valuation overstatement adjustment.
The difference between (1) and (2) is the amount of the underpayment attributable to the valuation overstatement. *See* *Todd,* 862 F.2d at 542- 43.
Similarly, the amount of *tax motivated underpayment* for § 6621(c) is determined in the following manner:
(1) Calculate the amount of the tax liability for the taxable year as if all items of income, gain, loss, deduction, or credit, had been reported properly on the income tax return of the taxpayer ("total tax liability"); and
(2) Without taking into account any adjustments to items of income, gain, loss, deduction, or credit that are attributable to tax motivated transactions ..., calculate the amount of the tax liability for the taxable year as if all other items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of the taxpayer ("tax liability without regard to tax motivated transactions").
The difference between (1) and (2) is the amount of the tax motivated underpayment. *See* 26 C.F.R. § 301.6221-2T, A-5.

FN9. This is because the formula requires the court to determine the portion of underpayment attributable to a valuation overstatement "after taking into account any other *proper* adjustments to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

tax liability." Todd, 862 F.2d at 542 (emphasis added). Therefore, because the Tax Court determined that not placing the assets in service was a "proper adjustment," the two sides of the formula were equal.

***161** In McCrary v. Comm'r, 92 T.C. 827, 1989 WL 35568 (1989), a case also heavily relied on by the taxpayers, the Tax Court adopted the reasoning in Todd and concluded that the McCrarys were not subject to § 6659(a) or § 6621(c) interest on the disallowed investment tax credit. The McCrarys conceded one of the IRS's grounds for disallowing the investment tax credit, thus eliminating the need for a trial on these issues in the Tax Court. Id. at 851. The ground conceded by the McCrarys (that their agreement was a license and not a lease) was neither a "valuation overstatement" nor a "tax motivated transaction." The Tax Court noted that alternative grounds could have justified the disallowance, including sham transaction, which would have qualified for the § 6621(c) addition to tax. However, the Tax Court declined to address the sham transaction issue, which was unnecessary to support the conceded disallowance, for the sole purpose of applying § 6621(c). Id. at 859.

The taxpayers also rely on Heasley v. Comm'r, 902 F.2d 380 (5th Cir.1990), in which this court relied on and extended the Todd rule. In Heasley, the IRS relied on a variety of reasons for disallowing the Heasleys' claimed tax credits. The Heasleys, like the taxpayers here, conceded the deficiency, but continued their suit in the Tax Court to challenge the § 6659(a) and § 6621(c) additions to tax. The Tax Court concluded that the Heasleys' underpayment was "attributable to" a valuation overstatement under § 6659(a). The Fifth Circuit reversed. With regard to § 6659(a), this court held that even though the Tax Court specifically found that the underpayment was "attributable to" a valuation overstatement, a situation that differed from that in Todd,

> [w]henever the IRS totally disallows a deduction or credit, the IRS may not penalize the taxpayer for a valuation overstatement included in that deduction or credit. In such a case, the underpayment is not attributable to a valuation overstatement. Instead, it is attributable to claiming an improper deduction or credit.

Heasley, 902 F.2d at 383.

These cases afford a conceptual lens through which to view the statutory phrase "attributable to" in the context of § 6621(c). In Todd, the Government argued that "attributable to" really meant "capable of being attributed," such that any time a taxpayer's underpayment was capable of being attributed to a valuation overstatement, the penalty would apply. 862 F.2d at 542. However, the Todd court reasoned that the formula indicated that Congress did not intend for the penalty to apply *every* time valuation overstatement was at issue. Likewise, the § 6621(c) formula, *supra,* determines the amount of tax motivated underpayment by *first* taking into account any other proper, but *non-tax-motivated,* deductions. On a theoretical level, the formula provides the same reinforcement for viewing "attributable to" *narrowly* in the § 6621(c) context. [FN10] ***162** When so viewed, it follows that when the FPAA lists several *independent* reasons for disallowing the taxpayers' deductions, there is no way to determine, without additional superfluous litigation, whether the taxpayers' underpayment is "attributable to" a reason that also qualifies as a tax-motivated transaction (such as a sham).

> FN10. The Second Circuit rejected this approach and instead adopted the "capable of being attributed" definition in the § 6621(c) context. *See* Irom v. Comm'r, 866 F.2d 545, 547 (2d Cir.1989). In distinguishing Todd, the Second Circuit announced a "separability" test: if two grounds for deficiency exist, one of which qualifies as a tax motivated transaction and the other of which does not, and the two grounds are "inseparable," then the formula relied upon in Todd does not apply. Id. at 547-48. This court in Heasley, again relying on Todd and the formula, noted Irom as contrary authority only. 902 F.2d at 383 n. 5. This represents this circuit's only acknowledgment of the Irom rule.
>
> However, even if the Irom rule were to apply, the reasons listed by the IRS in the FPAA are "separable." For example, in addition to sham transaction, the FPAA listed as reasons for disallowing the deductions the following, inter alia:

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

(1) the partnership did not actively engage in the trade or business of farming, and (2) the partnership expenses paid or incurred were not ordinary and necessary trade or business expenses deductible under § 162. The Tax Court has found that both of these reasons are "separable" from a finding of sham or fraudulent transaction. *Harris v. Comm'r,* 58 T.C.M. (CCH) 1441 (1990).

The Tax Court has twice embraced this narrow view of "attributable to" in § 6621(c) cases and decided that a taxpayer's blanket concession precludes a finding that any underpayment is "attributable to" a tax motivated transaction. First, in *Rogers v. Comm'r,* 60 T.C.M. (CCH) 1386 (1990), the taxpayers conceded the IRS's ability to disallow deductions. The Tax Court relied on *McCrary, supra,* and reasoned that because "the determination of whether there was a tax-motivated transaction was made only concerning the disputes over the additions to tax and increased interest, we could not conclude that the taxpayer required a trial that otherwise would have been unnecessary." *Id.* at 1397. The taxpayers also cite *Schachter v. Comm'r,* 67 T.C.M. (CCH) 3092, 1994 WL 263329, *5 (1994), in which the court noted that because the taxpayer entered into a stipulation of settled issues and conceded the disallowance of deductions, these actions "obviated the need for a trial on the numerous issues raised in the deficiency notice for the purpose of identifying which, if any of them, provided the substantive ground or grounds for disallowance...." The *Schachter* court was also persuaded that because of the numerous grounds alleged in the notice of deficiency, it was impossible to say that the underpayment was "attributable to" any one ground. The court noted:

> Here, as in [*McCrary*] and [*Rogers*], the melange of alleged grounds, some of which were "tax motivated" grounds--but others were not--prevent us from saying, after the concession, that the underpayment was attributable to a particular ground. We are not inclined, in these circumstances, to rely on petitioners' burden of proof to show that the transaction was not tax motivated, all or in part, for the purpose of section 6621(c). The objectives of administrative efficiency and judicial economy have been well served by the closing agreement and petitioner's concession. Those objectives would not be served by requiring a trial on the substantive issues for the sole purpose of determining whether petitioner is liable for 20 percent more interest on the deficiency under section 6621(c).

*Id.* at *6.

The same situation is present in these cases: the taxpayers settled or conceded the disallowances and paid the delinquent taxes, thus removing the need for a trial on the merits of those issues. This court can conceive of no good reason to treat the taxpayers in this case differently from the taxpayers in *Todd, McCrary, Heasley, Rogers,* or *Schachter.* There is no way, given the multiple reasons provided for the disallowance in the FPAAs, to determine whether the underpayments are "attributable to" a tax motivated transaction. Additionally, § 6621(c) was one of the provisions enacted by Congress "to deal with the Tax Court backlog." *Todd,* 862 F.2d at 544 n. 14. Yet, fifteen years after the ***163** statute's repeal, imposing the penalty in situations such as this does nothing to relieve the Tax Court's backlog, when the taxpayers have in fact settled with the IRS. Because, under the circumstances of these cases, the taxpayers' underpayments are not "attributable to" a tax motivated transaction as a matter of law, the IRS may not assess the additional interest against them. We thus endorse the result in ***Weiner,*** albeit on different grounds, but reverse that in ***Kraemer.***

*Conclusion*

For the foregoing reasons, we conclude that the district courts lack jurisdiction to consider the taxpayers' FPAA statute of limitations arguments. Further, § 6621(c) interest cannot be assessed against the taxpayers as a matter of law. Finally, pursuant to *Beall,* the district courts have jurisdiction to consider the taxpayers' § 6404(e) interest abatement claims. Accordingly, the judgments of the trial courts are

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

389 F.3d 152, 94 A.F.T.R.2d 2004-6518

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

**Briefs and Other Related Documents** **(Back to top)**

• 03-20174 (Docket) (Feb. 12, 2003)

• 03-20176 (Docket) (Feb. 12, 2003)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Form **8822** (Rev. December 2003) Department of the Treasury Internal Revenue Service

# Change of Address

▶ Please type or print.
▶ See instructions. ▶ Do not attach this form to your return.

OMB No. 1545-1163

**Part I** **Complete This Part To Change Your Home Mailing Address**

Check **all** boxes this change affects:

1 [X] Individual income tax returns (Forms 1040, 1040A, 1040EZ, TeleFile, 1040NR, etc.) *FOR TAX YEAR 1983*

▶ If your last return was a joint return and you are now establishing a residence separate from the spouse with whom you filed that return, check here ▶ [ ] ***** *ONLY!!!*

2 [ ] Gift, estate, or generation-skipping transfer tax returns (Forms 706, 709, etc.)

▶ For Forms 706 and 706-NA, enter the decedent's name and social security number below.

▶ Decedent's name ▶ Social security number

3a Your name (first name, initial, and last name): THOMAS H MCGANN

3b Your social security number: [redacted]9326

4a Spouse's name (first name, initial, and last name): EVELYN G MCGANN

4b Spouse's social security number: [redacted]4198

5 Prior name(s). See instructions.

6a Old address (no., street, city or town, state, and ZIP code). If a P.O. box or foreign address, see instructions. Apt. no.

512 West Wind Drive; Berwyn, PA 19312

6b Spouse's old address, if different from line 6a (no., street, city or town, state, and ZIP code). If a P.O. box or foreign address, see instructions. Apt. no.

7 New address (no., street, city or town, state, and ZIP code). If a P.O. box or foreign address, see instructions. Apt. no.

*c/o Thomas E. Redding; 2914 West T. C. Jester; Houston, Texas 77018-7010*

**Part II** **Complete This Part To Change Your Business Mailing Address or Business Location**

Check **all** boxes this change affects:

8 [ ] Employment, excise, income, and other business returns (Forms 720, 940, 940-EZ, 941, 990, 1041, 1065, 1120, etc.)

9 [ ] Employee plan returns (Forms 5500, 5500-EZ, etc.).

10 [ ] Business location

11a Business name

11b Employer identification number

12 Old mailing address (no., street, city or town, state, and ZIP code). If a P.O. box or foreign address, see instructions. Room or suite no.

13 New mailing address (no., street, city or town, state, and ZIP code). If a P.O. box or foreign address, see instructions. Room or suite no.

14 New business location (no., street, city or town, state, and ZIP code). If a foreign address, see instructions. Room or suite no.

**Part III** **Signature**

Daytime telephone number of person to contact (optional) ▶ *713-965-9244 THOMAS E. REDDING, ATTORNEY AT LAW*
*SEE POWER OF ATTORNEY ATTACHED*

**Sign Here**

▶ Thomas H. McGann 4-14-05
Your signature Date

▶ Evelyn G. McGann 4-14-05
If joint return, spouse's signature Date

▶ If Part II completed, signature of owner, officer, or representative Date

▶ Title

**For Privacy Act and Paperwork Reduction Act Notice, see back of form.**

ISA
STF FED7154F

Form **2848**
(Rev. December 1997)
Department of the Treasury
Internal Revenue Service

# Power of Attorney and Declaration of Representative

▶ See the separate instructions.

OMB No. 1545-0150
For IRS Use Only
Received by:
Name ______
Telephone ______
Function ______
Date ______

**Part I** Power of Attorney (Please type or print.)

**1 Taxpayer information** (Taxpayer(s) must sign and date this form on page 2, line 9.)

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| THOMAS H. MCGANN<br>EVELYN G. MCGANN<br>512 WESTWIND DRIVE<br>BERWYN, PA 19312 | [redacted]-9326<br>[redacted]-4198 | |
| | Daytime telephone number<br>610-647-2782 | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** (Representative(s) must sign and date this form on page 2, Part II.)

| Name and address | |
|---|---|
| Thomas E. Redding<br>2914 West T.C. Jester<br>Houston, Texas 77018-7010 | CAF No. 7800-63703R<br>Telephone No. 713/965-9244<br>Fax No. 713/621-5227<br>Check if new: Address ☐ Telephone No. ☐ |
| Sallie W. Gladney<br>2914 West T.C. Jester<br>Houston, Texas 77018-7010 | CAF No. 7805-78887R<br>Telephone No. 713/965-9244<br>Fax No. 713/621-5227<br>Check if new: Address ☐ Telephone No. ☐ |
| Teresa J. Womack<br>2914 West T.C. Jester<br>Houston, Texas 77018-7010 | CAF No. 7805-87212R<br>Telephone No. 713/965-9244<br>Fax No. 713/621-5227<br>Check if new: Address ☐ Telephone No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Income | 1040 and 1065 and Partnership Items for all partnerships in which the taxpayer is a partner. | Tax periods ending: December 31, 1980,1981, 1982,(1983),1984,1985,1986, 1987,1988,1989,1990,1991, 1992,1993,1994,1995,1996, 1997,1998,1999 and 2000. |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. (See instruction for **Line 4 — Specific uses not recorded on CAF.**) . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative unless specifically added below, or the power to sign certain returns (see instruction for **Line 5 — Acts authorized**).

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: This power includes, but is not limited to, authorization to exercise the taxpayer's rights regarding partnership items and affected items and under I.R.C. Section 6103(e)(1)(C) relative to Forms 1065 for partnerships in which the taxpayer(s) was a partner.

**Note:** *In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.*

**Note:** *The tax matters partner of a partnership is not permitted to authorize representatives to perform certain acts. See the instructions for more information.*

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH**, refund checks, initial here THM EGM and list the name of that representative below.

Name of representative to receive refund check(s) ▶ Thomas E. Redding

**For Paperwork Reduction and Privacy Act Notice, see the separate instructions.** Form **2848** (Rev. 12-97)

ISA
STF FED4675F.1

7 **Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2 unless you check one or more of the boxes below.

a If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box . . . . . ▶ ☐

b If you also want the second representative listed to receive a copy of such notices and communications, check this box . ▶ ☐

c If you do not want any notices or communications sent to your representative(s), check this box . . . . . ▶ ☐

8 **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here . . . . . ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

9 **Signature of taxpayer(s).** If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

Thomas H. McGann (signature) — 9-16-03

Signature — Date — Title (if applicable)

THOMAS H. MCGANN

Print Name

Evelyn G. McGann (signature) — 9-16-03

Signature — Date — Title (if applicable)

EVELYN G. MCGANN

Print Name

**Part II** **Declaration of Representative**

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:

a Attorney — a member in good standing of the bar of the highest court of the jurisdiction shown below.
b Certified Public Accountant — duly qualified to practice as a certified public accountant in the jurisdiction shown below.
c Enrolled Agent — enrolled as an agent under the requirements of Treasury Department Circular No. 230.
d Officer — a bona fide officer of the taxpayer's organization.
e Full-Time Employee — a full-time employee of the taxpayer.
f Family Member — a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
g Enrolled Actuary — enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).
h Unenrolled Return Preparer — an unenrolled return preparer under section 10.7(c)(viii) of Treasury Department Circular No. 230.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.**

| Designation — Insert above letter (a - h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| A | Texas | (signature) Thomas E. Redding | 10/1/03 |
| A | Texas | (signature) Sallie W. Gladney | 10-1-03 |
| A | Texas | (signature) Teresa J. Womack | 10/1/03 |

STF FED4675F 2

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 5.05 |
| Certified Fee | 2.30 |
| Return Reciept Fee (Endorsement Required) | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 9.10 |

Postmark Here

HOUSTON, TX FOREST STA APR 15 2005 USPS 77018

McGann.100

Sent To Internal Revenue Service Center

Street, Apt. No.; or PO Box No.

City, State, ZIP+4 Philadelphia, PA 19255

PS Form 3800, June 2002 See Reverse for Instructions

7002 3150 0005 7422 0929

**SENDER:** *COMPLETE THIS SECTION*

and 3. Also complete elivery is desired. address on the reverse the card to you. e back of the mailpiece, ce permits.

venue Service

a, PA 19255

y 2004

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (*Printed Name*) C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

RECEIVED APR 18 2005 PSC PHILA., PA C

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*) ☐ Yes

7002 3150 0005 7422 0929

Domestic Return Receipt 102595-02-M-