No. 05-1189 T
(Judge Charles F. Lettow)

---

***IN THE UNITED STATES COURT OF FEDERAL CLAIMS***

THOMAS H. McGANN and EVELYN G. McGANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF JURISDICTION AND BRIEF IN SUPPORT THEREOF

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
STEVEN I. FRAHM
BART D. JEFFRESS
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26, Ben Franklin Station
Washington, D.C. 20044
(202)307-6496
(202)514-9440 (facsimile)

**Page**

# INDEX


Defendant's motion to dismiss plaintiff's complaint for lack of jurisdiction . . . . . . . . . . . . . . . . 1

Brief in support of defendant's motion to dismiss plaintiffs' complaint for lack of jurisdiction . 1

Introduction and question presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Statement of the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. RCFC 12(b)(1) standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. Argument:

A. Statutory background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

B. The Court lacks subject matter jurisdiction because plaintiffs filed their refund claim in an untimely manner . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Appendix A (attached):
Title 26, U.S.C.:[1]
§ 6221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§ 6222(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§ 6223(a), (d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§ 6226(a), (b)(1), (c), (d), (f), (g), (h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6230(c)(1-2), (d)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 6231(a)(3, 5, 6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Temp. Treas. Regs., 26 C.F.R.:
§ 301.6231(a)(6)-1T(b) (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Appendix B (attached under separate cover):

| Exhibit | Description |
|---|---|
| 1 | Schedule K-1 (Form 1065) 1983 Partner's Share of Income, Credits, Deductions, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B - 1 |


[1] Unless otherwise noted, statutory provisions set forth in Appendix A appear as in effect with respect to the facts of the present case and not necessarily as currently codified.

Page

2 Letter from IRS with enclosures, dated February 28, 2003, to Thomas H. & Evelyn McGann . . . . . . . . . . . . . . . . . . . . . . . . . . . . B - 3

3 Certificate of Assessments, Payments, and Other Specified Matters dated May 5, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B - 7

4 Petition, United States Tax Court in the case of *Vulcan Oil Technology, et al. v. United States*, Docket No. 21530-87 . . . . . . . . B - 12

CITATIONS

Cases:

*Acierno v. Commissioner*, No. 45438-86, T.C. Memo. 1997-41, 1997 WL 593874 (U.S. Tax Ct. Sept. 25, 1997), *aff'd*, 185 F.3d 861 (3rd Cir. 1999) . . . . . . . . . . 3, 5

*Affiliated Equip. Leasing II v. Commissioner*, 97 T.C. 575 (1991) . . . . . . . . . . . . . . . . . 11

*Anderson v. United States*, No. C-91-3523 MHP, 1993 WL 204605 (N.D. Cal. June 3, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bob Hamric Chevrolet, Inc. v. United States*, 849 F.Supp. 500 (W.D. Tex. 1994) . . . . . 14

*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . 7

*Chimblo v. Commissioner*, 177 F.3d 119 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Commissioner v. Lundy*, 516 U.S. 235 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Field v. United States*, 328 F.3d 58 (2nd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hildebrand v. Commissioner*, 28 F.3d 1024 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 5

*Kaplan v. United States*, 133 F.3d 469 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Krause v. Commissioner*, 99 T.C. 132 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5, 12

*N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741 (1987) . . . . . . . . . . . . . . . . . . . 11

Page

Cases (continued):

*Olson v. United States*, 172 F.3d 1311 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Reynolds v. Army and Air Force Exch. Serv*., 846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . 7

*Rocovich v. United States*, 933 F.2d 991 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 7

*Tucek v. Commissioner*, 198 F.3d 259, 1999 WL 992974 (10th Cir. 1999) . . . . . . . . . . . . 5

*United States v. Dalm*, 494 U.S. 596 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Vulcan Oil Tech. Partners, et. al. v. Commissioner*, 110 T.C. 153 (1998) . . . . . . . . . . . . 5

Statutes:

Internal Revenue Code of 1986 (26 U.S.C.):[2]

§ 183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5
§ 6221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10
§ 6222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
§ 6223 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
§ 6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 10, 12-15
§ 6228 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
§ 6229 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
§ 6230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 10-15
§ 6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11
§ 6234 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10
§ 6621 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 ,10
§ 6511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 13, 14
§ 7422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
§ 7481 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15
§ 7483 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248,
96 Stat. 324, 648-671 § 402 (a) 407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Miscellaneous:

Treas. Regulations (26 C.F.R):
§ 301.6231(a)(6)-1T(b) (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

---

[2] References herein to sections (or "§") are to the Internal Revenue Code, codified in Title 26 of the United States Code, as amended and in effect during the relevant period.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1189 T
(Judge Charles F. Lettow)

THOMAS H. McGANN and EVELYN G. McGANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
FOR LACK OF JURISDICTION

Defendant, the United States, respectfully moves the Court, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss the complaint on the ground that the Court lacks jurisdiction over the subject matter. In support of its motion, defendant relies on the attached Brief in Support of Defendant's Motion to Dismiss Plaintiffs' Complaint for Lack of Jurisdiction, and Appendicies A and B attached thereto.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice, Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496

(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

August 17, 2006

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1189 T
(Judge Charles F. Lettow)

THOMAS H. McGANN and EVELYN G. McGANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF JURISDICTION

## INTRODUCTION AND QUESTION PRESENTED

The Court lacks jurisdiction over plaintiffs' complaint, because plaintiffs filed the underlying administrative refund claim outside the time period prescribed by Congress for such filing. Plaintiffs' complaint seeks a refund of tax motivated interest. The applicable statutory scheme (set forth in § 6230) required plaintiffs to file their administrative claim for the interest within six months after the IRS mailed a notice to plaintiffs that the interest was owed on their tax underpayment.

The story behind plaintiffs' failure to meet the six-month deadline begins with plaintiff Thomas H. McGann's ("McGann") 1983 partnership interest in Drake Oil Technology Partners ("Drake Oil"). Drake Oil reported deductions in 1983, and plaintiffs reported their distributive share of the deductions on their 1983 tax return. The IRS subsequently disallowed the

partnership's deductions, and the United States Tax Court upheld the vast majority of the disallowance in a decision that became final in September 2002. Because plaintiffs had reduced their 1983 taxable income by reporting a distributive share of those deductions, the application of the decision to plaintiffs caused an underpayment of tax, plus interest and tax motivated interest. The IRS mailed notice that plaintiffs owed such interest on the underpayment in February 2003. Plaintiffs, however, did not file their claim with the IRS to refund the tax motivated interest until April 2005, well beyond the six month period.

The question presented by this motion is:

Whether plaintiffs filed their administrative refund claim for tax motivated interest outside the time period Congress prescribed in § 6230(c)?

## I. Statement of the Case

McGann was a limited partner in Drake Oil during the year 1983. *See Compl.* [Doc. #1] ¶ 6; *Ans.* [Doc. #9] ¶ 6. For the taxable period ending on December 31, 1983, Drake Oil reported ordinary loss deductions. *See Supp.* [Doc. #12] Ex. A at 8 ¶¶ 2-3, 11-18, 53, 69; *see also Compl.* [Doc. #1] ¶ 7; *Ans.* [Doc. #9] ¶ 7. McGann received a distributive share of the deductions. *See Compl.* [Doc. #1] ¶ 12a.-12.f.; *Supp.* [Doc. #12] Ex. A at 8 ¶¶ 2-11; App. B, Ex. 1 at B1, Ex. 2 at B4-B6. Plaintiffs reported McGann's distributive share on their 1983 federal income tax return and used it to reduce their 1983 taxable income. *See Supp.* [Doc. #12] Ex. A at 8; App. B, Ex. 1 at B1, Ex. 2, App. B at B4-B6. Plaintiffs filed their 1983 return timely on April 15, 1984, and paid the taxes reported due on the return. *See Compl.* [Doc. #1] ¶ 5; *Ans.* [Doc. #9] ¶ 5; Ex. 3, App. B at B8.

On April 6, 1987, the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") to the tax matters partner of Drake Oil, determining that the deductions reported by Drake Oil on its 1983 return were not allowable and accordingly adjusting the reported deductions downward to zero. *See Supp.* [Doc. #12] Ex. A at 11-18; App. B, Ex. 4 at B21-B31; *see also Compl.* [Doc. #1] ¶ 12a.; *Ans.* [Doc. #9] ¶ 12a. In addition to other explanations, the FPAA stated that the deductions were disallowed because "[i]t has not been established that the claimed deductions originated in a trade or business or in a transactions entered into for profit." *See Supp.* [Doc. #12] Ex. A at 15; App. B, Ex. 4 at B27.

On July 2, 1987, pursuant to § 6226(a), the tax matters partner of Drake Oil filed in the United States Tax Court a petition for readjustment contesting the adjustments made in the FPAA, *Vulcan Oil Tech. Partners, et. al. v. Commissioner*, Docket No. 21530-87 ("*Vulcan Oil").* *See Supp.* [Doc. #12] Ex. A at 55; App. B, Ex. 4; *see also Compl.* [Doc. #1] ¶ 12b.; *Ans.* [Doc. #9] ¶ 12b. The petition raised numerous challenges to the FPAA adjustments, including that the IRS erred in determining that "[t]he claimed losses, deductions and tax credits did not originate in a trade or business or in a transaction entered into for profit." *See* App. B, Ex. 4 at B15. As a Drake Oil partner, McGann was treated as a party to the proceeding pursuant to § 6226(c).

In 1992, the Tax Court issued its opinion in *Krause v. Commissioner*, 99 T.C. 132 (1992). *See Compl.* [Doc. #1] ¶ 12c.; *Ans.* [Doc. #9] ¶ 12c. The *Krause* case served as a test case for *Vulcan Oil*. *See Krause*, 99 T.C. at 133; *Acierno v. Commissioner*, No.45438-86, T.C. Memo. 1997-441, 1997 WL 593874 (U.S. Tax Ct. Sept. 25, 1997). In *Krause*, the Tax Court disallowed partnership deductions under § 183, found that partnership debt obligations were not genuine,

and upheld the imposition of tax motivated interest on tax underpayments resulting from the disallowance.[3] The *Krause* decision was affirmed by the Tenth Circuit on June 22, 1994. *See*

---

[3] *Krause*, 99 T.C. at 169, 175-76, 180:

> Taking into account the factors set out in section 1.183(b)(2), Income Tax Regs., the factors emphasized above, and the extensive testimony of the key participants in these transactions and of the many other witnesses in this case, we conclude that the activities of Technology-1980 and of Barton were not engaged in with actual and honest profit objectives.
>
> . . .
>
> The multi-million dollar license fees and royalties that Technology-1980 and that Barton (and the other Manhatten and Wichita Partnerships) agreed to pay were excessive. They did not reflect arm's-length obligations, and they are not to be recognized as legitimate obligations of the partnerships. The debt obligations of the partnerships associated therewith did not constitute genuine debt obligations and are to be disregarded.
>
> . . .
>
> In summary, presented to us in this case is a chain or multi-layered series of obligations, stacked or multiplied on top of each other via the numerous partnerships to produce debt obligations in staggering dollar amounts, using a largely undeveloped and untested product, in a highly risky, very speculative, and non arm's-length manner in an attempt to generate significant tax deductions for investors. The transactions did not, and do not, constitute legitimate for-profit business transactions.
>
> Losses of the partnerships are disallowed under section 183, and accrued interest deductions are disallowed due to the non-genuine nature of the underlying debt obligations.
>
> . . .
>
> Section 6621(c), and its predecessor section 6621(d), provided an increased rate of interest for substantial underpayments attributable to tax-motivated transactions. Substantial underpayments are defined as underpayments in excess of $1,000. By regulation, among the types of transactions that are consiered to be tax-motivated transactions within the meaning of section 6621(c) are those with respect to which the related tax deductions are disallowed under section 183 for lack of profit objective. Sec. 301.6621-2T, A-4(1), Temporary Proced. & Admin. Regs., 49 Fed. Reg. 59394 (Dec. 28, 1984); *Ryback v. Commissioner*, 91 T.C. 524, 568 (1988). In light of our findings as to

*Hildebrand v. Commissioner*, 28 F.3d 1024 (10th Cir. 1994). The Tenth Circuit held that the Tax Court did not clearly err in disallowing the partnerships' deductions under § 183, *see id.* at 1026-1028, and therefore "affirm[ed] the Tax Court's imposition of the increased rate of interest for substantially the reasons stated in its opinion," *id.* at 1028.

In *Acierno v. Commissioner*, No.45438-86, T.C. Memo. 1997-441, 1997 WL 593874 (U.S. Tax Ct. Sept. 25, 1997), the Tax Court applied *Krause* to Drake Oil, concluding that the activities of Drake Oil were not engaged in for profit under § 183 and Drake's debt obligations were not genuine. *See id.*; *see also Vulcan Oil Tech. Partners et. al. v. Commissioner*, 110 T.C. 153, 154-55 (1998); *Tucek v. Commissioner*, 198 F.3d 259, 1999 WL 992974, at *1 (10th Cir. 1999) (unpublished opinion). The *Acierno* decision was affirmed by the Third Circuit on June 22, 1999. *See Acierno v. Commissioner*, 185 F.3d 861 (3rd Cir. 1999) (table decision without reported opinion).

On December 20, 2001, the IRS filed a Motion to Dismiss for Lack of Prosecution in *Vulcan Oil*. *See Supp.* [Doc. #12] Ex. A at 52-67. In the motion, the IRS moved the Court for an order adjusting to zero the majority of the ordinary loss deductions reported by Drake Oil on its return of partnership income for 1983. *See Supp.* [Doc. #12] Ex. A at 52-53. The requested adjustment was "computed based on I.R.C. § 183 in accordance with the opinion in Krause." *See Supp.* [Doc. #12] Ex. A at 65; *see also Compl.* [Doc. #1] ¶ 12d; *Ans.* [Doc. #9] ¶ 12d.

On June 13, 2002, the Tax Court entered an Order and Order of Dismissal and Decision. *See Supp.* [Doc. #12] Ex. A at 68-70. The Tax Court granted the IRS' motion to dismiss and

---

the lack of profit objective, petitioners are liable for increased interest under section 6621(c).

entered a decision making the adjustments requested in the motion. *See Supp.* [Doc. #12] Ex. A at 68-69; *see also Compl.* [Doc. #1] ¶ 12e.; *Ans.* [Doc. #9] ¶ 12e. The decision became final in September 2002 pursuant to §§ 7481, 7483.

On February 28, 2003, the IRS mailed to plaintiffs a letter enclosing a Form 4549-A, explaining how the Tax Court's decision adjusting Drake Oil's 1983 partnership return affected their tax liabilities for 1983. *See* App. B, Ex. 2; *see also Compl.* [Doc. #1] ¶ 12f.; *Ans.* [Doc. #9] ¶ 12f. The form reflected a deficiency in tax of $8,620, and provided that interest and tax motivated interest pursuant to § 6621(c) applied to the $8,620 underpayment. Regarding tax motivated interest, the form stated:

> [A]ll or part of the underpayment of tax you were required to show on your return is a substantial understatement attributable to tax motivated transactions, as defined by section 6621(c)(3) of the Internal Revenue Code. Accordingly, the annual interest rate payable on your income taxes on this understatement is 120 percent of the adjusted rate established under code section 6621(b).

*See* App. B, Ex. 2 at B6; *see also Compl.* [Doc. #1] ¶ 12f.; *Ans.* [Doc. #9] ¶ 12f.

On March 24, 2003, the IRS assessed tax of $8,620 and interest and tax motivated interest of $57,475.04 against plaintiffs for 1983 arising from McGann's interest in Drake Oil. *See Compl.* [Doc. #1] ¶ 8; *Ans.* [Doc. #9] ¶ 8; App. B, Ex. 3 at B8. Plaintiffs paid the tax and interest in full by application of an advance payment credited on March 11, 2003, and by payments credited respectively on April 14, 2003, and April 21, 2003. *See Compl.* [Doc. #1] ¶ 9; *Ans.* [Doc. #9] ¶ 9; App. B, Ex. 3 at B8-B9.

About two years later, on April 15, 2005, plaintiffs filed with the IRS a claim for refund of tax motivated interest in the amount of $18,309.66. *See Compl.* [Doc. #1] ¶ 10; *Supp.* [Doc. #12] Ex. A. The IRS has not acted on the claim. *See Compl.* [Doc. #1] ¶ 11. Plaintiffs asserted

that their refund claim was "timely filed within two years of payment of the amount sought to be refunded." *Supp.* [Doc. #12] Ex. A at 1; *see also id.* at 8. Plaintiffs are referring to the two year period of § 6511, pursuant to which a claim for refund of a tax overpayment must be filed within two years of the time the tax was paid. In their complaint before this Court, plaintiffs remain silent on the timeliness of their administrative refund claim, and do not repeat their earlier invocation of the two year period.

On November 10, 2005, plaintiffs filed this suit.

## II. RCFC 12(b)(1) Standard

Jurisdictional challenges pursuant to RCFC 12(b)(1) take two forms, (1) challenges to the legal sufficiency of the complaint's jurisdictional allegations and (2) factual challenges to one or more of the jurisdictional facts alleged in the complaint. *See e.g. Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993); *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). In the former case, the alleged jurisdictional facts are assumed to be true, and they are liberally construed in plaintiff's favor. There is, however, no presumption in plaintiff's favor when there is a dispute over one or more of the alleged jurisdictional facts. Rather, the court is permitted to receive and weigh evidence to resolve any disputed jurisdictional fact, and the burden is on the plaintiff to establish subject matter jurisdiction by a preponderance of evidence after opportunity to be heard. *See e.g. Rocovich v. United States*, 933 F.2d 991, 993-94 (Fed. Cir. 1991); *Reynolds*, 846 F.2d at 747-48.

Defendant's motion contends that the Court lacks jurisdiction over plaintiffs' challenge to assessment of tax motivated interest. To the extent disputes over jurisdictional facts arise, the

Court may resolve them as is proper on a RCFC 12(b)(1) motion.

## III. Argument

We begin with a review of the statutory scheme into which plaintiffs' administrative claim fits, and explain generally how the facts map with the scheme. The scheme governs the treatment and litigation of partnership items, and subsequent proceedings related to both.

### A. Statutory Background

In 1982, as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 402(a), 96 Stat. 324, 648-671, ("TEFRA"),[4] Congress enacted unified partnership audit examination and litigation provisions, now codified, as amended, at §§ 6221-6234. "Prior to TEFRA's enactment, multiple proceedings were required to address the tax treatment of partnership issues, because partnerships are not separately taxable entities and partnership income and expense pass through to the individual partners." *Chimblo v. Commissioner*, 177 F.3d 119, 121 (2d Cir. 1999) (quotations omitted). "Through TEFRA, Congress sought to ensure equal treatment of partners by uniformly adjusting partners' tax liabilities and channeling any challenges to these adjustments into a single, unified proceeding. ... This system has the additional advantage of abating the administrative burden that would be wrought by multiple, duplicative audits and lawsuits involving numerous partners in a single partnership." *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir. 1998) (citation omitted).

Towards achieving TEFRA's goals, the tax treatment of any "partnership item" is

---

[4] TEFRA is applicable to tax years beginning after September 3, 1982. Pub. L. No. 97-248, § 407.

generally determined at the partnership level, *see* § 6221. The term "partnership item" is defined as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of [subtitle F], such item is more appropriately determined at the partnership level than at the partner level." § 6231(a)(3). The partnership files an annual information return, and the partners thereafter are to report their distributive share of partnership items in their individual income tax returns consistent with the treatment on the partnership return. *See* § 6222. Thus, plaintiffs reported McGann's distributive share of Drake Oil deductions on their 1983 federal income tax return.

If the IRS adjusts the treatment of partnership items on a partnership return, it must mail the partners a FPAA (Final Partnership Administrative Adjustment). §§ 6223(a)(2), (d)(2). This is what happened in this case. The IRS mailed an FPAA to the tax matters partner of Drake Oil, determining that the ordinary loss deductions reported by Drake Oil on its 1983 return were not allowable and accordingly adjusting the reported deductions downward to zero.

The partnership's tax matters partner ("TMP")[5] has 90 days after the day on which the FPAA is mailed to file a petition in the U.S. Tax Court, the U.S. Court of Federal Claims, or a U.S. district court, for readjustment of the adjusted partnership items. *See* § 6226(a). If the TMP does not file a petition within the 90 day period, certain other partners or partner groups may do so within the next 60 days. *See* § 6226(b). Here, pursuant to § 6226(a), within 90 days of issuance of the FPAA, Drake Oil's tax matters partner filed a petition for readjustment in the Tax

[5] The tax matters partner generally is either the general partner designated as the tax matters partner under applicable regulations, or the general partner having the largest profits interest in the partnership. *See* § 6231(a)(7).

Court, *Vulcan Oil*.

If a petition for readjustment is timely filed, the reviewing court has the power to readjust and determine the partnership items for the partnership taxable year at issue in the petitioned FPAA. *See* § 6226(f). Each partner who was a partner at any time during the year of the adjusted partnership return is deemed a party to the readjustment action and is entitled to participate. *See* § 6226(c). Any determination of the court, including upholding the FPAA determinations, binds the parties. *See* § 6226(g). If the court does not readjust the FPAA's adjustments, the adjustments stand as correct. *Cf.* § 6226(h) (dismissal of readjustment petition deemed decision that FPAA is correct).[6] Thus, McGann was a party to *Vulcan Oil*, and the Tax Court's decision upholding the majority of the FPAA adjustments to Drake Oil's 1983 return was binding on him.

The IRS may apply a decision in a § 6226 proceeding to a partner to adjust the partner's tax liability. *See generally* § 6230(c); *see also Olson v. United States*, 172 F.3d 1311, 1317-18 (Fed. Cir. 1999). As relevant to this case, the IRS reflects any adjustment in a notice of "computational adjustment" mailed to the partner. § 6230(c)(2)(A). A "computational adjustment" is a "change in the tax liability of a partner which properly reflects the treatment under [§§ 6221-6234] of a partnership item." § 6231(a)(6). Computational adjustments include ordinary interest and tax motivated interest pursuant to § 6621(c). *See Olson*, 172 F.3d at 1315 n.1, 1318 and n.2; Temp. Treas. Reg. § 301.6231(a)(6)-1T(b) (1987) (applicable here) ("A computational adjustment includes any interest due with respect to any underpayment or

---

[6] The period for assessment of tax attributable to any partnership item remains open during the 150 day statutory period within which a petition may be filed (and, if a petition is filed, until the decision of the court becomes final) and for one year thereafter. *See* § 6229(d).

overpayment of tax attributable to adjustments to reflect properly the treatment of partnership items."). The notice of computational adjustment may reflect adjustments to "affected items." An "affected item" is defined as "any item to the extent such item is affected by a partnership item." § 6231(a)(5). Tax motivated interest, in addition to being included as a computational adjustment, is an affected item. *See e.g. N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 743-46 (1987); *Affiliated Equip. Leasing II v. Commissioner*, 97 T.C. 575 (1991);[7] *see also Field v. U.S.*, 328 F.3d 58, 59-60 (2nd Cir. 2003).

Here, the IRS mailed plaintiffs a notice of computational adjustment (letter and enclosed Form 4549-A) in February 2003, reflecting a tax deficiency and notifying plaintiffs that tax motivated interest applied to the underpayment. Corresponding assessments followed within one month.

Although a partner who is assessed tax from application of a Tax Court decision may contest the liability by paying the assessment and filing a refund claim with the IRS, the procedure for challenging an adjusted affected item is limited:

> Subchapter B of chapter 66 (relating to limitations on credit or refund) shall not apply to any credit or refund of an overpayment attributable to a partnership item (or an affected item).

§ 6230(d)(6) (as in effect for the taxable year at issue). Subchapter B of chapter 66 includes § 6511, which provides the general two/three year periods for filing an administrative refund claim, including that a refund claim generally may be filed within two years of paying the tax. Thus, the general two/three year period for filing a refund claim does not apply to a claim

---

[7] We note that we do not agree with everything said about tax motivated interest in the cited Tax Court cases. We cite the cases for and agree with the proposition that tax motivated interest is an affected item.

seeking a refund of an affected item, including tax motivated interest. Such a refund claim must be filed within the specific time periods set forth in § 6230(c)(2). As explained *infra*, plaintiffs missed all such deadlines.

**B. The Court lacks subject matter jurisdiction because plaintiffs filed their refund claim in an untimely manner.**

Plaintiffs filed their refund claim for tax motivated interest after the jurisdictional deadline prescribed for such filing in §§ 6230(c)(1)(A)(ii), (c)(2)(A) was past.[8] As relevant here, that statutory scheme allows for refund claims when the IRS has erroneously made a computational adjustment necessary to apply to a partner a decision of a court in a § 6226 action. Such refund claim must be filed within six months after the day on which the IRS mails a notice of the computational adjustment to the partner.

This scheme applies to plaintiffs' refund claim, because tax motivated interest is a computational adjustment. The gravamen of plaintiffs' claim is that the IRS erroneously computed the interest they owed under the decision of the Tax Court entered on June 13, 2002, by using the higher tax motivated interest rate instead of the regular interest rate. They claim that the *Krause* decision does not support use of the higher, tax motivated interest rate, and therefore that the Tax Court's June 13 decision cannot. *See Compl.* [Doc. #1] ¶ 12g.-h. Their claim, therefore, alleges the IRS "erroneously computed [a] computational adjustment necessary

---

[8] A taxpayer may not maintain a tax refund suit before first filing a refund claim for overpayment of tax. *See* § 7422(a). The time periods for filing a refund claim are jurisdictional as they represent the terms on which the United States consents to be sued. *See e.g. United States v. Dalm*, 494 U.S. 596, 602, 608-09 (1990); *see also e.g. Commissioner v. Lundy*, 516 U.S. 235, 240, 244-45, 252-53 (1996).

. . . to apply to the partner . . . a decision of a court in an action brought under section 6226. . .," § 6230(c)(1)(A)(ii). Plaintiffs therefore had six months to file refund claims with the IRS after it mailed the allegedly erroneous notice of adjustment to them.

Plaintiffs did not satisfy the six month requirement. The IRS mailed plaintiffs notice that their underpayment was subject to interest computed at the higher tax motivated rate in February 2003, but plaintiffs did not file their refund claim for such interest until April 2005.[9] The plaintiffs thus failed to file their refund claim based on the alleged erroneous use of the higher rate within six months of the mailing of the notice.

Plaintiffs, as signaled by their refund claim (but not their complaint, in which they are silent about the exact waiver of sovereign immunity that permits their tax refund suit), presumably will argue that their refund claim for tax motivated interest was timely filed within the two year period of § 6511(a). As explained *supra*, under that period, a refund claim is timely if filed within two years from the time the tax claimed was paid.

However, the general two year period of § 6511(a) does not apply to a refund claim for tax motivated interest. If it did, it would make the specific TEFRA period of limitation for contesting a computational adjustment in § 6230(c)(2)(A) superfluous. A taxpayer, after paying the interest assessment, would never need to satisfy the six month from notice deadline in § 6230(c)(2)(A), knowing the two year from payment period of § 6511(a) remained open. Indeed, Congress did not write such a loophole into the tax code. Rather, as in effect for the

[9] The notice does not include a mathematical computation of interest, but notifies plaintiffs that interest on the calculated underpayment will be computed and assessed at the 120% tax motivated interest rate. As plaintiffs identify the erroneous computational adjustment as the use of the higher rate, the mailed notice constitutes "the notice of the computational adjustment" for purposes of § 6230(c)(2)(A).

taxable year here at issue, Congress forbid use of the refund claim periods in § 6511, where a taxpayer seeks a "refund of an overpayment attributable to . . . (. . . an affected item)." § 6230(d)(6); *see Bob Hamric Chevrolet, Inc. v. U.S.*, 849 F.Supp. 500, 508-09 (W.D. Tex. 1994). Since tax motivated interest is an affected item, plaintiffs' refund claim is for an overpayment attributable to an affected item, and the two year period of § 6511(a) cannot apply.[10]

Plaintiffs may also assert that their refund claim is timely under § 6230(c)(1)(B). That provision relates to a failure to allow a credit or make a refund pursuant to a settlement, FPAA, or judicial decision:

> claim for refund on the grounds that the Secretary failed to allow a credit or to make a refund to the partner in the amount of the *overpayment* attributable to the *application* to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a).

§ 6230(c)(1)(B) (emphasis added). But § 6230(c)(1)(B) cannot encompass plaintiffs' refund claim for tax motivated interest. Congress fashioned this cause of action to enable a taxpayer to enforce a settlement, FPAA, or court decision that, when applied, causes a tax overpayment that the IRS fails to refund. *See e.g. Anderson v. U.S.*, No. C-91-3523 MHP, 1993 WL 204605, at *6 (N.D. Cal. June 3, 1993). Here, it is undisputed that *application* of the Tax Court's decision to plaintiffs caused a tax *underpayment*, not, as the statute requires, an *overpayment* that the IRS failed to credit or refund.

Even if the Court were to conclude that plaintiffs' refund claim for tax motivated interest is of the type permitted under § 6230(c)(1)(B), the Court still must conclude that it was untimely.

---

[10] We do not concede the timeliness of plaintiffs' refund claim under the two year period. Rather, we believe that period inapplicable.

Section 6230(c)(2)(B), as relevant here, requires a refund claim under § 6230(c)(1)(B) to be filed within two years after the day on which the applicable judicial decision in a § 6226 action becomes final. Plaintiffs' refund claim missed the two year deadline, even if applicable. The Tax Court's June 13, 2002 decision became final pursuant to § 7481 in September 2002, but plaintiffs did not file their refund claim for tax motivated interest until April 2005.

Thus, no matter how one views it, plaintiffs' refund claim for tax motivated interest is untimely. When viewed as a failure to properly compute the interest due under the Tax Court's decision, plaintiffs' refund claim was due six months after they received the IRS' notice of computational adjustment. § 6230(c)(2)(A). If, as plaintiffs claim, they did not owe tax motivated interest under the Tax Court's decision, this six month period was ample time to file a refund claim and put the IRS on notice. Plaintiffs failed to do so. And, even if the Court were to view the matter as a failure by the IRS to issue a credit or make a refund, plaintiffs' refund claims were untimely, because they were filed more than two years after the effective date of their partnership item settlements. §§ 6230(c)(1)(B), (c)(2)(B).

## IV. Conclusion

For the foregoing reasons, the Court should dismiss plaintiffs' complaint.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice, Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

August 17, 2006

# APPENDIX A

**Internal Revenue Code of 1986 (26 U.S.C.):**

**SEC. 6221. TAX TREATMENT DETERMINED AT PARTNERSHIP LEVEL**

Except as otherwise provided in this subchapter, the tax treatment of any partnership item shall be determined at the partnership level.

**SEC. 6222. PARTNER'S RETURN MUST BE CONSISTENT WITH PARTNERSHIP RETURN....**

**(a) In General.-** A partner shall, on the partner's return, treat a partnership item in a manner which is consistent with the treatment of such partnership item on the partnership return.

. . .

**SEC. 6223. NOTICE TO PARTNERS OF PROCEEDINGS**

**(a) Secretary Must Give Partners Notice of Beginning and Completion of Administrative Proceedings.-** The Secretary shall mail to each partner whose name and address is furnished to the Secretary notice of-

(1) the beginning of an administrative proceeding at the partnership level with respect to a partnership item, and

(2) the final partnership administrative adjustment resulting from any such proceeding.

A partner shall not be entitled to any notice under this subsection unless the Secretary has received (at least 30 days before it is mailed to the tax matters partner) sufficient information to enable the Secretary to determine that such partner is entitled to such notice and to provide such notice to such partner.

. . .

**(d) Period for Mailing Notice.–**

. . .

(2) **Notice of Final Partnership Administrative Adjustment.–** The Secretary shall mail the notice specified in paragraph (2) of subsection (a) to each partner entitled to such notice not later than the 60th day after the day on which the notice specified in such paragraph (2) was mailed to the tax matters partner.

**SEC. 6226. JUDICIAL REVIEW OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENTS**

**(a) Petition by Tax Matters Partner.**–Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year with–

(1) the Tax Court,

(2) the district court of the United States for the district in which the partnership's principal place of business is located, or

(3) the Claims Court.

**(b) Petition by Partner Other Than Tax Matters Partner.**-

(1) In General.–If the tax matters partner does not file a readjustment petition under subsection (a) with respect to any final partnership administrative adjustment, any notice partner (and any 5-percent group) may, within 60 days after the close of the 90-day period set forth in subsection (a), file a petition for a readjustment of the partnership items for the taxable year involved with any of the courts described in subsection (a).

* * * * *

**(c) Partners Treated as Parties.**–If an action is brought under subsection (a) or (b) with respect to a partnership for any partnership taxable year–

(1) each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and

(2) the court having jurisdiction of such action shall allow each such person to participate in the action.

**(d) Partner Must Have Interest In Outcome.-**

(1) In Order To Be Party To Action.- Subsection (c) shall not apply to a partner after the day on which -

(A) the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events described in subsection (b) or section 6231, or

(B) the period within which any tax attributable to such partnership items may be assessed against that partner expired.

* * * * *

**(f) Scope of Judicial Review.–** A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates and the proper allocation of such items among the partners.

**(g) Determination of Court Reviewable.–** Any determination by a court under this section shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Claims Court, as the case may be, and shall be reviewable as such. With respect to the partnership, only the tax matters partner, a notice partner, or a 5-percent group may seek review of a determination by a court under this section.

**(h) Effect of Decision Dismissing Action.–** If an action brought under this section is dismissed (other than under paragraph (4) of subsection (b)), the decision of the court dismissing the action shall be considered as its decision that the notice of final partnership administrative adjustment is correct, and an appropriate order shall be entered in the records of the court.

**SEC. 6230. ADDITIONAL ADMINISTRATIVE PROVISIONS**

*** * ***

**(c) Claims Arising Out of Erroneous Computations, Etc.–**

(1) In General.– A partner may file a claim for refund on the grounds that–

(A) the Secretary erroneously computed any computational adjustment necessary–

(i) to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return, or

(ii) to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a), or

(B) the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a).

(2) Time for Filing Claim.–

(A) Under Paragraph (1)(A).– Any claim under subparagraph (A) of paragraph (1) shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner.

(B) Under Paragraph (1)(B).– Any claim under paragraph (1)(B) shall be filed within 2 years after whichever of the following days is appropriate:

(i) the day on which the settlement is entered into,

(ii) the day on which the period during which an action may be brought under section 6226 with respect to the final partnership administrative adjustment expires, or

(iii) the day on which the decision of the court becomes final.

* * *

**(d) Special Rules with Respect to Credits or Refunds Attributable to Partnership Items.–**

*** * ***

(6) Subchapter B of Chapter 66 Not Applicable.– Subchapter B of chapter 66 (relating to limitations on credit or refund) shall not apply to any credit or refund of an overpayment attributable to a partnership item (or an affected item).

**SEC. 6231. DEFINITIONS AND SPECIAL RULES.**

**(a) Definitions.–For purposes of this subchapter–**

* * *

(3) Partnership item.–The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

* * *

(5) Affected Item.– The term "affected item" means any item to the extent such item is affected by a partnership item.

(6) Computational Adjustment.– The term "computational adjustment" means the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments.

**TEMPORARY TREASURY REGULATIONS ON INCOME TAX (26 C.F.R.)**

**§ 301.6231(a)(6)-1T(b) Computational Adjustments (Temporary).**

*** * ***

(b) Interest. A computational adjustment includes any interest due with respect to any underpayment or overpayment of tax attributable to adjustments to reflect properly the treatment of partnership items.