**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
No. 05-1189 T
(Judge Charles F. Lettow)

THOMAS H. McGANN and EVELYN G. McGANN

Plaintiffs,

VS.

UNITED STATES OF AMERICA,

Defendant.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF JURISDICTION AND BRIEF IN SUPPORT THEREOF**

SALLIE W. GLADNEY
TERESA J. WOMACK
THOMAS E. REDDING
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs
Thomas H. McGann and
Evelyn G. McGann

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . -ii-

TABLE OF AUTHORITIES . . . . -iii-

1. Response to the Government's Introduction and Question Presented . . . . 1

2. Response to the Government's Statement of the Case . . . . 3

3. Response to the Government's Argument . . . . 9

a. History of Section 6621(c) Penalty Interest . . . . 9

b. TEFRA's Statutory Scheme . . . . 10

i. TEFRA's Partnership Item vs. Nonpartnership Item Structure . . . . 10

ii. The Types of Nonpartnership Items . . . . 12

iii. In the Context of TEFRA §6621(c) Penalty Interest is a Substantive Affected Item . . . . 13

iv. Section 6621(c) Penalty Interest is an Anomaly in the Tax Code . . . . 15

v. Section 6230(c) Allows Only Six Months for a Partner to File Certain Refund Claims . . . . 16

c. Imposing the §6621(c) Penalty Rate of Interest Was Improper as a Matter of Law . . . . 18

d. The McGanns' §6621(c) Claim Is Not Subject to The Six-Month Period for Filing a Refund Claim . . . . 20

i. Neither the Form 4549 Nor the NOA Sent to the McGanns Was Sufficient to Start the Limitations Period under §6230(c) . . . . 20

ii. The McGanns' Claim is Not Based on the Erroneous Computation of a Computational Adjustment . . . . 22

(1) The IRS's Decision to Impose the §6621(c) Penalty Rate of Interest is Not a Computational Adjustment . . . . 23

(a) The Government's Reliance on Olson is Misplaced . . . . 23

(b) The Government's Reliance on Treas. Reg. §301.6231(a)(6)-1T(b) Is Also Misplaced . . . . 25

(2) The McGanns' Claim Is Not Based on a Erroneous Computation . . . . 29

e. The General §6511(a) Refund Claim Period Applies to Affected Items that Require Partner-Level Determinations . . . . 31

i. The Government Relies on a Single, Minority Authority . . . . 31

ii. The Majority Approach Proves Plaintiffs' Claims were Timely . . . . 31

f. The *Field-Brookstone* Approach Reconciles §6621(c) Within TEFRA's Statutory Scheme . . . . . 33

i. The *Field-Brookstone* Approach Is Consistent With TEFRA's Legislative History . . . . . 33

iii. Only the *Field-Brookstone* Approach Provides Adequate Opportunity to File a Refund Claim . . . . . 34

iv. Only the *Field-Brookstone* Approach Provides Sufficient Time to Make Payment in Full . . . . . 35

v. The IRS Has Recognized that the §6511(a) Period Applies to TEFRA Related §6621(c) Claims . . . . . 37

4. Conclusion . . . . . 38

# TABLE OF AUTHORITIES

**Cases**

*Acierno v. C.I.R.*,
T.C.Memo 1997-441, *aff'd w/o publ. opinion*,
185 F.3d 861 (Table) (3rd Cir. 1999) . . . . 4, 5
*AK Steel Corp. v. U.S.*,
226 F.3d 1361 (Fed.Cir.2000). . . . . 28
*BedRoc Ltd., L.L.C. v. U.S.*,
541 U.S. 176, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) . . . . 26
*Bob Hamric Chevrolet, Inc. v. U.S.*,
849 F.Supp. 500 (W.D.Tex. 1994) . . . . 31, 32
*Brookstone Corp. v. U.S.*,
1994 WL 621576 (S.D.Tex.) (unpublished),
*aff'd per curium*, 58 F.3d 637 (5th Cir. 1995) . . . . 30-35
*Callaway v. C.I.R.*,
231 F.3d 106 (2nd Cir. 2000) . . . . 11, 12
*Carter v. U.S.,*
530 U.S. 255 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) . . . . 26
*Chevron v. N.R.D.C., Inc.*,
467 U.S. 837, 104 S.Ct. 2668 (1984) . . . . 27
*Colautti v. Franklin,*
439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) . . . . 28
*Comsat Corp. v. FCC*,
250 F.3d 931 (5th Cir.2001) . . . . 27
*Connecticut Nat. Bank v. Germain*,
503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) . . . . 26
*Conway v. U.S.*,
50 Fed.Cl. 273 (2001) . . . . 10
*Copeland v. C.I.R.*,
290 F.3d 326 (5th Cir. 2002) . . . . 2, 6-8, 15, 19, 20, 25
*Copeland v. C.I.R.*,
T.C.Memo 2000-181, *aff'd in part, rev'd in part*
*and remanded* 290 F.3d 326 (5th Cir. 2002) . . . . 4, 5
*Crooks v. Harrelson*,
282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156 (1930) . . . . 28
*Dial U.S.A., Inc., v. C.I.R.*,
95 T.C. 1 (1990) . . . . 13
*Duncan v. Walker,*
533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001); . . . . 26
*FCC v. RCA Comm.*,
346 U.S. 86 (1953) . . . . 28
*Field v. U.S.*,
328 F.3d 58 (2nd Cir. 2003) ("*Field I*") . . . . 15, 30, 33-35, 37
*Field v. U.S.*,
381 F.3d 109 (2nd Cir. 2004) ("*Field II*") . . . . 34

*Grapevine Imports, Ltd. v. U.S.*,
71 Fed.Cl. 324 (2006) . . . . . 26
*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564, 102 S.Ct. 3245 (1982) . . . . . 28
*Hildebrand v. C.I.R.*
28 F.3d 1024 (10th Cir.1994), *cert. denied,*
513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631 . . . . . 1, 5, 6, 18
*Hill v. C.I.R.*,
204 F.3d 1214 (9th Cir. 2000) . . . . . 18
*In re Lueders*,
111 F.3d 1569, 42 USPQ2d 1481 (Fed.Cir.1997). . . . . . 26
*In re Zurko*,
142 F.3d 1447 (Fed.Cir. 1998) . . . . . 26
*Jama v. Immigration and Customs Enforcement,*
543 U.S. 335 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) . . . . . 24
*Korchak v. C.I.R.*,
T.C. Memo 2005-244 . . . . . 14
*Krause v. C.I.R.*,
99 T.C. 132 (1992),
*aff'd sub nom. Hildebrand v. C.I.R.*
28 F.3d 1024 (10th Cir.1994), *cert. denied,*
513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631. . . . . . 1-3, 5, 6, 14, 18, 19
*Kuralt v. U.S.*,
866 F.Supp. 727 (S.D.N.Y., 1994) . . . . . 18, 29
*Ledford v. U.S.*,
297 F.3d 1378 (Fed.Cir. 2002) . . . . . 8
*Maxwell v. C.I.R.*,
87 T.C. 783 (1986) . . . . . 10, 12
*Meese v. Keene*,
481 U.S. 465, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987) . . . . . 27
*Monahan v. C.I.R.*,
321 F.3d 1063 (11th Cir. 2003) . . . . . 13
*N.C.F. Energy v. C.I.R.*,
89 T.C. 741 (1987) . . . . . 12-14, 32
*Olson v. U.S.*,
172 F.3d 1311 (Fed. Cir. 1999) . . . . . 12, 13, 23, 24
*Olson v. U.S.*,
37 Fed. Cl. 727 (1997) . . . . . 13, 24
*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) . . . . . 26
*Powell v. C.I.R.*,
96 T.C. 707 (1991) . . . . . 14
*Roberts v. C.I.R.*,
94 T.C. 853 (1990) . . . . . 13
*Roberts v. U.S.*,
242 F.3d 1065 (Fed. Cir. 2001) . . . . . 8

*Santa Fe Snyder Corp. v. Norton*,
385 F.3d 884 (5th Cir. 2004) . . . . . . . . . . 27
*Statesman II Apartments, Inc. v. U.S.*,
66 Fed.Cl. 608 (2005) . . . . . . . . . . 27
*Stenberg v. Carhart,*
530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000) . . . . . . . . . . 28
*Texaco Inc. v. Duhe*
274 F.3d 911 (5th Cir. 2001) . . . . . . . . . . 28
*Thompson v. U.S.*,
223 F.3d 1206 (10th Cir. 2000) . . . . . . . . . . 14
*Thornsjo v. C.I.R.*,
T.C. Memo 2001-129 . . . . . . . . . . 14
*Todd v. C.I.R.*,
862 F.2d 540 (5th Cir.1988) . . . . . . . . . . 9
*U.S. v. Lanier*,
520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) . . . . . . . . . . 27
*Univ. Heights at Hamilton Corp v. C.I.R.*,
97 T.C. 278 (1991) . . . . . . . . . . 13
*Vulcan Oil Technology Partner, at al. v. C.I.R.*,
Tax Court Docket No. 21530-87 . . . . . . . . . . 4-8, 11, 14, 18, 19, 29, 33
*Weiner v. U.S.*,
389 F.3d 152 (5th Cir. 2004) . . . . . . . . . . 2, 8, 19, 20
*White v. C.I.R.*,
95 T.C. 209, (1990) . . . . . . . . . . 16
*Woody v. C.I.R.*,
95 T.C. 193 (1990) . . . . . . . . . . 12, 32
*Yellow Transportation, Inc. v. Michigan*,
537 U.S. 36 (2002) . . . . . . . . . . 27
*Yocum v. U.S.*,
66 Fed.Cl. 579 (2005) . . . . . . . . . . 27

**Statutes**

26 U.S.C. §162 . . . . . . . . . . 2, 5, 7, 18-20
26 U.S.C. §174 . . . . . . . . . . 2, 5, 6, 18, 19
26 U.S.C. §183 . . . . . . . . . . 1, 2, 5, 6, 9, 14, 18-20
26 U.S.C. §213 . . . . . . . . . . 12, 13
26 U.S.C. §6031 . . . . . . . . . . 10
26 U.S.C. §6211(c) . . . . . . . . . . 11
26 U.S.C. §6212 . . . . . . . . . . 13, 15, 36
26 U.S.C. §6213 . . . . . . . . . . 15, 24
26 U.S.C. §6216(4) . . . . . . . . . . 11
26 U.S.C. §6221 . . . . . . . . . . 11
26 U.S.C. §6223 . . . . . . . . . . 11
26 U.S.C. §6223(a)(2) . . . . . . . . . . 11
26 U.S.C. §6223(d)(2) . . . . . . . . . . 11
26 U.S.C. §6225(a) . . . . . . . . . . 11

26 U.S.C. §6226 . . . . . . . . . . 11, 17
26 U.S.C. §6226(a) . . . . . . . . . . 4, 11
26 U.S.C. §6230 . . . . . . . . . . 11
26 U.S.C. §6230(a)(1) . . . . . . . . . . 11, 32
26 U.S.C. §6230(a)(1)(A)(1) . . . . . . . . . . 13
26 U.S.C. §6230(a)(1)(A)(i) . . . . . . . . . . 15, 32
26 U.S.C. §6230(c) . . . . . . . . . . 2, 3, 16-18, 20, 29, 30, 37
26 U.S.C. §6230(c)(1)(A)(i) . . . . . . . . . . 20, 23, 28, 29
26 U.S.C. §6230(c)(2)(A)(i) . . . . . . . . . . 20-23, 29, 31, 33-35, 38
26 U.S.C. §6230(d)(6) . . . . . . . . . . 31, 32, 38
26 U.S.C. §6231(a)(3) . . . . . . . . . . 11, 12, 30
26 U.S.C. §6231(a)(4) . . . . . . . . . . 11
26 U.S.C. §6231(a)(5) . . . . . . . . . . 12
26 U.S.C. §6231(a)(6) . . . . . . . . . . 2, 3, 17, 20, 23, 25, 26, 28, 29
26 U.S.C. §6502(a) . . . . . . . . . . 34
26 U.S.C. §6511 . . . . . . . . . . 3
26 U.S.C. §6511(a) . . . . . . . . . . 8, 16, 30-34, 38
26 U.S.C. §6601 . . . . . . . . . . 3, 5, 22, 24, 25, 33, 34
26 U.S.C. §6621(c) . . . . . . . . . . 2-10, 13-25, 28-38
26 U.S.C. §6621(c)(3) . . . . . . . . . . 7
26 U.S.C. §6621(c)(3)(A) . . . . . . . . . . 18
26 U.S.C. §6659 . . . . . . . . . . 14, 24
26 U.S.C. §6659(c) . . . . . . . . . . 14
26 U.S.C. §6659(e) . . . . . . . . . . 14
26 U.S.C. §701 . . . . . . . . . . 10
26 U.S.C. §702 . . . . . . . . . . 10
26 U.S.C. §7422 . . . . . . . . . . 8, 30, 34
26 U.S.C. §§6221-6234,
Tax Equity and Fiscal Responsibility Act of 1982,
Pub.L. No. 97-248, 96 Stat. 324 ("TEFRA") . . . . 1, 3, 4, 10, 11, 13-16, 23, 30, 32-34, 36-38
28 U.S.C. §1346(a)(1) . . . . . . . . . . 8, 30
28 U.S.C. §1491(a) . . . . . . . . . . 8

**Regulations**

Temp. Treas. Reg. §301.6221-1T(a) . . . . . . . . . . 11
Treas. Reg. §1.183-2 . . . . . . . . . . 5, 18
Treas. Reg. §1.6031-1 . . . . . . . . . . 10
Treas. Reg. §1.701-1 . . . . . . . . . . 10
Treas. Reg. §1.702-1(a) . . . . . . . . . . 10
Treas. Reg. §301.6231(a)(3)-1(a)(1)(i) . . . . . . . . . . 12
Treas. Reg. §301.6231(a)(5)-1T(a) . . . . . . . . . . 13
Treas. Reg. §301.6231(a)(6)-1T(b) . . . . . . . . . . 25, 26, 33
Treas. Reg. §301.6621-2T . . . . . . . . . . 5, 14, 18, 19

**Miscellaneous**

1989 IRS NSAR 9164, 1989 WL 1173044 . . . . . . . . . . 16, 38

1990 LGM TL-21, 1990 WL 1086208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 34
1991 LGM TL-95, 1991 WL 1168400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 24
4 Arthur Willis et al., Partnership Taxation,
§209.05 at 209-7, 209-12 (5th ed. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
H.R. Conf. Rep. 97-760, p.611,
97th Cong., 2nd Sess. 1982, P.L. 97-248,
Tax Equity and Fiscal Responsibility Act of 1982
(Aug. 17, 1982), 1982 U.S.C.C.A.N. 1190, 1982 WL 25049 . . . . . . . . . . . . . . . . . . . . 11, 34
H.R.Rep. No. 101-247, at 1388, 1394 (1989),
*reprinted in* 1989 U.S.C.C.A.N.1906, 2858-59, 2864 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
H.Rep. No. 101-247, 1388, 1393, 1394 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Statement by Senator Pryor introducing
S.1784 at 135 Cong. Rec. S13893-7
(0ctober 24, 1989), 1989 WL 186980 (Cong.Rec.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Tax Reform Act of 1984, §144(c)
Pub.L. No. 98-369, Div. A, July 18, 1984, 98 Stat. 494. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Tax Reform Act of 1986,
Pub.L. No. 99-514, 100 Stat. 2744, §1511(c)(1)(A)-(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 05-1189 T
(Judge Charles F. Lettow)

THOMAS H. McGANN and EVELYN G. McGANN

Plaintiffs,

VS.

UNITED STATES OF AMERICA,
Defendant.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
FOR LACK OF JURISDICTION AND BRIEF IN SUPPORT THEREOF

## 1. Response to the Government's Introduction and Question Presented

Plaintiffs Thomas H. McGann and Evelyn G. McGann ("the McGanns") were subject to an IRS-drafted default decision in a TEFRA[1] partnership-level case in the Tax Court that did not address the merits of the partnership items and simply granted the IRS's motion to dismiss which stated that the partnership item adjustments were "computed based on §183 in accordance with the [Tax Court] opinion in *Krause*."[2] [Doc12:65¶34; 68][3] Based on that decision alone the IRS automatically

[1] TEFRA consists of the partnership procedures codified at 26 U.S.C. §§6221-6234, as enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97-248, 96 Stat. 324 and as thereafter amended. TEFRA is also known as subchapter C of the I.R.C.

[2] *Krause v. C.I.R.*, 99 T.C. 132 (1992), *aff'd sub nom. Hildebrand v. C.I.R.* 28 F.3d 1024 (10th Cir.1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631.

[3] References to [Doc12:"x"¶"y"] are to Bates stamped page no. "x" at paragraph no. "y" of the Exhibits to the Supplement to Plaintiffs' Original Complaint at Document #12 in this case.

assessed interest at the penalty rate under §6621(c)[4] on the resulting tax liability.

One month prior to entry of that decision, the Fifth Circuit held: (i) §183 could not be a basis to impose the §6621(c) penalty rate of interest on a tax liability arising from a partnership-level adjustment, and (ii) the actual basis for disallowance in *Krause* (profit motive under §162 and §174) could not, as a matter of law, be used to impose the §6621(c) penalty rate of interest on any tax liability, partnership related or otherwise.[5] Shortly thereafter, the Fifth Circuit held that in circumstances similar to those here, as a matter of law, the §6621(c) penalty rate of interest cannot be imposed via any of the other bases that might have been addressed by the Tax Court.[6] After *Copeland* and *Weiner* were issued, the McGanns filed a claim for refund of the amount of interest they paid as a result of the IRS's improper imposition of the §6621(c) penalty rate of interest.

The government now tries a Hail Mary pass to deny this Court the opportunity to reach the merits by asking it to hold for the first time in any court that the IRS's substantive decision to impose the §6621(c) penalty rate of interest is merely an "erroneous computation" of a "computational adjustment," *i.e.* a math mistake, and, therefore, subject to the six-month limitations period to file a claim for refund under §§6230(c) and 6231(a)(6).

The issue raised by the government's motion is not as simplistic as "[w]hether plaintiffs filed their administrative refund claim for tax motivated interest outside the time period Congress prescribed in §6230(c)." [GB:2][7] The issue of first impression raised by the government's motion is:

---

4 Unless otherwise indicated all references to section, §, and the Code are to the Internal Revenue Code at 26 U.S.C.

5 *Copeland v. C.I.R.*, 290 F.3d 326 (5th Cir. 2002).

6 *Weiner v. U.S.*, 389 F.3d 152 (5th Cir. 2004).

7 References to [GB:"x"] are to page "x" of the Defendant's Motion to Dismiss Plaintiffs' Complaint for Lack of Jurisdiction and Brief in Support Thereof ("the government's motion to dismiss") at Document #13 in this case.

Whether the IRS's substantive decision to impose the §6621(c) penalty rate of interest is a "computational adjustment" as defined by §6231(a)(6) such that any claim for refund must be filed within the six month period under §6230(c), or whether the interest paid due to §6621(c)'s increased penalty rate is subject to the same limitations period as other claims for refund not based on a mere computational error or not otherwise "attributable to" a partnership item, *i.e.* the normal two/three year limitations period under §6511?

## 2. <u>Response to the Government's Statement of the Case</u>

From roughly 1978 to 1986 a group of limited partnerships known as the Elektra partnerships were formed with the "general objective of, among other things, investing in enhanced oil recovery (EOR) technology for the recovery of oil and natural gas."[8] In 1983 Thomas H. McGann ("McGann") was a limited partner in Drake Oil Technology Partners (EIN:84-0856853) ("Drake Oil"), an Elektra partnership. [GB:B-1][9] On his 1983 federal tax return, McGann recognized his share of gains and losses from his investment in Drake Oil. [GB:B-1; B-6]

In 1984, Congress amended §6621(c) allowing the IRS to impose interest at 120% of the normal §6601 rate on any 'substantial' underpayment that is "*attributable to*" one of five expressly defined tax motivated transactions ("TMTs").[10]

The IRS disallowed Elektra partnership deductions and imposed the §6621(c) penalty rate of interest on numerous Elektra partners for pre-TEFRA tax years 1978-1982. In 1986, three pre-TEFRA Elektra partners, Krause, Hildebrand, and Acierno, filed separate suits in the United States

---

8 *Krause* at 133-34.

9 References to [GB:B-"x"] are to page "x" of Appendix B to the government's motion to dismiss.

10 Originally codified as §6621(d), it was amended and redesignated as §6621(c) by the Tax Reform Act of 1986, Pub.L. No. 99-514, 100 Stat. 2744, § 1511(c)(1)(A)-(C). Section 6621(c) applies to interest accruing after December 31, 1984. Tax Reform Act of 1984, §144(c), Pub.L. No. 98-369, Div. A, July 18, 1984, 98 Stat. 494. Section 6621(c) was repealed in 1989 with several other penalty provisions and replaced with a single "accuracy-related" penalty by the 1989 Act. *See* H.R.Rep. No. 101-247, at 1388, 1394 (1989), *reprinted in* 1989 U.S.C.C.A.N.1906, 2858-59, 2864. Despite its repeal, §6621(c) still applies to tax years prior to 1990. A copy of §6621(c) for 1983, the tax year in issue here, is attached at [A-1] References to [A-"x"] are to page no. "x" of Plaintiffs' Appendix A attached to this response.

Tax Court challenging the IRS's proposed disallowances. *Hildebrand* was consolidated into *Krause* which became the test case challenging the IRS's Elektra related disallowances.[11] Acierno was a pre-TEFRA partner in Drake Oil.[12]

On April 6, 1987, the IRS issued a TEFRA Notice of Final Partnership Administrative Adjustment ("FPAA") for Drake Oil's 1983 tax year. [GB:B-21 to B-31] The FPAA totally disallowed Drake Oil's partnership deductions on 23 independent, alternative grounds – 2 TMTs and 21 non-TMTs – without assigning discrete dollar adjustments.[13] [GB:B-27 to B-30] In response, Louis Coppage, the tax matters partner ("TMP") for seven Elektra partnerships including Drake Oil, challenged their 1983 FPAAs by filing a single §6226(a) TEFRA partnership-level case in the Tax Court at *Vulcan Oil Technology Partner, at al. v. C.I.R.*.[14] [GB:B-12 to B-20]

In 1989, Congress repealed §6621(c) and other penalties finding that the IRS abused them by imposing them in situations not intended by Congress. See the discussion below at pp. 9 - 10.

In 1990, Alvin C. Copeland, a partner in three pre-TEFRA Elektra partnerships, filed an individual case in the Tax Court contesting, among other things, the IRS decision to impose the §6621(c) penalty rate of interest on his 1979, 1981 and 1982 partnership related liabilities.[15]

---

11 *Krause*, at 133.

12 *Acierno v. C.I.R.*, T.C.Memo 1997-441, *aff'd without published opinion*, 185 F.3d 861 (Table) (3rd Cir. 1999).

13 The alternative TMT grounds for disallowance were that the claimed deductions materially distort income (1.(c)); and the partners were not at risk within the meaning of § 465 for any amounts in excess of those actually paid. The other 21 undifferentiated, alternative grounds to completely disallow the partnership deductions were not TMTs. [GB:B-27, B-28]

14 Many other TEFRA partnership level Tax Court cases were filed for other Elektra partnerships, including three at *White Rim v. C.I.R.*, docket nos. 5931-89, 932-91 and 15556-91.

15 *Copeland v. Commisioner*, T.C.Memo 2000-181, *aff'd in part, rev'd in part and remanded* 290 F.3d 326 (5th Cir. 2002).

In 1992, the Tax Court issued its opinion in *Krause* disallowing Elektra related partnership losses because the partnerships lacked the profit motive required under §§162 and 174. Because neither of these sections provides a method or criteria for determining profit motive, the Tax Court used the *criteria* under §183 and Treas. Reg. §1.183-2 to determine profit motive for purposes of disallowing the losses under §§162 and 174.[16] TMTs include "[a]ny deduction disallowed for any period under §183, related to an activity engaged in by an individual or an S corporation that is not engaged in for profit."[17] But §183, by its unambiguous terms, cannot apply to activities engaged in by partnerships. Deductions disallowed under §§162 and 174 are **not** TMTs.

In 1994, the Tenth Circuit Court of Appeals issued *Hildebrand*[18] – the appeal of the Tax Court's decision in *Krause* – holding that:

> The Tax Court [in *Krause*] disallowed under 26 U.S.C. §183 the taxpayers' deductions for losses resulting from investments in the limited partnerships because the partnerships did not have the requisite profit motive and imposed an increased interest rate on tax-motivated transactions under 26 U.S.C. §§6601 and 6621(c).

Other Elektra partners, including Copeland and Acierno, continued to fight the imposition of the §6621(c) penalty rate of interest. In 1997, the Tax Court issued its opinion in *Aceirno*[19] holding that the 1981 Drake Oil deductions were substantively similar to the partnership deductions in *Krause*. Acierno appealed and, in 1999, the Third Circuit upheld the Tax Court, without a written opinion. In 2000, the Tax Court similarly ruled against Copeland who appealed to the Fifth Circuit.[20]

On December 20, 2001, the IRS filed in the *Vulcan Oil* Tax Court case a Motion to Dismiss for

---

16 *Krause* at 168.

17 Treas. Reg. §301.6621-2T, A4. [A-3]

18 *Hildebrand* at 1026.

19 *Acierno, supra.*

20 *Copeland*, T.C.Memo 2000-181, *supra.*

Lack of Prosecution requesting that partnership items be adjusted which were "computed based on §183 in accordance with the opinion in *Krause*." [Doc12:65¶34] As one of the grounds for its motion the IRS stated that Louis Coppage had defaulted his duties as TMP and there was no functioning TMP for the Elektra partnerships then before the court in *Vulcan Oil*. [Doc12:56¶8 to 62¶28]

On May 13, 2002, the Fifth Circuit reversed the Tax Court's §6621(c)decision in *Copeland*. That Court recognized that in *Krause* the Elektra partnership deductions were disallowed under §§162 and 174, *not* under §183. As the Fifth Circuit stated:

> It bears emphasizing, however, that **the factors from I.R.C. §183 are only tools for determining the requisite profit objective under I.R.C. §§162 and 174; deductions for partnership expenses are not allowed or disallowed directly under I.R.C. §183 itself**.[21]

The Fifth Circuit further held that even if *Krause* had disallowed the partnership deductions under §183, §183 does not apply to partnerships and is not a TMT for purposes of imposing §6621(c) penalty interest on *partners* for partnership related losses. In *Copeland* the Fifth Circuit held that the §183 analysis in *Krause* and *Hildebrand* was "flatly incorrect" as a matter of law, that no portion of the underlying tax liability was attributable to any defined TMT, and, therefore, Copeland, an Elektra partner, was not subject to the §6621(c) penalty rate of interest.

On June 13, 2002, exactly one month after *Copeland* was issued, the Tax Court entered an Order and Order of Dismissal and Decision in *Vulcan Oil* stating: "ORDERED that respondent's Motion to Dismiss for Lack of Prosecution filed December 20, 2001, is granted." [Doc12:68] Therefore, the default decision was restricted to partnership level adjustments "based on §183 in accordance with the opinion in *Krause*." The Tax Court never examined the merits of the case and made no determinations as to any specific basis for disallowing the partnership-item deductions.

Between May 13, 2002 (the day the Fifth Circuit entered *Copeland*) and June 13, 2002 (the day

---

21 *Copeland*, at 335. Emphasis added.

the Tax Court granted the IRS's motion to dismiss in *Vulcan Oil*), the IRS made no attempt to amend its motion to dismiss in *Vulcan Oil* to address the *Copeland* decision, not even with regard to those Elektra partners in the Fifth Circuit, nor did it attempt to revise the decision before it became final.

On February 28, 2003, the IRS issued a Form 4549 to the McGanns that states "**all or part** of the underpayment of tax ... is a substantial understatement attributable to [TMTs], as defined by §6621(c)(3) ...." [GB:B-6] Emphasis added. **The Form 4549 plainly states that the amount of "TMT Interest - computed 03/22/2003 on TMT underpayment" is "0.00."** [GB:B-5] Emphasis added. The Form 4549 gives no basis for the TMT allegation except that "[t]his report is prepared based on a Tax Court decision, docket #21530-87, from the partnership, George C. Walueff, EIN #51-0121089. ... If you have any questions, contact your [TMP]." [GB:B-5] When the IRS sent the McGanns the Form 4549 it was well aware that there was no Drake Oil TMP for them to contact. The IRS made no determinations and conducted no partner-level examination of the McGanns before making a naked decision to impose the §6621(c) penalty rate of interest.

On March 24, 2003 the IRS assessed tax ($8,620.00) and total interest ($57,475.04) against the McGanns. [GB:B-8] The IRS mailed a notice of that assessment (an "NOA") to the McGanns. [B-1 to B-3][22] The NOA does not disclose that the IRS imposed the §6621(c) penalty rate of interest, much less what portion of the tax underpayment was "attributable to" a TMT, what TMT it was supposedly "attributable to," or the amount of interest actually assessed at the §6621(c) punitive rate. [B-1 to B-3] The McGanns paid the liabilities in full by application of a prior remittance of $8,620.00 on March 11, 2003, and payments of $17,312.79 and $40,162.25 on April 14, 2003 and April 21, 2003, respectively. [GB:B-9]

On October 25, 2004, the Fifth Circuit issued its opinion in *Weiner* relying in part on the IRS's

---

22 References to [B-"x"] are to page "x" of the attached Plaintiffs' Appendix B.

formula at §301.6621(c)-2T, A-5 to hold that where the IRS does not designate a specific TMT as the sole basis for disallowing a discrete, designated dollar amount of the proposed adjustment, §6621(c) cannot be imposed unless *every* basis for disallowance asserted in the FPAA was examined to determine exactly what portion of the adjustments were specifically "attributable to" a TMT. Under *Weiner*, if an FPAA proposes an undifferentiated, blanket disallowance on numerous alternative grounds, then if even one basis for disallowance proposed in the FPAA is a non-TMT the §6621(c) penalty rate of interest cannot be imposed unless *every* ground for disallowance asserted in an FPAA is examined and a discreet dollar value of disallowance assigned to each basis. *Vulcan Oil* was a default decision, the Tax Court never examined, and made **no** determinations as to, *any* of the 2 TMT or 21 non-TMT bases in the FPAA for disallowing Drake Oil's 1983 deductions.

On April 15, 2005, the McGanns filed a claim for refund of $18,309.66, the portion interest assessed at the §6621(c) penalty rate based upon *Copeland* and *Weiner*. [Doc12:11 to 97] The McGanns' claim states that it "is timely ... filed within two years from the date of payment," a reference to the §6511(a) normal limitations period of two years from payment [Doc12:8] The government never acted on the McGanns' refund claim.

On November 10, 2005 the McGanns timely filed this suit and plainly stated that it was filed under 26 U.S.C. §7422 and 28 U.S.C. §§1346(a)(1) and 1491(a), which have long been recognized as waiving sovereign immunity and establishing this Court's jurisdiction.[23] See p.1 ¶3 and ¶4 of Plaintiffs' Original Complaint at Document no. 1 in this case.

[23] *Ledford v. U.S.*, 297 F.3d 1378, 1382 (Fed.Cir. 2002); *Roberts v. U.S.*, 242 F.3d 1065, 1067 (Fed. Cir. 2001).

**3. Response to the Government's Argument**

**a. History of Section 6621(c) Penalty Interest**

In 1984, after McGann made his investment and took his deductions, Congress enacted §6621(c) but strictly limited its application to a substantial underpayment (over $1,000) of tax that is "*attributable to*" one of the TMTs expressly defined by statute and in the regulations. [A-1] Congress intended §6621(c) to be used as a tool to manage the Tax Court's backlogged docket by encouraging settlement of proposed deficiencies.[24]

As modified in 1986 and applicable here, §6621(c)(3)(A) and §301.6621(c)-2T identify only a handful of transactions as TMTs. [A-1 to A-4] Of the 23 grounds for disallowing the Drake Oil partnership items, only two are TMTs:

> any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8), and
>
> any deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit.

It quickly became clear that the IRS was abusively imposing the §6621(c) penalty rate of interest in a manner never intended by Congress. In 1989, after two years of study, hearings, and debate, Congress repealed §6621(c) and other penalties because they were "determined too routinely and automatically by the IRS,"[25] and they were a "morass of inconsistency and irrationality" that discouraged rather than encouraged compliance and under which a "hapless taxpayer [could] find himself, or herself, confronting the [I.R.C.] over a tax deficiency, where the penalties and interest

---

[24] *Todd v. C.I.R.*, 862 F.2d 540, n.14 (5th Cir.1988), *citing* H.Conf.Rep. No.98-861 (June 23, 1984) [A-5 to A-9]; *Weiner v. U.S.*, 255 F.Supp.2d 624, n.47 (S.D.Tex., 2002).

[25] H.Rep. No. 101-247, 1388, 1393, 1394. [A-14 to A-20] But, because Congress failed to repeal §6621(c) retroactively, the IRS may still impose it for tax years 1989 and prior.

have been piled on to the extent that they are twice the amount of tax in dispute."[26]

Congress repealed §6621(c) but not retroactively. The IRS can still impose the §6621(c) penalty rate on any tax liability for pre-1990 tax years that is "attributable to" a TMT. At this late date it is rare to find a normal pre-1990 tax liability where the limitations period for assessment is still open. But TEFRA partnership level cases offer a devil's playground for the IRS to again abuse its ability to impose the §6621(c) penalty rate of interest because it is not uncommon for TEFRA partnership level cases to linger in the Tax Court for 10-15 years before the limitations period to assess begins to run against the IRS. Here the amount of interest assessed against the McGanns was over 6.66 times the amount of tax in dispute ($57,475/$8,620). [GB:B-8]

Because the partnership related liabilities here arise from 1983, it is necessary to understand not just §6621(c) but also how §6621(c) and the regulations interact with the TEFRA provisions.

**b. TEFRA's Statutory Scheme**

Partnerships generally do not pay income tax; they file information returns.[27] Each partner individually reports and recognizes his share of partnership income, gains, losses, deductions, etc.[28] Before 1982, to adjust an item on a partnership return the IRS had to separately examine each partner's return and could not ensure consistent adjustments among partners. In response Congress enacted TEFRA to consolidate some of the partnership audit and adjustment procedures.[29]

i. <u>TEFRA's Partnership Item vs. Nonpartnership Item Structure</u>

TEFRA mandates that "the tax treatment of any partnership item shall be determined at the

---

26 Statement by Senator Pryor introducing S.1784 at 135 Cong. Rec. S13893-7 (0ctober 24, 1989), 1989 WL 186980 (Cong.Rec.). [A-27] S.1784 was ultimately enacted as a part of P.L. 101-239.

27 §§701, 6031; Treas. Reg. §§1.701-1, 1.6031-1; *Conway v. U.S.*, 50 Fed.Cl. 273, 276 (2001).

28 §§701, 702; Treas. Reg. §1.702-1(a).

29 Effective for tax years after 9-3-82; see generally *Maxwell v. C.I.R.*, 87 T.C. 783, 787 (1986).

partnership level" and establishes mutually exclusive procedures to (i) adjust the statutorily defined "partnership items" in a centralized, partnership-level proceeding under subchapter C, and then (ii) make any *non*partnership item determinations at the partner level under the normal deficiency procedures of subchapter B.[30]

"Partnership item" is a term of art defined "as any item required to be taken into account for the partnership's taxable year under any provision of subtitle A...." §6231(a)(3). Subtitle A addresses the financial information reported on a tax return. A "nonpartnership item" is any "item which is (or is treated as) not a partnership item." §6231(a)(4).

Under TEFRA, for the IRS to adjust any partnership item it must first issue an FPAA for that partnership tax year. §§6223(a)(2) and (d)(2). Judicial review of the of the partnership item adjustments proposed in the FPAA can only be had at the partnership level and, for 1983, the jurisdiction of the reviewing court is expressly restricted to "partnership items." §§6226(a), (b), (f).

A partner is a party to, may participate in, and is bound by, the partnership-level case only as long as he has an ongoing interest in the outcome. §§6226(c), (d). Consequently, McGann was subject to the *Vulcan Oil* decision.

Once the partnership-level case is concluded, the IRS may automatically assess any purely

---

30 §6221; Temp. Treas. Reg. §301.6221-1T(a); *Callaway v. C.I.R.*, 231 F.3d 106, 108, 110 (2nd Cir. 2000); See also §6230 (subchapter B non-TEFRA procedures apply to nonpartnership/affected item adjustments that are not merely computational changes). This mandatory bifurcation is reiterated in §§6211(c), 6216(4), 6221, 6223, 6225(a), 6230(a)(1), and 6226 and confirmed by the legislative history:

> Neither the Secretary nor the taxpayer will be permitted to raise nonpartnership items in the course of a partnership proceeding nor may partnership items, *except <u>to the extent</u> they become nonpartnership items under the rules*, be raised in proceedings relating to nonpartnership items of a partner.

H.R. Conf. Rep. 97-760, p.611, 97th Cong., 2nd Sess. 1982, P.L. 97-248, Tax Equity and Fiscal Responsibility Act of 1982 (Aug. 17, 1982), 1982 U.S.C.C.A.N. 1190, 1982 WL 25049. [A-30] See also 4 Arthur Willis et al., Partnership Taxation, §209.05 at 209-7, 209-12 (5th ed. 1996).

"computational adjustments" against each respective partner without further notice. But for the IRS to assess tax related to *non*partnership items that are *not* purely computational adjustments it must follow the separate partner-level procedures under subchapter B.[31]

ii. <u>The Types of Nonpartnership Items</u>

In general, there are two types of nonpartnership items: pure nonpartnership items and "affected items." Pure nonpartnership items are items such as a partner's rental income from property unrelated to the partnership. Adjustments to partnership items do not alter pure nonpartnership items and they are not relevant to this particular case. But "affected items" are.

"Affected items" are defined as "any item to the extent such item is affected by a partnership item." §6231(a)(5). The statute makes it clear and it is well settled that some affected items have a partnership item *component,*[32] such as the deductions reported by partnerships, as well as, the legal and factual determinations that underlie the determination of the timing, amount, and characterization of the partnership's deductions.[33]

There are two types of affected items.[34] The first are "computational affected items" that require only a mathematical computation to record the change in a partner's tax liability resulting from the proper treatment of partnership items once the partnership proceeding is complete.[35] Examples include carryovers,[36] the threshold for deduction of medical expenses under §213, and alternative

---

31 *Maxwell* at 788; *Callaway* at 108.

32 *See N.C.F. Energy v. C.I.R.*, 89 T.C. 741, 743-4 (1987).

33 §6231(a)(3); Treas. Reg. §301.6231(a)(3)-1(a)(1)(i).

34 *See Olson v. U.S.*, 172 F.3d 1311, 1317 (Fed. Cir. 1999) *citing Woody v. C.I.R.*, 95 T.C. 193, 202 (1990).

35 *See Olson*, 172 F.3d at 1317.

36 *See Olson*, 172 F.3d at 1318.

minimum tax ("AMT").[37] A change to a partner's adjusted gross income due to partnership item adjustments causes a mechanical change in the §213 threshold and/or AMT that can be computed mathematically without further determinations at the partner level. As the name implies, computational affected items are both computational adjustments and affected items.

The second type of affected items are referred to as "substantive affected items."[38] Liabilities arising from substantive affected items cannot be assessed automatically because they require additional fact determinations that can only be made at the partner level once the partnership-level proceeding is concluded.[39] Examples include "at risk," basis, interest, and penalties.[40]

Purely computational adjustments can be assessed without further notice at the conclusion of the partnership level proceedings. But the IRS must follow the subchapter B deficiency procedures and issue a statutory notice of deficiency ("stat notice") before making substantive affected item assessments. §6230(a)(1)(A)(1) and §6212.

iii. <u>In the Context of TEFRA §6621(c) Penalty Interest is a Substantive Affected Item</u>

It is well-settled that §6621(c) penalty interest is a substantive affected item because it requires

---

37 *See* Treas. Reg. §301.6231(a)(5)-1T(a).

38 *Olson v. U.S.*, 37 Fed. Cl. 727, 732 (1997).

39 *See Olson*, 172 F.3d at 1317-8, *citing N.C.F. Energy* at 744.

40 *Roberts v. C.I.R.*, 94 T.C. 853, 861 (1990) ("At risk" was a substantive affected item because the amount at risk depended on the operation of third party side agreements more appropriately determined at the partner level.); *Dial U.S.A., Inc., v. C.I.R.*, 95 T.C. 1, 5-6 (1990) (Basis is not a partnership item because it is not required to be taken into account for the taxable year under subtitle A); *Univ. Heights at Hamilton Corp v. C.I.R.*, 97 T.C. 278, 281-282 (1991) (Basis is a substantive affected item because a partner's basis is partially comprised of partnership items, such as debt.); *N.C.F. Energy* at 745-746 (Interest and penalties are "affected items" that relate to partnership items but must be determined at the individual level.); *Monahan v. C.I.R.*, 321 F.3d 1063, 1066 11th Cir. 2003) (§6651(a)(1) late filing penalty and §6653(a)(1) and (2) negligence penalties are affected items requiring an "affected item notice of deficiency.").

findings of fact peculiar to each partner.[41] The most common finding of fact cited by the unanimous authorities, and one at issue in this case, is the determination of the *amount* of a partner's underpayment that is attributable to a TMT.[42] That amount is determined by applying the IRS's formula at §301.6621(c)-2T, A-5, which can only be done at the individual partner level.

Also, some TMTs are themselves affected items because they have both partnership item and nonpartnership item components. *E.g.*, the §6659(c) valuation overstatement penalty is a TMT and a substantive affected item when imposed in a partnership context.[43] Imposing §6659 depends on (i) the proper value of partnership property, a partnership item established at the partnership-level, and (ii) a separate partner-level determination of (a) what portion of the underpayment is "attributable to" the valuation understatement, and (b) whether the partner had a personal defense.[44]

The IRS often imposes the §6621(c) penalty rate because it asserts the tax underpayment was attributable to sham transactions, a TMT.[45] But sham has a two prong test, lack of economic substance and lack of profit motive. All of the authorities to reach the issue of sham in the context of TEFRA partnership related §6621(c) claims have unanimously agreed that the profit motive at issue is the *partner's* individual profit motive, a fact issue which can only be determined at the

---

41 *See N.C.F. Energy* at 744.

42 *See N.C.F. Energy* at 746.

43 *Powell v. C.I.R.*, 96 T.C. 707 (1991), *citing N.C.F. Energy*.

44 §6659(e); *Thornsjo v. C.I.R.*, T.C. Memo 2001-129; *Korchak v. C.I.R.*, .T.C. Memo 2005-244; *Thompson v. U.S.*, 223 F.3d 1206, 1211 (10th Cir. 2000).

45 The *Vulcan Oil* Tax Court decision referenced the IRS's motion to dismiss which invoked "§183 in accordance with the opinion in *Krause.*" In its motion to dismiss the McGanss' complaint, the government misrepresents the holding in *Krause* as stating that "[i]n *Krause*, the Tax Court disallowed partnership deductions under §183." [GB: 3] However, also in its motion the government appears to assert, *albeit* unclearly, that the Drake Oil partnership deductions were invalid because they were based on sham transactions. [GB:3] Therefore, the McGanns also address the specifics of the sham transaction analysis in this response.

individual partner level after the partnership level proceeding is complete.[46]

iv. Section 6621(c) Penalty Interest is an Anomaly in the Tax Code

In non-TEFRA cases, the provisions at subchapter B require the IRS to issue a stat notice before it can assess additional tax. §6212. A stat notice gives taxpayers a pre-payment right to challenge proposed adjustments in the Tax Court. §6213. But §6621(c) is assessed as interest, not tax and, therefore, the subchapter B stat notice procedures and prepayment rights do not apply.

In TEFRA partnership cases, the IRS cannot assert the §6621(c) penalty rate of interest in an FPAA (the partnership-level equivalent of a stat notice). An FPAA is limited restricted to proposed adjustments to partnership items; §6621(c) is an affected item not a partnership item.[47] The underlying partnership item determinations necessary to impose the §6621(c) penalty rate must be proposed in the FPAA, but application of the §6621(c) rate is not and should not be included in the FPAA.[48] Therefore, for 1983, §6621(c) could not be addressed in the partnership-level proceeding.

Once the partnership-level proceeding is complete, the IRS must follow the subchapter B procedures and send each partner a stat notice for any assessments of tax or penalties related to substantive affected items. §6230(a)(1)(A)(i).

But the subchapter B procedures and rights do not apply to §6621(c), even though it is a substantive affected item. Moreover, for tax year 1983, it is generally accepted that because interest is not a tax deficiency, the Tax Court lacks prepayment jurisdiction over §6621(c).[49] Consequently,

---

46 See discussion in *Copeland* at 337-8; *Weiner v. U.S.*, 255 F. Supp.2d 673, 678-88 (S.D.TX. 2002).

47 *Field v. U.S.*, 328 F.3d 58 (2nd Cir. 2003) ("*Field I*").

48 1991 LGM TL-95, 1991 WL 1168400. The McGanns do not cite this LGM as precedential authority but as persuasive indicia that the IRS recognizes and follows the McGanns' approach.

49 *See Barlow v. C.I.R.*, 301 F.3d 714, 720-22 (6th Cir. 2003) (discussing rationale behind the Tax Court's lack of pre-payment jurisdiction over §6621(c) penalty interest and limits on overpayment

for 1983, partners have no pre-payment forum to contest the imposition of the §6621(c) penalty rate.[50] A partner's only recourse to a TEFRA related §6621(c) assessment is to pay it and challenge the improper assessment in a partner-level refund action such as the McGanns' case here.[51]

If the IRS issues a stat notice for any other substantive affected item it may, but is not required to, included any §6621(c) assessment. It is the IRS's longstanding procedure *not* to include §6621(c) determinations in such stat notices, if any, and to automatically assess penalty interest with the tax – even though additional partner level fact determinations are required before §6621(c) can be imposed.[52]

v. Section 6230(c) Allows Only Six Months for a Partner to File Certain Refund Claims

Because taxpayers have only a post-payment right to judicial review, the procedures associated with the assessment of §6621(c) penalty interest and the procedures associated with perfecting a post-payment claim are of particular concern and illustrate why the standard §6511(a) period should apply to §6621(c) refund claims.

Generally, under §6511(a) a taxpayer may file a claim for refund of any overpayment within two years after it is paid. But in a TEFRA context, §6230(c) imposes an abbreviated six month period

---

jurisdiction), *citing White v. C.I.R.*, 95 T.C. 209, (1990). It is also generally agreed that the Tax Court has overpayment jurisdiction over §6621(c) as long as the claim is brought in conjunction with a petition for a redetermination for the same year. §6621(c)(4); *Barlow* at 720-2.

50 The Sixth Circuit has held that the lack of a pre-payment forum to challenge §6621(c) penalty interest does not violate taxpayer Fifth Amendment due process rights because "...the law is well settled that the availability to a taxpayer of a post-payment judicial forum in which to obtain a determination of his tax obligations is sufficient to satisfy due process requirements." *Barlow* at 722.

51 *Barlow* at 720.

52 1991 LGM TL-95, 1991 WL 1168400; 1990 LGM TL-21, 1990 WL 1086208; 1989 IRS NSAR 9164, 1989 WL 1173044. These sources are not cited for precedent but as persuasive evidence of IRS procedures concerning the imposition of §6621(c) penalty interest.

to file certain refund claims. For tax year 1983, §6230(c) states that for

> (c) **Claims Arising Out of Erroneous Computations**, etc.—
>
> (1) IN GENERAL.— A partner may file a claim for refund on the grounds that—
>
> (A) the Secretary ***erroneously computed*** any ***computational adjustment*** necessary—
>
> (i) to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return, or
>
> (ii) to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under §6226 or §6228(a), ...
>
> . . . .
>
> (2) TIME FOR FILING CLAIM.—
>
> (A) UNDER PARAGRAPH (1)(A).—Any claim under paragraph (A)(1) shall be filed within 6 months after the day on which the Secretary ***mails the notice of computational adjustment*** to the partner. [Emphasis added.]

A "computational adjustment" is defined as the "change in the ***tax*** liability of a partner which ***properly reflects the treatment*** under [subchapter C] ***of a partnership item***." §6231(a)(6) [Emphasis added]. Computational adjustments are the simple mathematical, mechanical calculations of a partner's tax liability that result from calculating the partner's share of partnership item adjustments and calculating the resulting changes to his personal tax liability. While computational adjustments are restricted by statute to changes in a partner's *tax* liability, they are not restricted *per se* to partnership items only. As discussed above, *some* nonpartnership item adjustments may also be pure "computational adjustments," But the IRS's substantive decision to impose the §6621(c) penalty rate of interest is not because it does not cause any change in "***tax*** liability."

Even if the IRS's decision to impose §6621(c) was a pure computational adjustment, a partner's claim for refund of that interest based on a substantive legal challenge would still not be subject to the §6230(c) six month limitations period. This is because §6230(c) does not apply to *all* refunds arising from computational adjustments. The plain language of §6230(c) is unambiguous. Section

6230(c) applies *only* to claims for refund on the grounds that the IRS "***erroneously computed*** any computational adjustment." The abbreviated six-month limitations deadline applies only where the IRS makes a ***math mistake*** in calculating a "computational adjustment."[53]

The IRS cannot impose §6621(c) without first making substantive determinations at the partner level. A substantive decision by the IRS to bypass these requirements is not a ***math mistake***. Therefore, by its own clear terms, §6230(c) cannot apply to a claim for refund based on the IRS's substantive decision to impose the §6621(c) penalty rate of interest *even if* that decision were deemed to meet the statutory requirements of a "computational adjustment."

**c. Imposing the §6621(c) Penalty Rate of Interest Was Improper as a Matter of Law**

The default decision entered in the *Vulcan Oil* partnership-level Tax Court case granted the IRS's motion to dismiss, which proposed to disallow the Drake Oil partnership items at issue here "based on §183 in accordance with the [Tax Court's] opinion in *Krause*." [Doc12:65¶34] In *Krause*, an Elektra partnership test case, the Tax Court used the criteria under §183 and Treas. Reg. §1.183-2 to determine profit motive for purposes of disallowing the partnership losses under §§162 and 174.[54] The partnership losses were disallowed under §§162 and 174, not §183. Deductions disallowed under §§162 and 174 are **not** TMTs.[55]

Later courts mistakenly confused the issues and held that §6621(c) was appropriate because *Krause* had disallowed the Elektra partnership deductions under §183, which can be a TMT[56]

---

53 *Kuralt v. U.S.*, 866 F.Supp. 727, 728 (S.D.N.Y., 1994) (describing §6230(c)(1)(A) claims for "mathematical error").

54 *Krause* at 168.

55 §6621(c)(3)(A) and 26 C.F.R. §301.6621(c)-2T.

56 *Hildebrand* at 1026; *Hill v. C.I.R.*, 204 F.3d 1214, 1220 (9th Cir. 2000); see also Treas. Reg. §301.6621-2T, A4.

One month before the *Vulcan Oil* decision was entered, the Fifth Circuit in *Copeland* held that those later courts were "both imprecise and flatly incorrect" because *Krause* actually held that the partnership losses were disallowed under §§162 and 174, not §183, and, therefore, as a matter of law the IRS could not impose the §6621(c) penalty rate of interest on an Elektra partner because neither §§162 or 174 is a TMT.[57] The Fifth Circuit further held that even if the *Krause* court had disallowed the partnership deductions under §183 that disallowance would be invalid for purposes of §6621(c) because, as to §6621(c), §183 applies only to "activity engaged in by an individual or an S corporation," therefore it cannot apply to activity engaged in by partnerships.[58]

On October 25, 2004, the Fifth Circuit issued its opinion in *Weiner*,[59] relying in part on the IRS's formula at §301.6621(c)-2T, A-5 to hold that where the IRS does not designate a specific TMT as the *sole* basis for disallowing a discrete dollar amount of the proposed adjustment, the §6621(c) penalty rate of interest cannot be imposed unless *every* proposed basis for disallowance asserted in an FPAA was examined to determine exactly what portion of the adjustments were specifically "attributable to" which TMT. Under *Weiner*, if an FPAA (like the 1983 Drake Oil FPAA here) proposes an undifferentiated, blanket disallowance on multiple, alternative grounds, then if even one basis for disallowance proposed in that FPAA is a non-TMT, the §6621(c) penalty rate of interest cannot be imposed unless *every* ground for disallowance asserted in the FPAA was examined and a discreet dollar value assigned to each basis, even if it was -0-. Twenty-one of the 23 grounds asserted in the 1983 Drake Oil FPAA were non-TMTs. [GB:B-27 to B-30] *Vulcan Oil* was a default decision, the Tax Court never examined or made any determinations as to even one of the 23 bases

---

57 *Copeland* at 336, 338.

58 *Copeland* at 334.

59 *Weiner*, *supra*.

proposed in the FPAA for completely disallowing the Drake Oil partnership deductions.

The government's motion to dismiss the McGanns' complaint conspicuously neglects to address the Fifth Circuit's analyses in *Copeland* and *Weiner* and how they impact the issues before this Court.

The McGanns' counsel have litigated §6621(c) partnership related refund actions against the government since before 1997. They represented Dr. Weiner at trial and before the Fifth Circuit and argued the winning §§162/183 analysis in an *amicus brief* in *Copeland*. The government's argument here – that the IRS's legal decision to impose the §6621(c) penalty rate of interest without making any substantive partner-level determinations is merely a math error such that it qualifies as an "erroneous computation" of a "computational adjustment" under §6231(a)(6) – was never asserted in those prior cases and appears to be a Hail Mary effort in this litigation.

**d. The McGanns' §6621(c) Claim Is Not Subject to The Six-Month Period for Filing a Refund Claim**

The government's new argument to dismiss a partner's §6621(c) refund claim may have a facile appeal, but it does not withstand closer scrutiny. Under §6230(c)

> "claim[s] for refund on the grounds that ... the Secretary *erroneously computed* any *computational adjustment* ... shall be filed within 6 months after the day on which the Secretary *mails the notice of computational adjustment* to the partner."[60]

i. <u>Neither the Form 4549 Nor the NOA Sent to the McGanns Was Sufficient to Start the Limitations Period under §6230(c)</u>

Section 6230(c)(2)(A)(i)'s six month limitations period begins to run on "the day on which the Secretary mails the notice of computational adjustment to the partner." Here the government asserts that the Form 4549 was the required notice of computational adjustment ("NCA"). But the IRS never mailed the McGanns a NCA sufficient to start the §6230(c)(2)(A)(i) limitations period for any claim based on §6621(c). Consequently, even if §6230(c) applies to §6621(c) claims, the McGanns' claim

---

[60] §6230(c)(1)(A)(i) and §6230(c)(2)(A)(i). Emphasis added.

was timely because the §6230(c)(2)(A)(i) limitations period never began to run.

The Form 4549 sent to the McGanns states that "**all or part** of the underpayment of tax ... is a substantial understatement attributable to [TMTs] ...." But also that the amount of "TMT Interest - computed 03/22/2003 on TMT underpayment" is "0.00" and that the total "[a]mount due" is "$8,620," the amount of the tax assessment. Further, it gives no basis for the purported TMTs except that "[t]his report is prepared based on a Tax Court decision, docket #21530-87, from the partnership, George C. Walueff, EIN #51-0121089. ... If you have any questions, contact your [TMP]." When the IRS mailed the Form 4549 it knew there was no Drake Oil TMP.

The Form 4549 could not be sufficient notice to start the §6230(c) limitations period for claims based on §6621(c) because it provided no §6621(c) penalty interest computation. Nowhere on the Form 4549 does the IRS notify the McGanns of how it computed the interest that would actually be assessed against them at the §6621(c) penalty rate, what TMT their tax underpayment was supposedly "attributable to," or the actual amount of interest to be assessed against them due to the §6621(c) penalty rate. In fact, the Form 4549 clearly stated that the actual amount of interest to be assessed based on §6621(c) was "$0.00." This clearly evidences that the Form 4549 was never intended to notify McGann of the actual amount of penalty interest he would be charged.

Even seen in the light most favorable to the government, the Form 4549 sent to the McGanns was ambiguous as to whether the IRS intended at some future time to assess any interest at the §6621(c) penalty rate. This could not be a NCA sufficient to begin a limitations period. If, as the government now argues, it knew that the McGanns would be restricted to a six-month period to compute, pay and file a refund claim for such interest, then the Form 4549 was actively deceptive.

On March 24, 2003 the IRS assessed tax of $8,620.00 and total interest of $57,475.04 against the McGanns. Like many partners, the NOA was the first notice the McGanns received of the actual

interest assessment. But nowhere on the NOA does the IRS mention that it imposed the §6621(c) penalty rate of interest, much less what portion of the tax underpayment was "attributable to" a TMT, what TMT it was supposedly "attributable to," what portion of the total interest assessed was due to the §6621(c) penalty rate, or how it was actually computed. In fact, as to §6621(c) the NOA is actively deceptive. The NOA affirmatively states that the total interest assessed ($57,475.04) was assessed at the normal rate under "I.R.C. Section 6601." Likewise, the interest rates listed on the NOA are for the normal rate under §6601, not the penalty rate under §6621(c).[61]

If the IRS decision to impose the §6621(c) penalty rate of interest is a computational adjustment subject to the six-month filing deadline, as now asserted by the government, then the IRS's failure to inform the McGanns of how it computed the interest that it *actually assessed* against them is deceptive and similar notices may induce and mislead lay taxpayers to not file valid refund claims.

The IRS *never* mailed the McGanns any notice of how it computed the §6621(c) penalty rate of interest it imposed on them. Therefore, the §6230(c)(2)(A)(i) limitations period, even if applicable, never began to run and the McGanns' §6621(c) claim was timely.

ii. <u>The McGanns' Claim is Not Based on the Erroneous Computation of a Computational Adjustment</u>

Even if the Form 4549 or NOA could be construed as a sufficient NCA to start the §6230(c)(2)(A)(i) limitations period for a §6621(c) based claim, the McGanns' refund claim is not subject to that limitations period because it is grounded on the IRS's erroneous substantive decision to impose the §6621(c) penalty rate of interest at all, not on the grounds that the IRS "***erroneously computed*** any ***computational adjustment***," *i.e.* not that the IRS made a math mistake in computing how much interest to assess.

---

61 The McGanns request that the Court take judicial notice of the relevant interest rates under §6601 and §6621(c) as reflected on the interest rate table attached as A-31.

(1) THE IRS'S DECISION TO IMPOSE THE §6621(C) PENALTY RATE OF INTEREST IS NOT A COMPUTATIONAL ADJUSTMENT

As discussed above, under TEFRA, a "computational adjustment" is expressly defined by statute as a "change in the ***tax*** liability of a partner which ***properly reflects the treatment*** under [subchapter C] ***of a partnership item***." §6231(a)(6). [Emphasis added]. The McGanns are not due a refund because of a "computational adjustment." They request a refund of interest, not ***tax***. Nor do the amounts sought to be refunded "reflect[] the treatment ... of a partnership item." Imposition of the §6621(c) penalty rate of interest is an affected item, not a partnership item.

If the McGanns had requested a refund of the interest paid at the normal, non-TMT, rate then the government *might* – assuming it could circumvent the statutory definition of "computational adjustment" – be able to make a §§6230(c)(1)(A)(i)/6230(c)(2)(A)(i) argument with at least an initial gloss of colorability, though it would still ultimately fail. But, by definition, a "computational adjustment" cannot include interest of *any* kind and must "reflect[] the treatment ... of a partnership item," not an affected item such as §6621(c).

(a) *The Government's Reliance on Olson is Misplaced*

In support of its assertion that application of the §6621(c) penalty rate of interest is a computational adjustment, the government relies on *dicta* and speculation in two footnotes in *Olson* that have been taken out of context and do not stand for the government's proposition.[62] The Federal Circuit did not find or hold that application of the §6621(c) penalty rate of interest is a computational adjustment. Neither did the Court of Federal Claims. That issue was never before either court.

There were three distinct issues in *Olson*. First, the plaintiffs asserted that the tax associated with carryover adjustments was not a computational adjustment but a substantive affected item that could only be assessed after the IRS issued a stat notice because it required additional partner-level fact

---

[62] *Olson* at n.1 and n.2.

determinations. Second, the plaintiffs asserted the IRS could not assess §6659 penalties for carryover years without issuing a stat notice if the partner agreed to waive the penalty stat notice for the source year but the agreement was silent as to carryover years. Third, the plaintiffs asserted the IRS could not impose the §6621(c) penalty rate in carryover years when the settlement as to §6621(c) was limited on its face to the source year with no reference to carryover years.

The Court of Federal Claims began its §6659 and §6621(c) analysis with a recitation of general law: "[w]ithout a valid waiver, the IRS would have been required under §6213(a) to issue a notice of deficiency to plaintiffs before assessing the §6659 penalty." The original opinion included §6621(c) in that statement of general law.[63]

At footnote 1, the Federal Circuit called attention to the government's motion to revise that portion of the original *Olson* opinion to remove the reference to §6621(c) penalty interest. Counsel for the McGanns in the case at bar also represented the Olsons in that action and did not oppose that motion because it is generally accepted that interest assessments, including §6621(c) penalty interest, are not subject to subchapter B of the Chapter 63 deficiency procedures.[64] Judge Weise allowed the motion and revised the opinion to remove the cite to §6621(c).

Judge Weise did not hold and the revision did not reflect a decision that §6621(c) penalty interest is a "computational adjustment,"as the Federal Circuit implied in dicta at footnote 2 of its opinion. Again, that issue was not before the court. Moreover, the §6659 and §6621(c) issues were not appealed and not before the Federal Circuit at all. The government's entire argument for dismissal hangs on this mistaken supposition in *dicta* in *Olson.*[65]

---

63 *Olson*, 37 Fed. Cl. at 737.

64 §6601(e)(1). *See Barlow* at 720-22.

65 *See Jama v. Immigration and Customs Enforcement,* 543 U.S. 335, 351 n. 12, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) ("Dictum settles nothing, even in the court that utters it.").

(b) *The Government's Reliance on Treas. Reg. §301.6231(a)(6)-1T(b) Is Also Misplaced*

The government makes a cursory reference to Treas. Reg. §301.6231(a)(6)-1T(b) as its only other authority that the §6621(c) penalty rate of interest is a computational adjustment subject to the six-month period for filing a refund claim. [GB:10] This regulation impermissibly re-defines a computational adjustment to include interest. The government further extends the scope of the regulation to re-define a computational adjustment to include application of the §6621(c) rate. The government cites no authority to support that extension because none exists.

In making this extension the government ignores the unique nature of §6621(c) and the crux of the McGanns' claim. The McGanns' claim is not, as the government asserts, that the IRS "erroneously computed" the interest they owed. The IRS's mathematical calculations appear to be correct. Rather, the crux of the McGanns' claim is that the IRS improperly applied the §6621(c) rate at all.[66] By statute and regulation the §6621(c) penalty rate is not and cannot be applied automatically or mechanically as is standard §6601 interest. As discussed above, application of the §6621(c) penalty rate of interest is distinguishable from the mechanical application of standard §6601 interest because it first requires a substantive, partner-level determination that all or some discrete dollar portion of the tax liability was "attributable to" one of the defined TMTs.

Because the McGanns' claim does not challenge the computation of interest but application of the penalty rate, the Court need not determine whether the regulation is invalid. But should the Court reach that issue, then the McGanns assert Treas. Reg. §301.6231(a)(6)-1T(b) impermissibly broadens the statutory definition of a computational adjustment to include interest. An initially colorable argument could be made that standard §6601 interest could be informally described as a computational adjustment. But this is ultimatle wrong because "computational adjustments" are not

---

[66] *Copeland* at 332-3.

informal, they are defined by statute and expressly limited to tax.

Any analysis must always begin with the plain language of the statute.[67] For the tax years at issue, a "computational adjustment" is "**the change in the tax liability** of a partner which properly reflects the treatment under [subchapter C] of a partnership item." §6231(a)(6). Emphasis added..

The preeminent canon of statutory interpretation requires that courts "presume that [the] legislature says in a statute what it means and means in a statute what it says there."[68] The court's inquiry "begins with the statutory text, and ends there as well if the text is unambiguous."[69]

No court has ever held §6231(a)(6) to be ambiguous or silent. Nonetheless, the IRS issued Temp. Treas. Reg. §301.6231(a)(6)-1T(b) which redefines a computational adjustment to include "any interest due with respect to any underpayment or overpayment of tax attributable to adjustments to reflect properly the treatment of partnership items."

The traditional maxim of statutory construction, *expressio unis est exclusio alterius* is well settled: the expression of one thing is the exclusion of others.[70] "It is axiomatic that the statutory

---

[67] *Duncan v. Walker,* 533 U.S. 167, 121 S.Ct. 2120, 2124, 150 L.Ed.2d 251 (2001); *Carter v. U.S.,* 530 U.S. 255, 257, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000); *Grapevine Imports, Ltd. v. U.S.*, 71 Fed.Cl. 324, 328-329 (2006) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."), *quoting Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

[68] *BedRoc Ltd., L.L.C. v. U.S.*, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004), *quoting Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

[69] *BedRoc* at 183.

[70] "The doctrine [*expressio unis est exclusio alterius*] instructs that where law expressly describes a particular situation to which it shall apply, an irrefutable inference must be drawn that what was omitted or excluded was intended to be omitted or excluded." *In re Zurko*, 142 F.3d 1447, 1456 (Fed.Cir. 1998), *quoting In re Lueders*, 111 F.3d 1569, 1576 n. 12, 42 USPQ2d 1481, 1486 n. 12 (Fed.Cir.1997).

definition of the term excludes unstated meanings of that term."[71] Congress expressly limited computational adjustments to "change[s] in ... tax liability." Interest is not a "tax liability" and, therefore, by definition it cannot be a computational adjustment.

In *Chevron*[72] the Supreme Court mirrored the canons of statutory constructions when it established the two step analysis that controls when a court may rely on an agency's regulation and how a court determines if that regulation is valid: if Congress by statute spoke to the question at issue the courts *must* give effect to Congress's unambiguously expressed intent,[73] *only* if the statute is held to be ambiguous or silent may a court then look to an agency's regulation for guidance and determine if that regulation is a permissible construction.[74] Here the statute unambiguously defines a "computational adjustment" as "the change in the **tax liability** of a partner ... ." Emphasis added. The plain language of the definition is neither ambiguous nor silent.

Interest is not a "tax liability" and the IRS may not simply ignore *Chevron*'s "silent or ambiguous" requirement to wedge it into the statutory definition by regulation when Congress spoke clearly and unambiguously and chose to leave it out.[75]

As the Federal Circuit recognizes:

> When Congress makes such a clear statement as to how categories are to be defined and distinguished, neither the agency nor the courts are permitted to substitute their own

---

71 *Meese v. Keene*, 481 U.S. 465, 484-485, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987).

72 *Chevron v. N.R.D.C., Inc.*, 467 U.S. 837, 842-44, 104 S.Ct. 2668 (1984).

73 *Statesman II Apartments, Inc. v. U.S.*, 66 Fed.Cl. 608, 623 (2005); *see also Santa Fe Snyder Corp. v. Norton*, 385 F.3d 884, 890 (5th Cir. 2004), *quoting Comsat Corp. v. FCC*, 250 F.3d 931, 937-38 (5th Cir.2001); *Yellow Transportation, Inc. v. Michigan*, 537 U.S. 36, 45 (2002).

74 *Chevron*, 467 U.S. at 842-44, 104 S.Ct. 2778.

75 *Yocum v. U.S.*, 66 Fed.Cl. 579, 586 (2005) ("The legislative intent of Congress is to be derived from the language and structure of the statute itself, if possible."), *quoting U.S. v. Lanier*, 520 U.S. 259, 268 n. 6, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

> definition for that of Congress, regardless of how close the substitute definition may come to achieving the same result as the statutory definition, or perhaps a result that is arguably better.[76]

Congress could define "computational adjustment" to include interest. "The statute, however, does not do so and no principle of statutory interpretation grants [federal courts] judicial license simply to rewrite statutory language by ascribing additional, material terms."[77] The government's attempt to improperly shoe-horn it in by regulation is shortsighted and ill-advised. "[I]nterpretations of a statute which would produce absurd results are to be avoided ... ."[78] If the government wants interest included in §6231(a)(6) it should go to Congress, not the courts and not the IRS.[79] "Congress did not purport to transfer its legislative power to the unbounded discretion of the regulatory body."[80]

Even accepting, *arguendo*, that all interest, including §6621(c) penalty interest could be defined and assessed as a computational adjustment, all of the same statutory construction arguments apply to prohibit the government's disregard for the fact that §6230(c)(1)(A) is limited to claims based on the grounds that "the secretary *erroneously computed* any computational adjustment ...." That provision applies only to claims based on an *erroneous computation*, *i.e.* math mistake, not claims based on substantive grounds.

---

76 *AK Steel Corp. v. U.S.*, 226 F.3d 1361, 1372 (Fed.Cir.2000); *Meese*, 481 U.S. at 484-485 ("When a statute includes an explicit definition, [courts] must follow that definition ...."); *see also Stenberg v. Carhart,* 530 U.S. 914, 942, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000); *Colautti v. Franklin,* 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979).

77 *Texaco Inc. v. Duhe*, 274 F.3d 911, 920 (5th Cir. 2001).

78 *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 3252 (1982).

79 *Griffin* at 575 ("But in such case the remedy lies with the law making authority, and not with the courts."), *quoting Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930).

80 *FCC v. RCA Comm.*, 346 U.S. 86, 90 (1953).

(2) THE MCGANNS' CLAIM IS NOT BASED ON A ERRONEOUS COMPUTATION

By its express terms, §6230(c)(2)(A)(i)'s six-month limitations period applies only to claims for refund made pursuant to §6230(c)(1)(A)(i). Section 6230(c)(1)(A)(i) does not apply to all erroneous computations, or to all errors involving "computational adjustments." It plainly states that it is limited to claims due because "the secretary ***erroneously computed*** any computational adjustment ...." Nothing in the body of §§6230(c)(1) or (2) indicates Congress intended the words "erroneous computations" to have other than their plain meaning, *i.e* essentially math mistakes.[81] Consequently, the government's motion to dismiss the McGanns' §6621(c) claim is based on a false predicate.

The *Vulcan Oil* decision identified the partnership items and amounts of the adjustments. [Doc12:69] But after the *Vulcan Oil* decision, it was still necessary to calculate each partner's share of those partnership item adjustments, apply their share of those adjustments to their personal tax returns, and calculate their personal resulting adjusted tax liability. The calculations necessary to change the ***tax*** liability of a partner to properly reflect the treatment of a partnership item is the computational adjustment defined at §6231(a)(6).

Here the McGanns do not assert that the IRS erroneously computed any computational adjustments, *i.e.* that the IRS made a math mistake and erred in computing the amount of tax resulting from the partnership item adjustments,[82] nor even a math mistake in computing the interest. Instead, they dispute the government's legal basis to impose the §6621(c) penalty rate of interest *at all*. They argue that the IRS made an erroneous substantive determination to impose §6621(c) or, even worse, made a naked determination to impose §6621(c) without addressing the partner-level

---

[81] *Kuralt* at 728 (describing §6230(c)(1)(A) claims for "mathematical error").

[82] Had an IRS employee mistakenly typed the amount of line 7 of the Form 4549 ($12,387) into the field for line 14 ($8,620), transposed numbers, or mistakenly added a "0" to line 14 ($86,200) then that difference would be an erroneous computation.

factual determinations required by statute and regulation. They assert, based on the great weight of law and better reasoned analysis, that imposition of the §6621(c) penalty rate of interest is a substantive affected item requiring partner-level determinations and, therefore, as a matter of law it cannot be assessed as a pure computational adjustment, as it was here.

In *Field I*, a 1983 TEFRA year Elektra partnership related case like the case at bar, the Second Circuit considered a §6621(c) TEFRA related refund claim similar to the McGanns' and began its analysis with the conclusion that:

> District courts generally have subject matter jurisdiction over tax refund claims pursuant to 28 U.S.C. §1346(a)(1). However, under 26 U.S.C. §7422(h), "[n]o action may be brought for a refund attributable to partnership items (as defined in §6231(a)(3)) except as provided in §6228(b) or §6230(c)." [FN2]
>
> > FN2. Neither exception to §7422(h) is applicable to this case. ***Plaintiffs-Appellants do not seek a refund based upon a computational error under §6230(c)***, nor do Plaintiffs-Appellants seek review of the [IRS's] denial of a request for an administrative adjustment under §6228(b).[83]

The Second Circuit in *Field I* observed that a claim for refund of improperly imposed §6621(c) penalty interest is not a §6230(c) based claim. This is consistent with a prior determination by the Southern District of Texas in *Brookstone*,[84] affirmed by the Fifth Circuit without published opinion, that claims for recovery of §6621(c) penalty interest are not claims for computational errors under §6230(c). The *Brookstone* court further held that claims for refund of §6621(c) penalty interest are not subject to the six-month period of limitations for filing an erroneous computation claim, but are subject to the normal period for filing refund claim set out at §6511(a).[85] The McGanns timely filed their claims pursuant to §6511(a).

---

83 *Field I, supra.* Emphasis added.

84 *Brookstone Corp. v. U.S.*, 1994 WL 621576 (S.D.Tex.) (unpublished), *aff'd per curium*, 58 F.3d 637 (5th Cir. 1995).

85 *Brookstone* at *5.

Because the McGanns' claim does not assert that the IRS made erroneous computations and because the IRS decision to impose the §6621(c) penalty rate of interest is not a "computational adjustment," the McGanns were not required to file their claim for refund within six-months after the Form 4549 was mailed to them, even if it was sufficient to be a NCA under §6230(c)(2)(A)(i).

**e. The General §6511(a) Refund Claim Period Applies to Affected Items that Require Partner-Level Determinations**

The government asserts the normal §6511(a) period for filing refund claims does not apply here because §6230(d)(6) excepts claims for refunds attributable to partnership items (or affected items) from subchapter B of Chapter 66 – which includes §6511(a). [GB:11, 14] After thus manufacturing an artificial void as to when partners must file affected item refund claims, the government attempts, without support, to fill that void by improperly expanding the §6230(c)(2)(A)(i) six-month period to file claims based on erroneous computations of computational adjustments to also cover claims based on substantive affected items. But the §6230(c)(2)(A)(i) period does not apply to the McGanns' claim. The better-reasoned, majority approach is that the normal §6511(a) three year/two year period applies for filing claims based on substantive affected items, including §6621(c).

i. The Government Relies on a Single, Minority Authority

The government's entire argument that the general §6511(a) refund period does not apply to the McGanns' §6621c) claim is supported by only one unreviewed case issued by a magistrate judge in the Western District of Texas.[86] In *Bob Hamric*, the court reasoned that "regular refund procedures," including the period for filing refund claims set out at §6511(a), do not apply to partnership or affected items. For authority the court relied on §6230(d)(6).

ii. The Majority Approach Proves Plaintiffs' Claims were Timely

*Brookstone* is better-reasoned, *albeit* unpublished, authority issued the year after *Bob Hamric*

---

86 *Bob Hamric Chevrolet, Inc. v. U.S.*, 849 F.Supp. 500, 509 (W.D.Tex. 1994).

by Judge Rosenthal of the Southern District of Texas. *Brookstone* was affirmed *per curium* by the Fifth Circuit. Contrary to *Bob Hamric*, *Brookstone* held that the standard three year/two year period for filing a refund claim set out at §6511(a) applied to §6621(c) refund claims and establishes that it should be applied in this case as well.[87]

*Brookstone* recognized that §6230(d)(6) on its face excepts affected items from the standard §6511(a) refund period. But as *Brookstone* makes clear, application of that provision turns on (i) the finer distinctions between TEFRA affected items, and (ii) well-established §6621(c) precedent.

*Brookstone* recognized that there are two types of affected items, (i) "computational affected items," and (ii) non-computational, "substantive affected items" that depend on fact findings peculiar to each partner. That court determined that the classification of an affected item determines which deficiency and refund procedures apply – the unique TEFRA procedures (subchapter C) or the standard, non-TEFRA deficiency and refund procedures (subchapter B).

*Brookstone* recognized that under TEFRA the standard deficiency procedures of subchapter B do *not* apply to *computational* affected items, but, by statute, the standard deficiency procedures of subchapter B *do* apply to *substantive* affected items.[88]

The *Brookstone* court was persuaded that just as the non-TEFRA *deficiency* procedures apply to substantive affected items, the non-TEFRA *refund* procedures must likewise apply. The court was persuaded that to hold otherwise would treat a substantive affected item as a §6230(a)(1)(A)(i) computational adjustment, a conclusion that *Brookstone* and other courts have expressly rejected.[89]

The *Brookstone* court like *Field I* also agreed that the plaintiff's §6621(c) claims in that case

---

[87] *Brookstone.*, *4-5

[88] §6230(a)(2)(A)(i). *See Brookstone* at *4-5, *citing Woody*, at 202 and *N.C.F. Energy* at 744-5.

[89] *Brookstone* at *5.

were based on substantive affected items and did not challenge the IRS's computation of the change in tax liability as a result of the partnership item settlement (equivalent to the *Vulcan Oil* partnership item decision here). *Brookstone* held that §6621(c) claims are not subject to the §6230(c)(2)(A)(i) six-month limitations period. *Id.* The McGanns assert the same arguments here.

**f. The *Field-Brookstone* Approach Reconciles §6621(c) Within TEFRA's Statutory Scheme**

The *Field-Brookstone* approach does not render §6230(c)(2)(A)(i) meaningless as the government asserts [GB:13], because the six-month limitations period still applies to claims based on *erroneous computations* of (i) pure computational adjustments to tax, (ii) affected item computational adjustments to tax, and, possibly, (iii) normal interest under §6601, if it requires no post-TEFRA determinations and if Temp. Treas. Reg. §301.6231(a)(6)-1T(b) is valid.

Conversely, the government's approach overreaches to subject *all* partnership items, affected items, computational adjustments, and interest refund claims to the §6230(c)(2)(A)(i) six-month period regardless of whether they are claims based on an *erroneous computation* of a *computational adjustment* that is "necessary ... to make *the partnership items on the partner's return* consistent with the treatment of the partnership items on the partnership return." The government's approach violates the plain meaning of the statute and should not be adopted here.

i. <u>The *Field-Brookstone* Approach Is Consistent With TEFRA's Legislative History</u>

Congress contemplated that refund claims would be filed after payment of TEFRA related tax deficiencies pursuant to the standard §6511(a) refund period. The legislative history plainly states:

> A separate statute of limitations applicable to nonpartnership items of a partner may have expired when the computational adjustment of a partner's tax liability attributable to a FPAA or final court decision is made. In such a case neither the Secretary (to reduce a refund) nor a partner (to reduce an assessment) may raise nonpartnership items in determining the partner's tax liability resulting from such computational adjustment. However, if the partner has in fact overpaid his income tax liability for the taxable year

with respect to which the computational adjustment was made, he may obtain credit or refund of such overpayment by filing a claim within 2 years following such overpayment, as prescribed by §§6511(a) and (b)(2)(B). If such claim is not allowed, suit may be filed pursuant to §7422(a). Any overpayment which may be refunded pursuant to such a claim or suit for refund would be attributable only to nonpartnerhsip items.[90]

ii. The *Field-Brookstone* Approoach Recognizes and Compensates for the Fact that §6621(c) is an Anomaly in the Tax Code

Because §6621(c) is an anomaly in the Tax Code there is no pre-payment forum to challenge the imposition of the §6621(c) penalty rate of interest and, given the unique nature of §6621(c) assessments in TEFRA related proceedings, the normal §6511(a) period for filing a refund claim should apply, and not the abbreviated six-month statute.

iii. Only the *Field-Brookstone* Approach Provides Adequate Opportunity to File a Refund Claim

The IRS generally makes the first assessment of §6621(c) penalty interest when it makes the initial tax assessment. But the §6621(c) penalty rate of interest is also subject to the normal procedural rules for assessing interest. Therefore, the IRS has ten years after assessing the tax to independently assess and collect §6621(c) interest, either for the first time or as it continues to accrue.[91] In *Field II* the Second Circuit recently held that the IRS has ten years from the date of the underlying tax assessment to assess §6621(c) interest.[92] LIke the McGanns' case at bar, *Field II* was a 1983 TEFRA Elektra partnership related case.

This option to assess §6621(c) penalty interest years after the IRS has sent the Form 4549 (asserted by the government here to be the operative NCA) and assessed the tax makes a mockery of the government's argument that the six-month period governs the filing of §6621(c) refund claims.

---

90 H.R. Conf. Rep. 97-760, p.611. [A-30]

91 §6601(g) and §6502(a). 1990 LGM TL-21, 1990 WL 1086208 at n.8.

92 *Field v. U.S.*, 381 F.3d 109, 113 (2nd Cir. 2004) ("*Field II*").

Upholding the government's argument would literally give the IRS the option to assess the interest after the refund period expires and, for pre-1997 tax years, would leave partners with absolutely no recourse to challenge the IRS's arbitrary imposition of §6621(c).

iv. Only the *Field-Brookstone* Approach Provides Sufficient Time to Make Payment in Full

Even if the IRS initially assesses interest at the §6621(c) penalty rate when it assesses the tax, a limitations period of six months *from the NCA* could reduce or totally eliminate the time a partner has to file a §6621(c) refund claim. As discussed above at pp. 20 - 22, neither the Form 4549 nor the actual NOA received by the McGanns was a NCA sufficient to begin the six-month limitations period. If, as the government now argues, it knew the McGanns had to compute their interest due to the §6621(c) penalty rate and then pay and file a refund claim within six-months after the Form 4549 was mailed, then the Form 4549 and the NOA were actively deceptive.

The first unambiguous notice of the actual interest assessed or that the IRS will assess that many partners receive is the actual NOA. As it was with the McGanns, that notice normally does not show how the §6621(c) rate was computed or what portion is due to the §6621(c) penalty rate. There is no requirement that the NOA be issued within six months after the Form 4549 is mailed to the partner. Here the Form 4549 was dated February 28, 2003 and the NOA dated March 24, 2003. But there is no evidence of when the IRS mailed the NOA to the McGanns or when they received it. Nonetheless the McGanns paid the assessment in full by April 21, 2003. But the IRS *never* told them how much of the interest assessment was due to the §6621(c) penalty rate or how it was computed.

For other partners the tax and interest assessments are often made months after the Form 4549 is mailed.[93] There is no requirement that the IRS send partners a NOA within six months of the Form

[93] The McGanns request that the Court take judicial notice of the pleadings and documents before the court in *Keener v. U.S.*, Docket No. 03-2028. In that partnership related refund case the plaintiffs also seek refund of interest assessed and paid at the §6621(c) penalty rate. There the Form 4549 sent

4549, or that the IRS send the Form 4549 or the NOA to the partner's "last known address."[94] In fact, the government has 10 years from the tax assessment to assess interest.

Under the government's theory if, as it did to the McGanns, the IRS mails a Form 4549 to a partner (i) stating that the §6621(c) penalty rate of interest will be imposed on "all or part" of his assessed underpayment of tax, (ii) not telling the partner how the §6621(c) penalty rate of interest will be computed, and (iii) stating that the amount of "TMT interest ... on TMT underpayment" is "0.00;" then the partner must quickly invoke his amazing psychic powers to divine (i) whether the IRS will actually impose the §6621(c) penalty rate at all, and if so (ii) how much of the underpayment the IRS will actually subject to §6621(c), (iii) how the IRS will compute the §6621(c) penalty rate, and (iv) the ultimate dollar amount of interest the IRS will assess. The partner must then quickly pay all of the liability, tax and interest, and, according to the government's theory, then make sure he files his refund claim for all §6621(c) interest within six months after the IRS mailed him the Form 4549, regardless of whether the IRS has actually assessed *any* such interest by that time.

Even in cases where the IRS unambiguously indicates in the NCA what portion of the underpayment it intends to subject to §6621(c) and how much interest will actually be assessed due to §6621(c), partners are still left a punitively short time (theoretically, even none) to pay significant tax and interest liabilities in full and file their claim. The enormity of that financial hurdle distinguishes the short limitations period for filing a pre-payment action in the Tax Court and the short six-month period for filing a refund claim due to mathematical errors from the §6511(a) period for filing refund claims that begins to run from the date of payment.

The distinction is clearly reflected in the changes to TEFRA enacted in 1998 for tax years

---

to the Keeners by the IRS was not made until four months after the Form-4549 was mailed.

94 Compare with §6212, requiring that subchapter B notices of deficiency must be mailed by certified or registered mail to the taxpayer's "last known address."

ending after 1997. With those amendments the jurisdiction in a TEFRA prepayment partnership level proceeding was expanded to cover penalties and a partner's defenses, which can now be raised in a partnership-level proceeding. With that new prepayment forum provided, §6230(c) was also amended to provide a six-month period to file a refund claim related to the penalties that could have been defended in the TEFRA proceeding. This is arguably a reasonable time if the opportunity existed to raise those defenses in the prepayment partner level proceeding.

It is unclear if §6621(c) is, even now, covered by the post-1997 procedures because §6621(c) is still an anomaly; a penalty rate of *interest* requiring partner-level determinations and not simply a *penalty* treated as tax. It is doubtful even now if defenses can be raised in the TEFRA proceeding.

Moreover, as this case illustrates, the reality is that partnership tax controversies frequently drag out for years. As a consequence, the amount of total interest at issue here and in similar TEFRA related cases is usually at least 3 times and some as much as 8 times the amount of tax liability and is usually quite significant. Moreover, the amount of interest due solely to §6621(c) can easily be a fourth of the total interest assessment. The sheer size of the liability ordinarily denies the partner any realistic chance of making the full payment within an abbreviated six-month period. Few people have ready access to the liquid assets necessary to pay tens or hundreds of thousands of dollars of liability in such a short period of time.

v. The IRS Has Recognized that the §6511(a) Period Applies to TEFRA Related §6621(c) Claims

The IRS has recognized that taxpayers, especially pre-1997 TEFRA partners, did not have a prepayment forum and could only challenge imposition of the §6621(c) penalty rate in overpayment/refund actions. In at least one of the internal memoranda instructing IRS officers, agents, and counsel to not assert §6621(c) in partner-level deficiency notices, the IRS concluded and advised that the unique nature of §6621(c) penalty interest as a substantive affected item makes it

subject to the standard §6511(a) period for filing a refund claim.[95]

**4. <u>Conclusion</u>**

The McGanns' §6621(c) penalty interest refund claims do not fall within the scope of the six-month period for filing claims under §6230(c)(2)(A)(i). Section 6230(d)(6) does not except the McGanns' §6621(c) penalty interest refund claims from the normal §6511(a) limitations period. The normal period for filing refund claims under §6511(a) is the only time frame that gives effect to the entire statutory scheme, follows legislative intent with respect to refund procedures behind TEFRA, and protects partner's due process rights. The §6511(a) normal limitations period applies to the McGanns' §6621(c) claim as a matter of law and should apply as a matter or equity.

WHEREFORE, Plaintiffs Thomas H. McGann and Evelyn G. McGann respectfully object to the granting of the United States' motion to dismiss their complaint and pray that it be denied.

Respectfully submitted,

/s/ Sallie W. Gladney

Sallie W. Gladney, Attorney of Record
Teresa J. Womack
Thomas E. Redding
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244 / (713) 621-5227 Fax
**ATTORNEYS FOR PLAINTIFFS**

95 1989 IRS NSAR 9164, 1989 WL 1173044.