**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
No. 05-1189 T
(Judge Charles F. Lettow)

THOMAS H. McGANN and EVELYN G. McGANN

Plaintiffs,

VS.

UNITED STATES OF AMERICA,

Defendant.

**APPENDIX A**
**TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF JURISDICTION AND BRIEF IN SUPPORT THEREOF**

| Bates Page No. | Document |
|---|---|
| A-1 | 26 U.S.C. §6621(c), effective for tax year 1983 |
| A-2 to A-4 | Treas. Reg. §301.6621-2T, effective for tax year 1983 |
| A-5 to A-9 | H.Conf.Rep. No.98-861 (June 23, 1984) |
| A-10 to A-25 | H.R.Rep. No. 101-247, at 1388, 1394 (1989) |
| A-26 to A-29 | 135 Cong. Rec. S13893-07, Statement of Sen. Pryor, October 24, 1989 |
| A-30 | H.R. Conf. Rep. 97-760, p.611, 97th Cong., 2nd Sess. 1982, P.L. 97-248 |
| A-31 to A-32 | Interest Rate Table from Software Program TaxInterest Showing NOrmal Interest Rates vs. §6621(c) "Motivated" Penalty Interest Over Time |

**P.L. 97-34, § 711(c):**

Amended Code Sec. 6621(b) by striking out "February 1" and inserting "January 1", applicable to adjustments made for periods after 1982.

**P.L. 94-455, § 1906(b)(13)(A):**

Amended 1954 Code by substituting "Secretary" for "Secretary or his delegate" each place it appeared. Effective 2-1-77.

**P.L. 93-625, § 7(a)(1):**

Added Code Sec. 6621(b). Applicable to amounts outstanding on such date or arising thereafter. Effective 7-1-75.

**[Sec. 6621(c)]**

(c) INTEREST ON SUBSTANTIAL UNDERPAYMENTS ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS.—

(1) IN GENERAL.—In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the annual rate of interest established under this section shall be 120 percent of the underpayment rate established under this subsection.

(2) SUBSTANTIAL UNDERPAYMENT ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS.—For purposes of this subsection, the term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $1,000.

(3) TAX MOTIVATED TRANSACTIONS.—

(A) IN GENERAL.—For purposes of this subsection, the term "tax motivated transaction" means—

(i) any valuation overstatement (within the meaning of section 6659(c)),

(ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),

(iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092), and

(iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and

(v) any sham or fraudulent transaction.

(B) REGULATORY AUTHORITY.—The Secretary may by regulations specify other types of transactions which will be treated as tax motivated for purposes of this subsection and may by regulations provide that specified transactions being treated as tax motivated will no longer be so treated. In prescribing regulations under the preceding sentence, the Secretary shall take into account—

(i) the ratio of tax benefits to cash invested,

(ii) the methods of promotion the use of this type of transaction, and

(iii) other relevant considerations.

(C) EFFECTIVE DATE FOR REGULATIONS.—Any regulations prescribed under subparagraph (A)(iv) or (B) shall apply only to interest accruing after a date (specified in such regulations) which is after the date on which such regulations are prescribed.

(4) JURISDICTION OF TAX COURT.—In the case of any proceeding in the Tax Court for a redetermination of a deficiency, the Tax Court shall also have jurisdiction to determine the portion (if any) of such deficiency which is a substantial underpayment attributable to tax motivated transactions.

**Amendments**

**P.L. 99-514, § 1511(a):**

**Act Sec. 1511(a)** amended Code Sec. 6621 by striking out subsection (c). Prior to amendment, Code Sec. 6621(c) read as follows:

(c) DEFINITION OF PRIME RATE.—For purposes of subsection (b), the term "adjusted prime rate charged by banks" means the average predominant prime rate quoted by commercial banks to large businesses, as determined by the Board of Governors of the Federal Reserve System.

**P.L. 99-514, § 1511(c)(1)(A)-(C):**

**Act Sec. 1511(c)(1)(A)-(C)** amended Code Sec. 6621 by redesignating subsection (d) as subsection (c), by striking out "the adjusted rate established under subsection (b)" in subsection (c)(1) (as so redesignated) and inserting in lieu thereof "the underpayment rate established under this section", and by striking out "annual" in subsection (c)(1) (as so redesignated).

**The above amendments apply for purposes of determining interest for periods after December 31, 1986.**



©1986, Commerce Clearing House, Inc.

A-1

*Example (5).* A, an individual, is liable for an addition to tax under section 6654 for the underpayment of estimated tax from April 15, 1975 until January 15, 1976. The addition to tax shall be computed at the annual rate of 6 percent per annum from April 15, 1975, to June 30, 1975, and at the annual rate of 9 percent per annum from June 30, 1975, to January 15, 1976.

*Example (6).* B, an individual, files an income tax return for calendar year 1980 on April 15, 1981, showing a tax due of $1,000. B pays the $1,000 on March 1, 1983. Under section 6601(a), interest on the $1,000 underpayment is due from April 15, 1981, to March 1, 1983. Such interest is computed at the rate of 12 percent per annum, simple interest from April 15, 1981, to January 31, 1982, and at the rate of 20 percent per annum, simple interest from January 31, 1982, to December 31, 1982, and at the rate of 16 percent per annum, compounded daily, from December 31, 1982, to March 1, 1983. The total simple interest accrued but unpaid at the end of December 31, 1982, is combined with the $1,000 underpayment for purposes of determining the amount of daily compounded interest to be charged from December 31, 1982, to March 1, 1983. [Reg. § 301.6621-1.]

[*T. D.* 7384, 10-21-75. *Amended by T. D.* 7907, 8-22-83.]

**§ 301.6621-2T. Questions and answers relating to the increased rate of interest on substantial underpayments attributable to certain tax motivated transactions.**

The following questions and answers relate to the increased rate of interest on substantial underpayments attributable to certain tax motivated transactions as provided in section 6621(d) of the Internal Revenue Code of 1954, as added by section 144 of the Tax Reform Act of 1984 (Pub. L. 98-369, 98 Stat. 682):

*Q-1. What is the annual interest rate under section 6621 for purposes of computing the amount of interest that must be paid under section 6601 (relating to interest on underpayments)?*

A-1. In general, the annual interest rate for purposes of section 6601 is the adjusted rate of interest established under section 6621(b) and § 301.6621-1 ("adjusted rate"). If, however, a tax motivated underpayment (as defined in A-2 of this section) for a taxable year is substantial (as defined in A-7 of this section), section 6621(d) provides that the annual rate of interest with respect to the tax motivated underpayment is 120 percent of the adjusted rate ("120 percent rate"), rounded to the nearest tenth of a percent.

*Q-2. What is a tax motivated underpayment?*

A-2. A tax motivated underpayment is the portion of a deficiency (as defined in section 6211) of tax imposed by subtitle A (income taxes) that is attributable to any of the following tax motivated transactions:

(1) Any instance in which the value of any property, or the adjusted basis of any property, claimed on a return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (*i. e.,* a valuation overstatement within the meaning of section 6659(c)(1));

(2) Any loss disallowed for any period by reason of section 465(a) or any amount included in gross income by reason of section 465(e);

(3) Any credit disallowed for any period by reason of section 46(c)(8) or section 48(d)(6);

(4) Any loss disallowed for any period with respect to a straddle, as defined in section 1092(c), but without regard to sections 1092(d) and (e);

(5) Any use of an accounting method that may result in a substantial distortion of income for any period (see A-3 of this section); and

(6) Any deduction disallowed with respect to any other tax motivated transactions (see A-4 of this section).

*Q-3. What accounting methods may result in a substantial distortion of income for any period under A-2(5) of this section?*

A-3. A deduction or credit disallowed, or income included, in any of the circumstances listed below shall be treated as attributable to the use of an accounting method that may result in a substantial distortion of income and shall thus be a tax motivated transaction that results in a tax motivated underpayment:

(1) Any deduction disallowed for any period by reason of section 464 or section 278(b), relating to certain expenses of farming syndicates;

(2) In the case of a taxpayer who computes taxable income using the cash receipts and disbursements method of accounting, any interest deduction disallowed for any period by reason of section 461(g), relating to prepaid interest, provided the interest is not paid with respect to indebtedness incurred in connection with (i) the purchase, refinancing, or improvement of the principal residence of the taxpayer, or (ii) the purchase of consumer goods by the taxpayer;

(3) Any interest deduction disallowed for any period because the amount of the claimed deduction was computed using a method resulting in an amount of interest for a period that exceeds the true cost of the indebtedness for the period computed



© 1985, Commerce Clearing House, Inc.

by applying the effective rate of interest on the loan to the unpaid balance of the loan for the period (*i.e.*, the economic accrual of interest for the period), provided the interest is not accrued with respect to indebtedness incurred in connection with (i) the purchase, refinancing, or improvement of the principal residence of the taxpayer, or (ii) the purchase of consumer goods by the taxpayer (see Rev. Rul. 83-84, 1983-1 C. B. 97, and sections 163(e), 446(b), and 483);

(4) Any deduction disallowed for any period under section 709, relating to organization or syndication expenditures of a partnership;

(5) In the case of any expenditure described in section 248(b) that was incurred by an S corporation, any deduction disallowed because it exceeds the amount allowable under section 248, relating to organizational expenditures;

(6) Any deduction disallowed for any period under section 267(a), relating to transactions between related taxpayers;

(7) Any deduction disallowed for any period, or any income required to be included for any period, under section 467, relating to certain payments for the use of property or services;

(8) Any deduction disallowed for any period under section 461(i), relating to certain deductions of tax shelters; and

(9) In the case of a taxpayer who computes taxable income using the cash receipts and disbursements method of accounting, any deduction disallowed for any period because (i) the expenditure resulting in the deduction was a deposit rather than a payment, (ii) the expenditure was prepaid for tax avoidance purposes and not for a business purpose, or (iii) the deduction resulted in a material distortion of income (see, *e.g.*, Rev. Rul. 79-229, 1979-2 C. B. 210).

*Q-4. Are any transactions other than those specified in A-2 of this section and those involving the use of accounting methods under circumstances specified in A-3 of this section considered tax motivated transactions under A-2(6) of this section?*

A-4. Yes. Deductions disallowed under the following provisions are considered to be attributable to tax motivated transactions:

(1) Any deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit, and

(2) Any deduction disallowed for any period under section 165(c)(2), relating to any transaction not entered into for profit.

*Q-5. How is the amount of a tax motivated underpayment determined?*

A-5. Except as provided in A-6 of this section, the amount of a tax motivated underpayment is determined in the following manner:

(1) Calculate the amount of the tax liability for the taxable year as if all items of income, gain, loss, deduction, or credit, had been reported properly on the income tax return of the taxpayer ("total tax liability"); and

(2) Without taking into account any adjustments to items of income, gain, loss, deduction, or credit that are attributable to tax motivated transactions (as defined in A-2 through A-4 of this section), calculate the amount of the tax liability for the taxable year as if all other items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of the taxpayer ("tax liability without regard to tax motivated transactions").

(3) The difference between the total tax liability and the tax liability without regard to tax motivated transactions is the amount of the tax motivated underpayment.

*Example.* Taxpayer A, a calendar year taxpayer, files his 1984 income tax return reporting $70,000 of taxable income and $23,171 of tax liability. On January 20, 1986, A enters into a closing agreement with the Internal Revenue Service that includes the following adjustments:

| | |
|---|---|
| Section 162 deduction disallowed (not tax motivated) | $ 7,500 |
| Loss disallowed under section 465 (tax motivated—see A-2 (2) of this section) | $ 5,000 |
| Section 170 deduction disallowed because of a valuation overstatement (tax motivated—see A-2 (1) of this section) | $10,000 |
| Loss disallowed with respect to a straddle as defined in section 1092 (c) (tax motivated—see A-2 (4) of this section) | $ 7,000 |
| Other adjustments (none of which are tax motivated) | $ 4,000 |

The tax motivated underpayment is determined in the following manner:

| | | |
|---|---|---|
| 1. | $ 70,000 | reported taxable income |
| | + 33,500 | (add all adjustments to items of income, gain, loss, deduction, or credit (including tax motivated transactions subject to section 6621(d))) |
| | $103,500 | tax = $39,685 ("total tax liability") |
| 2. | $ 70,000 | reported taxable income |
| | + 11,500 | (add adjustments to items of income, gain, loss, deduction, or credit other than those with respect to items that are tax motivated) |

$ 81,500 tax = $28,691 ("tax liability without regard to tax motivated transactions")

The tax motivated underpayment (*i. e.*, the underpayment attributable to tax motivated transactions) is $10,994 ($39,685 − $28,691). Accordingly, the interest on $10,994 would be computed at the 120 percent rate.

The remainder of the underpayment (*i. e.*, the underpayment not attributable to tax motivated transactions) is $5,520 ($28,691 (tax liability without regard to tax motivated items) − $23,171 (tax paid with return)). The interest on $5,520 would be computed at the adjusted rate.

*Q-6: How are the amounts of the tax motivated underpayment and the underpayment attributable to fraud or negligence determined if all or a portion of the taxpayer's underpayment is attributable to one or more tax motivated transactions and all or a portion is subject to the addition to tax imposed by section 6653(a)(2) (in the case of an underpayment attributable to negligence or intentional disregard) or section 6653(b)(2) (in the case of an underpayment attributable to fraud)?*

A-6: If all or a portion of the taxpayer's underpayment is attributable to tax motivated transactions, and all or a portion is attributable to fraudulent or negligent items (*i. e.*, items that result in an underpayment subject to the addition to tax imposed by section 6653(a)(2) or (b)(2)), the amount of the tax motivated underpayment and the underpayment attributable to fraud or negligence is determined in the following manner:

(1) Determine the following amounts:

(i) The tax liability for the taxable year of the taxpayer as if all items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of the taxpayer ("total tax liability");

(ii) The tax liability for the taxable year of the taxpayer as if all items of income, gain, loss, deduction, or credit without taking into account adjustments to items of income, gain, loss, deduction, or credit that are both (a) attributable to tax motivated transactions and (b) subject to section 6653(a)(2) or section 6653(b)(2), had been reported properly on the income tax return of the taxpayer ("tax liability without regard to fraudulent or negligent tax motivated items");

(iii) The tax liability for the taxable year of the taxpayer as if all items of income, gain, loss, deduction, or credit, without taking into account adjustments to items of income, gain, loss, deduction, or credit that are subject to section 6653(a)(2) or section 6653(b)(2), had been reported properly on the income tax return of the taxpayer ("tax liability without regard to fraudulent or negligent items");

(iv) The tax liability for the taxable year of the taxpayer as if all items of income, gain, loss, deduction, or credit, without taking into account adjustments to items of income, gain, loss, deduction, or credit that are either subject to section 6653(a)(2) or section 6653(b)(2) or attributable to tax motivated transactions, had been reported properly on the income tax return of the taxpayer ("tax liability without regard to tax motivated or fraudulent or negligent items").

(2) The tax motivated underpayment attributable to fraudulent or negligent items is the excess of the total tax liability over the tax liability determined without regard to fraudulent or negligent tax motivated items ((i)-(ii)).

(3) The tax motivated underpayment is the sum of (a) the tax motivated underpayment attributable to fraudulent or negligent items ((i)-(ii)) plus (b) the excess of the tax liability without regard to fraudulent or negligent items over the tax liability without regard to tax motivated or fraudulent or negligent items ((iii)-(iv)). Interest on this underpayment is computed at the 120 percent rate.

(4) The underpayment attributable to fraudulent or negligent items is the excess of the total tax liability over the tax liability without regard to fraudulent or negligent items ((i)-(iii)). The section 6653 addition to tax is 50 percent of the interest on this underpayment computed at the 120 percent rate on an amount equal to the tax motivated underpayment attributable to fraudulent or negligent items (computed in (2)) and at the adjusted rate on the remainder.

*Example.* Taxpayer A, a calendar year taxpayer, files his 1984 income tax return reporting $70,000 of taxable income and $23,171 of tax liability. On January 20, 1986, A enters into a closing agreement with the Internal Revenue Service that includes the following adjustments:

| | |
|---|---|
| Section 162 deduction disallowed (not tax motivated but fraudulent or negligent) | $ 7,500 |
| Loss disallowed under section 465(a) (tax motivated—see A-2(2) of this section—and fraudulent or negligent) | $ 5,000 |
| Section 170 deduction disallowed because of a valuation overstatement (tax motivated—see A-2(1) of this section—but not fraudulent or negligent) | $10,000 |
| Loss disallowed with respect to a straddle as defined in section 1092(c) (tax moti- | $ 7,000 |



© 1985, Commerce Clearing House, Inc.

A-4

# UNITED STATES CODE CONGRESSIONAL AND ADMINISTRATIVE NEWS

## 98th Congress—Second Session 1984

---

Convened January 23, 1984

Adjourned October 12, 1984

## Volume 3

LEGISLATIVE HISTORY
[PUBLIC LAWS 98–284 to 98–377]

ST. PAUL, MINN.
WEST PUBLISHING CO.

# DEFICIT REDUCTION ACT OF 1984

*P.L. 98-369, see page 98 Stat. 494*

House Report (Ways and Means Committee) No. 98-432, Oct. 21, 1983 and Mar. 5, 1984 [To accompany H.R. 4170]

House Conference Report No. 98-861, June 23, 1984 [To accompany H.R. 4170]

Cong. Record Vol. 130 (1984)

DATES OF CONSIDERATION AND PASSAGE

House April 11, May 23, June 27, 1984

Senate May 17, June 27, 1984

No Senate Report was submitted with this legislation. The House Report, Part II (this page), the House Conference Report (page 1445), Statements by Legislative Leaders (page 2140), and two Related Reports (pages 2174, and 2213) are set out.

## HOUSE REPORT NO. 98-432, Part II

* * * * *

tivities subject to penalty under either section 6700 or section 6701, or both, as appropriate. Both amendments take effect on the day after the date of enactment.

No inference should be drawn that the general injunctive power of the district courts under section 7402(a) is, in any way, limited by the action to enjoin promoters of abusive tax shelters (sec. 7408) or the action to enjoin income tax return preparers (sec. 7407). This is in accordance with *U.S.* v. *Landsberger*, 692 F.2d 501 (8th Cir., 1982).

### d. Increased rate of interest for tax shelter cases

*Present law*

Interest must be paid by the taxpayer on underpayments of tax and by the United States on overpayments of tax at the statutory rate (generally, the prime rate, compounded daily). There is no different interest rate for tax shelter cases.

*House bill*

No provision.

*Senate amendment*

In the case of tax shelter items, the rate of interest paid to taxpayers on refunds or due the IRS on underpayments is 150 percent of the statutory rate (generally, the prime rate, compounded daily). This rule applies to items arising from any plan or arrangement the principal purpose of which is the avoidance or evasion of tax in which more than 34 persons participate. The provision is effective for interest accruing after December 31, 1984.

*Conference agreement*

The conference agreement contains a modified form of the Senate amendment, which increases the interest rate on tax shelter underpayments to 120 percent of the otherwise applicable rate and modifies the definition of tax shelter in the Senate amendment.

The increased interest rate applies to an underpayment of tax attributable to one or more tax motivated transactions, if the amount of the underpayment exceeds $1,000. A tax motivated transaction is (1) any valuation overstatement of 150 percent or more, (2) any activity with respect to which a loss or an investment tax credit is disallowed by reason of the at-risk rules, (3) any tax straddle, or (4) any use of any accounting method specified in regulations as potentially resulting in a substantial distortion of income. The conferees anticipate that the following deductions and other claimed tax benefits might be considered by the Secretary to arise from accounting methods that may result in a substantial distortion of income:

(1) Deductions disallowed under section 464, relating to farming syndicates;

(2) In the case of a cash method taxpayer, interest deductions disallowed under section 461(g), relating to prepaid interest;

(3) Interest deductions disallowed because they exceed the effective rate of interest, such as under the rule of 78's;

(4) Improper deductions for syndication expenditures;

(5) Deductions disallowed under section 267(a)(2), relating to transactions between related taxpayers with different accounting methods;

(6) Failure to take into account deferred rental payments in accordance with the principles section 467, as added by this Act; and

(7) Deductions disallowed under the principles of section 461(i), as added by this Act, relating to prepayments of expenses by tax shelters.

In addition, the Secretary is given regulatory authority to specify other types of transactions that will be treated as tax motivated. He shall take into account the ratio of tax benefits to cash invested, the method of promoting this type of transaction, as well as other factors he considers relevant.

The provision is effective with respect to interest accruing after December 31, 1984, regardless of the date the return was filed.

The conferees note that a number of the provisions of recent legislation have been designed, in whole or in part, to deal with the Tax Court backlog. Examples of these provisions are the increased damages assessable for instituting or maintaining Tax Court proceedings primarily for delay or that are frivolous or groundless (sec. 6673), the adjustment of interest rates (sec. 6621), the valuation overstatement and substantial understatement penalties (secs. 6659 and 6661), and the tax straddle rules (secs. 1092 and 1256). Additionally, the conference agreement did not follow the provision of the House bill permitting certified public accountants and enrolled agents to represent a taxpayer in a small tax case because the Tax Court stated that permitting this would jeopardize the integrity of the small tax case process, which is working well.

The conferees believe that, with this amendment, the Congress has given the Tax Court sufficient tools to manage its docket, and that the responsibility for effectively managing that docket and reducing the backlog now lies with the Tax Court. The positive response that the Court has made to several recent GAO recommendations is encouraging and the conferees expect the Court to implement swiftly these and other appropriate management initiatives. The conferees also note favorably the steps the Court has begun to take in consolidating similar tax shelter cases and dispensing with lengthy opinions in routine tax protester cases. The Court should take further action in these two areas, as well as to assert, without hesitancy in appropriate instances, the penalties that the Congress has provided.

The Internal Revenue Service also has significant responsibilities in reducing the Tax Court backlog. The Service's settlement policy should be fair and flexible, and only appropriate cases should be litigated. Although in the recent past the Service has offered to settle many tax shelter cases by permitting taxpayers to deduct out of pocket expenses, the Service no longer routinely offers this as a settlement. This is a constructive change in policy, in that a taxpayer should not expect to be able to deduct out of pocket expenses regardless of the circumstances of his case. The Service should assert, without hesitancy in appropriate circumstances, the penalties that the Congress has provided. In particular, the negligence and fraud penalties are not currently being applied in a large

number of cases where their application is fully justified. The conferees note with approval the steps the Service has recently taken to eliminate the backlog in the Appeals Division.

### 2. Information reporting provisions

#### a. Returns relating to mortgage interest received in a trade or business

*Present law*

There is no requirement that recipients of mortgage interest report interest received to the Internal Revenue Service.

*House bill*

A person who, in the course of his trade or business, or a governmental agency that receives interest on obligations secured by real property must report to the Internal Revenue Service payments from a payor aggregating $600 or more and provide a copy of that report to the payor. Present law penalties for other failures to file information returns and furnish statements apply (generally, $50 per failure except in cases of intentional disregard). The provision is effective with respect to amounts received after December 31, 1984, except that no penalty is imposed on persons reporting for failure to furnish identification numbers with respect to an obligation in existence on December 31, 1984, for amounts received before January 1, 1986.

*Senate amendment*

The Senate amendment generally is the same as the House bill, except that the reporting threshold is $2,300 and the provision is effective with respect to amounts received after December 31, 1984, and except for technical differences.

*Conference agreement*

The conference agreement follows the House bill, with modifications. Thus, recipients of $600 or more of mortgage interest with respect to any obligation secured by real property will be required to report that interest to the Internal Revenue Service. The conferees choose the lower reporting threshold of the House bill because more complete reporting reduces the likelihood that the Internal Revenue Service will have to contact a taxpayer concerning claimed deductions.

At the same time, the agreement seeks to eliminate any unnecessary burden to interest recipients. The agreement provides that reporting is required only on payments received from an individual. Under the agreement, the $600 aggregate annual reporting threshold will apply on an obligation by obligation basis. Interest received on two different obligations secured by the same real property does not have to be aggregated into one report; thus, interest on each obligation may be reported separately. The agreement also provides that the Secretary may provide exceptions from this reporting requirement where such exceptions are consistent with effective reporting of mortgage interest and the matching of these reports with a specific line on the tax return. Therefore, the Secre-

# UNITED STATES CODE CONGRESSIONAL AND ADMINISTRATIVE NEWS

## 101st Congress—First Session 1989

---

Convened January 3, 1989

Adjourned November 22, 1989

## Volume 3

LEGISLATIVE HISTORY:

PUBLIC LAWS 101–189 to 101–239

ST. PAUL, MINN.
WEST PUBLISHING CO.

# OMNIBUS BUDGET RECONCILIATION ACT OF 1989

*P.L. 101-239, see page 103 Stat. 2106*

**DATES OF CONSIDERATION AND PASSAGE**

*House: October 5, November 21, 1989*
*Senate: October 13, November 21, 1989*

**House Report (Budget Committee) No. 101-247, Sept. 20, 1989**
**[To accompany H.R. 3299]**

**House Conference Report No. 101-386, Nov. 21, 1989**
**[To accompany H.R. 3299]**
**Cong. Record Vol. 135 (1989)**

*No Senate Report was submitted with this legislation. The House Report (this page) is set out below and the House Conference Report (page 3018) and the President's Signing Statement (page 3555) follow.*

## HOUSE REPORT NO. 101-247

[page III]

## CONTENTS


| | Page |
|---|---|
| Statement of the Committee on the Budget | 1 |
| Reporting of the Bill | 1 |
| Title I—Committee on Agriculture: | |
| Letter of Transmittal | 3 |
| Report to Accompany Recommendations from the Committee on Agriculture | 3 |
| CBO Cost Estimates | 23 |
| Title II—Committee on Banking, Finance, and Urban Affairs: | |
| Letter of Transmittal | 39 |
| Report to Accompany Recommendations from the Committee on Banking, Finance, and Urban Affairs | 39 |
| CBO Cost Estimates | 43 |
| Title III—Committee on Education and Labor: | |
| Letter of Transmittal | 45 |
| Report to Accompany Recommendations from the Committee on Education and Labor | 45 |
| CBO Cost Estimates | 132 |
| Title IV—Committee on Energy and Commerce: | |
| Letter of Transmittal | 327 |
| Report to Accompany Recommendations from the Committee on Energy and Commerce | 327 |
| CBO Cost Estimates | 334 |
| Title V—Committee on Government Operations: | |
| Letter of Transmittal | 845 |
| Report to Accompany Recommendations from the Committee on Government Operations | 845 |
| CBO Cost Estimates | 845 |
| Title VI—Committee on Interior and Insular Affairs: | |
| Letter of Transmittal | 857 |
| Report to Accompany Recommendations from the Committee on Interior and Insular Affairs | 857 |
| CBO Cost Estimates | 858 |




HARRIS COUNTY LAW LIBRARY
1019 CONGRESS, 17TH FLOOR
HOUSTON, TEXAS 77002

# UNITED STATES CODE CONGRESSIONAL AND ADMINISTRATIVE NEWS

## 101st Congress—First Session 1989

Convened January 3, 1989

Adjourned November 22, 1989

## Volume 4

LEGISLATIVE HISTORY:
PUBLIC LAWS 101–239 CONT'D & 101–240
PROCLAMATIONS
EXECUTIVE ORDERS
TABLES and INDEX

ST. PAUL, MINN.
WEST PUBLISHING CO.

received initially by the SSA, which IRS uses to revise its records, and (4) how taxpayers can best inform the IRS of a name or address change, prior to waiting until the next tax return filing date. A report on the study, together with any recommendations, is to be submitted to the tax-writing committees of the Congress by June 1, 1990. In the interim, the IRS should establish a procedure and contact point within the IRS where taxpayers themselves (or information return filers who obtain a exception from the taxpayer) can obtain a listing of the names that the IRS recognizes as valid when matching information returns with a particular taxpayer identification number.

*Study of service bureaus*

The bill requires the General Accounting Office, in consultation with the Treasury Department, to conduct a study of whether service bureaus engaged in the business of transmitting information returns or other documents to the IRS on behalf of other persons should be subject to registration or other regulation. A report on the study, together with any recommendations, is to be submitted to the tax-writing committees of the Congress not later than July 1, 1990.

The committee is concerned that some service bureaus may not be effectively communicating with their customers as to difficulties the IRS has encountered with the data the service bureau has transmitted on behalf of payors. This failure of communication may increase the difficulty that both the actual payor and the IRS have in resolving problems with the transmitted data. In addition, it may be difficult for payors to assess the relative competence of individual service bureaus, in that the IRS cannot legally state whether or not it has encountered problems with a particular service bureau. The GAO study should consider problems such as these.

### *Effective Dates*

The information reporting provisions of the bill generally apply to information returns and payee statements the due date for which (determined without regard to extensions) is after December 31, 1989.

2. **Accuracy penalties (sec. 11721 of the bill and new secs. 6662-6665 of the Code and secs. 6621(c), 6653, 6659, 6659A, 6660, and 6661 of the Code)**

### *Present Law*

*Negligence penalty*

If any part of an underpayment of tax required to be shown on a return is due to negligence or disregard of rules or regulations, a penalty may be imposed equal to 5 percent of the total amount of the underpayment. An underpayment of tax that is attributable to a failure to include on an income tax return an amount shown on an information return is treated as subject to the negligence penalty absent clear and convincing evidence to the contrary.

*Fraud penalty*

If any part of an underpayment of tax required to be shown on a return is due to fraud, a penalty may be imposed equal to 75 percent of the portion of the underpayment that is attributable to fraud.

*Substantial understatement penalty*

If the correct income tax liability of a taxpayer for a taxable year exceeds that reported by the taxpayer by the greater of 10 percent of the correct tax or $5,000 ($10,000 in the case of most corporations), then a substantial understatement exists and a penalty may be imposed equal to 25 percent of the underpayment of tax attributable to the understatement. In determining whether a substantial understatement exists, the amount of the understatement is reduced by any portion attributable to an item if (1) the treatment of the item on the return is or was supported by substantial authority, or (2) facts relevant to the tax treatment of the item were adequately disclosed on the return or on a statement attached to the return. Special rules apply to tax shelters.

*Valuation penalties*

If an individual, personal service corporation, or closely held corporation underpays income tax for any taxable year by $1,000 or more as a result of a valuation overstatement, then a penalty may be imposed with respect to the amount of the underpayment that is attributable to the valuation overstatement. A valuation overstatement exists if the valuation or adjusted basis of any property claimed on a return is 150 percent or more of the correct value or adjusted basis. The amount of the penalty that may be imposed increases from 10 to 20 to 30 percent of the underpayment attributable to the valuation overstatement as the percentage by which the valuation claimed exceeds the correct valuation increases. Similar penalties may be imposed with respect to (1) an underpayment of income tax that is attributable to an overstatement of pension liabilities and (2) an underpayment of estate or gift tax that is attributable to a valuation understatement.

### *Reasons for Change*

The committee believes that the number of different penalties that relate to accuracy of a tax return, as well as the potential for overlapping among many of these penalties, causes confusion among taxpayers and leads to difficulties in administering these penalties by the IRS. Consequently, the committee has revised these penalties and consolidated them. The committee believes that its changes will significantly improve the fairness, comprehensibility, and administrability of these penalties.

### *Explanation of Provisions*

*Overview*

The bill consolidates into one part of the Internal Revenue Code all of the generally applicable penalties relating to the accuracy of tax returns. The penalties that are consolidated are the negligence



penalty,
penalties
the fraud
penalties
structure
The bill
cember 3

*Accuracy*

The ac
percent, a
utable to
income ta
substantia
tial estate

*(1)*

If an un
ligence pe
that is at
law, to the
from prese
payment i
plies to th
negligence
under pres
small porti
the same p
of which is
the first ta
second tax
negligence
utable to ne
Negligenc
gard of rule
sonable atte
tion, the bil
underpayme
payment is
amount sho
even in the
failure is sti

*(2) Su*

The accur
underpayme
of income ta
ty provided
First, the ra
pands the li
rently conta
lations, priv
on decisions,
leases, notic

penalty, the substantial understatement penalty, and the valuation penalties. These consolidated penalties are also coordinated with the fraud penalty. The bill repeals the present-law versions of these penalties. The bill reorganizes the accuracy penalties into a new structure that operates to eliminate any stacking of the penalties. The bill is effective for returns the due date for which is after December 31, 1989.

*Accuracy-related penalty*

The accuracy-related penalty, which is imposed at a rate of 20 percent, applies to the portion of any underpayment that is attributable to (1) negligence, (2) any substantial understatement of income tax, (3) any substantial valuation overstatement, (4) any substantial overstatement of pension liabilities, or (5) any substantial estate or gift tax valuation understatement.

*(1) Negligence*

If an underpayment of tax is attributable to negligence, the negligence penalty is to apply only to the portion of the underpayment that is attributable to negligence rather than, as under present law, to the entire underpayment of tax. This is a significant change from present law. Under present law, if any portion of an underpayment is attributable to negligence, the negligence penalty applies to the entire underpayment (both the portion attributable to negligence and the portion not attributable to negligence). Thus, under present law, a taxpayer who has an underpayment, only a small portion of which was attributable to negligence, is subject to the same penalty as a taxpayer with the same underpayment, all of which is attributable to negligence, even though the behavior of the first taxpayer is arguably less culpable than the behavior of the second taxpayer. The bill rectifies this inequity by applying the negligence penalty only to the portion of the underpayment attributable to negligence.

Negligence includes any careless, reckless, or intentional disregard of rules or regulations, as well as any failure to make a reasonable attempt to comply with the provisions of the Code. In addition, the bill repeals the present-law presumption under which an underpayment is treated as attributable to negligence if the underpayment is due to a failure to include on an income tax return an amount shown on an information return. As a practical matter, even in the absence of a statutory presumption, evidence of such a failure is still strong evidence of negligence.

*(2) Substantial understatement of income tax*

The accuracy-related penalty that applies to the portion of an underpayment that is attributable to a substantial understatement of income tax is the same as the substantial understatement penalty provided under present law with three principal modifications. First, the rate is lowered to 20 percent. Second, the committee expands the list of authorities upon which taxpayers may rely (currently contained in Treasury regulations) to include proposed regulations, private letter rulings, technical advice memoranda, actions on decisions, general counsel memoranda, information or press releases, notices, and any other similar documents published by the

IRS in the *Internal Revenue Bulletin.*[79] In addition, the list of authorities is to include General Explanations of tax legislation prepared by the Joint Committee on Taxation (the "Blue Book"). Third, the bill requires the IRS to publish not less frequently than annually a list of positions for which the IRS believes there is no substantial authority and which affect a significant number of taxpayers. The purpose of this list is to assist taxpayers in determining whether a position should be disclosed in order to avoid the substantial understatement penalty. Thus, if a taxpayer takes a position that is enumerated on this list, the taxpayer could choose to disclose that position to avoid imposition of the substantial understatement component of the accuracy-related penalty. However, inclusion of a position on this list is not conclusive as to whether or not substantial authority exists with respect to that position. If, however, there is litigation as to whether there is substantial authority, and the court concludes that the IRS is correct in the belief that there is not substantial authority for the position, then this penalty would apply. The committee believes that this list will be useful to taxpayers, in that it will assist taxpayers in determining whether substantial authority exists with respect to a particular issue on the list. Although the list is not exclusive, the committee intends that the IRS make the list as comprehensive as practical, which will make it more useful to taxpayers and their advisors. The committee intends that there should be no inference that substantial authority exists with respect to positions that are not included on this list. Disclosure of a position for purposes of this penalty does not necessarily prevent imposition of the negligence penalty. Thus, for example, if a taxpayer discloses a frivolous position, the imposition of the negligence penalty could be appropriate.

*(3) Substantial valuation overstatement*

The penalty that is to apply to the portion of an underpayment that is attributable to a substantial valuation overstatement is generally the same as the valuation overstatement penalty provided under present law with five principal modifications. First, the bill extends the penalty to all taxpayers. The committee believes that this modification increases the fairness of this component of the accuracy-related penalty, in that the penalty is imposed upon proscribed behavior, regardless of who engages in it. Second, a substantial valuation overstatement exists if the value or adjusted basis of any property claimed on a return is 200 percent or more of the correct value or adjusted basis. Third, the penalty is to apply only if the amount of the underpayment attributable to a valuation overstatement exceeds $5,000 ($10,000 in the case of most corporations). This increases five-fold the threshold below which the penalty does not apply to individuals. Fourth, the amount of the penalty

[79] The committee's intent is to broaden the list of authorities upon which taxpayers may rely. The committee would, however, permit the Treasury to issue regulations providing that specific items on the committee's list of additional authorities (except for proposed regulations not yet superceded or "Blue Books") that were issued prior to the date of enactment of this bill may not be considered to be substantial authority. For example, Treasury regulations could provide that private letter rulings issued prior to the date they began to be publicly disseminated are not substantial authority. Any such limitation should, however, be as narrow as practicable, in order to further the committee's general intent that the list of authorities on which taxpayers may rely should be broadened.



for a sub
amount of
is 200 pe
value or a
that the
basis clai
ed basis. T
to charital
ing both t
from the
ation disp
As under
within the
related pe
ble to neg
ment of in

*(4)*

The acc
statements
present-la
modified t
subject to
the actuar
count for p
or (2) of se
mined to
claims 150
be correct)
underpaym
$1,000.

*(5) S*

The accu
gift tax va
the present
er, modifie
is subject t
on an esta
determined
to claims t
to be corre
law penalt
penalty do
lieves that
will elimin
good-faith
present law

*(6) G*

The bill
to be doubl
ments. The
first is the

for a substantial valuation overstatement is 20 percent of the amount of the underpayment if the value or adjusted basis claimed is 200 percent or more but less than 400 percent of the correct value or adjusted basis. Fifth, as explained below, the bill provides that the rate of this penalty is doubled if the value or adjusted basis claimed is 400 percent or more of the correct value or adjusted basis. The bill retains the special rules in present law that apply to charitable deduction property. The committee believes that raising both the threshold and the minimum percentage will eliminate from the penalty's scope a number of instances of good-faith valuation disputes that may be subject to penalty under present law. As under present law, valuation misstatements that do not fall within the scope of this or the following elements of the accuracy-related penalty may still be subject to penalty if they are attributable to negligence or fraud or give rise to a substantial understatement of income tax.

### *(4) Substantial overstatement of pension liabilities*

The accuracy-related penalty also applies to substantial overstatements of pension liabilities. This penalty is derived from the present-law penalty in section 6659A. The committee has, however, modified the present-law penalty by providing that the taxpayer is subject to this component of the accuracy-related penalty only if the actuarial determination of pension liabilities (taken into account for purposes of computing the deduction under paragraph (1) or (2) of section 404(a)) is 200 percent or more of the amount determined to be correct (under present law, the penalty applies to claims 150 percent or more in excess of the amount determined to be correct). As under present law, this penalty applies only if the underpayment attributable to the valuation overstatement exceeds $1,000.

### *(5) Substantial estate or gift tax valuation understatement*

The accuracy-related penalty also applies to substantial estate or gift tax valuation understatements. This penalty is derived from the present-law penalty in section 6660. The committee has, however, modified the present-law penalty by providing that the taxpayer is subject to this penalty only if the value of any property claimed on an estate or gift tax return is 50 percent or less of the amount determined to be correct. (Under present law, the penalty applies to claims that are 66 2/3 percent or less of the amount determined to be correct.) In addition, the committee has modified the present-law penalty by increasing five-fold the threshold below which the penalty does not apply, from $1,000 to $5,000. The committee believes that raising both the threshold and the minimum percentage will eliminate from the penalty's scope a number of instances of good-faith valuation disputes that may be subject to penalty under present law.

### *(6) Gross valuation misstatements*

The bill provides that the rate of the general accuracy penalty is to be doubled (to 40 percent) in the case of gross valuation misstatements. There are three types of gross valuation misstatements. The first is the same as the substantial valuation overstatement compo-

nent of the accuracy-related penalty, except that the doubling is to apply only to valuation overstatements claimed on a return that are 400 percent or more of the amount determined to be the correct amount. The second is the same as the substantial overstatement of pension liabilities component of the accuracy-related penalty, except that the doubling is to apply only to overstatements of pension liabilities that are 400 percent or more of the amount determined to be the correct amount. The third is the same as the substantial estate or gift tax valuation understatement component of the accuracy-related penalty, except that the doubling is to apply only to valuations claimed on the estate or gift tax return that are 25 percent or less of the amount determined to be the correct amount.

*Fraud penalty*

The fraud penalty, which is imposed at a rate of 75 percent, applies to the portion of any underpayment that is attributable to fraud.

The committee has retained the special rule in present law that determines the portion of the understatement that is attributable to fraud. The bill provides that, if the IRS establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud, except with respect to any item that the taxpayer establishes is not attributable to fraud. The committee has clarified the taxpayer's burden of proof in establishing the items not attributable to fraud (present law is unclear on this issue). The committee has provided that the taxpayer must establish the items not attributable to fraud by a preponderance of the evidence. The committee has not altered the present-law burden of proof imposed on the IRS in establishing fraud initially; the IRS must continue to meet its burden of proof by clear and convincing evidence. The committee believes that it is appropriate that the burden imposed on the IRS be higher than the burden imposed on a taxpayer in these circumstances.

Under the bill, the accuracy-related penalty is not to apply to any portion of an underpayment on which the fraud penalty is imposed. (Under present law, the fraud penalty is coordinated in this manner with the negligence penalty, but not with the other components of the accuracy-related penalty.) However, the accuracy-related penalty may be applied to any portion of the underpayment that is not attributable to fraud.

*Definitions and special rules*

The bill provides special rules that apply to each of the penalties imposed under the new structure. First, the bill provides standardized exception criteria for all of these accuracy-related penalties. The bill provides that no penalty is to be imposed if it is shown that there was reasonable cause for an underpayment and the taxpayer acted in good faith. The enactment of this standardized exception criterion is designed to permit the courts to review the assertion of penalties under the same standards that apply in reviewing additional tax that the Internal Revenue Service asserts is due. By applying this unified exception criterion to all the accuracy-related penalties, the committee believes that taxpayers will more

easily understand the standard of behavior that is required. The committee also believes that this unified exception criterion will simplify the administration of these penalties by the IRS.

The committee is concerned that the present-law accuracy-related penalties (particularly the penalty for substantial understatements of tax liability) have been determined too routinely and automatically by the IRS. The committee expects that enactment of standardized exception criterion will lead the IRS to consider fully whether imposition of these penalties is appropriate before determining these penalties.

In addition, the committee has designed this standardized exception criterion to provide greater scope for judicial review of IRS determinations of these penalties. Under the waiver provision contained in present law, the Tax Court has held that it can overturn an IRS determination of the substantial understatement penalty on reasonable cause and good faith grounds only if the Tax Court finds that the IRS abused its discretion in asserting the penalty. The committee believes that it is appropriate for the courts to review the determination of the accuracy-related penalties by the same general standard applicable to their review of the additional taxes that the IRS determines are owed. The committee believes that providing greater scope for judicial review of IRS determinations of these penalties will lead to greater fairness of the penalty structure and minimize inappropriate determinations of these penalties.

The committee believes that the application of standardized exception criteria to the negligence component of the accuracy-related penalty will result in several consequences that are beneficial to taxpayers. First, the complete, item-specific disclosure of a non-frivolous position on a tax return may generally be considered to permit an exception from the negligence penalty insofar as such disclosure would tend to demonstrate that there was no intentional disregard of rules or regulations. Disclosure must be full and substantive, parallel to the disclosure required under the substantial understatement component of the accuracy-related penalty; completing and filling in a tax form is by itself insufficient disclosure for this purpose. In addition, the disclosure must be clearly identified as being made to avoid the imposition of the accuracy-related penalty. Imposition of the negligence component of the accuracy-related penalty would not be eligible for exception due to disclosure where the taxpayer fails to keep proper books and records or to substantiate items properly. Second, the application of standardized exception criteria to the negligence component of the accuracy-related penalty may also permit a taxpayer to avoid imposition of that penalty where the taxpayer makes a good-faith challenge to the validity of an IRS regulation, if the taxpayer discloses (in the manner just described) that the taxpayer is taking the position and makes specific reference to the regulation being challenged. As under present law, frivolous challenges to IRS regulations would be subject to penalty. The committee intends that the terms "reasonable cause" and "good faith" be interpreted under the bill as those terms are interpreted under present law.

Second, the bill provides that an accuracy-related or fraud penalty is to be imposed only if a return has been filed. This is intended