to improve the coordination between the accuracy-related penalties and the failure to file penalties. Under present law, the courts have dealt with a number of difficult interpretative issues on the relationship between the penalty for failure to file a tax return and the accuracy-related penalties. The committee determined that it would clarify the law if the penalty for failure to file were entirely separate and distinct from the accuracy-related penalties. (The bill also provides for an increase in the failure to file penalty where that failure is due to fraudulent failure to file.)

Third, the bill provides a standard definition of underpayment for all of the accuracy-related penalties. This standard definition is intended to simplify and coordinate the definitions in present law; it is not intended to be substantively different from present law.

The bill retains the general rule of present law that interest on these penalties commences with the date the return was required to be filed. The committee believes this rule is appropriate because the behavior being penalized is reflected on the tax return, so that imposition of interest from this date will reduce the incentives of taxpayers and their advisors to "play the audit lottery."

*Repeal of present-law penalties*

The bill repeals the present-law penalties for negligence and fraud,[80] substantial understatements of liability,[81] valuation overstatements,[82] and valuation understatements for purposes of estate or gift taxes [83]. The bill also repeals the special negligence rules applicable to straddles [84] and to amounts shown on information returns.[85] The committee believes that, by repealing the special rule applicable to information returns, the burdens on taxpayers will be reduced. Finally, the bill repeals the higher interest rate that applies to substantial underpayments that are attributable to tax-motivated transactions.[86]

### *Effective Date*

The accuracy provisions of the bill generally apply to returns the due date for which (determined without regard to extensions) is after December 31, 1989.

3. **Preparer, promoter, and protester penalties (secs. 11731-11739 of the bill and new sec. 6673 of the Code and secs. 6672, 6694, 6695, 6700, 6701, 6702, 7216, and 7407 of the Code)**

### *Present Law*

*Return preparer penalties*

An income tax return preparer is subject to a penalty of $100 if any part of an understatement of tax on a return or claim for refund is due to the return preparer's negligent or intentional dis-

[80] Present-law section 6653. The portion of 6653 applicable to stamp taxes is retained.
[81] Present-law sec. 6661.
[82] Present-law secs. 6659 and 6659A.
[83] Present-law sec. 6660.
[84] Present-law sec. 6653(f).
[85] Present-law sec. 6653(g).
[86] Present-law sec. 6621(c).

attributable to the understatement. In determining whether a substantial understatement exists, the amount of the understatement is reduced by any portion attributable to an item if (1) the treatment of the item on the return is or was supported by substantial authority, or (2) facts relevant to the tax treatment of the item were adequately disclosed on the return or on a statement attached to the return. Special rules apply to tax shelters.

*Valuation penalties*

If an individual, personal service corporation, or closely held corporation underpays income tax for any taxable year by $1,000 or more as a result of a valuation overstatement, then a penalty may be imposed with respect to the amount of the underpayment that is attributable to the valuation overstatement. A valuable overstatement exists if the valuation or adjusted basis of any property claimed on a return is 150 percent or more of the correct value or adjusted basis. The amount of the penalty that may be imposed increases from 10 to 20 to 30 percent of the underpayment attributable to the valuation overstatement as the percentage by which the valuation claimed exceeds the correct valuation increases. Similar penalties may be imposed with respect to (1) an underpayment of income tax that is attributable to an overstatement of pension liabilities and (2) an underpayment of estate or gift tax that is attributable to a valuation understatement.

*House bill*

*Overview*

The bill consolidates into one part of the Internal Revenue Code all of the generally applicable penalties relating to the accuracy of tax returns. The penalties that are consolidated are the negligence penalty, the substantial understatement penalty, and the valuation penalties. These consolidated penalties are also coordinated with the fraud penalty. The bill repeals the present-law versions of these penalties. The bill reorganizes the accuracy penalties into a new structure that operates to eliminate any stacking of the penalties.

The accuracy provisions of the bill generally apply to returns the due date for which (determined without regard to extensions) is after December 31, 1989.

*Accuracy-related penalty*

The accuracy-related penalty, which is imposed at a rate of 20 percent, applies to the portion of any underpayment that is attributable to (1) negligence, (2) any substantial understatement of income tax, (3) any substantial valuation overstatement, (4) any substantial overstatement of pension liabilities, or (5) any substantial estate or gift tax valuation understatement.

*(1) Negligence.*—If an underpayment of tax is attributable to negligence, the negligence penalty is to apply only to the portion of the underpayment that is attributable to negligence rather than, as under present law, to the entire underpayment of tax.

Negligence includes any careless, reckless, or intentional disregard of rules or regulations, as well as any failure to make a reasonable attempt to comply with the provisions of the Code. In addi-

tion, the House bill repeals the present-law presumption under which an underpayment is treated as attributable to negligence if the underpayment is due to a failure to include on an income tax return an amount shown on an information return.

*(2) Substantial understatement of income tax.*—The accuracy-related penalty that applies to the portion of an underpayment that is attributable to a substantial understatement of income tax is the same as the substantial understatement penalty provided under present law with three principal modifications. First, the rate is lowered to 20 percent. Second, the committee expands the list of authorities upon which taxpayers may rely (currently contained in Treasury regulations) to include proposed regulations, private letter rulings, technical advice memoranda, actions on decisions, general counsel memoranda, information or press releases, notices, and any other similar documents published by the IRS in the *Internal Revenue Bulletin*. In addition, the list of authorities is to include General Explanations of tax legislation prepared by the Joint Committee on Taxation (the "Blue Book"). Third, the House bill requires the IRS to publish not less frequently than annually a list of positions for which the IRS believes there is no substantial authority and which affect a significant number of taxpayers.

*(3) Substantial valuation overstatement.*—The penalty that is to apply to the portion of an underpayment that is attributable to a substantial valuation overstatement is generally the same as the valuation overstatement penalty provided under present law with five principal modifications. First, the House bill extends the penalty to all taxpayers. Second, a substantial valuation overstatement exists if the value or adjusted basis of any property claimed on a return is 200 percent or more of the correct value or adjusted basis. Third, the penalty is to apply only if the amount of the underpayment attributable to a valuation overstatement exceeds $5,000 ($10,000 in the case of most corporations). Fourth, the amount of the penalty for a substantial valuation overstatement is 20 percent of the amount of the underpayment if the value or adjusted basis claimed is 200 percent or more but less than 400 percent of the correct value or adjusted basis. Fifth, as explained below, the House bill provides that the rate of this penalty is doubled if the value or adjusted basis claimed is 400 percent or more of the correct value or adjusted basis. The House bill retains the special rules in present law that apply to charitable deduction property.

*(4) Substantial overstatement of pension liabilities.*—The accuracy-related penalty also applies to substantial overstatements of pension liabilities. This penalty is derived from the present-law penalty in section 6659A. The House bill modifies the present-law penalty by providing that the taxpayer is subject to this component of the accuracy-related penalty only if the actuarial determination of pension liabilities is 200 percent or more of the amount determined to be correct.

*(5) Substantial estate or gift tax valuation understatement.*—The accuracy-related penalty also applies to substantial estate or gift tax valuation understatements. This penalty is derived from the present-law penalty in section 6660. The House bill modifies the present-law penalty by providing that the taxpayer is subject to this penalty only if the value of any property claimed on an estate

tion, the House bill repeals the present-law presumption under which an underpayment is treated as attributable to negligence if the underpayment is due to a failure to include on an income tax return an amount shown on an information return.

*(2) Substantial understatement of income tax.*—The accuracy-related penalty that applies to the portion of an underpayment that is attributable to a substantial understatement of income tax is the same as the substantial understatement penalty provided under present law with three principal modifications. First, the rate is lowered to 20 percent. Second, the committee expands the list of authorities upon which taxpayers may rely (currently contained in Treasury regulations) to include proposed regulations, private letter rulings, technical advice memoranda, actions on decisions, general counsel memoranda, information or press releases, notices, and any other similar documents published by the IRS in the *Internal Revenue Bulletin*. In addition, the list of authorities is to include General Explanations of tax legislation prepared by the Joint Committee on Taxation (the "Blue Book"). Third, the House bill requires the IRS to publish not less frequently than annually a list of positions for which the IRS believes there is no substantial authority and which affect a significant number of taxpayers.

*(3) Substantial valuation overstatement.*—The penalty that is to apply to the portion of an underpayment that is attributable to a substantial valuation overstatement is generally the same as the valuation overstatement penalty provided under present law with five principal modifications. First, the House bill extends the penalty to all taxpayers. Second, a substantial valuation overstatement exists if the value or adjusted basis of any property claimed on a return is 200 percent or more of the correct value or adjusted basis. Third, the penalty is to apply only if the amount of the underpayment attributable to a valuation overstatement exceeds $5,000 ($10,000 in the case of most corporations). Fourth, the amount of the penalty for a substantial valuation overstatement is 20 percent of the amount of the underpayment if the value or adjusted basis claimed is 200 percent or more but less than 400 percent of the correct value or adjusted basis. Fifth, as explained below, the House bill provides that the rate of this penalty is doubled if the value or adjusted basis claimed is 400 percent or more of the correct value or adjusted basis. The House bill retains the special rules in present law that apply to charitable deduction property.

*(4) Substantial overstatement of pension liabilities.*—The accuracy-related penalty also applies to substantial overstatements of pension liabilities. This penalty is derived from the present-law penalty in section 6659A. The House bill modifies the present-law penalty by providing that the taxpayer is subject to this component of the accuracy-related penalty only if the actuarial determination of pension liabilities is 200 percent or more of the amount determined to be correct.

*(5) Substantial estate or gift tax valuation understatement.*—The accuracy-related penalty also applies to substantial estate or gift tax valuation understatements. This penalty is derived from the present-law penalty in section 6660. The House bill modifies the present-law penalty by providing that the taxpayer is subject to this penalty only if the value of any property claimed on an estate

or gift tax return is 50 percent or less of the amount determined to be correct. In addition, the House bill modifies the present-law penalty by increasing five-fold the threshold below which the penalty does not apply, from $1,000 to $5,000.

*(6) Gross valuation misstatements.*—The House bill provides that the rate of the general accuracy penalty is to be doubled (to 40 percent) in the case of gross valuation misstatements. There are three types of gross valuation misstatements. The first is the same as the substantial valuation overstatement component of the accuracy-related penalty, except that the doubling is to apply only to valuation overstatements claimed on a return that are 400 percent or more of the amount determined to be the correct amount. The second is the same as the substantial overstatement of pension liabilities component of the accuracy-related penalty, except that the doubling is to apply only to overstatements of pension liabilities that are 400 percent or more of the amount determined to be the correct amount. The third is the same as the substantial estate or gift tax valuation understatement component of the accuracy-related penalty, except that the doubling is to apply only to valuations claimed on the estate or gift tax return that are 25 percent or less of the amount determined to be the correct amount.

*Fraud penalty*

The fraud penalty, which is imposed at a rate of 75 percent, applies to the portion of any underpayment that is attributable to fraud.

Under the House bill, the accuracy-related penalty is not to apply to any portion of an underpayment on which the fraud penalty is imposed.

*Definitions and special rules*

The House bill provides special rules that apply to each of the penalties imposed under the new structure. First, the House bill provides standardized exception criteria for all of these accuracy-related penalties. The House bill provides that no penalty is to be imposed if it is shown that there was reasonable cause for an underpayment and the taxpayer acted in good faith.

Second, the House bill provides that an accuracy-related or fraud penalty is to be imposed only if a return has been filed. This is intended to improve the coordination between the accuracy-related penalties and the failure to file penalties.

Third, the House bill provides a standard definition of underpayment for all of the accuracy-related penalties.

*Repeal of present-law penalties*

The House bill repeals the present-law penalties for negligence and fraud, substantial understatements of liability, valuation overstatements, and valuation understatements for purposes of estate or gift taxes. The House bill also repeals the special negligence rules applicable to straddles and to amounts shown on information returns. Finally, the House bill repeals the higher interest rate that applies to substantial underpayments that are attributable to tax-motivated transactions.

*Senate amendment*

No provision.

*Conference agreement*

The conference agreement follows the House bill.

*3. Preparer, Promoter, and Protester Penalties*

*Present law*

*Return preparer penalties*

An income tax return preparer is subject to a penalty of $100 if any part of an understatement of tax on a return or claim for refund is due to the return preparer's negligent or intentional disregard of rules and regulations. In addition, an income tax return preparer is subject to a penalty of $500 if any part of an understatement of tax on a return or claim for refund is due to the return preparer's willful attempt in any manner to understate tax. An income tax return preparer is also subject to a penalty of $25 for each failure to (1) furnish a copy of a return or claim for refund to the taxpayer; (2) sign the return or claim for refund; or (3) furnish his or her identifying number.

*Penalty for promoting abusive tax shelters*

Any person who organizes, assists in the organization of, or participates in the sale of any interest in, a partnership or other entity, any investment plan or arrangement, or any other plan or arrangement, is subject to a penalty if in connection with such activity the person makes or furnishes a false or fraudulent statement or a gross valuation overstatement. The amount of the penalty equals the greater of $1,000 or 20 percent of the gross income derived or to be derived by the person from the activity. It is unclear under present law whether the term "activity" refers to each sale of an interest in a tax shelter or whether it refers to the overall activity of promoting an abusive tax shelter.

*Penalty for aiding and abetting the understatement of tax liability*

Any person who aids, assists in, procures, or advises with respect to the preparation or presentation of any portion of a return or other document under the tax laws which (1) the person knows will be used in connection with any material matter arising under the tax laws, and (2) the person knows will (if so used) result in an understatement of the tax liability of another person is subject to a penalty equal to $1,000 for each return or other document ($10,000 in the case of returns and documents relating to the tax of a corporation).

*Frivolous income tax return penalty*

Any individual who files a frivolous income tax return is subject to a penalty of $500.

135 Cong.Rec. S13893-07
1989 WL 186980 (Cong.Rec.)
(Cite as: 135 Cong. Rec. S13893-07)



Congressional Record --- Senate
Proceedings and Debates of the 101st Congress, First Session
Tuesday, October 24, 1989

STATEMENTS ON INTRODUCED BILLS AND JOINT RESOLUTIONS

By Mr. MCCAIN (for himself, Mr. DECONCINI, Mr. BURDICK, Mr. COCHRAN, and Mr. INOUYE):

S. 1783. A bill to regulate Indian child protection and prevent child abuse on Indian reservations; to the Select Committee on Indian Affairs.

INDIAN CHILD ABUSE PREVENTION AND TREATMENT ACT

Mr. MCCAIN.

Mr. President, I rise today to introduce with Senator DECONCINI the Indian Child Abuse Prevention and Treatment Act. This bill would address one of the most devastating problems in Indian country by establishing mandatory reporting requirements for child abuse and neglect in Indian country. In February of 1989, the Special Committee on Investigations, a subcommittee of the Select Committee on Indian Affairs, held hearings which exposed many problems in the Bureau of Indian Affairs and the failure of the Federal Government to maintain its trust responsibility to American Indians. The most tragic example of the Federal Government's failures is the growing problem of child sexual abuse on Indian reservations. As cochairman of the Special Committee on Investigations I heard the heart-rending stories of the parents and families of these Indian children who were victimized by BIA teachers.

Child abuse is not unique to Indian reservations, by any means. National data collected by the American Humane Association reports an increase of 158 percent in all reported child abuse and neglect cases from 1976 to 1984, nationwide. The Federal Government's trust relationship with native American children is unique, however. This trust relationship is doubly important when it involves Indian children since these children cannot protect themselves. Each year hundreds of children are scarred by sexual abuse at the hands of those whom they trust-both in governmental facilities, such as schools and foster homes, and in the community. Little assistance has been provided by either the BIA or the Indian Health Service to treat the scars that result. These scars do not fade easily. An entire generation of children on the Hopi Reservation has been deeply scarred by the actions of one BIA teacher. Just last Friday, a young Hopi man, 18 years of age, committed suicide because of the burdens and guilt he had to shoulder *S13894 after having been sexually abused by the teacher years earlier. Before shooting himself in the head, this victim told his mother that he could not live with the shame. The injury to these children does not end with the end of the abuse. The children cannot forget. The community cannot forget. Countless other victims have felt the same pain and have been left to twist in the wind by a system that did not care. This cannot be tolerated. Sexual abuse not only destroys the lives of Indian children, it devastates the child's family and in close knit Indian tribes, it affects the entire community.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

is a provision for the funding of treatment for child abuse victims.

The bill would establish mandatory reporting requirements for child abuse and neglect in Indian country. A violation of these requirements could result in a fine of up to $1,000. If a supervisor of a reporting party in any way inhibits or prevents them from making a report of child abuse or neglect they could be fined up to $1,000. Any person who makes a report of child abuse and neglect in "good faith" shall be immune from civil and criminal liability. The bill would create a central registry in the Bureau of Indian Affairs for reports of child abuse and neglect. It requires the BIA and IHS to investigate the moral character of individuals to be employed in those professions that would have regular contact with or control over Indian children. It would establish mininum standards of moral character for individuals to be employed in positions which have regular contact with or control over Indian children. Finally, the bill would amend the Victims of Crime Act, 42 U.S.C. 10601, to provide $10 million in grants to Indian tribes for the development of treatment programs for the victims of child sexual abuse on reservations.

I am very pleased to have worked with Senator MCCAIN in developing this important legislation and I urge my colleagues to support it so that we can attempt to put an end to the tragedy of sexual abuse of Indian children on reservations.

------

By Mr. PRYOR:

S. 1784. A bill to amend the Internal Revenue Code of 1986 to revise various civil penalties; to the Committee on Finance.

INTERNAL REVENUE CODE PENALTY REFORM ACT

Mr. PRYOR.

Mr. President, I stand today to introduce the Internal Revenue Code Penalty Reform Act.

In 1975 the Administrative Conference of the United States issued a report on the 64 penalties of the Internal Revenue Code. The report characterized the penalty structure of that day as "mind numbing." Fourteen years have gone by, and that mind numbing array of 64 penalties has now grown to over 150. If it was mind numbing in 1975, it has become mind boggling in 1989.

The present structure is a morass of inconsistency and irrationality that often discourages rather than encourages compliance in our tax system.

Under this system, a hapless taxpayer can find himself, or herself, confronting the Internal Revenue Code over a tax deficiency, where the penalties and interest have been piled on to the extent that they are twice the amount of tax in dispute. This sort of leverage has a highly negative effect over the tax process.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Last year on March 14, Congress began the long process of reforming the IRS penalty structure with a hearing before the Private Retirement Plans and Oversight of the Internal Revenue Service Subcommittee of the Senate Finance Committee.

At the same time the Senate Finance Committee began its work, the Oversight Subcommittee of the Ways and Means Committee began hearings on the subject of reforming the penalties of the Internal Revenue Code under the leadership of Chairman J.J. PICKLE. Additionally, the Internal Revenue Service, the General Accounting Office, the American Bar Association, and the American Institute of Certified Public Accountants all began independent studies of how to improve the penalty structure administered by the Internal Revenue Service.

In addition to these groups, I created a private sector task force representing many associations and perspectives. This group was cochaired by two very able individuals, Mr. Ken Gideon, now with the Treasury Department, and Mr. Jarold Cohen. The Senate owes these two gentlemen, as well as the entire task force, a debt of gratitude for the time they committed to this project. Mr. President, I ask unanimous consent to print a list of the members of the task force in the RECORD at the end of my statement.

A lot of very thoughtful people have spent a good deal of time thinking about this problem over the last 2 years. After 2 years of study and debate the various groups, task forces, and committees have developed a surprisingly similar philosophy on Internal Revenue Code penalty reform. This philosophy can be summarized in a number of short, simple rules for reform:

The amount of the penalty should be proportional to the culpability of the taxpayer. Under the present system, a taxpayer who is 1 day late pays the same penalty as a taxpayer who decides to never deposit payroll taxes.

The law should not allow the Internal Revenue Service to stack penalties for the same act of noncompliance. The IRS can now pick and choose among a host of penalties, or simply pile all available penalties on a taxpayer hoping to persuade him to negotiate.

Penalties should not discourage compliance with the tax laws. If a penalty is the same if a taxpayer is a little bit late or a lot late, taxpayers will always choose to be a lot late.

Whenever possible, waiver requirements should be standardized. The Internal Revenue Code presently contains many different standards for waiving penalties. The result is taxpayer confusion.

Similarly situated taxpayers should be treated similarly. Taxpayers are often confused to find they owe different penalty amounts for what are basically the same act of noncompliance.

Overlapping or redundant penalties should be eliminated. Rather than making changes to existing penalties that might not be working correctly, Congress has too often simply created an additional, redundant penalty for the same act.

Although a particular penalty may be correct in theory, if the Internal Revenue

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Service is unable to administer the penalty, it should not be in the Internal Revenue Code.

Penalties should be written clearly enough for taxpayers to understand the consequences of noncompliance. Because penalties have evolved over time, they are often difficult to understand. As a consequence of this vagueness, it is often difficult for taxpayers to know exactly what is the proper behavior.

Penalties should be tough enough to discourage noncompliance and to encourage noncompliant taxpayers to correct their actions.

The Internal Revenue Code Penalty Reform Act incorporates these simple premises into a rational penalty system, that is fairer and easier to administer. The bill consolidates all the various information requirements under one penalty. The new penalty is time sensitive: Penalizing a taxpayer who is 1 day late at a lower level than one who is 6 months late. It also creates a standard penalty waiver criteria, so a taxpayer does not have to learn many different standards to waive various penalties.

Most importantly, the bill repeals the ability of the IRS to stack penalties for the same offense. It also creates a rational three level accuracy penalty structure, that will punish noncompliant taxpayers based on the culpability of their actions.

The penalty structure created by this bill will make a fairer system. It will ensure that big time tax cheats will be punished. But at the same time it will protect the first time offenders who have made a mistake with our often complex tax laws. I look forward *S13899 to working with Chairman PICKLE on this important issue, and I commend him for his leadership on this legislation.

There being no objection, the material was ordered to be printed in the RECORD, as follows:

PRIVATE SECTOR PENALTY TASK FORCE

CHAIRMAN

N. Jerold Cohen, Esquire, Southerland, Asbill and Brennan, Atlanta, GA.

MEMBERS

Mr. Jonathan Allen, Representing the American Banking Association, First Wachovia Corp., Winston-Salem, NC.

Ms. Patricia Burton, Representing the National Association of Enrolled Agents, Gles Ferry, Connecticut.

Tom Courtway, Esquire, Wright, Lindsey & Jennings, Little Rock, Arkansas.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

H.R. CONF. REP. 97-760
P.L. 97-248, TAX EQUITY AND FISCAL RESPONSIBILITY ACT OF 1982
HOUSE CONFERENCE REPORT NO. 97-760
AUG. 17, 1982

. . . .

*611 **1383

CONTINUATION OF EXISTING RULES FOR NONPARTNERSHIP ITEMS

Existing rules relating to administrative and judicial proceedings, statutes of limitations, settlements, etc., will continue to govern the determination of a partner's tax liability attributable to nonpartnership income, loss, deductions, and credits. Neither the secretary nor the taxpayer will be permitted to raise nonpartnership items in the course of a partnership proceeding nor may partnership items, except to the extent they become nonpartnership items under the rules, be raised in proceedings relating to nonpartnership items of a partner.

The separate statute of limitations applicable to nonpartnership items of a partner may have expired when the computational adjustment of a partner's tax liability attributable to a FPAA or final court decision is made. In such case neither the Secretary (to reduce a refund) nor a partner (to reduce an assessment) may raise nonpartnership items in determining the partner's tax liability resulting from such computational adjustment. However, if the partner has in fact overpaid his income tax liability for the taxable year with respect to which the computational adjustment was made, he may obtain credit or refund of such overpayment by filing a claim within 2 years following such overpayment, as prescribed by §§6511(a) and (b)(2)(b). If such claim is not allowed, suit may be filed pursuant to §7422(a). Any overpayment which may be refunded pursuant to such a claim or suit for refund would be attributable only to nonpartnership items.

| Starting Date | Computation mode | Normal | Motivated | Refund | Days/ year |
|---|---|---|---|---|---|
| 01-01-54 | Old IRS Method | 6.00 | 6.00 | 6.00 | 365 |
| 07-01-75 | Old IRS Method | 9.00 | 9.00 | 9.00 | 365 |
| 02-01-76 | Old IRS Method | 7.00 | 7.00 | 7.00 | 365 |
| 02-01-78 | Old IRS Method | 6.00 | 6.00 | 6.00 | 365 |
| 02-01-80 | Simple | 12.00 | 12.00 | 12.00 | 365 |
| 02-01-82 | Simple | 20.00 | 20.00 | 20.00 | 365 |
| 01-01-83 | Daily | 16.00 | 16.00 | 16.00 | 365 |
| 07-01-83 | Daily | 11.00 | 11.00 | 11.00 | 365 |
| 01-01-84 | Daily | 11.00 | 11.00 | 11.00 | 366 |
| 07-01-84 | Daily | 11.00 | 11.00 | 11.00 | 366 |
| 01-01-85 | Daily | 13.00 | 15.60 | 13.00 | 365 |
| 07-01-85 | Daily | 11.00 | 13.20 | 11.00 | 365 |
| 01-01-86 | Daily | 10.00 | 12.00 | 10.00 | 365 |
| 07-01-86 | Daily | 9.00 | 10.80 | 9.00 | 365 |
| 01-01-87 | Daily | 9.00 | 10.80 | 8.00 | 365 |
| 04-01-87 | Daily | 9.00 | 10.80 | 8.00 | 365 |
| 07-01-87 | Daily | 9.00 | 10.80 | 8.00 | 365 |
| 10-01-87 | Daily | 10.00 | 12.00 | 9.00 | 365 |
| 01-01-88 | Daily | 11.00 | 13.20 | 10.00 | 366 |
| 04-01-88 | Daily | 10.00 | 12.00 | 9.00 | 366 |
| 07-01-88 | Daily | 10.00 | 12.00 | 9.00 | 366 |
| 10-01-88 | Daily | 11.00 | 13.20 | 10.00 | 366 |
| 01-01-89 | Daily | 11.00 | 13.20 | 10.00 | 365 |
| 04-01-89 | Daily | 12.00 | 14.40 | 11.00 | 365 |
| 07-01-89 | Daily | 12.00 | 14.40 | 11.00 | 365 |
| 10-01-89 | Daily | 11.00 | 13.20 | 10.00 | 365 |
| 01-01-90 | Daily | 11.00 | 13.20 | 10.00 | 365 |
| 04-01-90 | Daily | 11.00 | 13.20 | 10.00 | 365 |
| 07-01-90 | Daily | 11.00 | 13.20 | 10.00 | 365 |
| 10-01-90 | Daily | 11.00 | 13.20 | 10.00 | 365 |
| 01-01-91 | Daily | 11.00 | 13.20 | 10.00 | 365 |
| 04-01-91 | Daily | 10.00 | 12.00 | 9.00 | 365 |
| 07-01-91 | Daily | 10.00 | 12.00 | 9.00 | 365 |
| 10-01-91 | Daily | 10.00 | 12.00 | 9.00 | 365 |
| 01-01-92 | Daily | 9.00 | 10.80 | 8.00 | 366 |
| 04-01-92 | Daily | 8.00 | 9.60 | 7.00 | 366 |
| 07-01-92 | Daily | 8.00 | 9.60 | 7.00 | 366 |
| 10-01-92 | Daily | 7.00 | 8.40 | 6.00 | 366 |
| 01-01-93 | Daily | 7.00 | 8.40 | 6.00 | 365 |
| 04-01-93 | Daily | 7.00 | 8.40 | 6.00 | 365 |
| 07-01-93 | Daily | 7.00 | 8.40 | 6.00 | 365 |
| 10-01-93 | Daily | 7.00 | 8.40 | 6.00 | 365 |
| 01-01-94 | Daily | 7.00 | 8.40 | 6.00 | 365 |
| 04-01-94 | Daily | 7.00 | 8.40 | 6.00 | 365 |
| 07-01-94 | Daily | 8.00 | 9.60 | 7.00 | 365 |
| 10-01-94 | Daily | 9.00 | 10.80 | 8.00 | 365 |
| 01-01-95 | Daily | 9.00 | 10.80 | 8.00 | 365 |

| Starting Date | Computation mode | Normal | Motivated | Refund | Days/ year |
|---|---|---|---|---|---|
| 04-01-95 | Daily | 10.00 | 12.00 | 9.00 | 365 |
| 07-01-95 | Daily | 9.00 | 10.80 | 8.00 | 365 |
| 10-01-95 | Daily | 9.00 | 10.80 | 8.00 | 365 |
| 01-01-96 | Daily | 9.00 | 10.80 | 8.00 | 366 |
| 04-01-96 | Daily | 8.00 | 9.60 | 7.00 | 366 |
| 07-01-96 | Daily | 9.00 | 10.80 | 8.00 | 366 |
| 10-01-96 | Daily | 9.00 | 10.80 | 8.00 | 366 |
| 01-01-97 | Daily | 9.00 | 10.80 | 8.00 | 365 |
| 04-01-97 | Daily | 9.00 | 10.80 | 8.00 | 365 |
| 07-01-97 | Daily | 9.00 | 10.80 | 8.00 | 365 |
| 10-01-97 | Daily | 9.00 | 10.80 | 8.00 | 365 |
| 01-01-98 | Daily | 9.00 | 10.80 | 8.00 | 365 |
| 04-01-98 | Daily | 8.00 | 9.60 | 7.00 | 365 |
| 07-01-98 | Daily | 8.00 | 9.60 | 7.00 | 365 |
| 10-01-98 | Daily | 8.00 | 9.60 | 7.00 | 365 |
| 01-01-99 | Daily | 7.00 | 8.40 | 7.00 | 365 |
| 04-01-99 | Daily | 8.00 | 9.60 | 8.00 | 365 |
| 07-01-99 | Daily | 8.00 | 9.60 | 8.00 | 365 |
| 10-01-99 | Daily | 8.00 | 9.60 | 8.00 | 365 |
| 01-01-00 | Daily | 8.00 | 9.60 | 8.00 | 366 |
| 04-01-00 | Daily | 9.00 | 10.80 | 9.00 | 366 |
| 07-01-00 | Daily | 9.00 | 10.80 | 9.00 | 366 |
| 10-01-00 | Daily | 9.00 | 10.80 | 9.00 | 366 |
| 01-01-01 | Daily | 9.00 | 10.80 | 9.00 | 365 |
| 04-01-01 | Daily | 8.00 | 9.60 | 8.00 | 365 |
| 07-01-01 | Daily | 7.00 | 8.40 | 7.00 | 365 |
| 10-01-01 | Daily | 7.00 | 8.40 | 7.00 | 365 |
| 01-01-02 | Daily | 6.00 | 7.20 | 6.00 | 365 |
| 04-01-02 | Daily | 6.00 | 7.20 | 6.00 | 365 |
| 07-01-02 | Daily | 6.00 | 7.20 | 6.00 | 365 |
| 10-01-02 | Daily | 6.00 | 7.20 | 6.00 | 365 |
| 01-01-03 | Daily | 5.00 | 6.00 | 5.00 | 365 |
| 04-01-03 | Daily | 5.00 | 6.00 | 5.00 | 365 |
| 07-01-03 | Daily | 5.00 | 6.00 | 5.00 | 365 |
| 10-01-03 | Daily | 4.00 | 4.80 | 4.00 | 365 |
| 01-01-04 | Daily | 4.00 | 4.80 | 4.00 | 366 |
| 04-01-04 | Daily | 5.00 | 6.00 | 5.00 | 366 |
| 07-01-04 | Daily | 4.00 | 4.80 | 4.00 | 366 |
| 10-01-04 | Daily | 5.00 | 6.00 | 5.00 | 366 |
| 01-01-05 | Daily | 5.00 | 6.00 | 5.00 | 365 |
| 04-01-05 | Daily | 6.00 | 7.20 | 6.00 | 365 |
| 07-01-05 | Daily | 6.00 | 7.20 | 6.00 | 365 |
| 10-01-05 | Daily | 7.00 | 8.40 | 7.00 | 365 |
| 01-01-06 | Daily | 7.00 | 8.40 | 7.00 | 365 |
| 04-01-06 | Daily | 7.00 | 8.40 | 7.00 | 365 |
| 07-01-06 | Daily | 8.00 | 9.60 | 8.00 | 365 |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
No. 05-1189 T
(Judge Charles F. Lettow)

THOMAS H. McGANN and EVELYN G. McGANN

Plaintiffs,

VS.

UNITED STATES OF AMERICA,

Defendant.

**APPENDIX B**
**TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF JURISDICTION AND BRIEF IN SUPPORT THEREOF**

| **Bates Page No.** | **Document** |
|---|---|
| B-1 to B-3 | Notice of Assessment ("NOA") for Evelyn McGann Dated March 24, 2003 |

SBW S

Department of the Treasury
Internal Revenue Service
PHILADELPHIA, PA 19255-0010

Date of this notice: MAR. 24, 2003
Taxpayer Identifying Number 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
Form: 1040 Tax Period: DEC. 31, 1983

For assistance you may call us at:

1-800-829-8374

EVELYN MCGANN
512 WESTWIND DR
BERWYN PA 19312-1156128

FOR ACCOUNT OF THOMAS HERBERT & EVELYN MCGANN
WE CHANGED YOUR ACCOUNT

THE CHANGE(S) BELOW RESULTED FROM AN EXAMINATION OF YOUR TAX RETURN SHOWN ABOVE. PLEASE SEE YOUR COPY OF THE EXAMINATION REPORT FOR A DETAILED EXPLANATION OF THE CHANGES.

IF YOU HAVE ANY QUESTIONS, PLEASE CALL US AT THE NUMBER LISTED ABOVE.

STATEMENT OF ACCOUNT

| | |
|---|---|
| ACCOUNT BALANCE BEFORE EXAMINATION ACTION | NONE |
| INCREASE IN TAX BECAUSE OF EXAMINATION ACTION | $8,620.00 |
| INTEREST CHARGED | 57,475.04 |
| AMOUNT YOU NOW OWE | $66,095.04 |

WE WANTED TO ENSURE THAT BOTH YOU AND YOUR SPOUSE RECEIVE THIS NOTICE, SO WE'VE SENT A COPY TO EACH OF YOU. EACH COPY CONTAINS THE SAME INFORMATION RELATED TO YOUR JOINT ACCOUNT. ANY AMOUNT YOU OWE OR BALANCE DUE SHOWN SHOULD BE PAID ONLY ONCE. WE WILL ISSUE ANY REFUND SHOWN ONLY ONCE.

PLEASE PAY THE FULL AMOUNT BY APR. 14, 2003. IF YOU'VE ALREADY PAID YOUR TAX IN FULL OR ARRANGED FOR AN INSTALLMENT AGREEMENT, PLEASE DISREGARD THIS NOTICE.

IF YOU HAVEN'T PAID, MAIL YOUR CHECK OR MONEY ORDER AND THE TEAR-OFF STUB FROM THE LAST PAGE OF THIS NOTICE. MAKE YOUR CHECK PAYABLE TO UNITED STATES TREASURY AND WRITE YOUR SOCIAL SECURITY NUMBER ON IT. IF YOU CAN'T PAY IN FULL, PLEASE CALL US TO DISCUSS PAYMENT.



B-1

EXPLANATION OF PENALTY AND INTEREST CHARGES

THE PENALTY AND INTEREST CHARGES ON YOUR ACCOUNT ARE EXPLAINED ON THE FOLLOWING PAGES. IF YOU WANT A MORE DETAILED EXPLANATION OF YOUR PENALTIES AND INTEREST, PLEASE CALL US AT THE TELEPHONE NUMBER LISTED ON THE TOP OF THIS NOTICE.

* $57,475.04 INTEREST - IRC SECTION 6601

WE CHARGE INTEREST WHEN YOUR TAX ISN'T PAID ON TIME. INTEREST IS COMPUTED FROM THE DUE DATE OF YOUR RETURN (REGARDLESS OF EXTENSIONS) UNTIL PAID IN FULL OR TO THE DATE OF THIS NOTICE.

INTEREST COMPOUNDS DAILY EXCEPT ON LATE OR UNDERPAID ESTIMATED TAXES FOR INDIVIDUALS OR CORPORATIONS. INTEREST IS ALSO CHARGED ON PENALTIES FOR LATE FILING, OVER OR UNDERSTATING VALUATIONS, AND SUBSTANTIALLY UNDERSTATING THE TAX YOU OWE.

THE INTEREST RATES ON UNDERPAYMENT AND OVERPAYMENT OF TAXES ARE AS FOLLOWS:

| PERIODS | PERCENTAGE RATES | |
|---|---|---|
| | UNDERPAYMENT | OVERPAYMENT |
| OCTOBER 1, 1988, THROUGH MARCH 31, 1989 | 11 | 10 |
| APRIL 1, 1989 THROUGH SEPTEMBER 30, 1989 | 12 | 11 |
| OCTOBER 1, 1989, THROUGH MARCH 31, 1991 | 11 | 10 |
| APRIL 1, 1991, THROUGH DECEMBER 31, 1991 | 10 | 9 |
| JANUARY 1, 1992, THROUGH MARCH 31, 1992 | 9 | 8 |
| APRIL 1, 1992 THROUGH SEPTEMBER 30, 1992 | 8 | 7 |
| OCTOBER 1, 1992 THROUGH JUNE 30, 1994 | 7 | 6 |
| JULY 1, 1994 THROUGH SEPTEMBER 30, 1994 | 8 | 7 |
| OCTOBER 1, 1994 THROUGH MARCH 31, 1995 | 9 | 8 |
| APRIL 1, 1995 THROUGH JUNE 30, 1995 | 10 | 9 |
| JULY 1, 1995 THROUGH MARCH 31, 1996 | 9 | 8 |
| APRIL 1, 1996 THROUGH JUNE 30, 1996 | 8 | 7 |
| JULY 1, 1996 THROUGH MARCH 31, 1998 | 9 | 8 |
| APRIL 1, 1998, THROUGH DECEMBER 31, 1998 | 8 | 7 |
| JANUARY 1, 1999 THROUGH MARCH 31, 1999 | 7 | 7 |
| APRIL 1, 1999 THROUGH MARCH 31, 2000 | 8 | 8 |
| APRIL 1, 2000 THROUGH MARCH 31, 2001 | 9 | 9 |
| APRIL 1, 2001 THROUGH JUNE 30, 2001 | 8 | 8 |
| JULY 1, 2001 THROUGH DECEMBER 31, 2001 | 7 | 7 |
| JANUARY 1, 2002 THROUGH DECEMBER 31, 2002 | 6 | 6 |
| BEGINNING JANUARY 1, 2003 | 5 | 5 |

BEGINNING JANUARY 1, 1999, THE INTEREST RATE WE PAY ON OVERPAYMENT OF TAXES, EXCEPT FOR CORPORATE TAXES, IS THE SAME AS THE RATE OF INTEREST WE CHARGE ON THE UNDERPAYMENT OF TAXES. THE LAW REQUIRES US TO REDETERMINE THESE INTEREST RATES QUARTERLY. FROM JANUARY 1, 1987 THROUGH DECEMBER 31, 1998 THE INTEREST RATE WE PAID ON AN OVERPAYMENT OF TAXES WAS ONE PERCENT LESS THAN THE RATE OF INTEREST WE CHARGED ON YOUR UNDERPAYMENT OF TAXES.

* ADDITIONAL INTEREST CHARGES

IF THE AMOUNT YOU OWE IS $100,000 OR MORE, PLEASE MAKE SURE THAT WE RECEIVE YOUR PAYMENT WITHIN 10 WORK DAYS FROM THE DATE OF YOUR NOTICE. IF THE AMOUNT YOU OWE IS LESS THAN $100,000, PLEASE MAKE SURE THAT WE RECEIVE YOUR PAYMENT WITHIN 21 CALENDAR DAYS FROM THE DATE OF YOUR NOTICE. IF WE DON'T RECEIVE FULL PAYMENT WITHIN THESE TIME FRAMES, THE LAW REQUIRES US TO CHARGE INTEREST UNTIL YOU PAY THE FULL AMOUNT YOU OWE.

HELPFUL HINT: FOR FASTER SERVICE, TRY CALLING US ANY DAY EXCEPT MONDAY WHEN OUR CALL VOLUMES ARE HIGHEST.

PHILADELPHIA SERVICE CENTER 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 TAX PERIOD: DEC. 31, 1983

Credit of 8620.00 is being applied to your account. Your new balance due is 57,475.04

RETURN THIS PART TO US WITH YOUR CHECK OR INQUIRY
YOUR TELEPHONE NUMBER BEST TIME TO CALL
( ) -

AMOUNT YOU OWE..................$66,095.

66,513 50,932 0

LESS PAYMENTS NOT INCLUDED. $________

PAY ADJUSTED AMOUNT........ $________

SBW

200311 09 19247-465-08022-3

INTERNAL REVENUE SERVICE
PHILADELPHIA, PA 19255-0010

22E

EVELYN MCGANN
512 WESTWIND DR
BERWYN PA 19312-1156128

164269326 WR 0000 30 0 198312 670 00006609504

B-3