IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1189 T
(Judge Charles F. Lettow)

THOMAS H. McGANN and EVELYN G. McGANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

REPLY BRIEF

Defendant, the United States, respectfully submits this reply to plaintiffs' opposition to its motion to dismiss plaintiffs' complaint.

**INTRODUCTION**

In our opening brief, [Doc. #13], we explained that the Court lacks jurisdiction over plaintiffs' claim for refund of tax motivated interest, because they did not file a claim for refund with the Internal Revenue Service ("IRS") within the jurisdictional deadline set forth in § 6230(c)(2)(A). Under that provision, when the IRS makes a computational adjustment to apply to a partner a decision of a court in a § 6226 proceeding, the partner has six months from the date the IRS mails the notice of adjustment to file a claim for refund, disputing the IRS's computation.

The Federal Circuit has held that the imposition of tax motivated interest is indeed a

computational adjustment. *See Olson v. United States*, 172 F.3d 1311, 1315 n.1, 1318 and n.2 (Fed. Cir. 1999); *see also* Temp. Treas. Reg. § 301.6231(a)(6)-1T(b) (1987). Thus, plaintiffs' challenge to the imposition of tax motivated interest is a challenge to a computational adjustment, and a six-month period to file a refund claim applies.

Plaintiffs' refund claim challenges the IRS's computation of interest owed pursuant to the decision of the Tax Court entered in *Vulcan Oil* on June 13, 2002. Plaintiff Thomas McGann was a party to *Vulcan Oil*, a § 6226(a) action. In its order of dismissal and decision in *Vulcan Oil*, the Tax Court applied its prior decision in *Krause* and disallowed the majority of the plaintiffs' partnership's deductions. Plaintiffs did not appeal. Because the disallowance was under § 183, plaintiffs' resulting underpayment was attributable to a tax motivated transaction and subject to interest at the higher tax motivated rate. Plaintiffs, however, challenge as erroneous the IRS's computation of interest at the higher tax motivated rate instead of the regular rate. They claim that the *Vulcan Oil* decision, applying *Krause* to plaintiffs, does not support the higher rate. Their claim, therefore, asserts that (in the words of § 6230(c)(1)(A)(ii)) the IRS "erroneously computed [a] computational adjustment necessary . . . to apply to the partner a decision of a court in an action brought under section 6226. . . ." Plaintiffs therefore had six months to file refund claims with the IRS after it mailed the allegedly erroneous notice of adjustment (informing plaintiffs that their underpayment was subject to interest computed at the tax motivated rate). They did not satisfy the six-month requirement.

The Government's opening brief went on to explain why the time to file a refund claim for tax motivated interest is not governed by the general period of limitation set forth in § 6511(a) – i.e., that a claim for refund must be filed within two years of the payment of tax. If

the two-year period could apply, the specific TEFRA six-month period of limitation to contest a computational adjustment would be superfluous. Indeed, § 6230(d)(6) forbids such a perverse result. That statute, for the taxable year at issue in this case, explicitly precluded application of the two-year period of § 6511(a) to claims for refund of affected items. Plaintiffs, in accord with Tax Court precedent, have conceded that tax motivated interest is an affected item. Therefore, plaintiffs' claim for refund of tax motivated interest falls within the plain language of § 6230(d)(6), and the two-year limitations period has no application to this case.

In their opposition, plaintiffs nevertheless argue that the two-year, not the six-month, statute of limitations applies. On that basis, they conclude that their claim for refund of tax motivated interest was timely. As explained below, plaintiffs' position disregards binding Federal Circuit precedent, unambiguous statutory language, and valid treasury regulations. Plaintiffs also contend that, if applicable, the six-month limitation period never began to run, because, they contend, the IRS's mailed notice was deficient. In this regard, plaintiffs ignore critical facts and rely on factually incorrect premises. Similarly, in arguing that their approach protects a partner's due process rights, plaintiffs ignore their own facts and instead pose hypothetical fact patterns that are not before the Court. We address these arguments in turn *infra* at Parts I.-III.

Finally, plaintiffs use their response to argue the merits of their claim under Fifth Circuit doctrine. We respond to these contentions *infra* in Part IV.

**I. The six-month period of limitation set forth in § 6230(c)(2)(A), not the two-year period of limitation set forth in § 6511(a), applies to plaintiffs' refund claim for tax motivated interest.**

**A. Section 6230(d)(6) prevents application of the two-year period of § 6511(a).**

As summarized *supra*, § 6230(d)(6) explicitly precludes the application of the two-year period of § 6511(a) to claims for refunds of affected items, which includes plaintiffs' refund claim for tax motivated interest. Plaintiffs, however, insist that § 6230(d)(6) bars application of the two-year period only to computational affected items, not to "substantive affected items" (plaintiffs' phrase taken from case law), that is, "affected items which require partner level determinations," § 6230(a)(2)(A)(i).[1] Contending that tax motivated interest is a substantive affected item, plaintiffs conclude that the two-year period applies to their refund claims.

The term "affected item" is defined to mean "any item to the extent such item is affected by a partnership item." § 6231(a)(5). The definition is all encompassing – it does not distinguish between different types of affected items.

Likewise, § 6230(d)(6), as in effect for the taxable year at issue, unambiguously barred application of the two-year period of § 6511(a) to refund claims contesting *any* affected item:

> Subchapter B of chapter 66 (relating to limitations on credit or refund) shall not apply to any credit or refund of an overpayment attributable to a partnership item (or an affected item).

§ 6230(d)(6). "Subchapter B of chapter 66" – <u>i.e.</u>, sections 6511 through 6515 – includes the

---

[1] Section 6230(a)(1-2), as in effect for the taxable year at issue, read in pertinent part:

(1) In general.– Except as provided in paragraph (2), subchapter B of this chapter shall not apply to the assessment or collection of any computational adjustment.
(2) Deficiency proceedings to apply in certain cases.–
(A) Subchapter B shall apply to any deficiency attributable to–
(i) affected items which require partner level determinations. . . .

two-year period of limitation on which plaintiffs would rely, and § 6230(d)(6) uses the all-encompassing term "affected item," without qualification.

The history underlying the statutory scheme highlights that Congress was quite deliberate in using the term "affected item" without limitation in § 6230(d)(6). After enacting § 6230(d)(6) in 1982 as part of TEFRA, Congress amended § 6230(a) in 1986, via technical correction.[2] The amendment to § 6230(a) singled out substantive affected items for special treatment in connection with deficiency procedures, which are not at issue here. *See* § 6230(a)(2)(A)(i).[3]

Congress, however, made no corresponding amendment to § 6230(d)(6), leaving intact the all-inclusive term "affected item" for purposes of the limitations period. The deliberate contrast within a single section of a unified statutory scheme can only mean that an "affected item" in § 6230(d)(6) refers to all affected items, not just computational ones. *See e.g. Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quotation omitted).

Plaintiffs row against this statutory scheme. They argue instead that this Court should

---

[2] *See* Tax Reform Act of 1986, Pub. L. No. 99-514, § 1875(d)(2)(A), 100 Stat. 2085, 2896, *reprinted in* 1986-3 C. B. 1, at 813. The amendment applies as if included in TEFRA in 1982. *See id.* § 1875(d)(2)(C).

[3] In § 6230(a)(2)(A)(i), substantive affected items are "affected items which require partner level determinations" and are subject to deficiency procedures. Accordingly, the Federal Circuit, among others, has recognized two types of affected items in relation to deficiency procedures (but not the limitations period): 1) computational affected items that are not subject to the deficiency procedures of subchapter B of chapter 63, §§ 6211-6216; and 2) substantive affected items, those that require a non-computational factual determination at the partner level and thus are subject to those deficiency procedures. *See Olson*, 172 F.3d at 1317-18.

follow *Brookstone Corp. v. United States*, Civ. A. No. H-91-3467, 1994 WL 621576, at *4-5 (S.D. Tex. 1994). As an initial matter, the district court in *Brookstone* did not hold that tax motivated interest is a substantive affected item, or that the two-year statute applies to a claim for tax motivated interest. In fact, the opinion in *Brookstone* makes no mention of tax motivated interest or former § 6621(c), much less rules that tax motivated interest is a substantive affected item.[4] Similarly, plaintiffs' intimation that the Fifth Circuit's affirming *Brookstone* endorsed the trial court's view of § 6230(d)(6) is forced. *See Resp.* [Doc. #20] at 32. The appellate disposition was a one-word affirmance without opinion of the lower court's judgment in favor of the United States. *See Brookstone Corp. v. United States*, 58 F.3d 637 (Table) (5th Cir. 1995).

The limited holding of the district court in *Brookstone* – that § 6230(d)(6) applies only to computational affected items – is faulty. The opinion fails to recognize that, while Congress singled out substantive affected items for special treatment with respect to deficiency notice procedures, it did not do so in § 6230(d)(6), when it addressed the applicable limitations period. As noted above, § 6230(d)(6) applies to *all* affected items. The court instead leaped from the fact that substantive affected items are subject to normal deficiency procedures to the unsupported conclusion that therefore the normal refund claim provisions must apply:

Just as a substantive affected item is subject to the non-TEFRA deficiency procedure set

---

[4] Thus, plaintiffs' repeated characterization of the holding of the case is inaccurate: "The *Brookstone* court further held that claims for refund of §6621(c) penalty interest are not subject to the six-month period of limitations for filing an erroneous computation claim, but are subject to the normal period for filing refund claim set out at §6511(a)." *Resp.* [Doc. #20] at 30; *see also id.* at 32-33 ("The *Brookstone* court like *Field I* also agreed that the plaintiff's §6621(c) claims in that case were based on substantive affected items and did not challenge the IRS's computation of the change in tax liability as a result of the partnership item settlement (equivalent to the *Vulcan Oil* partnership item decision here). *Brookstone* held that §6621(c) claims are not subject to the §6230(c)(2)(A)(i) six-month limitations period.").

> out in section 6230(a), so the non-TEFRA refund procedure must also apply. To hold otherwise would be to treat a substantive affected item as a "computational adjustment" within section 6230(c)(1)(A), which the courts and Code have rejected. *See, e.g.*, *Woody*, 95 T.C. at 202; *N.C.F. Energy*, 89 T.C. at 744.

*Brookstone*, 1994 WL 621576, at *5. The premise is false and is not supported by the Tax Court's decisions in *Woody* or *N.C.F. Energy*. Those decisions simply note, in accord with Congress's statutory scheme, that deficiency procedures apply to substantive affected items but not to computational ones. Contrary to the *Brookstone* court's view, maintaining the same refund claim procedures for both substantive and computational affected items does nothing to collapse the distinction between the two for purposes of deficiency procedures. To the contrary, it upholds Congress' design: affected items are governed by the same refund claim procedures, and substantive affected items are also governed by standard deficiency procedures.

Moreover, the premise of *Brookstone* – that the § 6511(a) statute of limitations should apply to substantive affected items because non-TEFRA deficiency procedures apply – is absent here. As plaintiffs concede, tax motivated interest is not subject to non-TEFRA deficiency procedures. *See Resp.* [Doc. #20] at 15-16.

There is also no reason to treat plaintiffs' claim for tax motivated interest as a substantive affected item, rather than as a computational affected item. The tax motivated interest at issue in this case is not a substantive affected item, but a computational one. No non-computational, factual determinations at the partner level were necessary to assess tax motivated interest against plaintiffs. Once it had been determined (at the partnership level) that the partnership activities giving rise to plaintiffs' disallowed partnership deductions were not engaged in with actual and honest profit objectives under § 183, the IRS needed only to compute the resulting tax underpayment, note whether it exceeded $1,000, and, if so, perform the arithmetic to compute

interest at the higher tax motivated rate. *See e.g. Hill v. Commissioner*, 204 F.3d 1214, 1219-21 (9th Cir. 2000); *Hildebrand v. Commissioner*, 28 F.3d 1024, 1028 (10th Cir. 1994); *Wolf v. Commissioner*, 4 F.3d 709, 715-16 (9th Cir. 1993).

Finally, plaintiffs also point the Court to a vague passage of legislative history, which they claim "contemplated that refund claims would be filed after payment of TEFRA related tax deficiencies pursuant to the standard §6511(a) refund period." *See Resp.* [Doc. #20] at 33. As there is nothing ambiguous about the statutory scheme discussed above, there is no need to even resort to this legislative history. *See Gitlitz v. Commissioner*, 531 U.S. 206, 220 (2001); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). Section 6230(d)(6) clearly precludes application of § 6511(a) to refund claims contesting affected items. In any event, the passage cited by plaintiffs is difficult to understand, and they offer no analysis, only the conclusory statement just quoted. The passage may be understood as permitting a partner to raise, in a refund claim filed on the normal schedule, a tax return item that is untouched by a computational adjustment, but which, had the effects of the computational adjustment been known at the time the partner filed the return, could have been used to reduce the partner's tax liability for that year. *See* Conf. Rep. No. 97-760, at 611 (1982), *reprinted in* 1982-2 C. B. 600, at 668. It seems odd to interpret the passage, as plaintiffs do, to permit challenges to a computational adjustment, in a refund claim filed on the normal schedule, as such challenges are already provided for by TEFRA provisions, including § 6230(c).[5]

---

[5] Plaintiffs overstate the content of an IRS 1989 non docketed service advice review (which, in any event, may not be used or cited as precedent). Plaintiffs say the document concluded that tax motivated interest is "subject to the standard §6511(a) period for filing a refund claim. . . ." *Resp.* [Doc. #20] at 38. Rather, the document was not so firm: "we now think (continued...)

**B. As valid Treasury Regulations and binding Federal Circuit precedent provide, tax motivated interest is a computational adjustment, and thus the six-month period of limitation in § 6230(c)(2)(A) applies to plaintiffs' challenge to the assessment of tax motivated interest.**

In their effort to avoid the six-month limitations period, plaintiffs contend that neither interest nor tax motivated interest is a "computational adjustment" as defined in § 6231(a)(6). They argue that the contrary view expressed in the Treasury Regulations impermissibly broadens the statutory definition of the term. They also argue that the Federal Circuit's contrary holding in *Olson* was dictum. Having set aside these contrary authorities, plaintiffs conclude that their tax motivated interest claim does not fit within § 6230(c)(1)(A)(ii) as a claim that the IRS "erroneously computed any computational adjustment necessary to apply . . . a settlement . . . ." According to plaintiffs, § 6230(c)(1)(A)(ii) encompasses only mathematical errors and not their claim "that the IRS improperly applied the §6621(c) rate at all." *Resp.* [Doc. #20] at 25.

Temp. Treas. Reg. § 301.6231(a)(6)-1T(b) (1987), applicable here, unambiguously includes any interest charge within the statutory definition of "computational adjustment":

> A computational adjustment includes any interest due with respect to any underpayment or overpayment of tax attributable to adjustments to reflect properly the treatment of partnership items.

Plaintiffs are simply wrong when they assert that such inclusions fall outside the scope of regulatory power. Section 6231(a)(6) defines "computational adjustment" as "the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a

---

[5] (...continued)
that the taxpayer may be able to pursue a refund claim as to the assessed and paid interest pursuant to . . . sections 6511 and 7422," and footnoted the statement with the proviso "[e]ven if it is determined that the taxpayer may not be able to pursue a refund claim as to the assessed and paid interest under section 6621(c). . . ." *See* 1989 IRS NSAR 9164, 1989 WL 1173044.

partnership item." By statute, the phrase "tax liability" also means § 6601 "interest liability." *See* § 6601(e)(1) ("Any reference in this title . . . to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax"). And § 6621(c) tax motivated interest is § 6601 interest due with respect to an underpayment. *See* § 6621(c) (1988) (repealed); *Field v. United States*, 381 F.3d 109, 111-12 (2d Cir. 2004); *Odend'Hal v. Commissioner*, 95 T.C. 617, 620 (1990). In other words, the regulation simply reflects the statute.

Relying on the regulation, the Federal Circuit in *Olson* held that interest, including tax motivated interest, is a "computational adjustment." The question before the appellate court was whether the IRS improperly assessed tax, interest, and penalties without first issuing notices of deficiency. *See Olson*, 172 F.3d at 1316 ("On appeal the taxpayers argue solely that the Court of Federal Claims erred because, without notices of deficiency, the tax, interest and penalties were improperly assessed and should therefore have been refunded"). The interest at issue was interest assessed at the higher tax motivated rate. The Court concluded that, because the tax, interest, and penalties resulted from computational adjustments, "no notices of deficiency were required. . . ." *Id.* at 1319. In reaching the conclusion, the Federal Circuit addressed each item one by one, interest first, penalties second, and tax third. *See id.* at 1318. With respect to interest:

> We are not persuaded that any form of non-computational determination was required to determine the amount of taxes, interest, and penalties to be assessed for these earlier and later years. As an initial matter, the regulations set forth that interest is to be included as a computational adjustment,[2] *see* Temp. Treas. Reg. § 301.6231(a)(6)-1T(b). . . .
>
> [2] No doubt, that is why the Court of Federal Claims vacated that part of its decision of April 21, 1997, to the contrary. *See* note 1, *ante*.

The cross-referenced footnote stated as follows:

> [1] The Court of Claims's April opinion stated that, absent a waiver, a notice of deficiency is required to assess interest under I.R.C. § 6621(c). . . . On May 7, 1997, however, the court granted the government's motion to delete that part of the opinion making that assertion. . . .

*Olson*, 172 F3d. at 1318 and n.2, 1315 n.1. Thus, the Federal Circuit asked whether a notice of deficiency must issue prior to the assessment of tax motivated interest. It answered in the negative on the grounds that interest is a computational adjustment. There is no basis to characterize the appellate court's opinion in this regard as dictum.

Having established that tax motivated interest is a computational adjustment as defined in § 6231(a)(6), the next step is to ask how a taxpayer challenges a computational adjustment made to apply a partnership item determination. The answer is supplied by § 6230(c)(1)(A)(ii), which permits a refund claim where the IRS

> erroneously computed any computational adjustment necessary to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228. . . .

§ 6230(c)(1)(A)(ii). Plaintiffs wish to cabin the language to allow only challenges to mathematical errors, such as created by a slip of the finger on a computer keyboard, *see Resp.* [Doc. #20] at 29 n. 82. But the language Congress used is not so limited. Had Congress intended plaintiffs' interpretation, it would have employed language such as "mathematical error" or "correction," as it did just one subsection before to connote such meaning. *See* § 6230(b)(1) ("Section 6225 shall not apply to any adjustment necessary to correct a mathematical or clerical error (as defined in section 6213(g)(2)) appearing on the partnership return").

Rather, the language is broad enough to encompass not only mathematical and clerical errors, but also non-math-based errors made in computing "computational adjustments" to apply

a partnership item determination to a partner. As discussed above, a "computational adjustment" is defined as "the change in the tax [or interest] liability of a partner which properly reflects the treatment under this subchapter of a partnership item" and includes interest at the regular or tax motivated rate. The language of § 6230(c)(1)(A)(ii) therefore permits refund claims on the grounds that the IRS erroneously computed the change in the interest liability of a partner, because the change did not properly reflect the treatment of a partnership item at the partnership level, for example, disallowance of partnership losses. An interest computation that properly reflects a partnership item determination can include more than mechanical calculations. If, for example, partnership losses are disallowed at the partnership level because of a lack of profit motive under § 183, as here, the subsequent partner-level computation, in order to properly reflect such disallowance, must first compute the partner's tax underpayment, and, if such underpayment exceeds $1,000, must next compute interest on the underpayment at the tax motivated rate. Any other computation would be error, as it would not properly reflect the treatment of partnership losses at the partnership level.[6]

---

[6] The Court of Federal Claims, at the trial level in *Olson*, reached a similar conclusion regarding the breath of the language in § 6230(c)(1)(A)(ii). In view was a hypothetical fact pattern, under which the IRS, when applying a partnership level disallowance of a credit, misidentifies a partner level carryback or carryover arising from the credit. The partner is assessed tax in a carryback or carryover year, even though the disallowed carryback or carryover had nothing to do with the disallowed partnership credit. The Court of Federal Claims explained that, in this context (which does not include mathematical error), the taxpayer's remedy lies under § 6230(c)(1)(A)(ii):

> This equity based-argument overlooks what are, in fact, the existing procedures under TEFRA regarding computational errors committed by the IRS in making computational adjustments to a partner's return. Under § 6230(c), a partner may file a refund claim on the grounds that the IRS "erroneously computed any computational adjustment" necessary to apply a partnership-level determination to the partner. This standard is

(continued...)

Section 6230(c)(1)(A)(ii) fits plaintiffs' claim like a glove. They challenge the IRS's use of the higher tax motivated interest rate (instead of the regular interest rate) to compute the interest owed on tax underpayments attributable to a partnership item decision of the Tax Court, *Vulcan Oil* applying *Krause*. They contend that the IRS erred in using the higher rate because the Tax Court's decision does not support it. Specifically, they claim that the decision does not attribute the disallowed losses to activities not engaged in for profit under § 183, and thus that there is no basis for assessing tax motivated interest on any underpayment resulting from the disallowance. In sum, plaintiffs claim that the IRS erroneously computed the change in their interest liability, because its use of the tax motivated rate did not properly reflect the treatment of their partnership losses under the decision. This claims falls squarely within § 6230(c)(1)(A)(ii).

It is noteworthy that no other refund claim provision fits this situation (as set forth above, § 6511(a) cannot apply), and no deficiency notice is required to assess tax motivated interest. No doubt this scheme was intentional, as §§ 6230(c)(1)(A)(ii) and (c)(2)(A) provide plaintiffs and others similarly situated with an adequate avenue of redress. If a judicial TEFRA decision disallowing partnership deductions really did not establish that the claimed deductions arose from tax motivated transactions, then six months is ample time to recognize the erroneous computation and protest. Plaintiffs failed to satisfy the threshold six-month requirement.[7]

---

[6] (...continued)

> broad enough to encompass situations in which a taxpayer alleges that the IRS has incorrectly identified the source of a disputed carryback or carryforward.

*Olson v. United States*, 37 Fed. Cl. 727, 735-36 (1997).

[7] Plaintiffs also rely on *Field v. United States*, 328 F.3d 58, 59 n.2 (2d Cir. 2003), to contend that their tax motivated interest claims do not fall under § 6230(c). In *Field*, the Second (continued...)

## II. IRS's mailing/s to plaintiffs were sufficient to commence the six-month period of § 6230(c)(2)(A).

Plaintiffs contend that, even if the six-month period of § 6230(c)(2)(A) applies to their refund claim, the period never began to run, because the statutory "notice of computational adjustment" was deficient. Plaintiffs principally challenge the February 28, 2003 letter and enclosed Form 4549-A, *see App. B* [Doc. #13] Ex. 2, and the March 24, 2003 notice of assessment, *see App. B* [Doc. #20] at B-1-B-3, on the grounds that they do not include a computation of interest at the tax motivated rate. They emphasize that the letter and form indicate "0.00" next to "TMT interest - computed 03/22/2003 on TMT underpayment." They also note that the interest rates listed on the notice are normal interest rates and contend that the "[notice] affirmatively states that the total interest assessed ($57,475.04) was assessed at the normal rate under 'I.R.C. Section 6601'." *Resp.* [Doc. #20] at 22. Plaintiffs conclude that

> the IRS's failure to inform the McGanns of how it computed the interest that it *actually assessed* against them is deceptive and similar notices may induce and mislead lay taxpayers to not file valid refund claims.
>
> The IRS *never* mailed the McGanns any notice of how it computed the §6621(c) penalty rate of interest it imposed on them.

---

[7] (...continued)
Circuit held that tax motivated interest assessed under former § 6621(c) is not a partnership item – a holding with which we agree – and therefore that a refund suit for its recovery was not *per se* barred by § 7422(h). It remarked in a footnote that the taxpayers did not seek a refund pursuant to one of the exceptions to the bar of § 7422(h), namely, § 6230(c). Plaintiffs seize on this footnote, contending a claim for tax motivated interest does not fall within § 6230(c). Given the Second Circuit's holding, however, the remark was irrelevant. For if the interest was not a partnership item, then, according to the Second Circuit, § 7422(h) presented no bar to the claim. Thus, whether an exception to the bar applied was irrelevant. The truncated and irrelevant nature of the remark make it an insufficient basis on which to conclude tax motivated interest claims fall outside the purview of § 6230(c). (We note that the Second Circuit also did not address whether a refund suit for tax motivated interest would be barred by § 7422(h), if the suit were based in particular on changing a partnership item determination – for example, if the suit sought a change in a partnership item component of a tax motivated interest analysis.)

*Id.* at 22 (emphasis in original); *see also id.* at 35 ("But the IRS *never* told them how much of the interest assessment was due to the §6621(c) penalty rate or how it was computed") (emphasis in original).

Plaintiffs' challenges are unjustified and, in part, factually wrong. Plaintiffs select only the portions of the mailings that support their contention, omitting critical facts. In addition, plaintiffs never claim that they were misled by the mailings into believing that the interest assessed against them was not at the tax motivated rate. Indeed, documentary evidence strongly suggests plaintiffs would not make such a claim. Plaintiffs filed refund claims, a 1040X and a Form 843, on April 14, 2003, less than one month after the notice of assessment was mailed and two months after the Form 4549-A was mailed. *See* Ex. A at A-17-A30, A33-A37. They attached to their Form 843 a document (which may have come from the IRS) to show how they calculated the interest owed on the underpayment set forth in the Form 4549-A and notice of assessment (as corrected in accord with their 1040X). *See* Ex. A at A29-A30. *Plaintiffs' own calculation uses the tax motivated rate*. *See id.* It also appears that plaintiffs attached to the Form 843 other documents that may have come from the IRS (Form 510, Support of Revised Comps, and Form 490, Activity Summary) that explicitly detail how interest at the tax motivated rate was computed on their underpayment (set forth in the Form 4549-A and notice of assessment), and that calculated such interest to an amount identical to the amount charged in the notice of assessment, $57,475.04. *See* Ex. A at A26-A28.[8]

---

[8] We think, based on review of the administrative files transmitted to defendant by the IRS, that these other IRS documents, *see* Ex. A at A26-A28, were attached by plaintiffs to the Form 843. Accordingly, in the remaining discussion in this Part IV, we so assume. If plaintiffs, subsequent to this reply brief, dispute what was attached to their April 14 claims or any other (continued...)

Before analyzing the facts, we pause to consider the statutory notice requirement of § 6230(c)(2)(A). As in effect for the taxable year at issue, the statute reads:

> Any claim under paragraph (1)(A) shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner.

No form other than a mailing is prescribed. As to content, the partner must be apprised of a "computational adjustment," which, as previously noted, is defined in § 6231(a)(6). Thus, for the six-month period to begin, the statute requires the IRS to mail to a partner notice of "the change in the tax [or interest] liability of a partner which properly reflects the treatment . . . of a partnership item," § 6231(a)(6). The concept is clear. To contest a computational adjustment, a taxpayer must be aware of the changes the adjustment made in the taxpayer's tax and interest liability. As relevant here, to commence the period, the IRS, after applying the decision in *Vulcan Oil* to plaintiffs, had to notify them of the change in their 1983 tax and interest liability. The IRS's mailings relevant to this case satisfied the statute.

The February 28, 2003, letter and enclosed Form 4549-A, either alone or in conjunction with the March 24, 2003, notice of assessment, satisfied the notice requirement of § 6230(c)(2)(A). The letter and form explicitly notified plaintiffs that (1) because they owed additional tax, they would "receive a bill for the additional tax and interest"; (2) their tax underpayment had been computed as $8,620, and all of it was attributable to tax motivated transactions and was thus subject to interest at the tax motivated rate; (3) tax motivated interest "will accrue and be assessed at 120% of underpayment rate in accordance with IRC 6621(c)" on

---

[8] (...continued)
issue related to their April 14 claims, discovery, possibly including plaintiffs' depositions, will be necessary to evaluate their challenge.

the entire $8,620; (4) the 120% rate was an annual interest rate; and (5) the changes to plaintiffs' tax return were "in accordance with the examination results of the Partnership return in which [plaintiffs] are an investor," and were "based on the Tax Court Decision, Docket #21530. . . ." The assessment notice in turn referred plaintiffs to the prior mailing "for a detailed explanation of the changes" and billed plaintiffs for $8,620 "in tax because of examination action" and $57,475.04 in interest.

The letter and form alone constituted sufficient statutory notice to commence the six-month period for contesting the computational adjustment. They notified plaintiffs that, as a result of partnership level proceedings, there was a change in their 1983 tax liability in the amount of $8,620 and that, because the underpayment was attributable to tax motivated transactions, they would owe interest, as provided by law, on that amount at an annual rate of 120% of the underpayment rate. A simple calculation, using publicly available IRS underpayment rates, *see e.g. Resp.* [Doc. #20] at 22 n.61, would yield the exact amount of interest owed. The letter and form thus notified plaintiffs of the change in their 1983 tax and interest liability resulting from partnership level proceedings. If plaintiffs disagreed that the changes properly reflected the determinations of those proceedings, they had notice and sufficient time to contest the changes. This is particularly true in this case, because plaintiffs dispute not the IRS's mathematical accuracy, but only its use of the tax motivated rate in the interest computation, which use is made abundantly clear in the letter and form.

In addition, both mailings together, the letter and form coupled with the assessment notice sent 24 days later, also satisfied § 6230(c)(2)(A) and would have started the six-month period if it had not already commenced with the first mailing. As noted above, the February 28

letter and form notified plaintiffs that, as a result of partnership level proceedings, there was a change in their 1983 tax liability in the amount of $8,620 and that, because the underpayment was attributable to tax motivated transactions, they would owe interest, as provided by law, on that amount at an annual rate of 120% of the underpayment rate. The March 24 assessment notice notified plaintiffs that the assessment was implementing the changes detailed in the prior mailing, and billed plaintiffs for those changes in their 1983 tax liability in the amount of $8,620 tax and $57,475.04 interest. The mailings thus notified plaintiffs of and billed them for the exact amount of the changes to their 1983 tax liability, including tax and interest at the tax motivated rate, resulting from partnership proceedings. Plaintiffs do not state that they understood the mailings in any other way.

While it is true that the Form 4549-A indicated "0.00" next to "TMT interest", it also included "0.00" next to regular "Interest," and, as set forth above, unambiguously notified plaintiffs that they would owe interest at the tax motivated rate on the entire underpayment of $8,620. Given the unequivocal statements, plaintiffs could not have understood the "0.00"s in Form 4549-A to mean they would escape paying interest on their underpayment. Indeed, plaintiffs nowhere claim that they were misled by the Form 4549-A into believing that they would not be charged interest (either at the normal rate or the tax motivated rate). To the contrary, plaintiffs told the IRS in April 2003 that they understood from the Form 4549-A that interest would be charged:

> The taxpayers received a letter (2083(SC)) (copy attached), dated February 28, 2003, asserting additional tax and interest for the tax year ended December 31, 1983. The additional tax arises out of adjustments relating to the taxpayer's investment, through a partnership, in Drake Oil Technology Partners.

Ex. A. at A20 and A35. Indeed, plaintiffs' own calculation in April 2003 of the interest they

would owe, if their refund claims were granted, employed the tax motivated rate. *See* Ex. A at A29-A30.

Similarly, the assessment notice's identifying the interest charged as "IRC section 6601" interest and listing underpayment interest rates does not support the inference that the notice misled plaintiffs into believing tax motivated interest was not charged. First, plaintiffs never claim to have been misled. Second, as discussed above, at page 9, as a legal matter, tax motivated interest is "IRC section 6601" interest. Third, the notice explicitly told plaintiffs that it implemented the changes detailed in the Form 4549-A, which in turn had explicitly informed plaintiffs that interest on the $8,620 underpayment would be charged at 120% of the underpayment rate. Thus, the mere boilerplate listing of the underpayment rates in the notice is of no moment. Fourth and finally, plaintiffs' Form 843 filed April 14, 2003, demonstrates that, by April 11, 2003, at the latest (when they signed it), the IRS had notified and plaintiffs knew that all interest charged in the notice of assessment on their $8,620 underpayment had been computed at the tax motivated rate. (This is so, even if the documents at A26-A28 of Ex. A were not attached to the Form 843, *see supra* at note 8.)

We now discuss the potential independent significance of the April 14, 2003, refund claims with respect to commencement of the six-month period, since those claims explicitly show plaintiffs' actual notice of the IRS's determination that they owed tax motivated interest. On April 14, 2003, plaintiffs, through their attorneys, filed a refund claim for part of the $8,620 tax underpayment on Form 1040X, and a refund claim for abatement of part of the $57,475.04 interest assessment on Form 843. *See* Ex. A at A-17-A-30, A-33-A-37; *see also App. B* [Doc. #13] at B-9. The Form 1040X sought a refund of $4,174 on the grounds that plaintiffs

"discovered an error in calculating the adjustment on Line 1a of Form CG-4549A." *See* Ex. A at A-35. As quoted above, plaintiffs stated in the 1040X that they understood from the February Form 4549-A that they would be charged interest on their underpayment. *See id.* at A-35.

The Form 843 sought abatement of interest from January 1, 1995 through March 22, 2003, on the grounds that the IRS unreasonably delayed in issuing the Form 4549-A to plaintiffs. The Form 843 contended that the amount of interest plaintiffs owed should be $17,312.79 (instead of $57,475.04), which plaintiffs calculated by using (1) a corrected tax liability of $4,446 (assuming their 1040X refund claim were granted); and (2) the *tax motivated interest rate* from April 15, 1983, through December 31, 1994. Plaintiffs' calculation was filed on a document that may have come from the IRS. *See* Ex. A at A-29-A-30. Plaintiffs also appear to have included other documents in their Form 843 (Form 510, Support of Revised Comps, and Form 490, Activity Summary) that explicitly detail a tax motivated interest calculation (in the amount of $57,475.04) from April 15, 1984, through March 24, 2003, on the entire $8,620 underpayment set forth in the February Form 4549-A and March notice of assessment. *See* Ex. A at A-26-A-28. (These documents also may have come from the IRS). The Form 843 does not elaborate on how plaintiffs obtained the IRS documents, but if the documents were mailed to plaintiffs by the IRS, then plaintiffs received documents from the IRS explicitly notifying them of the exact amount of the change in their 1983 tax and interest liability and explicitly setting forth a tax motivated interest computation in the identical amount of the interest charged in the notice of assessment. As noted above, *see supra* note 8, depending on plaintiffs' contentions about these documents, discovery may be necessary to resolve any issues related to them.

In summary, the Form 4549-A, separately or in combination with the notice of

assessment was sufficient to commence the six-month period of § 6230(c)(2)(A). Such sufficiency is bolstered by plaintiffs' own April 14, 2003 refund claims, which demonstrate that, by April 11, 2003, the IRS had notified and plaintiffs knew that all interest charged in the notice of assessment on their $8,620 underpayment had been computed at the tax motivated rate. In addition, depending on the source of documents included and apparently included with plaintiffs' April 14, 2003 refund claims, such documents may independently constitute the "notice of computational" adjustment sufficient to commence the six-month limitation period. Discovery may be necessary to determine such independent significance.

## III. Plaintiffs' other contentions lack merit.

Plaintiffs contend that six months is inadequate, if the six-month period of § 6230(c)(2)(A) applies to a refund claim to contest the assessment of tax motivated interest when computing adjustments to apply partnership level determinations. To support their thesis, plaintiffs propound two hypothetical fact patterns at odds with the record facts before the Court. We address each in turn.

First, plaintiffs conjecture, because the six-month period of § 6230(c)(2)(A) runs from "the day on which the Secretary mails the notice of computational adjustment" and the IRS may assess interest as late as the time permitted for collecting the underlying tax liability, the IRS could delay the actual assessment of tax motivated interest until after the six-month period has ended. Plaintiffs conclude from this hypothetical that the two-year period of § 6511(a) (measured from the time the tax is paid) must apply to an erroneous assessment of tax motivated interest.

There is no factual support for plaintiffs' first hypothetical. In fact, the IRS assessed tax

motivated interest well within the six-month period. The IRS mailed plaintiffs notice that their underpayment was subject to interest computed at the higher tax motivated rate in February 2003, and, well within six months thereof (i.e., in March 2003) assessed tax motivated interest.[9]

Second, plaintiffs hypothesize that six months is an insufficient period of time for most to liquidate assets and pay assessed tax motivated interest before filing a refund claim. Plaintiffs emphasize that the difficulty increases in severity to the extent the interest assessment follows commencement of the six-month period. Plaintiffs' second hypothetical also lacks any factual support here. Plaintiffs paid off all assessments, tax and interest at the higher rate, by April 21, 2003, well before expiration of the six-month period.[10]

In addition to lack of factual support, plaintiffs' liquidity argument lacks legal merit. The statutory scheme evinces no intent on Congress's part for inability to pay to constitute a basis for

---

[9] In addition, plaintiffs' argument is premised on a false legal assumption, that the date of assessment is relevant to the commencement or expiration of the six month period. However, Congress focused on notice, not assessment. That the IRS might assess after expiration of the six month period is legally irrelevant. Rather, what Congress requires for the six month period to commence is mailing of notice to a partner of a "computational adjustment." As in effect for the taxable years at issue, the provision of the six-month period reads:

> Any claim under paragraph (1)(A) shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner.

Section 6230(c)(2)(A). Thus, as already discussed, for the six-month period to begin, the statute requires the IRS to mail to a partner notice of "the change in the tax [or interest] liability of a partner which properly reflects the treatment . . . of a partnership item," § 6231(a)(6). This is all the statute requires, and there is no mention of assessment. We have discussed in the text how the mailings relevant to this case satisfied the notice requirement. Once notified, a partner may pay the computed tax and applicable interest and file a refund claim challenging the computation as erroneous. The partner must do so within the six-month period prescribed by Congress. It is not required that the IRS assess the partner based on the computation before the six-month period ends.

[10] Plaintiffs' second hypothetical also incorporates the false notion that date of assessment is relevant to the commencement or expiration of the six month period.

tolling the six-month period. Indeed, where Congress permits equitable considerations to override jurisdictional deadlines, it does so explicitly. *See, e.g.*, § 6226(e) (jurisdictional deposit requirement subject to cure where good faith attempt and timely correction); § 6511(h) (1998) (suspension of refund claim periods of § 6511(a-c) during period taxpayer is "financially disabled").

Moreover, plaintiffs' attempt to distinguish a short refund claim period for tax motivated interest claims from those for other purposes is unconvincing. Plaintiffs assert that paying significant tax and interest liabilities and filing a refund claim within a six-month period is different from paying the liabilities that result from a mathematical error and filing a refund claim in the same time. But plaintiffs offer no basis for this assumption. Indeed, a mathematical error could result in a liability as large, or even larger, than liabilities arising for other reasons. Plaintiffs also assert that the six-month period for filing a refund claim for erroneous imposition of penalties, additions to tax, and additional amounts (in effect for partnership tax years ending after August 5, 1997) is distinguishable, because in a prior partnership proceeding a partner could have raised "a partner's defenses." *See Resp.* [Doc. #20] at 37. But plaintiffs' distinction is based on a false premise. A partner may not raise individual partner defenses in a prepayment partnership proceeding. Rather, a partner may raise such defenses only in a partner-level proceeding following the partnership-level one. *See* § 6230(c)(4); *see also e.g.* Treas. Reg. § 301.6221-1 (c, d) (applicable to partnership taxable years beginning on or after October 4, 2001), § 301.6226(f)-1(a) (same).

**IV. Even if the Court were to agree with the Fifth Circuit's decision in *Copeland*, and disagree with the Tenth Circuit's and Ninth Circuit's decisions in *Hildebrand* and *Hill*, plaintiffs cannot recover tax motivated interest in this case.**

Throughout their response, plaintiffs argue the merits of their claim for tax motivated interest based on Fifth Circuit case law. Plaintiffs virtually urge the Court to consider and accept the Fifth Circuit's characterizations and conclusions with respect to the Tax Court's decision in *Krause v. Commissioner*, 99 T.C. 132 (1992), *see Copeland v. Commissioner*, 290 F.3d 326 (5th Cir. 2002), and to consider and accept the Fifth Circuit's conclusions regarding tax motivated interest in *Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004). Correspondingly, plaintiffs urge the Court to reject the Tax Court's own conclusions in *Krause* and the Tenth Circuit's and Ninth Circuit's agreement with those conclusions, *see Hill v. Commissioner*, 204 F.3d 1214 (9th Cir. 2000); *Hildebrand v. Commissioner*, 28 F.3d 1024 (10th Cir. 1994). Indeed, in one place, plaintiffs chide defendant for "conspicuously neglect[ing] to address the Fifth Circuit's analyses in *Copeland* and *Weiner* and how they impact the issues before this Court." *Resp.* [Doc. #20] at 20.

We did not address the substantive conclusions of the Fifth Circuit in *Copeland* and *Weiner* in our opening motion to dismiss because, in our view, they are irrelevant both to our presently pending motion to dismiss and to this case in general. Having now been prompted on the issue by plaintiffs, we provide here a short reply. Much of the following material is not germane to the resolution of our current motion but elaborates on other defenses we raised in our answer. We think this preview appropriate, however, to reply to plaintiffs' response.

Our pending motion challenges the timeliness of plaintiffs' administrative refund claim for tax motivated interest. Timely filing is a jurisdictional procedural prerequisite for a tax

refund claim, whether or not the claim has substantive merit. A claim that otherwise would entitle a taxpayer to a refund cannot be granted by the IRS if it is untimely filed. If, by mistake, such refund is granted, it is by law considered void and is the potential subject of a suit for erroneous refund. *See* § 6514(a)(1). The Fifth Circuit's conclusions in *Copeland* have nothing to do with the timeliness of plaintiffs' refund claim. That is, even if *Copeland* directs that tax motivated interest was erroneously computed as a result of the decision in *Vulcan Oil*, plaintiffs still would have had to file their refund claim in a timely manner to obtain any benefit from the decision.

More generally, the *Copeland* decision cannot be invoked to collaterally attack the decision in *Vulcan Oil* (and thereby to grant plaintiffs a refund in this case). This is because, in the present refund suit, § 6230(c)(4) (or § 7422(h)) and *res judicata* doctrine bind plaintiffs to the decision in *Vulcan Oil*, even if it was erroneous.

Before explaining why plaintiffs cannot benefit from *Copeland*, even if the Court were to conclude it correct, we return to *Krause* and examine its treatment in *Hildebrand*, *Hill*, and *Copeland*. As we noted in our opening brief, in *Krause*, the Tax Court disallowed partnership deductions under § 183. *See Krause*, 99 T.C. at 176 ("Losses of the partnerships are disallowed under section 183. . ."). Because regulations promulgated under former § 6621(c) identified as tax motivated transactions activities with respect to which related deductions are disallowed under § 183, the Tax Court then upheld imposition of tax motivated interest on the underpayments resulting from the disallowance, *see id.* at 180.

The Tenth Circuit affirmed. The taxpayers appealed "the disallowance under . . . § 183 . . . [and] imposition of an increased interest rate on the tax underpayment attributable to tax-

motivated transactions under . . . §§ 6601 and 6621(c)." *Hildebrand v. Commissioner*, 28 F.3d 1024 (10th Cir. 1994). In holding that the Tax Court did not clearly err in disallowing the partnerships' deductions under § 183 and therefore affirming imposition of tax motivated interest on the corresponding underpayment, the Tenth Circuit opined:

> The Tax Court disallowed under . . . § 183 the taxpayers' deductions for losses resulting from investments in the limited partnerships because the partnerships did not have the requisite profit motive and imposed an increased interest rate on tax underpayment attributable to tax-motivated transactions under . . . §§ 6601 and 6621(c). . . .
>
> The Tax Court applied the proper test in determining whether the activities in question were 'engaged in for profit' under . . . § 183(a). All expenses associated with a business transaction are not necessarily deductible. For a deduction to be allowed it must be shown that the activity engaged in was operated with an actual and honest profit objective. . . . § 183. We look to the economic motive of the partnership, not the individual investor, to determine whether the activity is engaged in for profit. . . .
>
> Because we do not find clearly erroneous the Tax Court's determination that the requisite profit motive did not exist, we reject taxpayers' argument and affirm the Tax Court's imposition of the increased rate of interest for substantially the reasons stated in its opinion. We specifically reject Krause's assertion that the Tax Court erred in finding Barton Income Fund liable for an increased rate of interest because a transaction which is determined to lack a profit motive does not equal a tax-motivated transaction under section 6621. Section 6621(c)(1) imposes an increased rate of interest on any substantial underpayment attributable to tax motivated transactions, which include activities not engaged in for profit.

*See Hildebrand*, 28 F.3d at 1026-28 (quotation omitted).

Similarly, in *Hill*, the Ninth Circuit concluded the Tenth Circuit was correct that the Tax Court had correctly decided *Krause*. "The tax court correctly held that the partnerships at issue lacked a profit motive under 26 U.S.C. § 183, which applies to partnerships despite the statute's failure to mention them. Further, it is well established that the determination of an existing profit motive is made at the partnership level and does not address the subjective intent of the particular partner in question." *Hill*, 204 F.3d at 1218. With respect to tax motivated interest:

> The imposition of the increased interest rate under . . . § 6621(c) was proper based on Tres. Reg. § 301.6621-2T A-4(1) because the Garfield Partnership lacked a profit motive under § 183; thus, the investments qualified as tax motivated transactions. . . .
>
> The reasoning in *Hildebrand* is sound: the Secretary has authority to define certain transactions as tax motivated, the Secretary has defined transactions lacking a profit motive under § 183 as tax motivated, the transactions in this case lack a profit motive under § 183, petitioners activities relating to these transactions are therefore tax motivated. . . .
>
> These, and the remaining "tax motivated transactions" set out in § 6621(c)(3)(A) show a legislative pattern established by Congress which treats violations of certain code sections as implicit violations of § 6621(c). The Secretary simply followed this pattern pursuant to the regulatory authority granted in § 6621(c)(3)(B) by establishing regulations that make a violation of § 183 a tax motivated transaction.

*Hill*, 204 F.3d at 1219-20.

The 2002 decision in *Vulcan Oil*, to which plaintiffs are bound and which they did not appeal, applied *Krause* and disallowed the loss deductions reported by Drake Oil under § 183. *See Br.* [Doc. #13] at 5. Since the deductions were disallowed because derived from tax motivated transactions, the IRS assessed interest at the tax motivated rate on plaintiffs' corresponding underpayment. Plaintiffs did not appeal the *Vulcan Oil* decision.

*On direct appeal from the Tax Court*, the Fifth Circuit, in *Copeland*, disagreed with the legal conclusions of *Krause* and the Tenth and Ninth Circuits. *Copeland v. Commissioner*, 290 F.3d 326 (5th Cir. 2002). It concluded that the Tax Court in *Krause* did not deny partnership deductions under § 183, but actually denied them under §§ 162 and 174 (using the § 183 factors only for the analysis), and therefore erred in imposing tax motivated interest, because, unlike a violation of § 183, a violation of either § 162 or §174 is not identified by statute or regulation as a tax motivated transaction. Indeed, the Fifth Circuit stated that, as a matter of law, *Krause* could not have disallowed deductions under § 183, because, according to the Fifth Circuit, that

section does not apply to partnerships. *See Copeland*, 290 F.3d at 333-38. The Fifth Circuit recognized that it "differ[ed] with our fellow circuits regarding the application of . . . § 6621(c) *via* TTR § 301.6621-2T." *Id.* at 336.

Plaintiffs prefer the Fifth Circuit's view to that of the Tenth and Ninth Circuits. We disagree with *Copeland*. Which party is correct cannot impact the outcome of this case. First, the *Krause* disallowance of partnership deductions for lack of profit motive under § 183, applicable here via *Vulcan Oil*, constitutes the determination of a partnership item, as defined in § 6231(a)(3), and therefore cannot be overturned in a partner-level proceeding like the present one. *See* §§ 6230(c)(4), 7422(h). Since the statute precludes overturning the disallowance under § 183, even if it was erroneous, plaintiffs cannot prevail in the present suit. The disallowance of their deductions was under § 183, and therefore the corresponding tax underpayment is attributable to a tax motivated transaction.

Second, even if *Copeland* is correct and *Krause*, *Hildebrand*, and *Hill* all in legal error, the doctrine of *res judicata* precludes plaintiffs here (outside of direct appeal) from benefitting from the Fifth Circuit's analysis. The Supreme Court, holding that *res judicata* bars relitigation of an unappealed adverse judgment even where another plaintiff in a similar action against a common defendant successfully appealed a judgment against him or her, explains:

> There is little to be added to the doctrine of res judicata as developed in the case law of this Court. A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgement may have been wrong or rested on a legal principle subsequently overruled in another case. As this Court explained . . ., an erroneous conclusion reached by the court in the first suit does not deprive the defendant in the second action of their right to rely upon the plea of *res judicata*. . . . A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only be a direct review and not by bringing another action

> upon the same cause of action. We have observed that the indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of *res judicata* to avert.

*Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398-99 (1981) (citations and quotations omitted).

Thus, even if *Krause*, applied here by *Vulcan Oil*, was wrongly decided, the *Vulcan Oil* decision remains *res judicata* against plaintiffs. All the requirements are met:

"Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979). The Supreme Court has specifically held that *res judicata* is applicable in federal tax cases. *Commissioner v. Sunnen*, 333 U.S. 591, 598-99 (1948). A finding of res judicata requires "that: (1) the court's prior decision must be a valid and final judgment, (2) the suit before the court must involve the same claim or cause of action as in the prior decision, (3) the prior decision must have been made on the merits of the case, and (4) the same parties must be involved in both cases." *Lyons v. U.S.*, 45 Fed. Cl. 399, 403 (1999) (quoting *Mosca v. United States*, 224 Ct. Cl. 678, 679, 650 F.2d 288 (1980)). "Additionally, the Supreme Court has attached significant importance in making sure the nonmovant has had a full and fair opportunity to litigate the claim below." *Id.* (quotation omitted).

The first requirement is satisfied, for the Tax Courts' June 13, 2002, decision in *Vulcan Oil* was a valid and final judgment. The tax matters partner of Drake Oil filed a readjustment petition pursuant to § 6226(a). Thus, under § 6226(f), the Tax Court had jurisdiction to readjust and determine the partnership items of Drake Oil for 1983 at issue in the petitioned FPAA. Pursuant to § 6226(g), the Tax Court's decision was valid and subject to review just as any other

decision of the Tax Court:

> Any determination by a court under this section shall have the force and effect of a decision of the Tax Court . . . and shall be reviewable as such.

Finally, under §§ 7481 and 7483, the decision became final 90 days after entered, *i.e.*, in September 2002.

The second requirement – that both suits must involve the same claim or cause of action – is also satisfied. In comparing claims, the Federal Circuit has endorsed a transactional test. *See Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 479 (Fed. Cir. 1991). The test focuses on whether two claims are based on a "common nucleus of operative facts," not whether the relief requested or legal theories asserted are the same. *Lyons*, 45 Fed. Cl. at 403-404. As regards tax motivated interest, both *Vulcan Oil* and plaintiffs' claims here rest on identical factual grounds, that the partnerships' disallowed deductions were not generated by tax motivated transactions, i.e., activities not engaged in for profit under § 183. The FPAA issued to Drake Oil disallowed the losses reported on the partnership's return for 1983, and asserted as one ground that it had not been established that the partnership's deductions originated in transactions entered into for profit. Drake Oil's tax matters partner filed a readjustment petition with the Tax Court, specifically contesting the lack-of-profit-motive determination. Under § 6226(f), the Tax Court had jurisdiction to determine the partnership items of Drake Oil, including whether its loss generating activities were not engaged in for profit under § 183. The Tax Court's decision, applying *Krause*, disallowed deductions that had been disallowed by the FPAA and attributed the disallowed deductions to tax motivated transactions for purposes of

§ 6621(c).[11]

The *Vulcan Oil* decision was a decision on the merits, thus satisfying the third requirement of *res judicata*. The decision was entered on June 13, 2002, pursuant to a motion to dismiss for lack of prosecution. The *res judicata* effect of the *Vulcan Oil* decision is mandated by Congress. Under § 6226(h), dismissal of an action brought under § 6226(a), like *Vulcan Oil*, constitutes a decision that the FPAA under review is correct and permits an appropriate order to be entered.[12] Accordingly, the dismissal decision in *Vulcan Oil*, which was entered for lack of prosecution and which upheld the vast majority of the disallowance in the FPAA issued to Drake Oil pursuant to § 183, constituted a decision that the disallowance for lack of profit motive under § 183 was correct on the merits.

The final requirements for application of *res judicata* are that the same parties must be involved in both cases and must have had a full and fair opportunity to litigate in the prior proceeding. By statute, as plaintiffs concede, they were parties to *Vulcan Oil* with full rights to participate and litigate their partnership's profit motive. § 6226(c)(1) and (2). Therefore, the

[11] Indeed, as the direct appeal in *Copeland* shows, plaintiffs here, based on this factual nucleus, could have raised the legal arguments they now assert on direct appeal (as the taxpayers did in *Copeland*), presumably before the Third Circuit.

[12] The result might be the same even without § 6226(h). Under Tax Court Rule 123(d), similar to FRCP 41(b) and RCFC 41(b), such decisions are adjudications "on the merits," and thus can, but do not always, have *res judicata* effect. *Cf. Saladino v. U.S.*, 62 Fed. Cl. 782, 789 (2004); *cf. also Int'l Nutrition Co. v. Horphag Research, Ltd.*, 220 F.3d 1325, 1328-29 (Fed. Cir. 2000) ("Contrary to INC's argument, default judgments can give rise to res judicata. . . . INC therefore cannot avoid the bar of res judicata on the ground that SCERPA's opposition was abandoned and dismissed for failure to prosecute").

final requirement for application of *res judicata* is met in this case.[13]

## V. Conclusion

For the reasons detailed in defendant's briefs, plaintiffs' complaint should be dismissed.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice, Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/David Gustafson
Of Counsel

November 2, 2006

---

[13] Finally, we note that, contrary to plaintiffs' argument, the Fifth Circuit's decision in *Weiner* has no applicability here. *Weiner* held that, where a partnership item settlement agreement does not specify the basis for disallowing partnership deductions, the IRS cannot attribute the disallowance to a tax motivated transaction, if the FPAA in which the deductions were disallowed based the disallowance on anything other than a tax motivated transaction. *See Weiner*, 389 F.3d at 162-63. By contrast, the *Vulcan Oil* decision explicitly attributed plaintiffs' partnership deductions to activities lacking profit motive under § 183, which are tax motivated transactions.