# In the United States Court of Federal Claims

No. 05-1189T

(Filed: May 17, 2007)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| **THOMAS H. McGANN, and EVELYN G. McGANN,** | ) | Interest applied to an underpayment of tax under former I.R.C. § 6621(c) for "tax motivated transactions;" statute of limitations on administrative claim; application to partner of findings and conclusions in a TEFRA partnership case; Final Partnership Administrative Adjustment; computational adjustment; notice of income tax examination changes; notice of balance due |
| Plaintiffs, | ) | |
| v. | ) | |
| **THE UNITED STATES,** | ) | |
| Defendant. | ) | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

Thomas E. Redding, Redding & Associates, P.C., Houston, TX for plaintiffs. With him on the briefs were Teresa J. Womack and Sallie W. Gladney, Redding & Associates, P.C., Houston, TX.

Bart D. Jeffress, Trial Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Eileen J. O'Connor, Assistant Attorney General, David Gustafson, Chief, and Steven I. Frahm, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This tax case addresses implementation of a provision of the Internal Revenue Code that was repealed over seventeen years ago. Although the refund claimed in the case amounts only to $18,309.66, *see* Compl. at 6, both the legal and factual underpinings of this dispute are peculiar and fraught with difficulty. First, the key statutes and implementing regulations were and are

written using terms that are contraindicative of the way they have been apparently applied in this instance. Second, a conflict in the decisions of the courts of appeals exists as to the interpretation to be accorded those statutes and regulations. And, third, the notices sent to the taxpayers to trigger their obligation to make payment and then to apply for a refund are contradictory and affirmatively misleading in a respect crucial to this case.

Thomas and Evelyn McGann seek a refund of interest they were assessed by the Internal Revenue Service ("IRS," "the Service," or "the government") after the conclusion of proceedings before the United States Tax Court involving a partnership in which Mr. McGann was an indirect partner. The interest rate ultimately applied was not the interest rate typically pertinent to an underpayment of tax in accord with 26 U.S.C. ["I.R.C."] §§ 6601(a) and 6621(a)(2) but instead was 120 percent of the regular underpayment rate, as provided by former I.R.C. § 6621(c) for "tax motivated transactions."[1] The government has moved to dismiss Mr. and Mrs. McGann's complaint for want of subject matter jurisdiction, arguing that they failed to file their claim with the IRS within the time prescribed by statute.

---

[1]On July 18, 1984, as part of the Tax Reform Act of 1984, Pub. L. No. 98-369, 98 Stat. 494, Congress amended the Internal Revenue Code to provide that interest owed to the government accruing after December 31, 1984, relating to "any substantial underpayment attributable to tax motivated transactions" would be at this higher interest rate. *See* Pub. L. No. 98-369*,* § 144, 98 Stat. at 682-84 (initially codified at I.R.C. § 6621(d), later redesignated as § 6621(c) by the Tax Reform Act of 1986, Pub. L. No. 99-514, § 1511(c)(1)(A), 100 Stat. 2085, 2744, and then subsequently repealed by Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 7721(b), 103 Stat. 2106, 2399). The 1984 Act identified certain "tax motived transactions" and authorized the Treasury Secretary to identify additional "tax motivated transactions" by regulation. *See* Pub. L. No. 98-369, § 144(a), 98 Stat. at 683. This added-interest provision was both prospective and retroactive in nature: the higher rate was applicable to interest accruing after December 31, 1984, attributable to an underpayment of tax due because of a "tax motivated transaction" whether or not the "tax motivated transaction" occurred before or after enactment. *See generally Demos v. Commissioner*, 68 T.C.M. (CCH) 209 (1994); *see also Kennedy v. Commissioner*, 876 F.2d 1251, 1256 (6th Cir. 1989); *De Martino v. Commissioner*, 862 F.2d 400, 408-09 (2d Cir. 1988).

On December 19, 1989, Congress passed the Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, 103 Stat. 2106, Section 7721(b) of which repealed I.R.C. § 6621(c). *See* 103 Stat. at 2399. However, this repeal only applied to "returns the due date for which (determined without regard to extensions) is after December 31, 1989." Pub. L. No. 101-239, § 7721(c), 103 Stat. at 2400; *see also Weiner v. United States*, 389 F.3d 152, 159 n.7 (5th Cir. 2004). As a consequence, notwithstanding the repeal, Congress provided that interest at the higher "tax motivated transaction" rate would continue to accrue after 1989 if the underlying "tax motivated transaction" occurred in a tax year for which the initial due date for the tax return was on or before December 31, 1989.

The resulting question of the applicable statute of limitations focuses largely on procedures for resolving the tax returns of partnerships instituted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324, 648-671 ("TEFRA") (codified in scattered sections of the I.R.C., including especially §§ 6221-6234). *See generally Keener v. United States*, __ Fed. Cl. __, 2007 WL 1180476, at *2-4 (Apr. 18, 2007) (describing the TEFRA procedures).

**Background**[2]

During tax year 1983, Mr. McGann was a general partner in the George Walueff & Thomas McGann Partnership ("Walueff & McGann"), which partnership was in turn a limited partner in Drake Oil Technology Partners ("Drake Oil"). Compl. ¶ 6; Def.'s Mot. to Dismiss ("Def.'s Mot."), App. B, Ex. 1 at B-1 (1983 Schedule K-1); Hr'g Tr. 68:17-25 (Jan. 29, 2007). Drake Oil was one of seven Denver-based limited partnerships that were related to the so-called Elektra Hemisphere tax shelter investments. *See Vulcan Oil Tech. Partners v. Commissioner*, 110 T.C. 153, 154, 164 n.1 (1998), *aff'd sub nom. Drake Oil Tech. Partners v. Commissioner*, 211 F.3d 1277 (10th Cir. 2000) (Table, text in Westlaw). Drake Oil reported an ordinary loss of $19,698,934, including $23,198,105 of ordinary deductions, on its 1983 Form 1065 (Return of Partnership Income). *See* Pls.' Supp., Ex. A at A-13 (Form 4605-A (Examination Changes)).[3] The McGanns timely filed their 1983 joint individual income tax return on which they reported an ordinary loss of $14,696, Mr. McGann's distributive share of the loss from Drake Oil as "passed through" Walueff & McGann to him. Compl. ¶ 5; Def.'s Mot., App. B, Ex. 1 at B-1 (1983 Schedule K-1), Ex. 2 at B-6 (Form 886-A).

The IRS conducted an examination of Drake Oil for tax year 1983. *See* Pls.' Supp., Ex. A at A-11 (Notice of Final Partnership Administrative Adjustment ("FPAA") from IRS to Drake Oil (Apr. 6, 1987)). The IRS ultimately disallowed all the deductions Drake Oil reported on its return, *see id*. at A-18 (FPAA, Schedule of Deductions), and on April 6, 1987, the IRS mailed Drake Oil's tax matters partner the notice of FPAA, identifying the adjustments the IRS had determined for Drake Oil's 1983 tax year. *Id*. at A-11 (FPAA), A-54 to A-55 (Resp't's Mot. to Dismiss ¶ 2) (*Vulcan Oil*, No. 21530-87) (T.C. Dec. 20, 1001) ("*Vulcan Oil* Dismissal Mot.")). The FPAA listed a number of reasons for the disallowance, including that "[i]t has not been

---

[2]The recitations that follow do not constitute findings of fact by this court. Rather, the recited factual elements have been taken from the parties' filings and are either undisputed, except where a factual controversy is explicitly noted, or are alleged and assumed to be true for purposes of the pending motions.

[3]*But see* Pls.' Supp., Ex. A at A-69 (Order and Order of Dismissal and Decision, *Vulcan Oil*, No. 21530-87 (T.C. June 13, 2002)) (showing that a net loss of $20,008,710 was originally reported). *See also* Pls.' Supp., Ex. A at A-53 (Resp't's Mot. to Dismiss at 6, *Vulcan Oil*, No. 21530-87 (T.C. Dec. 20, 2001) (same). The difference in these amounts is not material to the factual and legal issues in the case.

established that the claimed deductions originated in a trade or business or in a transaction entered into for profit." *Id*. at A-15 (FPAA, Explanation of Adjustments).

On July 2, 1987, an authorized representative of Drake Oil's tax matters partner filed a petition in the United States Tax Court, seeking review of the IRS's determinations as set forth in the FPAA. Def.'s Mot., App. B, Ex. 4, at B-12 (Petition, *Vulcan Oil*, No. 21530-87 (T.C. July 2, 1987)); Pls.' Supp., Ex. A at A-55 (*Vulcan Oil* Dismissal Mot. ¶ 3). That proceeding in the Tax Court also involved the six other partnerships that had a reporting position in the same or similar transactions as those pertinent to Drake Oil and that also had been adjusted by the IRS. *See* Pls.' Supp., Ex. A at A-54 (*Vulcan Oil* Dismissal Mot. ¶ 2); Pls.' Resp. at 4.

After preliminary proceedings respecting the ability to enter into consistent settlement agreements, *see Vulcan Oil*, 110 T.C. at 153-54, no tax matters partner could be identified who was willing to serve in that capacity. Pls.' Supp., Ex. A at A-62 (*Vulcan Oil* Dismissal Mot. ¶ 27). On December 20, 2001, the IRS filed in the Tax Court a motion to dismiss the case involving the seven related partnerships, including Drake Oil, for the 1983 tax year. *Id*. at A-52 (*Vulcan Oil* Dismissal Mot.). That motion was based on the lack of prosecution of the case by any tax matters partner. *Id*. at A-61 to A-63 (*Vulcan Oil* Dismissal Mot. ¶¶ 24-29). The IRS's motion recited that "proposed adjustments to partnership items in this case . . . have been computed based on I.R.C. § 183 in accordance with the opinion in *Krause*." *Id*. at A-65 (*Vulcan Oil* Dismissal Mot. ¶ 34). The case to which reference was made, *Krause v. Commissioner*, 99 T.C. 132 (1992), *aff'd sub nom*. *Hildebrand v. Commissioner*, 28 F.3d 1024 (10th Cir. 1994), had been a lead case in the Tax Court to address similar issues.[4] For Drake Oil, the proposed adjustment would have disallowed ordinary deductions in the amount of $21,556,521 but treated as proper $1,641,584 of the ordinary deductions originally claimed by Drake Oil in 1983. *See* Pls.' Supp., Ex. A at A-53 (*Vulcan Oil* Dismissal Mot. at 6). On June 13, 2002, the Tax Court granted the IRS's motion and dismissed the case. *Id*. at A-68 (Order and Order of Dismissal and Decision, *Vulcan Oil*, No. 21530-87 (T.C. June 13, 2002) ("*Vulcan Oil* Dismissal Order")). The

[4]In *Krause*, the Tax Court had reviewed adjustments made by the IRS to the tax returns of an individual taxpayer, Gary E. Krause, for tax years 1982 and 1983, the returns of other individual taxpayers for the years 1980, 1981, and 1982, and the returns of two so-called "Wichita Partnerships," Technology Oil and Gas Associates 1980 and Barton Enhanced Oil Production Income Fund, for the 1982 and 1983 tax years. 99 T.C. at 132-34. At issue in *Krause* were claimed losses and deductions of partnerships that had engaged in similar transactions as Drake Oil. In *Krause*, the Tax Court concluded that losses of the partnerships would be disallowed under I.R.C. § 183, and accrued interest deductions would be disallowed due to the non-genuine nature of the underlying debt obligations. *Krause*, 99 T.C. at 176. In addition, the Tax Court concluded that in engaging in the pertinent transactions, the partnerships did not have "actual and honest profit objectives." *Id*. at 178. Accordingly, the individual taxpayer-petitioners in *Krause* were held liable for increased interest under former I.R.C. § 6621(c), but not for additions to tax and interest for negligence. *Id*. at 177-80.

adjustment ordered by the Tax Court for Drake Oil's 1983 return was identical to that requested by the IRS in its motion to dismiss. *Compare id.* at A-69 (*Vulcan Oil* Dismissal Order at 6), *with id.* at A-53 (*Vulcan Oil* Dismissal Mot. at 6).

On February 28, 2003, the IRS mailed Mr. and Mrs. McGann a letter transmitting Form 4549A, Income Tax Examination Changes, and Form 886-A, Explanation of Items. Def.'s Mot., App. B, Ex. 2 at B-3 to B-6. These materials notified Mr. and Mrs. McGann that the IRS was making adjustments to their 1983 income tax return "based on the Tax Court decision, Docket #21530-87, from the partnership, George C Walueff." *Id.* at B-4 and B-5 (Form 4549A). Among other things, Mr. and Mrs. McGann were informed that their return was being adjusted to show an increase of $25,888 in ordinary income and a resulting increase in their tax liability of $8,620. *Id.* at B-4 (Form 4549A). The Form 4549A listed the increase in tax as "attributable [to] Tax Motivated Transactions [for which] TMT interest will accrue and be assessed at 120% of underpayment rate in accordance with IRC 6621(c)." *Id.* at B-5. However, it also showed "0.00" as the amount of "TMT Interest – computed 03/22/2003 on TMT underpayment." *Id.*

On March 11, 2003, the IRS received a payment of $8,620 from Mr. and Mrs. McGann. Def.'s Mot. App. B, Ex. 3 at B-8 (Form 4340 (Certificate of Assessments, Payments, and Other Specified Matters)).

Thereafter, on March 24, 2003, the IRS mailed Mr. and Mrs. McGann each a notice requesting payment in the total amount of $66,095.04, said to be comprised of $8,620.00 related to the "increase in tax because of examination action" and $57,475.04 in "interest charged." Pls.' Resp., App. B at B-1 ("Notice of Balance Due"). The notice bore a partially handwritten notation that "[c]redit of $8,620.00 is being applied to your account. Your new balance due is $57,475.04." *Id.* at B-3 (Notice of Balance Due). The Notice of Balance Due stated that "the penalty and interest charges on your account are explained on the following pages." *Id.* at B-2 (all capital letters in original). It referred to the $57,475.04 as "interest – IRC Section 6601," *id.* (all capital letters in original), and stated "the interest rates on underpayment and overpayment of taxes are as follows," then listing the standard interest rates for underpayments applicable under I.R.C. §§ 6621(a)(1) and 6621(a)(2) for the time periods from October 1, 1988, through January 1, 2003, but not referring to the enhanced interest specified in former I.R.C. § 6621(c). *Id.* (all capital letters in original).[5]

Arithmetically, the stated interest amount of $57,475.04 could not have been derived from the interest rate or interest period stated in the notice. Instead, the IRS appears actually to have calculated the interest due on the underpayment by (1) starting four and one-half years prior to the stated date, *i.e.*, on April 16, 1984, not October 1, 1988, (2) ending on March 24, 2003, and

[5]I.R.C. § 6621(a)(2) establishes the standard underpayment rate by reference to I.R.C. § 6621(b). Specifically, "[t]he underpayment rate established under this section shall be the sum of – (A) the Federal short-term rate determined under subsection (b), plus (B) 3 percentage points." I.R.C. § 6621(a)(2).

(3) using the higher interest rates established by the former § 6621(c) for interest accruing after 1984, not the standard underpayment rates established by § 6621(a)(2). Def.'s Reply App. A, Ex. 5 at A-27 to A-28. Mr. and Mrs. McGann aver that "[t]he IRS never mailed [them] any notice of how it computed the [former] § 6621(c) penalty rate of interest it imposed on them." Pls.' Resp. at 22 (emphasis omitted).

On April 14, 2003, Mr. and Mrs. McGann submitted a payment of $17,312.79, plus a Form 843 (Claim for Refund and Request for Abatement) and a Form 1040X (Amended U.S. Individual Income Tax Return) for the 1983 tax year. Def.'s Mot., App. B, Ex. 3 at B-9 (Form 4340); Pls.' Supp., Ex. A at A-9; Def.'s Reply, App. A, Ex. 4 at A-17, Ex. 5 at A-19 to A-21, Ex. 7 at A-33 to A-35.[6]

A week later, on April 21, 2003, the IRS recorded a payment of $40,162.25 from Mr. and Mrs. McGann, who thus paid the full amount sought by the IRS. *See* Def.'s Mot., App. B, Ex. 3 at B-9; Pls.' Supp., Ex. A at A-9.

Two years later, on April 15, 2005, Mr. and Mrs. McGann filed a refund claim with the IRS, seeking a refund of $18,309.66, the difference between the interest attributable to the enhanced rate of interest under former § 6621(c) and the standard interest rate for underpayments under I.R.C. § 6621(a)(2). Pls.' Supp., Ex. A at A-1 (Form 843), A-97 (Certified Mail Receipt (Apr. 15, 2005)). Failing to receive a response to this claim, Mr. and Mrs. McGann filed their complaint in this court on November 10, 2005. Compl. ¶ 11; *see* I.R.C. § 6532(a)(1) (taxpayer

---

[6]On the Form 843, Mr. and Mrs. McGann requested that the IRS abate interest under I.R.C. § 6404(e), asserting that interest accruing after December 31, 1994, was attributable to an unreasonable delay by the IRS "in performing a ministerial act." Def.'s Reply, App. A, Ex. 5 at A-21 (Form 843). Specifically, Mr. and Mrs. McGann contended "[t]he preparation and issuance of a report of Income Tax Examination Changes following the *Krause* [decision] is . . . a ministerial act." *Id.* With the Form 1040X, Mr. and Mrs. McGann requested a refund based on a purported "error [made by the IRS] in calculating the adjustment on Line 1a of Form CG-4549A." Def.'s Reply, App. A, Ex. 7 at A-35 at DX 7 (Form 1040X). They asserted that "the listed adjustment to Schedule E," where ordinary income and losses from partnerships would be reported, "was in the amount of $25,888.00," but "the deduction [originally] claimed on [the] 1983 Schedule E was only $14,696.00." *Id.* The payment of $17,312.79 represented the amount of additional tax Mr. and Mrs. McGann then believed the IRS should have assessed them after the partnership examination, plus the interest that would have accrued at the rates specified in I.R.C. § 6621(a)(2) through December 31, 1984, and at the rates specified in former I.R.C. § 6621(c) from January 1, 1985, through December 31, 1994. *See* Def.'s Reply, App. A, Ex. 5 at A-29 to A-30 (Interest and Penalty Detail Report), Ex. 7 at A-35 (Form 1040X, Explanation of Changes to Income, Deductions, and Credits); Rev. Rul. 2007-16, 2007-13 I.R.B. 807 (providing interest rates applicable under I.R.C. § 6621 since 1975). Mr. and Mrs. McGann have not pursued those claims in the instant suit.

required to wait six months before filing tax refund suit unless claim disallowed earlier); *Hamzik v. United States*, 64 Fed. Cl. 766, 768 (2005).

**JURISDICTION**

As plaintiffs, Mr. and Mrs. McGann bear the burden of establishing that the court has subject matter jurisdiction over their claim. *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Through the Tucker Act, Congress has conferred on this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). This grant includes a suit seeking a refund of taxes. *See Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967), *abrogated in part on other grounds by Malone v. United States*, 849 F.2d 1441, 1444-45 (Fed. Cir. 1988). With very limited exceptions, tax cases in this court and district courts are purely refund suits. *Cf.* 28 U.S.C. § 1346(a)(1) (providing that district courts shall have jurisdiction concurrent with that of this court to consider tax-refund suits). "Where the principal tax deficiency has not been paid in full, such tax refund claims are dismissed." *Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993).

Before a tax refund claim can be considered by a court, it must first be filed with the IRS within applicable time limitations. *See* I.R.C. § 7422(a); *see also United States v. Dalm*, 494 U.S. 596, 602 (1990) (claim for refund must be filed within time limits of I.R.C. § 6511(a)); *Sun Chemical Corp. v. United States*, 698 F.2d 1203, 1206 (Fed. Cir. 1983) ("a *timely*, sufficient claim for refund is a jurisdictional prerequisite to a refund suit") (emphasis added)); *Minehan v. United States*, 75 Fed. Cl. 249, 254 (2007) (claim for refund must be filed within time limits of I.R.C. § 6511(a)).[7] Mr. and Mrs. McGann manifestly filed a request for refund with the IRS, but the government asserts that Mr. and Mrs. McGann failed timely to file their request. *See* Def.'s Mot. at 12-15. The identification of the applicable time limitation for filing their refund request and the determination of when, and indeed whether, that limitation began to run govern the disposition of the government's motion to dismiss.

---

[7]Section 7422(a) provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

I.R.C. § 7422(a).

**ANALYSIS**

Several statutes of limitation are candidates for application in this case. As a general matter, the possibilities are constrained and delineated by the TEFRA procedures for applying to individual partners the results of proceedings involving partnership tax returns. Under TEFRA procedures, "partnership items" are resolved at a partnership-level proceeding and, with limited exceptions, may not be contested in a refund suit. I.R.C. §§ 6221, 7422(h); *see Prochorenko v. United States*, 243 F.3d 1359, 1363 (Fed. Cir. 2001); *Keener*, __ Fed. Cl. at __, 2007 WL 1180476, at *3.[8] By contrast, nonpartnership items are resolved at the individual-partner level. *See Crnkovich v. United States*, 202 F.3d 1325, 1328-29 (Fed. Cir. 2000). A further category of items falls between these two poles. "Affected items" are hybrids that depend upon a partnership-level determination but also have a nonpartnership aspect. *See*, *e.g.*, *Keener*, __ Fed. Cl. at __, 2007 WL 1180476, at *5 (citing *Katz v. Commissioner*, 335 F.3d 1121, 1124 (10th Cir. 2003); *GAF Corp. & Subs. v. Commissioner*, 114 T.C. 519, 528 (2000); Arthur B. Willis, John S. Pennell & Philip F. Postlewaite, *Partnership Taxation* ¶ 20.02[4][c] (6th ed. 1999)).

The government contends that the claim filed by Mr. and Mrs. McGann relates to computational adjustments to individual tax returns due to partnership items and thus that the relatively short six-month time limitation for seeking refunds of I.R.C. § 6230(c)(2)(A) applies. Def.'s Mot. at 12.[9] That provision is triggered by a "notice of computational adjustment" and requires a taxpayer to file his or her refund claim with the IRS "within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner." I.R.C. § 6230(c)(2)(A).

Mr. and Mrs. McGann argue that the limitation period of I.R.C. § 6230(c)(2)(A) does not apply and that the court should instead look to I.R.C. § 6511(a) for the applicable statute of limitations. Pls.' Resp. at 31. Section 6511(a) provides that a refund claim must be filed within

---

[8]I.R.C. § 7422(h) provides that "[n]o action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)), except as provided in section 6228(b) or section 6230(c)." The exceptions relate to circumstances (1) when the Secretary mails a partner notice that a partnership item shall be treated as a nonpartnership item, *see* I.R.C. § 6228(b)(1), and (2) when the Secretary has erroneously computed a computational adjustment. I.R.C. § 6230(c)(1)(A).

[9]The term "computational adjustment" is defined statutorily to mean –

> the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments.

I.R.C. § 6231(a)(6).

the later of two years from the date the liability was paid or three years from the date the return was filed. In effect, Section 6511(a) establishes the quotidian statute of limitations for refund claims, and typically governs unless a shorter statute of limitations applies. *See Computervision Corp. v. United States*, 445 F.3d 1355, 1373 (Fed. Cir. 2006).

The government's argument that the six-month statute of limitations set out in I.R.C. § 6230(c)(2)(A) operates as a bar to the claim put forward by Mr. and Mrs. McGann has three major predicates: that (1) the assessment of the enhanced interest at issue is within the scope of a "change in . . . tax liability," I.R.C. § 6231(a)(6), (2) the assessment of the enhanced interest in this instance reflects a partnership item that was addressed conclusively in a partnership-level determination of the Tax Court, and (3) the computational adjustment respecting that partnership item was made subsequently by the IRS and appropriate notice of that computational adjustment was mailed to Mr. and Mrs. McGann more than six months prior to their submission of a refund claim. Each of these premises will be addressed in turn.[10]

**A. Interest as "Tax"**

Mr. and Mrs. McGann contend that a computational adjustment does not encompass the assessment of interest at the increased rates provided by former Section 6621(c) because a computational adjustment is statutorily limited to a "change in 'tax liability.'" Pls.' Resp. at 17 (quoting I.R.C. § 6231(a)(6)). In short, in their view, the interest at issue is not a tax liability and therefore the mechanism by which the IRS assessed the interest could not have been a

[10]The government makes a passing reference in its reply brief to a now-modified provision of the Internal Revenue Code that it says, for the tax year at issue in this case, specifically negated the application of the two-year limitations period set out in I.R.C. § 6511(a) for filing claims for refund. *See* Def.'s Reply at 3 (citing I.R.C. § 6230(d)(6) (1988)). That provision previously provided that "Subchapter B of Chapter 66 (relating to limitations on credit or refund [and including I.R.C. § 6511(a)]) shall not apply to any credit or refund of an overpayment attributable to a partnership item (or an affected item)." I.R.C. § 6230(d)(6) (1988). The evident purpose underlying the government's citation to this provision is to shore up the position that I.R.C. § 6230(c)(2)(A) must apply because Section 6511(a) does not. The salient problem with the government's reference to Section 6230(d)(6) is the parenthetical inclusion of "an affected item." Taken at face value, the parenthetical inclusion would mean that there was no limitations period for filing a claim for refund respecting a substantive "affected item." Thus, as the government would have it, for substantive affected items for the taxable year at issue in this case, no limitation period applied to claims for refund.

Congress rectified this anomaly in the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1239(c)(1), 111 Stat. 1028, by deleting the parenthetical "(or an affected item)" following "partnership item" in Section 6230(d)(6). As discussed *infra*, at 11 n.13, the amendments made by the 1997 Act were effective for partnership taxable years beginning after August 5, 1997, the date of enactment of the 1997 Act.

computational adjustment to which the six-month time limitation of Section 6230(c)(2)(A) could apply. Pls.' Resp. at 16-18.

In the ordinary course, "statutory language should be given its natural and quotidian meaning and should not be extended by implication to reach other matters." *America Online, Inc., v. United States*, 64 Fed. Cl. 571, 576 (2005). However, "[w]hen a statute includes an explicit definition, [courts] must follow that definition, even if it varies from that term's ordinary meaning." *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000).

Congress has explicitly expanded the definition of the word "tax" as used in the Internal Revenue Code beyond the word's ordinary meaning by specifying that "[a]ny reference in this title [*i.e.*, the Internal Revenue Code] . . . to any tax imposed by this title shall be deemed also to refer to interest imposed by this section [*i.e.*, § 6601] on such tax." I.R.C. § 6601(e)(1).[11] Mr. and Mrs. McGann do not dispute that interest imposed by Section 6601 falls within this expanded definition of "tax," but they do resist the inclusion of the increased rate of interest attributable to former Section 6621(c). *See* Pls.' Surreply at 3. Their argument is that "the § 6621(c) penalty rate of interest is not *imposed by* § 6601; it is *imposed by* §6621(c)," and therefore the enhanced rate of interest does not fall within the scope of the term "tax liability" in the definition of a "computational adjustment" in Section 6231(a)(6). *Id.* at 3-4.

As a general matter, the obligation to pay interest on underpayments is imposed by Section 6601. Subsection 6601(a) provides that "[i]nterest on such [underpayment] amount at the underpayment rate established under section 6621 shall be paid." I.R.C. § 6601(a); *see Barlow v. Commissioner*, 301 F.3d 714, 722 (6th Cir. 2002) (interest assessment was prescribed by § 6601(e) but at a rate set forth in former § 6621(c)). As the cross-reference in Section 6601(a) indicates, the actual rate of interest for an underpayment is specified in Section 6621(a)(2) which provides that "[t]he underpayment rate established under this section shall be the sum of – (A) the Federal short-term rate determined under subsection (b), plus (B) 3 percentage points." I.R.C. § 6621(a)(2). Notably, in this same section, former § 6621(c)(1), before repeal, provided the rate for underpayments attributable to tax-motivated transactions:

> In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the rate of interest established under this section shall be 120 percent of the underpayment rate established under this section.

I.R.C. § 6621(c)(1) (1988). Plaintiffs endeavor to differentiate between the two rates by arguing that the standard underpayment rate is "imposed" by Section 6601 but "prescribed" in Section

---

[11]I.R.C. § 6601(e)(1) excludes from this general rule subchapter B of chapter 63 of the Internal Revenue Code, which subchapter relates to deficiency procedures. *See infra*, at 22 n.28.

6621, while the enhanced interest rate for tax motivated transactions was both imposed and prescribed by Section 6621. Pls.' Surreply at 3.[12]

Mr. and Mrs. McGann's parsing of the statute respecting interest rates for underpayments is unavailing. The obligation to pay interest for such underpayments is imposed by Section 6601 in each instance, and the actual rates were prescribed by Section 6621 in each instance. That former Section 6621(c) prescribed a different, enhanced rate for tax-motivated transactions does not elide that rate from the definition of "tax" in Section 6601(e)(1) as including interest imposed by Section 6601.

In short, interest assessed at the enhanced rates provided by former Section 6621(c) is included within the statutory definition of the term "tax." Accordingly, the first predicate for application of the six-month statute of limitations provided by I.R.C. § 6230(c)(2)(A) has been established.

### B. Imposition of Interest Provided by Former Section 6621(c) as a TEFRA Partnership Item

Under TEFRA, as a general matter, for tax years beginning after September 3, 1982, a court reviewing an FPAA under I.R.C. § 6226 "ha[s] jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates [and] the proper allocation of such items among the partners." I.R.C. § 6226(f). Prior to TEFRA, both partnership-level and partner-level items were subject to proceedings at the partner level. *Keener*, __ Fed. Cl. at __, 2007 WL 1180476, at *2. "TEFRA 'created a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level.'" *Id*. (quoting *In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2002)).[13]

---

[12]The difference in meaning between "impose" and "prescribe" is not meaningful in this context. "Impose" means "to establish or apply as compulsory," *Webster's Seventh New Collegiate Dictionary* 420 (1970), and "prescribe" is defined as "to lay down a rule; dictate." *Id.* at 672.

[13]As part of the Taxpayer Relief Act of 1997, Congress expanded a court's jurisdiction in a TEFRA proceeding to also include a determination of "the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." Pub. L. No. 105-34, § 1238(b)(1)(B), 111 Stat. 788, 1026 (codified at I.R.C. § 6226(f)). This expanded jurisdiction was applicable to "partnership taxable years ending after the date of the enactment of this Act," § 1238(c), 111 Stat. at 1027, namely, August 5, 1997, and thus it does not apply to the returns at issue in this case.

In a TEFRA proceeding,

> [t]he term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A [*i.e.*, the portion of the Internal Revenue Code pertaining to income taxes generally] to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle [*i.e.*, subtitle F, the portion of the tax code pertaining to procedure and administration], such item is more appropriately determined at the partnership level than at the partner level.

I.R.C. § 6231(a)(3). The Secretary of the Treasury has promulgated a regulation identifying partnership items as "items which are required to be taken into account for the taxable year of a partnership under subtitle A of the Code [and] are more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items." Treas. Reg. § 301.6231(a)(3)-1(a).[14]

In short, the Tax Court, in adjudicating the petition to review the FPAA issued for Drake Oil's 1983 tax year, had jurisdiction to decide issues required to make a determination of a partnership item.[15] The pertinent question for this case becomes one of whether the motivation for the Drake Oil transactions and enhanced interest under former Section 6621(c) were both partnership items. As a matter purely of logic rather than law, it would seem that "the business motives and the reasonable possibility of profit in regards to a transaction executed by [a] partnership are determined at the partnership level." *Keener*, __ Fed. Cl. at __, 2007 WL 1180476, at *10 (citing *Tallal v. Commissioner*, 778 F.2d 275, 276 (5th Cir. 1985); *Transpac Drilling Venture*, *1983-2 by Dobbins v. United States*, 32 Fed. Cl. 810, 820 (1995), *aff'd*, 83 F.3d 1410 (Fed. Cir. 1996); *Hawley v. Commissioner*, 55 T.C.M. (CCH) 217, 1988 WL 12766, at *7 (1988)). However, the law in this area is not necessarily always logical.

Indeed, judicial decisions are divided as to whether the applicability of the tax-motivated interest rate set forth in former Section 6621(c) is an issue properly raised in a partner-level proceeding or a partnership-level proceeding. *See Keener*, ___ Fed. Cl. at ___, 2007 WL 1180476, at *11. The Second Circuit has concluded that the assessment of tax-motivated interest "is not a partnership item." *Field v. United States*, 328 F.3d 58, 59 (2d Cir. 2003); *accord Klein v. United States*, 86 F. Supp. 2d 690, 701 (E.D. Mich. 1999); *see also Barlow*, 301

---

[14]The regulation also states that "[t]he term 'partnership item' includes . . . legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." Treas. Reg. § 301.6231(a)(3)-1(b).

[15]In contrast, in *Krause*, pre-TEFRA years were involved, so the Tax Court properly had both partnership-level and partner-level issues before it. *See* 99 T.C. at 132-33.

F.3d at 721-22 (6th Cir. 2002) (by paying interest assessed under former § 6621(c), individual partners may establish the Tax Court's jurisdiction under § 6512(b) for a claim for refund of an overpayment of taxes).[16] By contrast, the Ninth Circuit has held that in a partnership-level proceeding, the Tax Court had jurisdiction to make factual findings pertaining to application of the tax-motivated interest rate of former Section 6621(c). *See River City Ranches #1 LTD v. United States*, 401 F.3d 1136, 1143-44 (9th Cir. 2005) (reversing a decision of the Tax Court that it lacked jurisdiction to make such findings in a TEFRA proceeding).[17] As the court recognized

---

[16]The Federal Circuit also has used the term "nonpartnership items" in reference to tax-motivated interest. *See Prochorenko*, 243 F.3d at 1365 (citing an assertion made by the government). *See also Slovacek v. United States*, 40 Fed. Cl. 828, 831 (1998) (distinguishing interest under former § 6621(c) from partnership items). In a decision preceding *Prochorenko*, *Olson v. United States*, 172 F.3d 1311, 1315 n.1, 1318 n.2 (Fed. Cir. 1999), the issue had been waived.

The government argues that a computational adjustment can include interest, Def.'s Reply at 9, citing Temp. Treas. Reg. § 301.6231(a)(6)-1T(b) (1988) (added by 52 Fed. Reg. 6779-81, 6790-91 (Mar. 5, 1987)), which provides that "[a] computational adjustment includes any interest due with respect to any underpayment or overpayment of tax attributable to adjustments to reflect properly the treatment of partnership items." This portion of the temporary regulation, however, has no bearing on substantive affected items. Indeed, the immediately preceding portion of the same temporary regulation, Temp. Treas. Reg. § 301.6231(a)(6)-1T(a) (1988), explains that "changes in a partner's tax liability with respect to affected items that require partner-level determinations . . . are not included in a computational adjustment."

[17]In *River City Ranches*, the Ninth Circuit relied upon I.R.C. § 6226(f), as amended by the Taxpayer Relief Act of 1997, 401 F.3d at 1140, 1143-44, notwithstanding the fact that the 1997 amendments were not retroactive and applied only to "partnership taxable years ending after the date of the enactment of this Act." *Supra*, at 11 n.13 (quoting the text added to I.R.C. § 6226(f)).

The Tax Court has consistently ruled that interest under former Section § 6621(c) "[wa]s an affected item which may require findings of fact peculiar to a particular partner and as such c[ould] not be determined in a partnership-level proceeding." *Ertz v. Commissioner*, 93 T.C.M. (CCH) 696, 2007 WL 174133, at *14 (2007) (citing *Affiliated Equip. Leasing II v. Commissioner*, 97 T.C. 575, 577-78 (1991); *N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 745-46 (1987)). However after *River City Ranches*, for cases appealable to the Ninth Circuit, the Tax Court "defer[red] to the Ninth Circuit's determination that, for purposes of [former] section 6621(c), the character of a partnership's transactions is a partnership item to be determined at the partnership level." *Ertz*, 2007 WL 174133, at *15 (citing *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971)).

Also, in *Hildebrand v. Commissioner*, 28 F.3d 1024, 1026, 1028 (10th Cir. 1994), the Tenth Circuit upheld the Tax Court's decision in *Krause* which had applied the higher interest rate specified in former Section 6621(c) to the taxpayers. In *Hill v. United States*, 204 F.3d 1214, 1219-20 (9th Cir. 2000), the Ninth Circuit did likewise. These cases involved both TEFRA and

in *Keener*, in a partnership-level proceeding, a court may indeed make determinations of partnership items that would, in turn, bear upon a subsequent determination of the applicability of enhanced interest under former Section 6621(c). *Keener*, __ Fed. Cl. at ___, 2007 WL 1180476, at *12.[18]

Interest at the higher rate under former Section 6621(c) was reserved for any "substantial underpayment attributable to tax motivated transactions." I.R.C. § 6621(c)(1) (1988). Classification of an activity as a tax-motivated transaction is not an issue unique to partners, partnerships, or TEFRA. *See, e.g., Leslie v. Commissioner*, 146 F.3d 643, 645, 648 (9th Cir. 1998) (gold futures straddle transactions by individual taxpayers). Former Subsection 6621(c) defined "the term 'tax motivated transaction'" as meaning –

> (i) any valuation overstatement (within the meaning of section 6659(c)),
> (ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),
> (iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092),
> (iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and
> (v) any sham or fraudulent transaction.

---

pre-TEFRA years, and the petitioners in *Hill* and the IRS had entered a stipulation that the decision in *Krause* would serve as the opinion in *Hill*. *See Hill*, 204 F.3d at 1217. Similarly, the Ninth Circuit's decision affirming the tax court's imposition of tax-motivated interest rates in *Wolf v. Commissioner*, 4 F.3d 709, 710, 715-16 (9th Cir. 1993), involved pre-TEFRA years.

[18]In *Ertz*, the Tax Court explained that

> [t]he partnership item component is the character of the partnership's transactions; *i.e.*, whether the transactions were tax motivated. *See* [*River City Ranches*, 401 F.3d] at 1143-1144. The affected item components are what amount of the partner's underpayment of tax is attributable to the partnership's tax-motivated transactions and whether that underpayment is substantial.

2007 WL at 174133, at *15.

I.R.C. § 6621(c)(3)(A)(i)-(v) (1988).[19] The former Subsection also gave the Secretary authority to specify other types of transactions that would fit within this rubric:

> The Secretary may by regulations specify other types of transactions which will be treated as tax motivated for purposes of this subsection and may by regulations provide that specified transactions being treated as tax motivated will no longer be so treated. In prescribing regulations under the preceding sentence, the Secretary shall take into account –
>
> (i) the ratio of tax benefits to cash invested,
>
> (ii) the methods of promoting the use of this type of transaction, and
>
> (iii) other relevant considerations.

I.R.C. § 6621(c)(3)(B) (1988). Statutorily, the effective date for types of transactions added by regulation had to be after the date the pertinent regulation was promulgated: "Any regulations prescribed under subparagraph (A)(iv) or (B) shall apply only to interest accruing after a date (specified in such regulations) which is after the date on which such regulations are prescribed." I.R.C. § 6621(c)(3)(C) (1988).

On December 26, 1984, the Secretary issued a temporary regulation which specified that "[a]ny deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit" was "considered to be attributable to tax motivated transactions." Temporary Treas. Reg. § 301.6621-2T, A-4 (added by Increased Rate of Interest on Substantial Underpayments Attributable to Certain Tax Motivated Transactions, 49 Fed. Reg. 50,390 (Dec. 28, 1984)).

The Treasury Regulations thus introduce Section 183 of the Code into the equation, but specifically by reference to "an activity engaged in by an individual or an S corporation," not a partnership. Temporary Treas. Reg. § 301.6621-2T, A-4. In turn, I.R.C. § 183 explicitly sets out the same limitation. It covers "an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit." I.R.C. § 183(a). Section 183 was added to the Internal Revenue Code in 1969, *see* Tax Reform Act of 1969, Pub. L. No. 91-172, Tit. II, § 213(a), 83 Stat. 487, 571, and has been amended on a number of occasions thereafter, but never to expand coverage beyond the fundamental limitation of applying to individuals and S corporations. It has, however, been construed to work in concert with I.R.C. § 162, which bears on allowable deductions for trade or business expenses, and I.R.C. § 212, which covers allowable deductions for expenses for production of income. *See e.g.*, *Carter v. Commissioner*, 645 F.2d 784 (9th Cir. 1981).

---

[19]An underpayment is "substantial" if the total amount of underpayment attributable to tax motivated transactions exceeds $1,000. I.R.C. § 6621(c)(2).

The application *vel non* of Section 183 is a significant factor in resolution of this case.[20] The Tax Court's dismissal of the petition for review in *Vulcan Oil* for failure to prosecute, *see* Pls.' Supp., Ex. A at A-68 (*Vulcan Oil* Dismissal Order), was premised upon a motion by the IRS that recited that "proposed adjustments to partnership items in this case . . . have been computed based on I.R.C. § 183 in accordance with the opinion [of the Tax Court] in *Krause*." Pls.' Supp., Ex. A at A-65 (*Vulcan Oil* Dismissal Mot. ¶ 34); *see supra* at 4.

The related proceedings in *Krause* had canvassed closely related transactions for the 1982 and 1983 tax years of Barton Enhanced Oil Production Income Fund ("Barton"). 99 T.C. at 133-34. Petitioner Gary E. Krause was the tax matters partner of Barton. Because 1982 was a pre-TEFRA tax year, Mr. Krause's individual tax returns were at issue for that year, but Barton's partnership return was at issue for 1983. *Id.*[21] One of the primary issues in *Krause* was "[w]hether the investments in and the activities of the partnerships were entered into and engaged in with actual and honest profit objectives." *Id.* at 134. After an extensive analysis of the facts, the question was answered in the negative, and the Tax Court disallowed the losses of the partnerships citing Section 183. *Id.* at 176. That court refused to impose additional tax and interest for negligence, *id.* at 178, but it applied the increased rate of interest under former Section 6621(c) for tax-motivated transactions. *Id.* at 180. In *Hildebrand*, the Tax Court's decision in *Krause* was affirmed on appeal. 28 F.3d at 1028.

In supporting its position in this case, the government relies on I.R.C. § 6226(h), which provides that "the decision of the [Tax] [C]ourt dismissing [a TEFRA] action shall be considered as its decision that the notice of final partnership administrative adjustment is correct." I.R.C. § 6226(h); *see* Def.'s Reply at 31 (paraphrasing Subsection 6226(h)). In that context, the government urges the court to apply more than just the adjustments of the FPAA, and, in addition, to give effect to the statement of the FPAA that "[i]t has not been established that the claimed deductions originated . . . in a transaction entered into for profit," Pls.' Supp., Ex. A at A-15 (FPAA), by treating that statement as a sufficient predicate for enhanced interest under

---

[20]In this respect, the court is required to extend several steps beyond the analysis by Judge Allegra in *Keener*, and reach issues associated with the role of Section 183 in a TEFRA partnership-level proceeding. Such issues were not present in *Keener* because in that case the TEFRA proceedings in the Tax Court had been resolved by a settlement agreement, and the key question presented was the scope of that agreement. *Keener*, __ Fed. Cl. at __, __, 2007 WL 1180476, at *1, 8-9. Thus, in *Keener*, the court found it unnecessary to address "the arguments raised in defendant's second motion to dismiss," *i.e.*, whether the limitation period prescribed in I.R.C. § 6230(c)(2)(A) operated to bar the taxpayers claim for refund of additional interest paid under former Section 6621(c). *Keener*, __ Fed. Cl. at __ n.25, 2007 WL 1180476, at *14 n.25.

[21]Similar issues were raised regarding other taxpayers for tax years 1980, 1981, and 1982, all of which were pre-TEFRA tax years. *Krause*, 99 T.C. at 132-34.

former Section 6621(c).[22] By this step, the government contends that the Tax Court's dismissal in *Vulcan Oil* builds in a finding under Section 183 that must also be applied, without more, in this proceeding. Hr'g Tr. 37:10-11 (Jan. 29, 2007).[23] Arguably, Section 183 would be implicated "[i]n the case of an activity *engaged in by an individual or an S corporation*," I.R.C. § 183(a) (emphasis added), where a finding of a lack of profit motive is a necessary, but not a sufficient, condition for additional interest to have been imposed.[24]

The Ninth Circuit has stated that Section 183 "applies to partnerships despite the statute's failure to mention them," *Hill v. Commissioner*, 204 F.3d 1214, 1218 (9th Cir. 2000), but the Fifth Circuit has opined that the plain language of Section 183 demands that "deductions for partnership expenses are not allowed or disallowed directly under I.R.C. § 183 itself." *Copeland v. Commissioner*, 290 F.3d 326, 335 (5th Cir. 2002). The reasoning of the Ninth and Fifth Circuits illuminates their conflicting decisions over the applicability of Section 183 in partnership-level proceedings respecting a determination of profit motivation and thus tax-motivated transactions. In *Hill*, for the proposition that Section 183 applied to the partnerships at issue, the Ninth Circuit cited *Wolf v. Commissioner*, 4 F.3d 709, 712-13 (9th Cir. 1993). *Hill*, 204 F.3d at 1218. *Wolf* had involved a taxpayer's returns for the 1979-82 tax years and thus

---

[22]The government's position is "that the [c]ourt is precluded by statute from overturning the *Vulcan Oil* determination that plaintiffs' partnership activities lack a profit motive under § 183. That determination constitutes a determination of a partnership item, as defined in § 6231(a)(3)." Def.'s Resp. to Pls.' Surreply at 11. The government extends the reach of its postulates by arguing that "even if erroneous, the disallowance of plaintiffs' partnership deductions under § 183 in *Vulcan Oil* cannot be disturbed here." Def.'s Resp. to Pls.' Surreply at 12. This line of argument, however, misleadingly collapses and greatly oversimplifies the questions actually before the court. The disallowance of the partnership deductions of Drake Oil is not disputed. In effect, however, the government would have this court accept that a tax-motivated-transaction finding is a partnership item in a TEFRA proceeding that could be translated directly to a partner-level computational adjustment without any further partner-level findings. Instead, the government's arguments actually encompass a series of steps: (1) whether that disallowance could be accompanied by findings that the partnership transactions were tax-motivated, (2) whether those findings would constitute "partnership items" that would be binding on individual taxpayers rather than substantive "affected items," and (3) whether the disposition of such items could be reflected in computational adjustments that among other things, included enhanced interest under former Section 6621(c).

[23]Though the taxpayers apparently did not attach a complete copy of the FPAA for Drake Oil to their petition before the Tax Court, the *Vulcan Oil* dismissal motion filed by the IRS purported to supply the Tax Court with "[c]omplete copies of the Notices of Final Partnership Administrative Adjustments." Pls.' Supp., Ex. A at A-64 (*Vulcan Oil* Dismissal Mot. ¶ 32).

[24]Findings would also have to be made respecting an individual taxpayer's circumstances along the lines specified in *Ertz*, 2007 WL 174133, at *15 (quoted *supra*, at 14 n.18.).

antedated the applicability of TEFRA. *See* 4 F.3d at 710. The Tax Court proceeding in *Wolf* was conducted under the pre-TEFRA regime in which the individual taxpayer's return and motivation were directly at issue, as to matters derived from partnerships as well as other activity. Accordingly, *Wolf* does not support the proposition stated in *Hill*, *i.e.*, that Section 183 applies to partnership-level matters in TEFRA proceedings notwithstanding the contrary statutory text. In *Copeland*, the Fifth Circuit focused on the statutory language of Section 183, explaining that the Section by its express terms did not apply to partnerships. *Copeland*, 290 F.3d at 335. Rather, the determination of whether expenses attributable to partnership activities are deductible is actually controlled by Sections 162 or 174. *Id*. at 335-36. "[T]he factors from I.R.C. § 183 are only *tools* for determining the requisite profit objective under I.R.C. §§ 162 and 174." *Id*. at 335. In *Copeland*, the court concluded that "[n]o individual and no S corporation engaged in any activity here, with or without a profit motive." *Id*. at 334.

The Fifth Circuit in *Copeland* also addressed Temp. Treas. Reg. § 301.6621-2T, A-4(1), specifying that losses would be "disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit." *Copeland*, 290 F.3d at 338 (quoting Temp. Treas. Reg. § 301.6621-2T, A-4(1)). The Fifth Circuit described this language as a "clear and unambiguous regulatory mandate" that "[t]here must be (1) a deduction (2) that is disallowed under I.R.C. § 183, (3) that is related to an activity engaged in by an individual or an S corporation, and (4) that is not engaged in for profit." *Copeland*, 290 F.3d at 333. "[I]n promulgating [Temp. Treas. Reg.] § 301.6621-2T, the Secretary *could* have defined a tax motivated transaction as one for which a *profit motive, as analyzed under the factors of § 183, was found lacking*, but the Secretary did not." *Id*. at 338. Because "[Temp. Treas. Reg.] § 301.6621-2T defines a tax motivated transaction as a *deduction that has been disallowed under § 183*, and no such disallowance has been or could have been made in this [partnership] case," *id*., the Fifth Circuit ruled that there could have been no finding that, without more, would support imposition of enhanced interest under former Section 6621(c). *Id*.

The court is not persuaded that the Ninth Circuit's decision in *Hill* and the somewhat similar ruling by the Tenth Circuit in *Hildebrand* provide an adequate rationale to read the Tax Court's decision in *Vulcan Oil* to dismiss for failure to prosecute as including more than the disallowance of deductions attributable to Drake Oil. To construe that decision as also encompassing the finding that Drake Oil engaged in tax-motivated transactions *and* as holding that such a finding could be translated directly, without more, as a computational adjustment to the returns of individual partners stretches the law too far. Instead, as the Fifth Circuit's decision in *Copeland* indicates, Section 183 and Temp. Treas. Reg. § 301.6621-2T, A-4(1), should be interpreted to mean just what they say – with the result that here the tax-motivated-transaction finding could not be made directly in a TEFRA proceeding as a partnership item that would, without more, engender enhanced interest for the affected partner under former Section 6621(c). *See Copeland*, 290 F.3d at 338; *see also Field*, 328 F.3d at 60, n.3 (additional interest under former Section 6621(c) is not a partnership item but rather is an affected item that turns on factual determinations made at the individual partner level and thus is not a mere computational

adjustment); *Barlow v. Commissioner*, 80 T.C.M. (CCH) 632, 2000 WL 1649506, at *16-18 (Nov. 3, 2000) (same), *aff'd*, 301 F.3d 714 (6th Cir. 2002). Accordingly, the assessment of interest at the tax-motivated transaction rate was not "necessary . . . to apply . . . the decision" of the Tax Court in *Vulcan Oil*. I.R.C. § 6230(c)(1)(A)(ii).

Finally, in an argument made for the first time in its Reply Brief, the government contends that the Tax Court's decision in *Vulcan Oil* binds this court's decision in the present matter through operation of *res judicata*. *See* Def.'s Reply at 28-32.[25] As the government has presented it, this issue has many similarities to the government's arguments regarding the finality of the FPAA as governed by I.R.C. § 6226(h). The government does not argue that the Tax Court specifically addressed whether the enhanced interest rate specified by former Section 6621(c) should be applied to the resulting underpayments of tax by individual partners. Instead, the government maintains that the Tax Court "applied *Krause* and disallowed the loss deductions reported by Drake Oil under [I.R.C.] § 183." Def.'s Reply at 27. However, as the government conceded at the hearing on the present motion, the Tax Court's "decision itself does not mention section 183 or *Krause*." Hr'g Tr. 33:8-9 (Jan. 29, 2007). Only in the IRS's motion before the Tax Court to dismiss that case for lack of prosecution were Section 183 and the *Krause* decision mentioned. *See* Pls.'s Supp., Ex. A at A-65 (*Vulcan Oil* Dismissal Mot. ¶ 34). A court's grant of a motion is not an adoption of every argument the movant made in support of the motion. *See, e.g.*, *Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States*, 69 Fed. Cl. 639, 662 (2006). Moreover, the decision of the Tax Court was explicitly based on the taxpayers' "failure properly to prosecute." Pls.' Supp., Ex. A at A-68 (*Vulcan Oil* Dismissal Order). The Tax Court did not address any substantive issues of tax law in its decision. As the IRS recited in its *Vulcan Oil* Dismissal Motion, the tax matters partner had failed to communicate with his own counsel, the Tax Court, and counsel for the IRS. *Id*. at A-61 (*Vulcan Oil* Dismissal Mot. ¶ 25). Furthermore, Drake Oil had not designated a new tax matters partner, nor had any of its partners stepped forward to serve in that capacity. *Id*. at A-61 to A-62 (*Vulcan Oil* Dismissal Mot. ¶¶ 26-27).

Under Tax Court Rule 123(d), that court's decision to dismiss for failure to prosecute was an adjudication "on the merits." It could, but did not necessarily, have *res judicata* effect. *Cf. International Nutrition Co. v. Horphag Research, Ltd.*, 220 F.3d 1325, 1328-29 (Fed. Cir. 2000) ("Contrary to INC's argument, default judgment can give rise to res judicata. . . . INC therefore cannot avoid the bar of res judicata on the ground that SCERPA's opposition was abandoned and dismissed for failure to prosecute."). Here, however, the embedded question as to which the bar is sought is one of law, *viz.*, whether a finding respecting a tax-motivated transaction is a "partnership item" that can be translated directly to a partner's individual return, without more, notwithstanding the contrary text of Temporary Treas. Reg. § 301.6621-2T, A-4(i) and I.R.C.

---

[25]The court will address this issue on the merits despite the fact that it was not raised in a timely fashion, primarily because the post-hearing supplemental briefing obviated any prejudice to plaintiffs that might otherwise have ensued.

§ 183. There is nothing in the proposed FPAA that accompanied the *Vulcan Oil* Dismissal Motion that addressed that question. *See* Pls.' Supp., Ex. A at A-11 to A-18 (FPAA).

Consequently, the second predicate for application of the six-month time limitation of I.R.C. § 6230(c)(2)(A) has not been met, and the refund claim filed with the IRS by Mr. and Mrs. McGann was not time-barred by that provision. The government's motion to dismiss accordingly will be denied.

**C. Notice of Computational Adjustment**

As a matter of judicial prudence, although the disposition of the second issue in this case is sufficient to require denial of the government's motion to dismiss, the court nonetheless will also address the third issue, *i.e.*, the adequacy of the IRS's notice of computational adjustment. The court does so in substantial part because the government puts forward the contention that the notice was adequate but, as an alternative, "agree[s] that discovery would be appropriate" before resolution of the issue. Def.'s Resp. to Pls.' Surreply at 10.

To restate the legal framework, if the mechanism by which the IRS could have assessed Mr. and Mrs. McGann with interest at the enhanced rate provided by former Section 6621(c) were, contrary to this court's analysis, a computational adjustment under I.R.C. § 6230(c)(2)(A), Mr. and Mrs. McGann could submit a claim for refund to the IRS so long as they did so within "6 months after the day on which the Secretary mail[ed] the notice of computational adjustment to the partner." I.R.C. § 6230(c)(2)(A). Mr. and Mrs. McGann concededly received from the IRS a letter dated February 28, 2003, transmitting Form 4549A, Income Tax Examination Changes, along with Form 886-A, Explanation of Items. Def.'s Mot., App. B, Ex. 2 at B-3 to B-6 (Forms 4549A and 886-A). These forms unquestionably gave notice to Mr. and Mrs. McGann that their tax liability for the 1983 tax year was increased by $8,620.00, *id.* at B-4 (Form 4549A), and Mr. and Mrs. McGann promptly paid that amount. Def.'s Mot., App. B, Ex. 3 at B-8 (Form 4340). There also should have been little doubt that interest would have been payable because of the underpayment. The question is whether the notice of computational adjustment was adequate within the meaning of I.R.C. § 6230(c)(2)(A) with respect to imposition of the enhanced interest rate under former I.R.C. § 6621(c).[26]

Mr. and Mrs. McGann argue that "neither th[e] Form 4549A with its accompanying letter, attachments, and enclosures nor the notice of assessment mailed on March 24, 2003, were legally sufficient to put a partner on notice that the IRS intended to impose the [former] § 6621(c) . . . rate of interest or to inform a partner of the amount of interest actually assessed due to imposition of the higher [former] § 6621(c) rate." Pls.' Surreply at 13. Absent an adequate

---

[26]Counsel were each asked whether any prior judicial decision had addressed the adequacy of a notice of computational adjustment for purposes of Section 6230(c)(2)(A), and each responded negatively. Hr'g Tr. 64:16-25, 79:13-19 (Jan. 29, 2007). The court similarly has not been able to locate any such precedent.

notice of computational adjustment respecting enhanced interest, plaintiffs contend that the six-month limitations period could not yet have commenced to run. *Id*. at 13-16. The government does not dispute the implication of such a finding. *See* Hr'g Tr. 84:18-24 (Jan. 29, 2007) ("[W]e might find ourselves in a position where the six-month period for their claim [*i.e.*, as to enhanced interest under former Section 6621(c)] never began to run.").

The Form 4549A, Income Tax Examination Changes stated that the tax due, $8,620.00, was "attributable [to] Tax Motivated Transactions [for which] TMT interest will accrue and be assessed at 120% of underpayment rate in accordance with [former] IRC § 6621(c)." Def.'s Mot., App. B, Ex. 2 at B-5 (Form 4549A). Yet, the Form 4549A showed the amount of "0.00" for "TMT Interest – computed 03/22/2003 on TMT underpayment." *Id*. Moreover, the attached Form 886-A stated:

> *all or part of the underpayment* of tax you were required to show on your return is a substantial understatement attributable to tax motivated transactions, as defined by [former] Section 6621(c)(3) of the Internal Revenue Code. Accordingly, the annual interest rate payable on your income taxes on *this understatement* is 120 percent of the adjusted rate established under Section 6621(b).

*Id*. at B-6 (Form 886-A) (all capital letters in original) (emphasis added). The Form 886-A did not state what, if any, part of the underpayment was in fact due to tax-motivated transactions. Accordingly, the reference to "all or part of the underpayment" without an indication of (1) whether the entire underpayment was attributable to tax-motivated transactions, or (2) which "part of the underpayment," if any, was so attributable, at a minimum reduced the force and effect of the commentary and reinforced the specification in the Form 4549A that "0.00" was due for TMT interest through March 22, 2003. Viewed overall, these references do not indicate that the IRS actually intended to apply the enhanced interest rate specified in former Section 6621(c).

The government suggests that any shortcomings of the first mailing were cured by the contents of the notice of balance due sent to Mr. and Mrs. McGann with a date of March 24, 2003. *See* Def.'s Reply at 16. This notice showed a balance due of $66,095.04, less a credit for the payment roughly two weeks earlier of $8,620.00, for a total due of $57,475.04. Pls.' Resp., App. B at B-1 (Notice of Balance Due); Def.'s Mot., App. B, Ex. 3 at B-8 (Form 4340). In effect, the notice was a bill for interest, and it indicated that the interest was being charged under "IRC section 6601." Pls.' Resp., App. B at B-2 (Notice of Balance Due). In the notice, the interest rates listed were shown without reference to any particular subsection of Section 6621. *Id*. In fact, however, the rates shown reflected the standard underpayment rate established under Subsection 6621(a), not the enhanced underpayment rates established under former Subsection 6621(c). *Id*. Moreover, the notice of balance due recited that interest was payable from October 1, 1998 through January 1, 2003, without any explanation of why that particular period was pertinent to the imposition of interest. *See id*. Arguably, the pertinent period would reach back to the due date of the original return (or January 1, 1985, whichever was later) up to the date of

the notice of balance due. Additionally, the notice of balance due bears no indication that it is to be taken as a notice of computational adjustment, nor does it disclose that Mr. and Mrs. McGann would have had to contest any amounts said to be due within a six-months' period thereafter. *See id*.[27]

In practical, if not legal, effect, a notice of computational adjustment bears at least a superficial similarity to a notice of deficiency issued under I.R.C. §§ 6211-16.[28] Congress, in denominating these two devices, employed the word "notice." *See* I.R.C. §§ 6212(a), 6230(c)(2)(A). In a number of cases, courts have been called upon to examine notices of deficiency to determine "whether the notice imparted enough information to provide the taxpayer with fair notice." *Scar v. Commissioner*, 814 F.2d 1363, 1368 (9th Cir. 1987). This enquiry is instructive for deciding whether the Service actually provided notice to Mr. and Mrs. McGann of a computational adjustment respecting enhanced interest. While providing enough information generally "requires only a statement of the amount of the penalty and a demand for payment," *Planned Invs., Inc. v. United States*, 881 F.2d 340, 344 (6th Cir. 1989), here the IRS actually provided Mr. and Mrs. McGann with information that contravened the position the IRS is now taking. Courts have distinguished between "not giv[ing] any reasons," *Sealy Power, Ltd. v. Commissioner*, 46 F.3d 382, 388 n.25 (5th Cir. 1995) (commenting that a notice of deficiency will be upheld even if it gives no reasons for the assessment), and providing defective or misleading information. *See Commissioner v. Transport Mfg. and Equip. Co.*, 478 F.2d 731, 735 (8th Cir. 1973) ("Deficiency assessments are usually presumptively correct, and the taxpayer has the burden to prove them wrong. The taxpayer works at an extreme disadvantage in trying to invalidate deficiency assessments if he does not specifically know why the Commissioner is challenging the taxpayer.") (footnote omitted); *see also Portillo v. Commissioner*, 932 F.2d 1128, 1132 (5th Cir. 1991) (notice must "specify the amount of the deficiency or provide the information necessary to compute the deficiency"); *Estate of Yaeger v. Commissioner*, 889 F.2d 29, 35 (2d Cir. 1989) ("The taxpayer must demonstrate that the notice was misleading."); *Del Castillo v. Commissioner*, 92 T.C.M. (CCH) 112 (2006), 2006 WL 2346452, at *2 (finding notice of deficiency valid when it was "in no way contradictory or unclear on its face"); *Hacker v. Commissioner*, 65 T.C.M. (CCH) 3041, 1993 WL 232398, at *3 (1993) ("The function of the notice of deficiency is to give fair notice of [the I.R.S.'s] determination."); *Willis v.*

---

[27]Similarly, neither the Form 4549A nor the accompanying Form 886-A previously sent to Mr. and Mrs. McGann contained such an advisory. Def.'s Mot., App. B, Ex. 2 at B-3 to B-6 (Forms 4549A and 886-A).

[28]Statutorily, the requirements for assessing a deficiency in taxes "shall not apply to the assessment or collection of any computational adjustment," I.R.C. § 6230(a)(1), except, *inter alia*, if "any deficiency [is] attributable to . . . affected items which require partner level determinations." I.R.C. § 6230(a)(2)(i). However, I.R.C. § 6601(e)(1) establishes an exception to this exception to the exception, by specifying that interest shall be deemed to be a "tax" "except [for I.R.C. §§ 6211-16], relating to deficiency procedures." I.R.C. 6601(e)(1) (second sentence).

*Commissioner*, 40 T.C.M. (CCH) 934 (1980) (concluding that a notice of deficiency was valid when taxpayers were not "misled or misinformed"). Moreover, "the longer the Commissioner delays in not expressly advising the taxpayer of the intended theories, the more reason there is to conclude that the taxpayer has not received fair notice and has been substantially prejudiced." *Transport Mfg. & Equip.*, 478 F.2d at 736. In this instance, the IRS's mailing of a Form 4549A showing that no "TMT Interest" was being imposed, and the subsequent notice listing only standard underpayment rates, are especially troublesome in light of the IRS's position that the notice triggered the six-month statute of limitations for filing refund claims respecting enhanced interest. *See* Def.'s Mot., App. B, Ex. 2 at B-5 (Form 4549A), B-6 (Form 886-A).

The government finally contends that plaintiffs were not actually misled because either they or their advisors concluded that the IRS was seeking to apply the enhanced rate of interest specified under former Section 6621(c). *See* Def.'s Reply at 19. The government argues that Mr. and Mrs. McGann's request for abatement filed April 14, 2003, demonstrates that "the IRS had notified and plaintiffs knew that all interest charged in the notice of assessment on their $8,620 underpayment had been computed at the tax motivated rate." *Id*. This contention amounts to a claim that Mr. and Mrs. McGann suffered no prejudice due to the ability of their advisors in due course to decipher the position that the IRS might in fact be taking respecting interest. Prior precedents have indeed focused on prejudice as a factor in evaluating the adequacy of notice. For example, in cases where the IRS provided a notice of deficiency, which, though meeting the minimum threshold to supply jurisdiction, nonetheless did not inform a taxpayer of the Service's rationale, the Tax Court has shifted the burden of proof. *See e.g., Estate of Abraham v. Commissioner*, 408 F.3d 26, 35 (1st Cir. 2005) ("[W]here the Notice of Deficiency fails to adequately 'describe the basis on which the Commissioner relies to support a deficiency determination' and the Commissioner seeks to establish the deficiency on a basis not described in the Notice, the burden shifts to the Commissioner on that new basis.") (quoting *Shea v. Commissioner*, 112 T.C. 183, 197 (1999)). *See also Transport Mfg. & Equip.*, 478 F.2d at 735-36 ("Although the most appropriate times to advise the taxpayer of the Commissioner's theories to sustain an assessment would be first in the notice of deficiency and then in the Commissioner's answer, we do not hold that the Commissioner necessarily loses his right to pursue a theory or Code section that is not specifically raised before or at trial. The basic consideration is whether the taxpayer is surprised and disadvantaged."); *Rio Grande Holding, Inc. v. Commissioner*, 67 T.C.M. (CCH) 3022, 1994 WL 223413, at *3 (1994) ("[T]he standard applicable in this case is whether [the taxpayer] knew, or reasonably should have known . . . . 'Obviously this objective standard focuses on whether [the taxpayer] was justifiably misled or deceived by the mistakes in the notice.'" (citation omitted)); *Jerry Lipps, Inc. v. Commissioner*, 59 T.C.M. (CCH) 849 (1990) ("[I]t is well settled that [the I.R.S.'s] determinations may be upheld for reasons other than those assigned in the notices of deficiency. The question of whether a party will be permitted, at a particular point, to amend the pleadings or raise new matters depends on considerations of surprise and prejudice.") (citations omitted).

Here the prejudice to Mr. and Mrs. McGann due to the flawed notice provided by the IRS cannot be ameliorated by a curative step such as shifting the burden of proof from the taxpayers

to the Commissioner. The question raised by the government's motion to dismiss is whether the short statutory limitations period of I.R.C. § 6230(c)(2)(A) was triggered by the defective notices. That question demands an affirmative or negative answer and does not lend itself to an intermediate resolution. In the circumstances, the court holds that the defective notice provided by the IRS to Mr. and Mrs. McGann was not sufficient to trigger the six-months' limitations period set out in I.R.C. § 6230(c)(2)(A) for filing refund claims. Thus, the third predicate for finding that the claim filed by Mr. and Mrs. McGann with the IRS was time-barred also has not been met. The defective notice therefore provides an independent and alternative ground upon which the government's motion to dismiss must be denied.

**CONCLUSION**

For the reasons set forth, the government's motion to dismiss is DENIED.

It is so ORDERED.

s/ Charles F. Lettow
Judge