**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
No. 05-1189 T
(Judge Charles F. Lettow)

THOMAS H. McGANN and EVELYN G. McGANN

Plaintiffs,

VS.

UNITED STATES OF AMERICA,

Defendant.

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF**

SALLIE W. GLADNEY
THOMAS E. REDDING
TERESA J. WOMACK
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs
Thomas H. McGann and
Evelyn G. McGann

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . -iii-

Motion for Summary Judgment . . . . . . . . . . 1

Statement of Questions Involved . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . 1

Argument . . . . . . . . . . 8

a. History of Section 6621(c) Penalty Interest . . . . . . . . . . 8

b. Section 6621(c) Within TEFRA's Statutory Scheme . . . . . . . . . . 11

c. Imposing the §6621(c) Punitive Interest rate Was Improper as a Matter of Law . . . . . . . . . . 12

i. The Default Dismissal Was Not Sufficient to Impose §6621(c) . . . . . . . . . . 12

ii. The §183 Determination in *Krause* Is Not Sufficient to Impose §6621(c) . . . . . . 13

iii. The Multiple, Undifferentiated Bases for Disallowance Proposed in the FPAA Are Not Sufficient to Impose §6621(c) . . . . . . . . . . 14

Conclusion . . . . . . . . . . 18

# TABLE OF AUTHORITIES

**Cases**

*Acierno v. Commissioner*, T.C.Memo 1997-441,
*aff'd without published opinion*, 185 F.3d 861 (Table) (3rd Cir. 1999) . . . . . . . . . . . . . . 2, 4, 6

*Copeland v. Commissioner*, T.C. Memo 2000-181,
*aff'd in part, rev'd in part and remanded* 290 F.3d 326 (5th Cir. 2002) . . . . . . . . . . . . . . . 3-8

*Dial USA, Inc. v. Commissioner*, 95 T.C. 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Field v. United States*, 328 F.3d 58 (2nd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hambrose Leasing 1984-5 Ltd. Partnership v. Commissioner*,
99 T.C. 298 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Heasley v. Commissioner,* 902 F.2d 380 (5th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hildebrand v. Commissioner*, 28 F.3d 1024 (10th Cir.1994),
*cert. denied,* 513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631 . . . . . . . . . . . . . . . . . . . . 2-5, 8

*Krause v. Commissioner*, 99 T.C. 132, 133 (1992),
*aff'd sub nom. Hildebrand v. Commissioner*,
28 F.3d 1024 (10th Cir.1994), *cert. denied,*
513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631 . . . . . . . . . . . . . . . . . . . . 2-6, 12-14, 16, 18

*Maxwell v. Commissioner*, 87 T.C. 783 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McCrary v. Commissioner,* 92 T.C. 827, 1989 WL 35568 (1989) . . . . . . . . . . . . . . . . . . . . . . . 10

*McGann v. United States*, 76 Fed.Cl. 745 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 7, 8, 11, 13

*N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Roberts v. Commissioner*, 94 T.C. 853 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rogers v Commissioner*, 60 T.C.M. (CCH) 1386 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Schachter v. Commissioner,* 67 T.C.M. (CCH) 3092,
1994 WL 263329 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Todd v. Commissioner*, 862 F.2d 540 (5th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Vulcan Oil v. Commissioner*, 110 T.C. 153 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Weiner v. United States*, 255 F.Supp.2d 624 (S.D.Tex., 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10, 16, 17

**Statutes**

26 U.S.C. §1092(c) . . . . . 9
26 U.S.C. §162 . . . . . 3, 5, 14
26 U.S.C. §174 . . . . . 3, 5, 14
26 U.S.C. §183 . . . . . 3-5, 7-9, 12-14, 18
26 U.S.C. §46(c)(8) . . . . . 9
26 U.S.C. §465(a) . . . . . 9, 15
26 U.S.C. §6226(a) . . . . . 3
26 U.S.C. §6226(d)(1)(A) . . . . . 17
26 U.S.C. §6226(h) . . . . . 14
26 U.S.C. §6230(c)(2)(A) . . . . . 7
26 U.S.C. §6231(a)(10) . . . . . 1
26 U.S.C. §6231(b)(1)(C) . . . . . 17
26 U.S.C. §6601 . . . . . 2, 4, 9
26 U.S.C. §6621(c) . . . . . 1-18
26 U.S.C. §6659(c) . . . . . 9

**Regulations**

Treas. Reg. §301.6231(a)(3)-1(a)(iv) . . . . . 15
Treas. Reg. §301.6621-2T . . . . . 9
Treas. Reg. §301.6621-2T, A-3(9) . . . . . 15
Treas. Reg. §301.6621-2T, A-4(1) . . . . . 7-9, 13
Treas. Reg. §301.6621-2T, A-5 . . . . . 6, 10
Treas. Reg. §6231(a)(5)-1T(c) . . . . . 15

**Miscellaneous**

1991 LGM TL-95, 1991 WL 1168400 . . . . . 11
H.Conf.Rep. No.98-861 (June 23, 1984) . . . . . 9
H.R.Rep. No. 101-247, at 1388, 1394 (1989),
*reprinted in* 1989 U.S.C.C.A.N.1906, 2858-59, 2864. . . . . . 2, 10
Statement by Senator Pryor introducing S.1784 at
135 Cong. Rec. S13893-7 (0ct. 24, 1989),
1989 WL 186980 (Cong.Rec.) . . . . . 10
Tax Reform Act of 1984, §144(c), Pub.L. No. 98-369, Div. A, July 18, 1984, 98 Stat. 494 . . . . 2
Tax Reform Act of 1986, Pub.L. No. 99-514, 100 Stat. 2744, §1511(c)(1)(A)-(C) . . . . . 2

## MOTION FOR SUMMARY JUDGMENT

Pursuant to RCFC 56, Plaintiffs Thomas H. McGann ("McGann") and Evelyn G. McGann (together "the McGanns") move for summary judgment in their favor because there are no questions of material fact remaining and the Internal Revenue Service ("IRS") assessment of the punitive interest rate under former 26 U.S.C. §6621(c) on their 1983 partnership related tax liability was improper as a matter of law.

## STATEMENT OF QUESTIONS INVOLVED

Whether any portion of the McGanns' underpayment of tax was "attributable to" one of the tax motivated transactions specifically defined by statute and regulation and, if so, how much?

## STATEMENT OF THE CASE[1]

From roughly 1978 to 1986 a group of limited partnerships collectively known as the Elektra partnerships were formed with the general objective of, among other things, investing in enhanced oil recovery (EOR) technology for the recovery of oil and natural gas. [Stip:2][2] In 1983, (i) McGann was a general partner in the McWal Company (the "McWal Co."), (ii) the McWal Co. was a limited partner in Drake Oil Technology Partners, an Elektra partnership, and (iii) McGann was, therefore, an indirect partner in Drake Oil. §6231(a)(10). [Stip:3,5] On the McGanns' 1983 federal tax return they recognized Mr. McGann's share of gains and losses from Drake Oil, thereby reducing their taxes. [Stip: 6]

---

1 Almost all of the facts below were reviewed by this Court in *McGann v. United States*, 76 Fed.Cl. 745, 746-49 (2007). However, there the Court stated that "[t]he recitations . . . do not constitute findings of fact by this court. Rather, [they] have been taken from the parties' filings and are either undisputed, . . . or are alleged and assumed to be true for purposes of the [then] pending motions." *McGann* at 746. The plaintiffs have limited their statement of the case here to only facts relevant to the issues in this motion for summary judgment.

2 References to [Stip:X] are to paragraph no. "X" of the Joint Stipulations of Fact filed contemporaneously with this motion.

In 1984, Congress amended §6621(c) allowing the IRS to impose interest at 120% of the normal §6601 rate, but *only* where the underpayment is (i) 'substantial' (over $1,000), and (ii) "*attributable to*" one or more expressly defined tax motivated transactions ("TMTs").[3]

In the 1980s the IRS disallowed Elektra partnership deductions and imposed the §6621(c) punitive interest rate on the resulting tax liabilities of numerous Elektra partners for pre-TEFRA tax years 1978-1982. [Stip:8] In 1986, Elektra partners Krause and Hildebrand filed separate suits in the Tax Court challenging the IRS's proposed disallowances. *Hildebrand* was consolidated into *Krause* which became the test case challenging the IRS's Elektra related disallowances.[4] [Stip:9] Drake Oil was not one of the Elektra partnerships at issue in either *Krause* or *Hildebrand*. Also in 1986, Elektra partner Acierno filed suit in the Tax Court challenging the IRS's proposed disallowance of his pre-TEFRA 1982 Drake Oil related deductions.[5] [Stip:10]

Because the partnership related adjustments in the case at bar arise from tax year 1983, any adjustment to the McGanns' Drake Oil related deductions is controlled by TEFRA.[6] [Stip:7]

On April 6, 1987, the IRS issued a TEFRA Notice of Final Partnership Administrative

---

3 Originally codified as §6621(d), it was amended and redesignated as §6621(c) by the Tax Reform Act of 1986, Pub.L. No. 99-514, 100 Stat. 2744, §1511(c)(1)(A)-(C). Section 6621(c) applies to interest accruing after December 31, 1984. Tax Reform Act of 1984, §144(c), Pub.L. No. 98-369, Div. A, July 18, 1984, 98 Stat. 494. Section 6621(c) was repealed in 1989 with several other penalty provisions and replaced with a single "accuracy-related" penalty by the 1989 Act. *See* H.R.Rep. No. 101-247, at 1388, 1394 (1989), *reprinted in* 1989 U.S.C.C.A.N.1906, 2858-59, 2864. Despite its repeal, §6621(c) still applies to tax years prior to 1990.

4 *Krause v. Commissioner*, 99 T.C. 132, 133 (1992), *aff'd sub nom. Hildebrand v. Commissioner*, 28 F.3d 1024 (10th Cir.1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631.

5 *Acierno v. Commissioner*, T.C.Memo 1997-441, *aff'd without published opinion*, 185 F.3d 861 (Table) (3rd Cir. 1999).

6 Partnership procedures codified at 26 U.S.C. §§6221-6234, as enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97-248, 96 Stat. 324 and as thereafter amended. TEFRA is also known as subchapter C of the Internal Revenue Code.

Adjustment ("FPAA") for Drake Oil's 1983 tax year. [Stip:11;JExh:4][7] The FPAA totally disallowed Drake Oil's partnership deductions on 23 independent, alternative grounds – 2 possible TMTs and 21 non-TMTs – without assigning discrete dollar adjustments to each ground. [JExh:4 pp. 29-32] In response, the tax matters partner ("TMP") for seven Elektra partnerships, including Drake Oil, challenged their 1983 FPAAs by filing a single §6226(a) TEFRA partnership-level case in the Tax Court at *Vulcan Oil Technology Partner, at al. v. Commissioner*.[8] [Stip:12;JExh:5]

In 1989, Congress repealed §6621(c) and other penalties finding that the IRS abused them by imposing them in situations not intended by Congress. See the discussion below.

In 1990, Alvin C. Copeland, a partner in two Elektra partnerships other than Drake Oil, filed a partner-level case in the Tax Court contesting, among other things, the IRS's decision to impose the §6621(c) punitive interest rate on his pre-TEFRA 1979, 1981, and 1982 partnership related liabilities.[9] [Stip:13]

In 1992, the Tax Court issued its opinion in *Krause* disallowing the Elektra related partnership losses then before the court because the partnerships lacked the profit motive required under §§162 and 174. *Krause* at 168; see also *Copeland* at 333-36. Because neither of these sections provides a method or criteria for determining profit motive, the Tax Court used the *criteria* under §183 and Treas. Reg. §1.183-2 to determine profit motive for purposes of disallowing the losses under §§162 and 174. *Krause* at 168; see also *Copeland* at 336.

In 1994, the Tenth Circuit Court of Appeals issued *Hildebrand* – the appeal of the Tax Court's

---

[7] References to [JExh:X] are to Joint Exhibit "X" attached to the Joint Stipulations of Fact filed contemporaneously with this motion.

[8] Many other TEFRA partnership level Tax Court cases were filed for other Elektra partnerships, including three at *White Rim v. Commissioner*, docket nos. 5931-89, 932-91 and 15556-91.

[9] *See Copeland v. Commissioner*, T.C. Memo 2000-181, *aff'd in part, rev'd in part and remanded* 290 F.3d 326 (5th Cir. 2002).

decision in *Krause* – misstating the holding in *Krause* as:

> The Tax Court [in *Krause*] disallowed under ... §183 the taxpayers' deductions for losses resulting from investments in the limited partnerships because the partnerships did not have the requisite profit motive and imposed an increased interest rate on tax-motivated transactions under ... §§6601 and 6621(c).

*Hildebrand* at 1026. See also *Copeland* at 334 and *McGann* at 757.

Other Elektra partners, including Copeland and Acierno, continued to fight the imposition of the §6621(c) punitive interest rate. In 1997, the Tax Court issued its opinion in *Aceirno* in which it stated that pre-TEFRA 1982 Drake Oil deductions were substantively similar to the partnership deductions in *Krause*. [Stip:16] Neither the TEFRA 1983 Drake Oil partnership item adjustments at issue here nor the §6621(c) punitive interest rate were at issue in *Acierno*. *Acierno,* 74 T.C.M. at 739. Acierno appealed and, in 1999, the Third Circuit upheld the Tax Court, without a written opinion. In 2000, the Tax Court similarly ruled against Copeland who appealed to the Fifth Circuit.[10]

On December 20, 2001, the IRS filed in the *Vulcan Oil* Tax Court case a Motion to Dismiss for Lack of Prosecution, with specific adjustments to partnership items, on the basis that

> the Petitioners' [TMP] has failed to perform the duties and responsibilities required of a [TMP] under the Tax Court's Rules . . . and such failure has precluded the further prosecution and ultimate resolution of this case, whether by trial or settlement.
>
> . . . .
>
> 35. The proposed adjustments to partnership items in this case . . ., have been computed based on I.R.C. §183 in accordance with the opinion in *Krause*.

[Stip:20;JExh:13 pp. 94,107]

---

10 *Copeland*, T.C.Memo 2000-181, *supra.*

On March 22, 2002, the Tax Court issued an Order to Show Cause requiring that the partners

> shall show cause in writing on or before May 24, 2002, why this case should not be dismissed for failure properly to prosecute and that there are adjustments to partnership items of the above named partnerships [including Drake Oil] as stated in such motion.

[Stip:21;JExh:6]

On May 13, 2002, the Fifth Circuit reversed the Tax Court's §6621(c) decision in *Copeland*. [Stip:23] The Fifth Circuit recognized that in *Krause* the Elektra partnership deductions were disallowed under §§162 and 174, *not* under §183. The Court stated:

> It bears emphasizing, however, that the factors from I.R.C. §183 are only tools for determining the requisite profit objective under I.R.C. §§162 and 174; deductions for partnership expenses are not allowed or disallowed directly under I.R.C. §183 itself.
>
> . . . .
>
> The Tax Court's wording to the contrary notwithstanding, however, the deductions were *not* actually disallowed *under* I.R.C. §183, but under I.R.C. §§162 and 174, neither of which are limited--as is §183--to activities engaged in by individuals and S corporations, to the exclusion of partnerships. I.R.C. §183 provided the *Krause* court with only the *factors* for analysis, not statutory authority to allow or disallow deductions themselves. To say that the deductions are disallowed "under section 183" impermissibly conflates the I.R.C. sections in question and thereby glosses over this crucial distinction.

*Copeland*, at 335-336. Emphasis in original, footnote omitted.

The Fifth Circuit further recognized that even if *Krause* had disallowed the partnership deductions under §183, §183 by its express terms does not apply to partnerships and, therefore, cannot be a TMT for purposes of imposing §6621(c) punitive interest on *partners* for partnership related losses disallowed. The Fifth Circuit found that the §183 analysis in *Krause* and *Hildebrand* was "both imprecise and flatly incorrect" as a matter of law, that no portion of the underlying tax liability was attributable to any defined TMT, and, therefore, Copeland was not subject to §6621(c). *Copeland* at 334.

On June 13, 2002, exactly one month after *Copeland* was issued, the Tax Court entered an Order and Order of Dismissal and Decision (the "Default Dismissal") in *Vulcan Oil* that merely

granted the IRS's Motion to Dismiss for Lack of Prosecution and re-stated the adjustments therein to Drake Oil's 1983 partnership items. The Tax Court never examined the merits of the 1983 Drake Oil partnership item deductions and made no determinations as to any specific basis for disallowing them.[11] [JExh:13 pp. 110-112]

Between May 13, 2002 (the day the Fifth Circuit entered *Copeland*) and June 13, 2002 (the day the Tax Court issued the Default Dismissal in *Vulcan Oil*), the IRS made no attempt to amend its motion to dismiss in *Vulcan Oil* to address the *Copeland* decision, nor did it attempt to revise the Default Dismissal before it became final. [JExh:5 pp. 54-55]

On March 24, 2003 the IRS assessed tax ($8,620.00) and interest ($57,475.04 total) against the McGanns. [Stip:32;JExh:12]The IRS computed the interest at the §6621(c) punitive rate. [Stip:33] The IRS made no partner-level determinations and conducted no partner-level examination of the McGanns before imposing the §6621(c) punitive interest rate. The McGanns paid the liabilities in full. [Stip:35;JEx:12]

On October 25, 2004, the Fifth Circuit issued its opinion in *Weiner* relying in part on the IRS's formula at §301.6621(c)-2T, A-5 to hold that in a TEFRA related case where no specific TMT is designated as the *sole* basis for disallowing a discrete, designated dollar amount of the proposed adjustment, §6621(c) cannot be imposed unless *every* possible basis for disallowance asserted in the FPAA was examined to determine exactly what portion of the adjustments were specifically

---

[11] The closest the Tax Court ever came to such a determination in *Vulcan Oil* was a statement in its prior opinion at *Vulcan Oil v. Commissioner*, 110 T.C. 153, 154 (1998) – an opinion on an issue of §6224(c) consistent settlements not relevant here – that

> In *Acierno v. Commissioner, supra,* we found that the Denver-based partnerships that are involved in the instant cases [including the *Vulcan Oil* case] were similar to the Manhattan and Wichita partnerships that were involved in the lead test cases in the Elektra Hemisphere tax shelter project of *Krause v. Commissioner, supra,* and accordingly that the limited partners of the Denver-based partnerships who had not settled their cases with respondent were to be bound by the opinion in *Krause.*

"attributable to" a TMT. *Weiner v. United States*, 389 F.3d 152, 160, 162 (5th Cir. 2004). Under *Weiner*, if an FPAA proposes an undifferentiated, blanket disallowance on numerous alternative grounds, then if even one basis for disallowance proposed in the FPAA is a non-TMT the §6621(c) punitive interest rate cannot be imposed unless *every* ground for disallowance in an FPAA is examined and a discreet dollar value assigned to each basis. *Vulcan Oil* was a default dismissal, the Tax Court never examined, and made no determinations as to, *any* of the 2 possible TMT or 21 non-TMT bases for disallowance asserted in the FPAA.

On April 15, 2005, the McGanns filed a claim for refund based on *Copeland* and *Weiner* for $18,309.66, that portion of the interest assessed due to the §6621(c) penalty rate. [Stip:36;JExh:13] The government never acted on the McGanns' refund claim and on November 10, 2005, the McGanns timely filed this suit. [Stip:37]

The government moved to dismiss the McGanns' claim because, it argued, the claim was filed outside the six-month limitations period of §6230(c)(2)(A). This Court rejected that argument in its opinion 76 Fed.Cl. at 758. Among other reasons, the Court held that the §6230(c)(2)(A) limitations period could not apply because "the assessment of interest at the [§6621(c)] tax-motivated transaction rate was not 'necessary ... to apply ... the decision' of the Tax Court in *Vulcan Oil*," as required under §6230(c)(1)(A)(ii). *McGann*, 76 Fed.Cl. at 757. In reaching that conclusion the Court adopted the §183 analysis of the Fifth Circuit in *Copeland*:

> **The Fifth Circuit in *Copeland* also addressed Temp. Treas. Reg. §301.6621-2T, A-4(1), specifying that losses would be "disallowed for any period under §183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit." *Copeland,* 290 F.3d at 338 (quoting Temp. Treas. Reg. §301.6621-2T, A-4(1)). The Fifth Circuit described this language as a "clear and unambiguous regulatory mandate" that "[t]here must be (1) a deduction (2) that is disallowed under I.R.C. §183, (3) that is related to an activity engaged in by an individual or an S corporation, and (4) that is not engaged in for profit." *Copeland,* 290 F.3d at 333. "[I]n promulgating [Temp. Treas. Reg.] §301.6621-2T, the Secretary *could* have defined a tax motivated transaction as one for which a *profit motive, as analyzed under the factors of §183, was found lacking,* but the Secretary did not." *Id.* at 338. Because**

> **"[Temp. Treas. Reg.] §301.6621-2T defines a tax motivated transaction as a *deduction that has been disallowed under §183,* and no such disallowance has been or could have been made in this [partnership] case," *id.,* the Fifth Circuit ruled that there could have been no finding that, without more, would support imposition of enhanced interest under former §6621(c). *Id.***
>
> The court is not persuaded that the Ninth Circuit's decision in *Hill* [*v. Commissioner*, 204 F.3d 1214 (9th Cir. 2000)] and the somewhat similar ruling by the Tenth Circuit in *Hildebrand* provide an adequate rationale to read the Tax Court's decision in *Vulcan Oil* to dismiss for failure to prosecute as including more than the disallowance of deductions attributable to Drake Oil. To construe that decision as also encompassing the finding that Drake Oil engaged in tax-motivated transactions *and* as holding that such a finding could be translated directly, without more, as a computational adjustment to the returns of individual partners stretches the law too far. **Instead, as the Fifth Circuit's decision in *Copeland* indicates, §183 and Temp. Treas. Reg. §301.6621-2T, A-4(1), should be interpreted to mean just what they say**-with the result that here the tax-motivated-transaction finding could not be made directly in a TEFRA proceeding as a partnership item that would, without more, engender enhanced interest for the affected partner under former §6621(c). *See Copeland,* 290 F.3d at 338; *see also Field,* 328 F.3d at 60, n. 3 (additional interest under former §6621(c) is not a partnership item but rather is an affected item that turns on factual determinations made at the individual partner level and thus is not a mere computational adjustment); *Barlow v. Commissioner,* 80 T.C.M. (CCH) 632, 2000 WL 1649506, at *16-18 (Nov. 3, 2000) (same), *aff'd,* 301 F.3d 714 (6th Cir.2002).
>
> *McGann* at 757. Bold emphasis added, italics in original.

This Court has already ruled that no disallowance under §183 of deductions arising from partnership activities is legally sufficient to allow the IRS to impose the §6621(c) punitive interest rate. Therefore, the only issue remaining is whether the *Vulcan Oil* Default Dismissal provides the IRS with any other basis for imposing §6621(c). As shown by the analysis below, it does not and the amounts requested by the McGanns must be refunded.

## ARGUMENT

### a. History of Section 6621(c) Penalty Interest

In 1984, after McGann, via the McWal Co., invested in Drake Oil and took his related deductions, Congress amended §6621(c) allowing the IRS to impose interest at 120% of the normal §6601 rate on any "substantial underpayment attributable to tax motivated transactions." As

modified in 1986 and applicable here, §6621(c)(3)(A) and §301.6621(c)-2T identify only a handful of transactions as TMTs.

Section 6621(c)(3)(A) lists five TMTs:

> (3) TAX MOTIVATED TRANSACTIONS.–
>
> (A) IN GENERAL.–For purposes of this subsection, the term "tax motivated transaction" means –
>
> (i) any valuation overstatement (within the meaning of §6659(c)),
>
> (ii) any loss disallowed by reason of §465(a) and any credit disallowed under §46(c)(8),
>
> (iii) any straddle (as defined in §1092(c) without regard to subsection (d) and (e) of §1092,
>
> (iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and
>
> (v) any sham or fraudulent transaction.

The IRS, by regulation added certain, limited disallowances under §183 to the list of TMTs. Treas. Reg. §302.6621-2T, A-4(1) provides that TMTs also include "[a]ny deduction disallowed for any period under §183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit."

Congress intended that §6621(c) be used to encourage settlements in the Tax Court's backlogged docket.[12] To that end, Congress strictly limited the §6621(c) punitive interest rate to a substantial underpayment of tax (over $1,000) that is "*attributable to*" one of the TMTs expressly defined by statute and regulations. In this context "attributable to" is defined narrowly such that the specific TMT basis must be identified for each discrete dollar amount of disallowance and that TMT

12 *Todd v. Commissioner*, 862 F.2d 540, n.14 (5th Cir.1988), *citing* H.Conf.Rep. No.98-861 (June 23, 1984); *Weiner v. United States*, 255 F.Supp.2d 624, n.47 (S.D.Tex., 2002).

must be the sole basis for disallowance.[13] If more than one basis is given for disallowing a specified dollar amount of deductions then §6621(c) may only be imposed if every one of the bases is itself a TMT.[14]

In 1989, after two years of study, hearings, and debate, Congress repealed §6621(c) and other penalties because the IRS was abusively imposing them in a manner never intended by Congress. Congress found they were "determined too routinely and automatically by the IRS"[15] and they were a "morass of inconsistency and irrationality" that discouraged rather than encouraged compliance and under which a "hapless taxpayer [could] find himself, or herself, confronting the [I.R.C.] over a tax deficiency, where the penalties and interest have been piled on to the extent that they are twice the amount of tax in dispute."[16]

Congress repealed §6621(c) in 1989, but not retroactively. The IRS can still impose it on any tax for pre-1990 tax years that is "attributable to" a TMT. At this late date it is rare to find a normal pre-1990 tax liability where the assessment period is still open. But TEFRA partnership-level cases offer a devil's playground for the IRS to again abuse its ability to impose §6621(c) because it is not uncommon for TEFRA partnership-level cases to linger in the Tax Court for 10-15 years before the assessment period even begins to run. In repealing §6621(c) Congress thought interest twice the amount of the tax was abusive. Here the interest assessed against the McGanns was almost 6.7 times

---

13 *Weiner* at 159-162, citing on *Todd, supra.*, *McCrary v. Commissioner,* 92 T.C. 827, 1989 WL 35568 (1989), *Heasley v. Commissioner,* 902 F.2d 380 (5th Cir.1990), *Rogers v Commissioner*, 60 T.C.M. (CCH) 1386 (1990), and *Schachter v. Commissioner,* 67 T.C.M. (CCH) 3092, 1994 WL 263329, *5 (1994).

14 Treas. Reg. §301.6621-2T, A-5.

15 H.Rep. No. 101-247, 1388, 1393, 1394.

16 Statement by Senator Pryor introducing S.1784 at 135 Cong. Rec. S13893-7 (0ct. 24, 1989), 1989 WL 186980 (Cong.Rec.). S.1784 was ultimately enacted as a part of P.L. 101-239.

the tax ($57,475.04 / $8,620.00).

**b. Section 6621(c) Within TEFRA's Statutory Scheme**

The parties have previously briefed and this Court has addressed the statutory structure of TEFRA and how it interacts with the requirements of §6621(c) in the context of a partnership related disallowance. For the sake of brevity the McGanns will not review all of those issues here but would refer the Court to pages 9-16 of the Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint for Lack of Jurisdiction and Brief in Support [Document 20].

In TEFRA partnership cases, the IRS cannot assert the §6621(c) punitive interest rate in an FPAA because an FPAA is restricted to proposed adjustments to partnership items and, as this Court has held, §6621(c) is a non-partnership affected item not a partnership item. *McGann* at 753-54, citing *Field v. United States*, 328 F.3d 58, 59 (2nd Cir. 2003). Any underlying partnership item determinations necessary to impose the §6621(c) punitive rate must be proposed in the FPAA and ultimately determined in the partnership-level proceeding, but application of the §6621(c) rate is not and should not be included in the FPAA.[17] Likewise, for tax year 1983, the Tax Court in a partnership-level suit based on an FPAA could not impose §6621(c) but it could disallow the partnership item deductions for one of the reasons listed in §6621(c)(3)(A) or Treas. Reg. §301.6621-2T, A-4 as a TMT that might later give rise to §6621(c) punitive interest. But the *Vulcan Oil* Default Dismissals did not do so.

---

[17] 1991 LGM TL-95, 1991 WL 1168400. The McGanns do not cite this LGM as precedential authority but as persuasive indicia that the IRS recognizes and follows the McGanns' approach.

**c. Imposing the §6621(c) Punitive Interest rate Was Improper as a Matter of Law**

Here there were three possible avenues for the IRS to impose the §6621(c) punitive interest rate on the McGanns' Elektra related tax liability:

(i) if the Default Dismissal determined that the disputed partnership item deductions were "attributable to" one of the listed TMTs;

(ii) if the McGanns were bound to specific determinations in *Krause* that were themselves sufficient to impose the §6621(c) punitive interest rate; or

(iii) if the Default Dismissal upheld the multiple, undifferentiated bases for complete disallowance listed in the FPAA and those multiple, undifferentiated bases for complete disallowance were sufficient to impose the §6621(c) punitive interest rate.

But none of these scenarios apply. The first fails as a matter of fact, the second fails as a matter of fact and law, and the third also fails on both counts.

i. The Default Dismissal Was Not Sufficient to Impose §6621(c)

The Default Dismissal entered in *Vulcan Oil* states that the Tax Court's order to show cause why the cases should not be dismissed for failure to prosecute "are hereby made absolute" and the IRS's motion to dismiss for lack of prosecution is granted. With regard to the Default Dismissal this Court has already stated:

> [A]s the government conceded at the hearing on the present motion, the Tax Court's "decision itself does not mention §183 or *Krause*." . . . Only in the IRS's motion before the Tax Court to dismiss that case for lack of presecution were §183 and the *Krause* decision mentioned. . . . A court's grant of a motion is not an adoption of every argument the movant made in support of the motion. . . . Moreover, the decision of the Tax Court was explicitly based on the taxpayers' "failure properly to prosecute." . . . The Tax Court did not address any substantive issues of tax law in its decision. As the IRS recited in its *Vulcan Oil* Dismissal Motion, the [TMP] had failed to communicate with his own counsel, the Tax Court, and counsel for the IRS. . . . Furthermore, Drake Oil had not designated a new

[TMP], nor had any of its partners stepped forward to serve in that capacity.

*McGann* at 758.

Failure to properly prosecute is not a TMT under either §6621(c)(3)(A) or Treas. Reg. §301.6621-2T, A-4 and is not a basis for imposing the §6621(c) punitive interest rate on any resulting tax liability.

The Default Dismissal in *Vulcan Oil* was not sufficient by itself to allow the IRS to impose the §6621(c) punitive interest rate on the McGanns' resulting tax liability.

ii. <u>The §183 Determination in *Krause* Is Not Sufficient to Impose §6621(c)</u>

This Court has already recognized that "[a] court's grant of a motion is not an adoption of every argument the movant made in support of the motion." *McGann* at 758. But even if this Court were to address every possible basis for making a TMT determination raised in the IRS's underlying motion to dismiss it would still find no valid basis to allow the IRS to impose the §6621(c) interest rate on the McGanns.

The IRS filed its Motion to Dismiss for Lack of Prosecution in *Vulcan Oil* on the basis that

> the Petitioners' [TMP] has failed to perform the duties and responsibilities required of a [TMP] under the Tax Court's Rules . . . and such failure has precluded the further prosecution and ultimate resolution of this case, whether by trial or settlement.
>
> . . . .
>
> 35. The proposed adjustments to partnership items in this case . . ., have been computed based on I.R.C. §183 in accordance with the opinion in *Krause*.

[Stip:20;JExh:13 pp. 94,107]

As addressed above, failure to properly prosecute is not a TMT.

As to *Krause*, the IRS specifically limited its reliance in its motion to dismiss to only the §183 determination in *Krause*. It first refers to "applying I.R.C. §183 in accordance with [the Tax Court's] opinion in *Krause* . . . ." [JExh:13 p. 96] It then states that "the proposed adjustments to partnership items in this case . . ., have been computed based on I.R.C. §183 in accordance with the opinion in

*Krause*." [JExh:13 p. 107] Therefore, if the *Krause* opinion is deemed relevant to the IRS's decision to impose the §6621(c) punitive interest rate on the McGanns' tax liability it is expressly restricted by the IRS's own motion to dismiss to only the determination as to §183. As addressed above, this Court has already recognized that §183 is not a TMT and, therefore, cannot be a basis to impose the §6621(c) punitive interest rate where, as here, the activities in issue arise from a partnership. This is true regardless of whether the deductions in question were disallowed directly under §183 or were disallowed under §§162 and 174 by using the criteria of §183 to determine profit motive.

Even if this Court were to look outside the Default Dismissal in *Vulcan Oil* to include the *Krause* determinations referenced in the IRS's motion to dismiss, they still are not sufficient to allow the IRS to impose the §6621(c) punitive interest rate on the McGanns' resulting tax liability.

iii. <u>The Multiple, Undifferentiated Bases for Disallowance Proposed in the FPAA Are Not Sufficient to Impose §6621(c)</u>

If the government is allowed to circumvent the plain language of both the Default Dismissal and the IRS's own express restrictions regarding *Krause* in its motion to dismiss then the imposition of the §6621(c) punitive interest rate on the McGanns' tax liability was still invalid.

Section 6226(h) provides that

> (h) EFFECT OF DECISION DISMISSING ACTION.–If an action brought under this section is dismissed (other that paragraph (4) of subsection (b)), the decision of the court dismissing the action shall be considered as its decision that the [FPAA] is correct, and an appropriate order shall be entered in the records of the court.

If §6226(h) applies to the *Vulcan Oil* Default Dismissal then adjustments in the FPAA were sustained based on 23 independant, alternative, undifferentiated grounds – 2 possible TMTs[18] and

[18] Interpreting the FPAA in the light most favorable to the government, the non-moving party here, results only in two grounds for disallowance that could possibly be TMTs in other circumstances: (i) that the claimed deductions materially distort income, and (ii) that the partners were not at risk within the meaning of §465 for any amounts in excess of those actually paid. [JExh:4 pp. 29-32] But neither is a partnership-level TMT that could apply in this TEFRA related case.

21 non-TMTs – without assigning discrete dollar adjustments and, therefore, cannot support §6621(c).

The §6621(c) punitive interest rate may only be imposed on a 'substantial' underpayment (over $1,000) that is "*attributable to*" one or more of the expressly defined TMTs. Here it is undisputed that the *total* tax liability was over $1,000. At issue is whether, given the bases for disallowance asserted in the FPAA, any of that amount was "attributable to" a TMT and if so how much.

That calculation is made by using the IRS's objective mathematical formula specifically promulgated for that purpose:

> [T]he amount of *tax motivated underpayment* for §6621(c) is determined in the following manner:
>
> (1) Calculate the amount of the tax liability for the taxable year as if all items of income, gain, loss, deduction, or credit, had been reported properly on the income tax return of the taxpayer ("total tax liability"); and
>
> (2) Without taking into account any adjustments to items of income, gain, loss, deduction, or credit that are attributable to [TMTs] ..., calculate the amount of the tax liability for the taxable year as if all other items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of the taxpayer ("tax liability without regard to [TMTs]").

---

A deduction that materially distorts income is a TMT only if it arises from *the taxpayer's* use of "an accounting method specified in regulations . . . as a use which may result in a substantial distortion of income." Treas. Reg. §301.6621-2T, A-3.(9); §6621(c)(3)(A)(iv). Here, the McGanns are the taxpayers, not Drake Oil. Further, Drake Oil's deductions were disallowed due to the TMP's failure to prosecute the partnership-level case or, possibly, for lack of profit motive. Nowhere did the Tax Court ever determine any improper use by *anyone* of "an accounting method specified in regulations."

Similarly, the partners' individual §465 amounts "at risk" are not partnership items and, therefore, cannot be determined at the partnership level. Treas. Reg. §301.6231(a)(3)-1(a)(iv); Treas. Reg. §6231(a)(5)-1T(c). *See Hambrose Leasing 1984-5 Ltd. Partnership v. Commissioner*, 99 T.C. 298, 312 (1992), citing *Dial USA, Inc. v. Commissioner*, 95 T.C. 1, 5 n.5 (1990), *Roberts v. Commissioner*, 94 T.C. 853, 859 (1990), *N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 745 (1987), and *Maxwell v. Commissioner*, 87 T.C. 783, 792 (1986).

Even taken in the light most favorable to the government, there was not even one basis for disallowance asserted in the FPAA that could be a TMT in a TEFRA related partnership-level case, such as *Vulcan Oil*, that would allow the IRS to impose the §6621(c) punitive interest rate on any resulting tax liability of the partners.

The difference between (1) and (2) is the amount of the tax motivated underpayment. *See* 26 C.F.R. §301.6621-2T, A-5.

*Weiner* at 160, n. 8. Emphasis in original.

Applying the IRS's formula to the Default Dismissal and to the statements regarding *Krause* in the IRS's motion to dismiss makes clear that in those cases the amount of the McGanns' underpayment attributable to a TMT is -0-.[19] The result remains the same even if the IRS is allowed to go behind both the Default Dismissal and the IRS's motion to dismiss to try and include the bases for disallowance asserted in the FPAA.

In *Weiner* the Fifth Circuit relied in part on the IRS's formula to hold that where the IRS does not designate a specific TMT as the *sole* basis for disallowing a discrete dollar amount of the proposed adjustment, the §6621(c) punitive interest rate cannot be imposed unless *every* basis proposed in the FPAA was examined to determine exactly what portion of the adjustments were specifically "attributable to" which TMT. Here, not one of the proposed bases for disallowance is a TMT for purposes of a TEFRA partnership-level case such as *Vulcan Oil* and, therefore, even if the Default Dismissal sustained the FPAA in full there were still no adjustments "attributable to" a TMT.

In *Weiner* the Fifth Circuit addressed a case substantively similar to the McGanns' case here. In both cases the IRS issued FPAAs totally disallowing the partnerships' expenses and deductions on numerous alternative grounds – some of which were TMTs and some of which were not – without making discrete dollar adjustments. *Weiner* at 159-160. There the partners settled their partnership items with the IRS on settlement forms that stated the dollar amounts of the agreed

---

19 The McGanns' "total tax liability" was $8,620.00. The Default Dismissal and the motion to dismiss do not disallow the deductions arising from partnership activities on any applicable TMT basis. Therefore, the McGanns' tax liability due to a non-TMT disallowance was $8,620.00. $8,620.00 - $8,620.00 = -0-, the amount of the "tax motivated underpayment."

adjustments but not the bases for those adjustments. *Weiner* at 162. Once their partnership items were settled the partners were no longer subject to the pending TEFRA partnership-level Tax Court cases. §§6226(d)(1)(A), 6231(b)(1)(C). The IRS then assessed the §6621(c) punitive interest rate on the partners' resulting tax liabilities. Because the settlements did not state any basis, TMT or otherwise, for the agreed adjustments the Fifth Circuit examined the partnership-level FPAAs to determine if the agreed adjustments were "attributable to" one or more TMT such that the IRS had valid grounds to impose the §6621(c) punitive interest rate.

The Fifth Circuit held that where an FPAA proposes an undifferentiated, blanket disallowance on multiple, alternative grounds – some of which were TMTs and some of which were not – then the §6621(c) punitive interest rate cannot be imposed unless *every* ground for disallowance asserted in the FPAA was examined and a discreet dollar value assigned to each basis, even if it was -0-. *Weiner* at 162-163.

In *Vulcan Oil* the Tax Court never examined or made any determinations as to even one of the multiple, undifferentiated bases proposed in the FPAA to completely disallow the Drake Oil deductions. Even viewed in the light most favorable to the government, at least 21 of the 23 grounds for disallowance asserted in the 1983 Drake Oil FPAA were not TMTs, none of those bases were ever examined for validity, and no discreet dollar value assigned to any basis for disallowance, possible TMT or otherwise. Therefore, under the analysis articulated in *Weiner*, and the IRS's own formula, the amount of the McGanns' tax liability that was "attributable to" a TMT was -0- and their overpayment must be refunded.

## CONCLUSION

The *Vulcan Oil* Default Dismissal made no TMT determination that would allow the IRS to validly impose the §6621(c) punitive interest rate on the McGanns' resulting tax liability. The §183 determination in *Krause* referred to in the IRS's motion to dismiss, if it applies here, was likewise

insufficient to support §6621(c) punitive interest because §183 by its own terms does not apply where, as here, the deductions disallowed arise from partnership activities. And, finally, if the government is allowed to go behind both the Default Dismissal and the IRS's motion to dismiss all the way back to the FPAA then even it cannot support §6621(c) because under the IRS's own formula the amount of partnership deductions in the FPAA "attributable to" a TMT was -0-.

The IRS knew one month before the *Vulcan Oil* Default Dismissal was entered that it could not rely on §183 as a valid basis to assert the §6621(c) punitive interest rate. Yet it did nothing to either amend its then-pending motion to dismiss or to revise the Default Dismissal before it became final three months after it was entered.

No part of the McGanns' 1983 Drake Oil related tax liability was "attributable to" a TMT and, therefore, the McGanns are entitled to summary judgment in their favor and the amounts collected by the IRS due to §6621(c) must be refunded.

WHEREFORE, Plaintiffs Thomas H. McGann and Evelyn G. McGann respectfully request that this Court grant summary judgment in their favor.

Respectfully submitted

/s/ Thomas E. Redding

Thomas E. Redding, Attorney of Record
Sallie W. Gladney
Teresa J. Womack
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244 / (713) 621-5227 Fax
**ATTORNEYS FOR PLAINTIFFS**