IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1189 T
(Judge Charles F. Lettow)

---

THOMAS H. McGANN and EVELYN G. McGANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

---

The defendant, the United States, asks the Court to find the following facts, which are supported by citations to the complaint (Compl.), to the exhibits filed with the Joint Stipulations of Fact, filed on November 7, 2007 (Stip. Ex.), and to the Declarations of Michael Faust (Faust Decl.), Marion S. Friedman (Friedman Decl.), and Robert Stoddart (Stoddart Decl.) and their exhibits, which are being filed today as Appendix B(App. B) of the brief in support of the defendant's cross-motion for summary judgment and in response to the plaintiffs' motion for summary judgment.

1. In 1983, the McWal Company (McWal Co.) was a partnership between George C. Walueff and Thomas H. McGann (McGann). (Stip. Ex. 2 at 2.)

2. Among other assets, McWal Co. held rental real estate (Stip. Ex. 2 at 4) from which it collected rental income. It reported net rental income of $24,107 on its 1983 U.S. Partnership Return of Income. (*Id*. at 2, line 6a.)

3. For the 1983 taxable year, Drake Oil issued a Schedule K-1 to McWal Co. reporting an ordinary loss of $53,581 and noting a negative capital account of $1,803 as of the end of the year. (Stip. Ex. 1 at 1.)

4. McWal Co. reported an "ordinary loss from partnerships" of $51,778 on its own 1983 U.S. Partnership Return of Income. That amount is the loss from Drake Oil, $53,581, reduced by $1,803. (Stip. Ex. 2 at 2, line 4.)

5. McWal Co. combined its $51,778 Drake Oil loss with $24,107 of net income from its rental real estate and several smaller items to calculate a net ordinary loss of $29,393. (Stip. Ex. 2 at 2, lines 6c & 24.)

6. On a Schedule K-1, McWal Co. passed half of that loss, $14,696, to its 50% partner McGann. (Stip. Ex. 2 at 7, line 1.)

7. On his own 1983 federal income tax return, which he filed jointly with plaintiff Evelyn McGann, McGann claimed his $14,696 share of McWal Co's ordinary loss as a deduction. (Stip. Ex. 3 at 18.)

8. McGann seems to have reduced the $14,696 loss to $14,664. (*See* Stip. Ex. 2 at 17, line 25.) He combined this loss with the others stated on Schedule E and reported a total loss of $38,064 (*id*. at 18, line 39), which he deducted from his taxable income (*id*. at 11, line 18). For his 1983 taxable year. McGann reported taxable income of $25,044 and a total tax liability of $3,705. (Stip Ex. 3 at 12, lines 37 & 56.)

9. On April 6, 1987, the IRS issued a final partnership administrative adjustment (FPAA) to American Energy Resources, Inc., the tax-matters partner of Drake Oil, for Drake Oil's 1983 taxable year. (*See* Stip. Ex. 4 at 23, Stip. Ex. 13 at 96-97.)

10. The FPAA proposed to deny $23,198,105 of deductions Drake Oil had claimed for its 1983 taxable year. This proposal would eliminate the $19,698,934 ordinary loss Drake Oil had originally claimed and would result in $3,499,171 of ordinary income. (Stip. Ex. 4 at 25.)

11. The FPAA set out several reasons for denial of the deductions, including the following (Stip. Ex. 4 at 29-30):

> (a) It has not been established that the underlying events, transactions and expenditures occurred in fact or in substance;
>
> (b) It has not been established that the claimed deductions originated in a trade or business or in a transaction entered into for profit;
>
> . . . .
>
> (d) It has not been established that the stated prices of the technology license and the various extraction rights do not exceed the actual cost to the partnership for those items. Thus, the deductions based thereon are disallowed since it has not been established that they have economic reality.
>
> . . . .
>
> In addition it has not been shown :
>
> . . . .
>
> (b) What the fair market value of the purported technology license is, and that the purported price of the license to the partnership, did not unreasonably exceed the fair market value of such license;
>
> (c) What the fair market value of the extraction rights to the Parker Field is, and that the purported price of such extractions rights to the partnership, did not unreasonably exceed the fair market value of such rights.

12. On July 2, 1987, American Energy Resources, Inc., filed a petition in Tax Court on behalf of seven partnerships, including Drake Oil. (Stip. Ex. 13 at 97; Friedman Decl. ¶ 23,

App. B at 81.) The case was captioned *Vulcan Oil Technology Partners et al. v. Commissioner*, No. 21530-87. (Stip. Ex. 13 at 94.)

13. On August 9, 1993, American Energy Resources, Inc., lost its status as tax-matters partner when its attorney in the Tax Court proceeding filed an involuntary bankruptcy petition against it. (Stip. Ex. 13 at 97-98; Friedman Decl. ¶ 23, App. B at 81.) The Tax Court substituted Louis Coppage as tax matters partner. (Stip. Ex. 13 at 98; Friedman Decl. ¶ 20, App. B at 80-81.)

14. Because Louis Coppage failed to communicate with his own attorney or with the Commissioner's, the Commissioner asked the Tax Court on December 20, 2001, to dismiss the *Vulcan* petitions for failure to prosecute. (Stip. Ex. 13 at 94, 98-103; Friedman Decl. ¶¶ 21-23, App. B at 81.)

15. When she prepared the motion to dismiss, the Commissioner's attorney decided to modify the FPAA, which had disallowed all of the partnerships' deductions without allowances for the partnerships' income. (Friedman Dec. ¶ 24, App. B at 81-82.) To ensure that the result in *Vulcan* would be consistent with the Tax Court's decision in *Krause* and related cases, she determined to allow the deductions to the extent of income (as permitted by Code § 183), but she also determined to allow no deductions for license fees and related expenses, which *Krause* had specifically disallowed. (*Id.* ¶¶ 25-27, App. B at 82-83.) Her motion to dismiss disclosed that the IRS was making concessions needed to apply § 183 in accordance with *Krause*, that certain adjustments resulting from the motion would be less than the adjustments proposed in the FPAA, and that no deductions could be allowed for license fees and related interest expenses. (*Id.* ¶¶ 28-29, App. B at 83.)

16. To modify the adjustments in the Drake Oil FPAA in order to make them consistent with the *Krause* decision required much time and effort from the Commissioner's attorney and others in the IRS. (*See* Friedman Decl. ¶¶ 30-34, App. B at 83-85.)

17. The Commissioner's motion to dismiss contained a schedule setting out Drake Oil's partnership items as reported and as determined. (Stip. Ex. 13 at 95.) The schedule both denied and allowed deductions that had been denied in the FPAA. (*See* Friedman Decl. ¶¶ 35-38, App. B at 85-86.) The Commissioner explained that the schedule's adjustments had "been computed based on I.R.C. § 183 in accordance with the opinion in Krause." The Commissioner further explained (Stip. Ex. 13 at 107, n.1)–

> No deductions for license fees or associated interest are allowable under section 183 since the Court found in Krause that the license fees paid by the partnerships "were excessive," did not reflect arm's-length obligations, and "are not to be recognized as legitimate obligations of the partnerships," and that the associated debt obligations "did not constitute genuine debt obligations and are to be disregarded." 99 T.C. at 175.

18. On March 22, 2002, the Tax Court issued the following order to the partners of Drake Oil and the other *Vulcan* petitioners (Stip. ¶ 21, Stip. Ex. 6 at 57):

> [The partners] shall show cause in writing on or before May 24, 2002, why this case should not be dismissed for failure properly to prosecute and that there are adjustments to the partnership items of the above named partnerships as stated in such motion.

19. On June 13, 2002, the court stated that its show-cause order would be made absolute; that the Commissioner's motion to dismiss would be granted; and that the partnership items of Drake Oil would be adjusted according to a schedule attached to the court's order. (Stip. Ex. 13 at 110.) The schedule attached to the order was identical to the schedule in the

Commissioner's motion to dismiss. (*Compare id*. at 111 *with id*. at 95; Friedman Decl. ¶¶ 31, 43-44, & Ex. 1, App. B at 84, 87-88, 89.)

20. The IRS applied the Tax Court's decision to Drake Oil by reversing its 1983 deductions for interest expense and license fees (a total adjustment of $21,556,521). It then reduced that adjustment by subtracting an administrative adjustment in the taxpayers' favor ($1,867,438); it also made several smaller adjustments, which are set out in the Form 4605-A issued to Drake Oil. The net adjustment was $19,689,083.00. The Form 4605-A also records the IRS's determination that interest under Code § 6621(c) would apply to resulting underpayments. (Faust Decl. ¶ 2 & Ex. 1, App. B at 67, 70.)

21. The IRS divided the $19,689,083.00 adjustment to Drake Oil's ordinary income among its partners and attributed .27% of the adjustments to McWal Co. McWal Co.'s share of the $19,689,083.00 adjustment was $53,161.00. (Faust Decl. ¶ 4 & Ex. 2, App. B at 68, 72.)[1]

22. When the revenue agent applied the $53,161.00 share of the Drake Oil adjustment to the 1983 partnership return of the McWal Company, he assumed that McWal had a tax benefit of only $51,778 from the $53,187.00 loss reported on the original 1983 Form K-1 it received from Drake Oil. He therefore reduced the $53,187 adjustment determined by the Tax Court by $1,409 and adjusted the McWal Company's ordinary-income distribution from Drake Oil by $51,778. (Faust Decl. ¶ 5, App. B at 68.)

[1] Exhibit 2 of the Faust Declaration is an excerpt from the Form 886-Z, not the entire form. Though it does illustrate how the IRS divided the Drake Oil adjustments among the partners according to their share of income, it does not appear to show all the adjustments.

23. On December 6, 2002, the revenue agent completed, signed, and dated a Form 4605-A for McWal Co. and wrote the following note in the "Remarks" section: "120% interest applies to investors." (Faust Decl. ¶ 5 & Ex. 3, App. B at 68, 73.)

24. The IRS's $51,778 adjustment eliminated the ($29,393) loss that McWal had originally passed through to its partners and resulted in positive ordinary income of $22,385. On a Form 886-Z, the revenue agent divided that income between the partners of the McWal Company as follows: George C. & Natalie Walueff, $11,193; and Thomas Herbert & Evelyn McGann, $11,192. The agent made the following note on the form: "IRC sec. 6621(c) 120% int. applies" to the adjustment to be made to the McGanns' 1983 tax account. The notation reflects the IRS's decision to apply § 6621(c) to the entire substantial underpayment that might result from the changes to the individual partners' shares of the McWal Company's 1983 tax attributes. (Faust Decl. ¶ 6 & Ex. 4, App. B at 69, 74.)

25. The IRS applied McWal Co.'s adjustments to McGann's individual return by eliminating his deduction of half the partnership's 1983 losses, $14,696, and adding half of the partnership's newly adjusted income, $11,192–a total positive adjustment of $25,888. This increase in taxable income resulted in a total tax liability of $12,325 (Stip. Ex. 11 at 65, line 9) and an underpayment for McGann's 1983 taxable year of $8,620. (*See id.* at 65-67.)

26. The IRS reported the adjustments to McGann on a Form 4549-A, which it sent to him on February 26, 2003. (Stip. Ex. 11 at 63.) The Form 4549-A informed him (*id*. at 67, original in capitals)–

> All or part of the underpayment of tax you were required to show on your return is a substantial underpayment attributable to tax motivated transactions, as defined by section 6621(c)(3) of the Internal Revenue Code. Accordingly, the annual

> interest rate payable on your income taxes on this understatement is 120 percent of the adjusted rate established under Code section 6621(b).

27. The IRS assessed $57,475.04 of interest under Code § 6621(c) on the McGanns' $8,620 underpayment on March 24, 2003. (Stip. Ex. 12 at 70.) According to a commercially available computer program, TaxInterest for Windows, Version 2007.4, interest of $57,560.60 would have accrued on an underpayment of $8,620 from April 15, 1984 (the due date of the McGanns' 1983 return) through March 24, 2003. (*See* Stoddart Decl. ¶¶ 1, 2 & Ex. 1, App. B at 99, 102.)

Respectfully submitted,

s/ Robert Stoddart
ROBERT STODDART
United States Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26,
Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-6445
FAX: (202) 514-9440

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

s/ Steven I. Frahm
Of Counsel

January 7, 2008