**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
No. 05-1189 T
(Judge Charles F. Lettow)

---

THOMAS H. McGANN and EVELYN G. McGANN

Plaintiffs,

VS.

UNITED STATES OF AMERICA,

Defendant.

---

# PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT THEREOF AND IN RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

THOMAS E. REDDING
SALLIE W. GLADNEY
TERESA J. WOMACK
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs
Thomas H. McGann and
Evelyn G. McGann

**TABLE OF CONTENTS**


Table of Contents . . . . . . . . . . -ii-

Table of Authorities . . . . . . . . . . -iii-

Response to this Court's Order Dated February 5, 2008 . . . . . . . . . . 1

Response to the Government's Statement of the Case . . . . . . . . . . 2

1. The Government's Implied *Res Judicata* Argument is Without Merit . . . . . . . . . . 2

2. The IRS's Internal Documents Cannot Bind the McGanns . . . . . . . . . . 4

Response to the Government's Argument . . . . . . . . . . 5

1. Section 6226(h) Does Not and Cannot Here Bind the McGanns to Proposed Determinations in the FPAA . . . . . . . . . . 8

2. The Government's Application of the Formula is Incorrect . . . . . . . . . . 12

3. The Government's Analysis of *Weiner* is Erroneous . . . . . . . . . . 16

   a. The Government's Attempts to Distinguish *Weiner* are Mistaken . . . . . . . . . . 16

   b. The Government's Novel Priority-Based Approach to Determining the Amount of Underpayment "attributable to" a Particular Proposed Basis for Disallowance Should be Rejected . . . . . . . . . . 18

4. No Partnership Item Settlement was Ever Proposed to the McGanns . . . . . . . . . . 20

5. Conclusion . . . . . . . . . . 20


 R:\DOCS\TAXCONT.T\McGann Reply.wpd

# TABLE OF AUTHORITIES

**Cases**

*Acierno v. C.I.R.*, T.C. Memo 1997-41,
*aff'd*, 185 F.3d 861 (3rd Cir. 1999) . . . . . 3

*Copeland v. C.I.R.*, 290 F.3d 326 (5th Cir. 2002) . . . . . 1

*Hamlet v. United States*, 63 F.3d 1097 (Fed.Cir.1995),
*cert. denied,* 517 U.S. 1155 (1996) . . . . . 12

*Harris v. C.I.R.*, 58 T.C.M. (CCH) 1441 (1990) . . . . . 20

*Irom v. C.I.R.,* 866 F.2d 545 (2d Cir.1989) . . . . . 19

*Kraemer v. United States*, 2002 WL 575791 (S.D.Tex. 2002) . . . . . 17, 18

*Krause v. C.I.R.,* 99 T.C. 132 (1992),
*aff'd sub nom. Hildebrand v. C.I.R.,*
28 F.3d 1024 (10th Cir.1994) . . . . . 2, 10, 11

*McGann v. United States*, 76 Fed.Cl. 745 (2007) . . . . . 1, 2, 4, 8-10

*Weiner v. United States*, 255 F.Supp.2d 624 (S.D.Tex. 2002) . . . . . 17

*Weiner v. United States*, 255 F.Supp.2d 673 (S.D.Tex. 2002) . . . . . 17, 18

*Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004) . . . . . 13, 16-20

**Statutes**

26 U.S.C. §183 . . . . . 1, 2, 6, 8-13

26 U.S.C. §6226(h) . . . . . 8, 9, 11-13, 15

26 U.S.C. §6230(c)(2)(A) . . . . . 1

26 U.S.C. §6601 . . . . . 5

26 U.S.C. §6621(c) . . . . . 1, 2, 4-6, 8, 12, 16-19

**Regulations**

Treas. Reg. §301.6621-2T, A-5 . . . . . 12, 13, 16

## RESPONSE TO THIS COURT'S ORDER DATED FEBRUARY 5, 2008

In its Order dated February 5, 2008, this Court directed the parties

> to address whether the government's contentions in its response and cross-motion for summary judgment, filed January 7, 2008, are obviated by the second ground of the court's prior decision rendered May 17, 2007, and reported at 76 Fed.Cl. 745, 758-761.

This Court's prior opinion contained three parts: A, B, and C, with the conclusion of part B and the beginning of part C on page 758. *McGann v. United States*, 76 Fed.Cl. 745 (2007).

Part A sustained the government's position that interest is included in the statutory definition of tax. Parts B and C reflect this Court's determinations that the 6-month limitations period to file refund claims under §6230(c)(2)(A) does not apply to the McGann's claim for refund of the §6621(c) punitive interest imposed and collect by the IRS on two independent grounds.

As the plaintiffs understand the opinion, this Court in part B (i) concurs with the Fifth Circuit's opinion in *Copeland*[1] that the deductions were not "disallowed under §183, and no such disallowance has been or could have been made in this [partnership] case" and (ii) further determined that the dismissal for "failure to properly prosecute," in the *Vulcan Oil* Order of Dismissal and Decision ("the *Vulcan Oil* Dismissal Order") was also insufficient to constitute a partnership-level determination that the disallowed deductions were attributable to a tax motivated transaction ("TMT"), resulting in this Court's holding that "[c]onsequently, the second predicate for application of the six-month time limitation of I.R.C. § 6230(c)(2)(A) has not been met, and the refund claim filed with the IRS by Mr. and Mrs. McGann was not time-barred by that provision" and that "[a]ccordingly, the assessment of interest at the [TMT] rate was not 'necessary ... to apply ... the decision' of the Tax Court in *Vulcan Oil*." *McGann* at 757-758.

---

1 *Copeland v. C.I.R.*, 290 F.3d 326 (5th Cir. 2002).

Petitioners believe that this Court's analysis in part B, and the conclusion on page 758 do, in fact, obviate the government's contentions in its response and cross-motion. This Court clearly determined that the *Vulcan Oil* Dismissal Order, *Krause*,[2] and references to §183 in the IRS's motion to dismiss were not sufficient to sustain the automatic imposition of the §6621(c) punitive interest rate. Nevertheless, the plaintiffs have fully briefed their responses to the government's arguments.

As plaintiffs understand it, this Court's second ground in its prior opinion (part C) is an alternative analysis that even if the 6-month limitations period applied, the notices received by the McGanns were not sufficient to constitute adequate notices of computational adjustment to begin the 6-month period. The McGanns concur with this analysis, but do not believe it obviates the issues raised by the government in its response and cross-motion. Part C appears to address only whether the McGanns' claim was timely filed and does not appear to go to the merits of that claim.

## RESPONSE TO THE GOVERNMENT'S STATEMENT OF THE CASE

Except for the following, the plaintiffs do not object to the government's statement of the case.

### 1. The Government's Implied *Res Judicata* Argument is Without Merit

The government previously argued that *res judicata* barred the McGanns from challenging the IRS's decision to impose the §6621(c) punitive interest rate becase they were bound to the outcome of the partnership-level Tax Court case. See pp. 28-32 of the government's Reply Brief at Document 26. This Court addressed and rejected the government's *res judicata* argument in its prior opinion. *McGann* at 757-758. In the Statement of the Case to its cross-motion the government references prior court cases to which the McGanns were not parties but which did involve Elektra partnerships in an apparent attempt to imply a variation of its prior *res judicata* argument. But these cases and implication are never actually referenced or addressed in the government argument.

---

2 *Krause v. C.I.R.,* 99 T.C. 132 (1992), *aff'd sub nom. Hildebrand v. C.I.R.,* 28 F.3d 1024 (10th Cir.1994).

Even if the government had developed this inchoate argument it would fail on its lack of merit. The underlying tax liability in this case arises from the *Vulcan Oil* Tax Court TEFRA partnership-level case. The McGanns were parties because Mr. McGann was an indirect partner in Drake Oil for tax year 1983. Drake Oil was in the "Denver" branch of the Elektra partnerships. [USMSJ: p.5 n.5][3]

The government references *Krause / Hildebrand* and *Acierno*[4] in an apparent attempt to foster some form of inchoate preclusion argument. [USMSJ:4-5]

*Krause* concerned Barton Enhanced Oil Production Income Fund, an Elektra partnership in the "Wichita" branch, and Technology Oil and Gas Associates 1980, an Elektra partnership in the "Manhattan" branch, for tax years 1982 (pre-TEFRA) and 1983 (TEFRA).[5] [USMSJ:4-5] Neither *Krause* nor *Hildebrand* ever addressed anything having to do with Drake Oil or the Denver branch generally.

Acierno was a partner in Drake Oil for tax year 1982. [USMSJ:4-5 n.4] *Acierno* was a partner-level case to which the McGanns were not parties and addressed only the pre-TEFRA 1982 tax year, not the TEFRA 1983 tax year at issue here for the McGanns.

The government states that "Drake Oil was closely related to Barton, and their activities cannot be distinguished." [USMSJ: p.4] But the government offers no evidence whatsoever in support. Nowhere does the government specifically allege that the 1983 Drake Oil "Denver" branch TEFRA partnership items at issue in *Vulcan Oil* were substantively similar to, and indistinguishable from,

---

3 References to [USMSJ: "x"] are to page "x" of the Defendant's Cross-motion for Summary Judgment with Brief in Support Thereof and in Response to Plaintiffs' Motion for Summary Judgment at Document 56 in the record of this case.

4 *Acierno v. C.I.R.*, T.C. Memo 1997-41, *aff'd*, 185 F.3d 861 (3rd Cir. 1999).

5 *Krause* at 1005-1011 ("Wichita" facts) and at 1011-1016 ("Manhattan" facts)

the 1982 pre-TEFRA and 1983 TEFRA issues determined in the cases addressing the "Wichita" and "Manhattan" branch cases. Nor does the government ever address in its actual argument any of the elements required for any issue here to be precluded by either *res judicata* or collateral estoppel.

The government merely presents this Court with an opportunity to infer such a relationship in a variation of the *res judicata* argument it raised in its prior pleadings. See pp. 28-32 of the government's Reply Brief at Document 26. This Court should reject this opportunity just as it rejected the government's prior *res judicata* argument. *McGann* at 757-758.

**2. The IRS's Internal Documents Cannot Bind the McGanns**

The government references numerous internal IRS documents in an apparent attempt to evidence the intent of the IRS prior to the *Vulcan Oil* Dismissal Order to impose the §6621(c) punitive interest rate on the Elektra partners in general and the McGanns in particular. [USMSJ: 7-8; USFacts: 20, 23, 24; USAppB: 70-74][6] But nowhere does the government even allege that one of those documents was ever sent to the McGanns nor are those documents ever referenced in the government's actual argument on the issues.

Further, these internal IRS documents were all prepared after the *Vulcan Oil* Dismissal Order was issued. [USMSJ: 7-8; USFacts: 20, 23, 24; USAppB: 70-74] While they may evidence the IRS's intent after the *Vulcan Oil* Dismissal Order was entered to impose §6621(c) they do not provide any evidence that either the *Vulcan Oil* Dismissal Order or the motion to dismiss was prepared with the intent that the IRS later be able to validly impose §6621(c).

---

6 References to [USFacts: "x"] are to paragraph "x" of the Defendant's Proposed Findings of Uncontroverted Fact at Document 57 in the record of this case. References to [USAppB: "x"] are to page "x" of the Appendix B attached to the Defendant's Cross-motion for Summary Judgment with Brief in Support Thereof and in Response to Plaintiffs' Motion for Summary Judgment at Document 56 in the record of this case.

Conspicuously absent from the Declaration of Marion S. Friedman, the IRS attorney in charge of the *Vulcan Oil* litigation, is any assertion that the IRS's motion to dismiss and the *Vulcan Oil* Dismissal Order were intended to provide the IRS with a valid basis to later impose the §6621(c) punitive interest rate. [USAppB: 75-88] Ms. Friedman testifies only that the motion to dismiss and *Vulcan Oil* Dismissal Order were prepared "at my direction based on applying the *Krause* opinion to the facts for each of the partnership tax years." [USAppB: 87 ¶43] Applying *Krause* to the McGanns, and the other Elektra partners subject to the *Vulcan Oil* Dismissal Order, would disallow the partnership deductions and authorize the IRS to assess the resulting tax and interest at the normal §6601 rate. The McGanns have never disputed the imposition of the tax and normal interest.

The government has offered no evidence that the *Vulcan Oil* Dismissal Order was intended to provide the IRS with sufficient grounds to later validly impose the §6621(c) punitive interest rate on the partners and this Court should reject the opportunity presented by the government here to make such an inference from documents created after the fact.

## RESPONSE TO THE GOVERNMENT'S ARGUMENT

In the McGanns' motion for summary judgment they outlined the three possible avenues for the IRS to impose the §6621(c) punitive interest rate on the McGanns' Elektra related tax liability:

(i) *Vulcan Oil* Dismissal Order determined that the disputed partnership item deductions were "attributable to" one of the listed TMTs;

(ii) if the McGanns were bound to specific determinations in *Krause* that were themselves sufficient to impose the §6621(c) punitive interest rate; or

(iii) if the *Vulcan Oil* Dismissal Order upheld the multiple, undifferentiated bases for complete disallowance listed in the FPAA and those multiple, undifferentiated bases for complete

disallowance were sufficient to impose the §6621(c) punitive interest rate.

[PMSJ: 12][7]

The government does not appear to dispute that the *Vulcan Oil* Dismissal Order itself was *not* sufficient to allow the IRS to impose the §6621(c) punitive interest rate.

The government does not dispute that the specific §183 determinations in *Krause* and the references to them in the *Vulcan Oil* motion to dismiss were *not* sufficient to impose §6621(c).

Instead, the government argues only that it should be allowed to circumvent the plain language of the *Vulcan Oil* Dismissal Order and the IRS's own express restrictions regarding *Krause* in its *Vulcan Oil* motion to dismiss and instead impose §6621(c) based on its misrepresentation of other grounds, individually and collectively, allegedly in the FPAA that were not addressed in either the *Vulcan Oil* Dismissal Order or the motion to dismiss.

The FPAA does not contain the determinations alleged by the government. The following is a restatement of the explanation from the FPAA. It should be noted that the numbering is as in the FPAA, which contained no paragraphs numbered 2 and goes from 1 to 3.

> 1. It is determined that the deductions, reported by Drake Oil Technology (A TEFRA Partnership) on its 1983 partnership income tax return in the amount of $23,198,105.00 (see Exhibit A) are disallowed **for the following reasons**:
>
> (a) **It has not been established that** the underlying events, transactions and expenditures occurred in fact or in substance;
>
> (b) **It has not been established that** the claimed deductions originated in a trade or business or in a transaction entered into for profit;
>
> (c) **It has not been established that** the claimed deductions do not materially distort income;
>
> (d) **It has not been established that** the stated prices of the technology license and the various extraction rights do not exceed the actual cost to the partnership for those items. Thus, the deductions based thereon are disallowed since it has not been established that the have economic

[7] References to [PMSJ: "x"] are to page "x" of the Plaintiffs' Motion for Summary Judgment and Supporting Brief filed in this case at Document 51.

reality.

(e) **It has not been established that** the notes executed by the partners in favor of the partnership are recourse, are not contingent, are not speculative and have economic substance.

Furthermore, the claimed deductions are not allowed **because it has not been established that** they were derived from expenditures which:

(a) Were incurred after the commencement of a business activity;

(b) Qualify as ordinary and necessary business expenses of the partnership or expenses incurred by the partnership for the production of income;

(c) Were properly accrued by the partnership;

(d) Were incurred by the partnership in connection with the purpose designated by the partnership; and

(e) Were not capital in nature.

In addition, **it has not been shown**:

(a) That the entity from which the partnership purportedly licensed a technology portfolio had any rights to such property which could be licensed;

(b) What the fair market value of the purported technology license is, and that the purported price of the license to the partnership, did not unreasonably exceed the fair market value of such license;

(c) What the fair market value of the extraction rights to the Parker Field is, and that the purported price of such extraction rights to the partnership, did not unreasonably exceed the fair market of such rights.

**In addition, it has not been established** that license fees claimed by the partnership qualify as research and experimental expenditures under Internal Revenue Code Section 174.

Additionally, the deductions are not allowable **because they have not been adequately sustained** as to amount or the nature of the deduction.

**Additionally, the deductions are disallowed because there was no response received to requests to provide documents and other information to support the claimed deductions. Because of this . It could not be established which deductions were proper or what the proper amounts of the deductions would be.**

Furthermore, **it has not been established that** the partners were at risk within the meaning of Internal Revenue Code Section 465 for any amounts in excess of those actually paid in cash to the partnership. Thus it has been established that the partnership losses are not in excess of the partners' adjusted basis.

> 3.[*sic*] With respect to distributive share items it has been determined **for the reasons stated above in explanation** 1 that;...
>
> [JExh: 29-30] Emphasis added.

The emphasis has been added to highlight the fact that the IRS had actually made **no** affirmative determinations and had simply denied everything on the return because the tax matters partner ("TMP") apparently[8] had not responded to alleged requests to provide substantiation for the deductions on the return, and recited all of the issues the partnership would have to sustain, and facts it would have to establish to sustain the deductions. This failure to respond to document requests is simply not a tax motivated transaction.

But in its prior pleadings the government asserted that the IRS could impose the §6621(c) penalty interest rate because the *Vulcan Oil* Dismissal Order bound the McGanns to the IRS's motion to dismiss, the §183 determinations in *Krause*, and the proposed disallowances in the FPAA, and that each was separately sufficient to impose the §6621(c) punitive interest rate. Page 30-31 of the government's Reply Brief at Document 26.

This Court has already ruled against the government on those issues and the government may not now present the same or alternative grounds to re-litigate them. *McGann* at 755-758.

**1. <u>Section 6226(h) Does Not and Cannot Here Bind the McGanns to Proposed Determinations in the FPAA</u>**

In its prior pleadings the government argued that

> Under §6226(h), dismissal of an action brought under §6226(a), like *Vulcan Oil*, constitutes a decision that the FPAA under review is correct and permits an appropriate order to be entered. Accordingly, the dismissal decision in *Vulcan Oil*, which was entered

---

[8] There is no evidence in the record in this case of what, if any, documents were requested by the IRS. Because the FPAA is dated April 6, 1987, nearly 9 days before the statute of limitations would have expired, Plaintiff's have doubts as to whether such document request were ever actually made, or if they were made at a time when there was a reasonable time to respond. That question, however, does not appear to be relevant to the issues in this case. The fact that this FPAA was issued without any affirmative determinations, however, is relevant.

> for lack of prosecution and which upheld the vast majority of the disallowance in the FPAA issued to Drake Oil pursuant to §183, constituted a decision that the disallowance for lack of profit motive under §183 was correct on the merits.

Page 31 of the government's Reply Brief at Document 26. Footnote omitted.

But in its prior opinion in this case this Court addressed and rejected the government's attempt to stretch §6226(h) to "apply [to] more than just the adjustments in th FPAA, [but also] to give effect to [other] statement[s] of the FPAA." *McGann* at 756-757. The government offers no reason it should now be allowed to re-litigate that issue to expand the purported reach of §6226(h) past the limits already determined by the Court. But even if the government were somehow able to re-open the issue, based on the facts of this case §6226(h) cannot apply here as asserted by the government.

Section §6226(h) states:

> **(h) Effect of decision dismissing action.**–If an action brought under this section is dismissed (other than under [provisions not applicable here]), the decision of the court dismissing the action shall be considered as its decision that the [FPAA] is correct, and an appropriate order shall be entered in the records of the court.

If the government could now raise additional grounds in support of its §6226(h) argument then it might, *arguendo*, be able to make a valid argument if (i) the *Vulcan Oil* Dismissal Order had simply dismissed the partnership-level case without altering the terms of the FPAA to be imposed on the partners, and (ii) the FPAA had actually determined the adjustments based on a finding of sham, or a combination of grounds affirmatively constituting a sham. But the FPAA did not contain a determination, individually or collectively, of sham.

However, as shown above, the FPAA contained no determinations that individually or collectively could constitute "sham". The entire explanation in the FPAA was based on the proposition that the partnership had "failed to establish" all of the elements necessary to sustain the deductions claimed, ultimately because:

> **There was no response received to requests to provide documents and other information to support the claimed deductions. Because of this . It could not**

> **be established which deductions were proper or what the proper amounts of the deductions would be.**
>
> [JExh: 30]

The failure to provide documentation with the result that "it could not be established which deductions were proper or what the proper amounts of the deductions would be" is purely and simply nowhere defined as a TMT.

Additionally, this Court has already recognized that

> The Tax Court's dismissal of the petition for review in *Vulcan Oil* for failure to prosecute, . . . was premised upon a motion by the IRS that recited that "proposed adjustments to partnership items in this case ... have been computed based on I.R.C. §183 in accordance with the opinion [of the Tax Court] in *Krause.*"
>
> *McGann* at 755.

It also made clear that "[a] court's grant of a motion is not an adoption of every argument the movant made in support of the motion." *McGann* at 758.

Marion S. Friedman, the IRS attorney who prepared the IRS's motion to dismiss and the *Vulcan Oil* Dismissal Order, testifies that

> 24. … Since the FPAAs did not reflect the Tax Court's ultimate findings in *Krause*, I made a conscious decision in drafting the Motion to Dismiss not to ask the court to merely uphold the determinations in the FPAAs.
>
> . . . .
>
> 26. … I thought it would be improper to ask the Tax Court to sustain adjustments that were not consistent with *Krause*.
>
> . . . .
>
> 27. It required significant effort, care and time to compute exactly what the IRS would ask the Court to determine in the event the Motion to Dismiss was granted. …
>
> . . . .
>
> 33. In summary, the process of computing adjustments, consistent with *Krause*, that would be proposed in the Motion to Dismiss was extremely laborious and required literally hundreds of hours on my part and on the part of several members of the IRS Appeals Division … .

> 34. The Motion to Dismiss requested that the Tax Court determine specific adjustments for each partnership tax year at issue in *Vulcan* Docket No. 21530-87. These were the adjustments that we had computed for each partnership tax year based on applying the *Krause* opinion.
>
> . . . .
>
> 44. … adjustments adopted and determined by the Tax Court in *Vulcan* … were computed based on the *Krause* opinion and applied section 183, as well as specific determinations in *Krause* disallowing license fees as not legitimate and related interest expenses as nongenuine.

[USAppB: 81-88]

The government acknowledges that "[w]hen she prepared the motion to dismiss, the Commissioner's attorney decided to modify the FPAA … ." [USFacts: p.4 at ¶15]

The schedule of adjustments attached to the IRS's motion to dismiss and adopted in the *Vulcan Oil* Dismissal Order was not the schedule of adjustments attached to the FPAA. [USFacts: 5 ¶17; JExh: 33, 95, 111][9] According to Ms. Friedman, the IRS altered not just the amount of the adjustments but also attempted to revise the reason or grounds for the adjustments.[10] [USFacts: 4,5 ¶15, 17]

The government now argues that the IRS intentionally altered the terms imposed on the partners via the *Vulcan Oil* Dismissal Order from the terms contained in the FPAA but §6226(h), nonetheless, still allows the IRS to impose selected terms of the FPAA on the partners.

No court has ever addressed the application of §6226(h) where, as here, the IRS intentionally used the dismissal/decision to alter the terms imposed on the partners from the terms contained in the FPAA. The McGanns assert that such an argument is patently barred because §6226(h)

---

[9] References to [JEx: "x"] are to Bates stamped page "x" of the joint exhibits attached to the Joint Stipulation of Facts at Document 50 in the record of this case.

[10] Nowhere does Ms. Friedman testify that the adjustments adopted and determined by the Tax Court were based on the amounts or even any specific basis or the cumulative bases asserted in the FPAA. Just the opposite, she testifies that in preparing the motion to dismiss and the schedule of adjustments to accompany the Decision the IRS decided to modify the FPAA.

expressly provides that any applicable dismissal/decision must be "considered as [the court's] decision that the [FPAA] is correct." Here the *Vulcan Oil* Dismissal Order cannot be "considered as [the court's] decision that the [FPAA] is correct" because the IRS intentionally altered the terms to be applied to the partners from those in the FPAA.

But even if this Court allows the government to completely revise its prior arguments that §6621(c) applies because the IRS applied §183 via its motion to dismiss, the argument previously rejected by this Court, and now argue that it can rely on its interpretation of the entire FPAA, it must still lose because neither analysis supports imposition of §6621(c).

**2. The Government's Application of the Formula is Incorrect**

If the government is allowed to now argue §6226(h) and is not bound to its prior reliance on §183 to bind the McGanns, then the the IRS's formula in Treas. Reg. §301.6621-2T, A-5 nevertheless controls the outcome of the McGanns' case here.

Treas. Reg. §301.6621-2T, A-5 is the IRS's objective mathematical formula specifically promulgated for the purpose of computing the amount of tax subject to the §6621(c) punitive interest rate. It has the force of law.[11]

> [T]he amount of *tax motivated underpayment* for §6621(c) is determined in the following manner:
>
> > (1) Calculate the amount of the tax liability for the taxable year as if all items of income, gain, loss, deduction, or credit, had been reported properly on the income tax return of the taxpayer ("total tax liability"); and
> >
> > (2) Without taking into account any adjustments to items of income, gain, loss, deduction, or credit that are attributable to [TMTs] ..., calculate the amount of the tax liability for the taxable year as if all other items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of the taxpayer ("tax liability without regard to [TMTs]").

---

11 *Hamlet v. United States*, 63 F.3d 1097, 1105 (Fed.Cir.1995), *cert. denied,* 517 U.S. 1155 (1996).

> The difference between (1) and (2) is the amount of the tax motivated underpayment. *See* 26 C.F.R. §301.6621-2T, A-5.
>
> *Weiner v. United States*, 389 F.3d 152, 160, n. 8 (5th Cir. 2004). Emphasis in original.

But the government errs in its application of this unambiguous formula. [USMSJ:12] The government erroneously represents that, in its interpretation, "[h]ere, . . . the underpayment results from grounds the Tax Court determined, including grounds that are [TMTs] and grounds that are not." [USMSJ:21][12] It is undisputed that the FPAA proposed to disallow all of the partnership items on multiple, undifferentiated non-TMT grounds, but each of them was a "failure to establish" the criteria for the deductions because no partnership documents had been reviewed. This is not a TMT determination. The government asserts that the FPAA also proposed to disallow all of the same partnership items based on a purported determination of "sham" by erroneously trying to show that the collective elements of sham were among the multiple grounds for disallowance in the FPAA. even though the word sham never appears in the FPAA and no affirmative determinations were made in the FPAA because no documents had been examined. [JExh:23-33] The government's contention that the elements necessary for a sham determination were included as the proposed grounds for disallowance in the FPAA is simply wrong.

The government seeks in its brief to abandon its prior reliance on its allegations that the partnership level disallowance's were under §183 as the basis for asserting the differences were "attributed to" the tax motivated transactions and substitute its new argument that under §6226(h), the FPAA determinations must be considered as correct:

> In the present case, the Tax Court dismissed a petition challenging Drake Oil's FPAA. By statute, the dismissal must" be considered as [the court's] decision that the notice of final partnership administrative adjustment is correct...." Code §6226(h). This case is therefore worlds apart from Weiner: Weiner's

[12] See also the government's statement that "[t]he underpayment is also attributable to–in whole or in part–to other grounds listed in the FPAA, some of which are not [TMTs] . . . ." [USMSJ:14]

> underpayment was attributed to a settlement that specified no grounds; the McGann's underpayment is attributed to the grounds listed in the FPAA, grounds now affirmed by a judicial decision.
>
> [USMSJ: 23]

It then, however, tries to rely on IRS internal documents unrelated to the FPAA and court cases that were not based on the determinations in the FPAA. Even worse the government's brief repeatedly misrepresents both the content of the FPAA and the Tax Court's dismissal. The following statements in the government's brief are patently wrong.

> In the McGanns' case, the Tax Court determined that the underpayment is supported by grounds that constitute a tax motivated transaction (as well as other grounds).
>
> [USMSJ: 23]
>
> The FPAA also found generally that Drake Oil overstated the value of its assets and did not engage in its activities for profit. (*See ibid.*)
>
> [USMSJ: 6]
>
> The FPAA found, among other things, that Drake Oil's transactions and expenditures had not occurred in fact or in substance: in other words, that the transactions and expenditures were shams.
>
> [USMSJ: 9]
>
> When it dismissed the *Vulcan* case, the Tax Court determined that Drake Oil's transactions and expenditures had not occurred in fact or in substance.
>
> [USMSJ: 10]
>
> The Commissioner has established that the McGann's transaction was a sham.
>
> [USMSJ: 27]

Repeatedly restating a falsity does not make it true. As explained above, the FPAA makes no affirmative determination and is entirely based on the determination that because the IRS had not reviewed actual documents of the partnership, "it could not be established which deductions were proper or what the proper amounts of the deductions would be" that determination is at the core of

every other "it has not been established" determination in the FPAA. [JEx: 30]

There were absolutely **no** determinations in the FPAA that standing alone, or collectively constituted a determination of "sham" or any other TMT.

Even the FPAA determinations that, because of the lack of any document review, "it has not been established that the underlying events, transactions, and expenditures occurred in fact or in substance", or that "it has not been established that the claimed deductions originated in...a transaction entered into for profit," do not constitute determinations in the FPAA that the transactions did in fact lack economic substance or were not entered into for profit. Although positive determinations of lack of economic substance or lack of profit motive might constitute partnership level determinations of elements of sham, they were **not** made in the FPAA. The only actual positive determination made "correct" under §6226(h) is that because of the lack of review of partnership records "it could not be established which deductions were proper or what the proper amounts of the deductions would be." [JExh: 30]

Even assuming, *arguendo*, that this purported sham determination has been included in the FPAA, the government is still wrong. The government errs in applying the IRS's formula, even to its own interpretation of the FPAA when it attempts to calculate "(2)" the "tax liability without regard to [TMTs]". The government erroneously asserts that if "sham" is one of the proposed bases for disallowing all of the deductions then (2) must be -0- because "[t]here can be no other adjustments when a finding of sham invalidates an entire transaction." [USMSJ: 12 n.8] The government cites no authority for this proposition because there is none. The government is simply wrong; (2) is computed by calculating the amount of tax liability including any adjustments attributable to non-TMT bases for disallowance.

Where the same deductions are disallowed for both TMT and non-TMT bases (1) and (2) will always be the same. Therefore, the amount of the tax motivated underpayment will always be -0-.

Under the government's interpretation, if sham, a TMT, is one of the proposed bases for disallowance in the FPAA then all of stated non-TMT bases for disallowance must be ignored when calculating the amount of the tax motivated underpayment under Treas. Reg. §301.6621-2T, A-5. But nothing in either §6621(c) or Treas. Reg. §301.6221-2T supports this interpretation.

The plain language of Treas. Reg. §301.6621-2T, A-5 speaks for itself and the Fifth Circuit correctly upheld this plain language in *Weiner*. *Weiner*, 389 F.3d at 160, n. 8-9. Despite the government's protestations, the McGanns do not wish to change the language of either the statute or the regulation. The McGanns agree with the Fifth Circuit that under Treas. Reg. §301.6621-2T, A-5 the IRS cannot impose the §6621(c) punitive interest rate on a tax liability unless it is solely "attributable to" a TMT. No change to the statute is necessary, this is simply the natural outcome of properly applying the IRS's own objective mathematical formula. Moreover, here there are no sham or other TMT determinations in the FPAA.

**3. <u>The Government's Analysis of *Weiner* is Erroneous</u>**

**a. The Government's Attempts to Distinguish *Weiner* are Mistaken**

In *Weiner* the partners (Weiner and Kraemer) settled their disputed partnership items with the IRS on Forms 870-P(AD) that stated the dollar amounts for the agreed adjustments but gave no reason or basis for those adjustments. *Weiner*, 389 F.3d at 159-160. The Fifth Circuit held that where a settlement recites no the grounds for the agreed adjustments the court examines the FPAA to determine if the resulting tax liability is "attributable to" a TMT. *Weiner*, 389 F.3d at 162. The Fifth Circuit's examination of the FPAAs in *Weiner* are distinguishable from the FPAA examination urged by the government here. but only because the FPAAs in *Weiner* did contain affirmative determinations, including the Fifth Circuit's finding that:

> In the FPAAs, the Government asserted *several* bases for the disallowance of

> certain deductions. Among them was a "sham or fraudulent transaction," which qualifies as a "tax motivated transaction" for the purposes of 6621(c).
>
> *Weiner*, 389 F.3d at 159-160.

The government also attempts to sway this Court by making two false statements about the facts in *Weiner*. On appeal, *Weiner* was a consolidation of two cases: *Weiner*[13] and *Kraemer*.[14] First, the government states that

> the *Weiner* underpayment arose from an unexplained settlement. Neither the parties nor a court had attributed the underpayment to any ground – either to one that would support imposition of [§6621(c)] penalty interest or to one that would not.
>
> [USMSJ:24]

While the first part of this statement is correct the second is blatantly false. As here, in both *Weiner* and *Kraemer* the government argued that the deductions were disallowed as shams based affirmative determinations in the FPAAs.[15]

Second, the government states that "the Kraemers conceded the §6621(c) issue before trial." [USMSJ:22] Again, this statement is false. Prior to trial both Weiner and Kraemer conceded that they could not meet their burden to prove that the partnership activities had economic substance.[16] But this was not a concession either that §6621(c) applied or that the partnership deductions were shams. In the Fifth Circuit sham requires a two-prong test: whether the partnership activities had

---

13 *Weiner v. United States*, 255 F.Supp.2d 624 (S.D.Tex. 2002); see also *Weiner v. United States*, 255 F.Supp.2d 673 (S.D.Tex. 2002)

14 *Kraemer v. United States*, 2002 WL 575791 (S.D.Tex. 2002).

15 *Weiner*, 255 F.Supp.2d at 656 ("In this case, the IRS contends that the underpayment is attributable to a sham transaction."); *Weiner*, 255 at 678-79; *Kraemer* at *11-*13.

16 *Weiner*, 255 F.Supp.2d at 683; *Weiner*, 389 F.3d at 163 (As to §6621(c), the Fifth Circuit "endorse[d] the result in *Weiner, …*, but reverse[d] that in *Kraemer*.").

economic substance and whether the partner had a proper profit motive.[17] The *Weiner* court held that Weiner did have a proper profit motive and that §6621(c) was, therefore, improper.[18] The *Kraemer* court dismissed the §6621(c) claim for lack of jurisdiction. On appeal the cases were consolidated. The Fifth Circuit held that the district courts did have jurisdiction to determine the partners' §6621(c) refund claims, that §6621(c) was improperly imposed as a matter of law, and that both Weiner and Kraemer were due refunds of the interest they paid due to §6621(c).[19] The IRS subsequently paid the §6621(c) refund claims of both Weiner and Kraemer and satisfactions of judgment were entered in both cases. There is no excuse for the government's false representations to this Court.

**b. The Government's Novel Priority-Based Approach to Determining the Amount of Underpayment "attributable to" a Particular Proposed Basis for Disallowance Should be Rejected**

The government misstates the Fifth Circuit's holding in *Weiner* when it says that the Fifth Circuit concluded "that a settlement cannot support penalty interest on an underpayment if the settlement fails to state the grounds for the underpayment." [USMSJ: 24] Rather, the Fifth Circuit's holding is more accurately summarized as: (i) where a TEFRA partnership item settlement is silent as to the grounds for the adjustments the IRS and the courts look to the grounds stated in the related FPAA to determine if the §6621(c) punitive interest rate may be applied to any resulting underpayment of tax, and (ii) even where the FPAA contained separate, independent affirmative determinations for disallowing the same undifferentiated deductions, some of which are TMTs and

---

[17] *Weiner*, 255 F.Supp.2d at 688 ("The Court further concludes that the imposition of §6621(c) enhanced interest based on "sham transaction" requires both lack of economic substance of the partnership transactions and lack of profit motive on the part of Weiner.").

[18] *Weiner*, 255 F.Supp.2d at 688 ("The Court finds that Weiner invested in the partnership with a profit motive and thus Weiner has met his burden to prove that he is entitled to a refund of the enhanced interest assessed against him pursuant to §6621(c).").

[19] *Weiner*, 389 F.3d at 163.

some of which are not, the §6621(c) punitive interest rate cannot be imposed on any resulting tax underpayment. *Weiner*, 389 F.3d at 159-163.

The government argues that this Court should instead adopt a novel priority-based interpretation of "attributable to." Under the government's theory this Court should imply a disallowance for "sham" in an FPAA, even where the word "sham" is never mentioned in the FPAA and the FPAA makes no affirmative determinations other than a full disallowance because it never reviewed the partnership's books and records, and that this implied determination takes priority over and effectively negates the actual proposed bases for disallowance in that FPAA for purposes of determining what any later underpayment of tax is "attributable to." [USMSJ:24-27]

What the government urges is merely an extremely strained variation of the "capable of being attributed" approach adopted by the Second Circuit;[20] but examined and rejected by the Fifth Circuit in *Weiner*. *Weiner*, 389 F.3d at 162, n.10. In *Irom* the Second Circuit announced a "separability" test: if there are two grounds for disallowing the same deductions, one TMT and one not, *and* the two grounds are "inseparable," then the IRS's formula for calculating the amount of underpayment "attributable to" either specific ground does not apply. The Fifth Circuit rejected this reasoning in *Heasley* and reiterated that rejection in *Weiner*. *Heasley* at 383 n. 5; *Weiner*, 389 F.3d at 162 n.10. However, even under *Irom* §6621(c) would not apply to this case.

The Fifth Circuit found that even if the *Irom* approach did apply it would not lead to the result sought by the government because the Tax Court has held that where a FPAA proposes to disallow deductions (i) due to sham or fraudulent transactions, (ii) because the partnership did not actively engage in the trade or business of farming, and (iii) on other undisputedly non-TMT bases, then both

---

[20] *See Irom v. C.I.R.,* 866 F.2d 545, 547 (2d Cir.1989).

(ii) and (iii) are "separable" from the proposed finding of sham or fraudulent transaction[21] and, therefore, the IRS's formula for determining the amount of an underpayment "attributable to" any specific basis would apply and, as here, that amount would be -0-. *Weiner*, 389 F.3d at 162.

The government offers no valid reason why the Fifth Circuit's approach appies any less to its new concept of priority given to a fictitiously implied finding of sham to establish "attributable to."

## 4. No Partnership Item Settlement was Ever Proposed to the McGanns

In partnership-level cases such as *Vulcan Oil* the standard settlement procedure is for the IRS to "propose" a partnership item settlement to the partners, either individually or collectively via the TMP, that the partners can then formally offer back to the IRS. The IRS uses this procedure because its acceptance of the partners' settlement offer normally determines the assessment period as to that partner and the IRS wants to control that date.

The government asserts that the McGanns "have chosen" to delay the litigation in the *Vulcan Oil* case instead of settling. [USMSJ:20, 21 n.13] This assertion is disingenuous because (i) the IRS never proposed a partnership item settlement to the McGanns,[22] and (ii) the government knows full well that the case was dismissed for failure to prosecute because the partnership had no active TMP to keep the partners apprised of the proceedings.

## 5. Conclusion

For the reasons stated above and in the plaintiffs' prior motion, summary judgment should be granted in their favor and the government's cross-motion should be denied.

---

21 *Harris v. C.I.R.*, 58 T.C.M. (CCH) 1441 (1990).

22 While it is impossible for the McGanns to prove a negative, *i.e.* that the IRS never proposed a partnership item settlement that they could offer back, any mention of settlement activities is conspicuously absent from the Declaration of Marion S. Friedman regarding the history of the *Vulcan Oil* litigation. [USApp: 75-88]

Respectfully submitted,

/s/ Thomas E. Redding

Thomas E. Redding, Attorney of Record
Sallie W. Gladney
Teresa J. Womack
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244 / (713) 621-5227 Fax
**ATTORNEYS FOR PLAINTIFFS**