No. 05-1189 T
(Judge Charles F. Lettow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

THOMAS H. McGANN and EVELYN G. McGANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

---

NATHAN J. HOCHMAN
Assistant Attorney General

DAVID GUSTAFSON
STEVEN I. FRAHM
ROBERT STODDART
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TEL: (202) 307-6445
FAX: (202) 514-9440

# TABLE OF CONTENTS

*Page*:

*A. When the Tax Court dismissed the Vulcan case, it determined that Drake Oil's transactions did not occur in fact or in substance–i.e., that the transactions were a sham.* . . . . . 2

*1. The Vulcan decision establishes that Drake Oil's transactions were a sham, and this Court never held to the contrary.* . . . . . 2

*2. Despite the McGanns' quibbles with its phrasing, the FPAA determined that Drake Oil's transactions were a sham.* . . . . . 5

3. *When it drafted its motion to dismiss Vulcan, the IRS did not amend Code § 6226(h) or make the FPAA any less "correct."*. . . . . 8

*B. Both Code § 6621(c) and Treas. Reg. § 301.6621-2T confirm that the McGanns' 1983 underpayment is attributable to denial of deductions claimed for Drake Oil's sham transactions.* . . . . . 9

*C. The Fifth Circuit's Weiner opinion does not establish that Code § 6621(c) applies only to underpayments solely attributable to tax-motivated transactions.* . . . . . 12

*1. The Fifth Circuit did not decide Weiner by applying the formula in Treas. Reg. § 301.6621-2T, A-5.* . . . . . 12

*2. Weiner does not hold that the Code § 6621(c) penalty is inapplicable if the FPAA contains any ground that is not a tax-motivated transaction.* . . . . . 13

*3. The defendant did not misstate the facts of Weiner.* . . . . . 15

*D. The McGanns are responsible for their interest bill: they could have stopped the running of Code § 6621(c) interest at any time, but they preferred to retain their wrongful 1983 tax gain long after the Tax Court had decided the issues against them.* . . . . . 17

Conclusion. . . . . 20

[Table of Contents, continued]

*Page*:

Appendix:

Declaration of Robert Stoddart. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

| Exhibit Number | Description |
|---|---|
| 1 | Excerpts from the docket sheet of *Drake Oil Technology Partners v. Commissioner*, No. 98-9025 (10th Cir.). . . . . . . . . . . . 22 |

## TABLE OF AUTHORITIES

Cases:

*Bradley v. Comm'r*, 100 T.C. 367 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Brown v. Commissioner*, 56 T.C.M. (CCH) 638 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Chamberlain v. Comm'r*, 67 T.C.M. (CCH) 2992 (1994),
*aff'd and rev'd*, 66 F.3d 729 (5th Cir. 1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17
*Coltec. Indus., Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006). . . . . . . . . . . . . . . . 10, 15, 17
*Cottage Sav. Ass'n v. Comm'r*, 499 U.S. 554 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Drake Oil Technology Partners v. Commissioner*, No. 98-9025 (10th Cir.). . . . . . . . . . . . . . . . . 21
*Estate of Carberry v. Commissioner*, 933 F.2d 1124 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . 7
*Field v. United States*, 381 F.3d 109 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Heasley v. Commissioner*, 902 F.2d 380 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
*Jade Trading, LLC v. United States*, 60 Fed. Cl. 558 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Keener v. United States*, 76 Fed. Cl. 455 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
*Krause v. Commissioner*, 99 T.C. 132 (1992) (subsequent history omitted).. . . . . . . . . . . . . . . . 20
*Kretchmer v. Commissioner*, 57 T.C.M. (CCH) 441 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*McGann v. United States*, 76 Fed. Cl. 745 (2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4
*Santa Monica Pictures, LLC v. Comm'r*, 89 T.C.M. (CCH) 1157 (2005). . . . . . . . . . . . . . . . . . . 6
*Sealy Power, Ltd. v. Comm'r*, 46 F.3d 382 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
*Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13
*VanCanagan v. United States*, 231 F.3d 1349 (Fed. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . 19
*Vulcan Oil Technology Partners v. Comm'r*, 110 T.C. 153 (1998).. . . . . . . . . . . . . . . . . . . . 18-19
*Vulcan Oil Technology Partners et al. v. Comm'r*, No. 21530-87 (T.C.). . . . . . . . . . . . . . . *passim*
*Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-17

[Table of Authorities, continued]

*Page*:

Statutes:

Internal Revenue Code of 1986 (26 U.S.C.):

§ 183. . . . . . . . . . 3, 4, 8
§ 704. . . . . . . . . . 7
§ 6226. . . . . . . . . . 2-5, 8-9
§ 6230. . . . . . . . . . 5
§ 6621. . . . . . . . . . *passim*
§ 6659. . . . . . . . . . 12-13

Treasury Regulations (26 C.F.R.):

§ 301.6621-2T. . . . . . . . . . 4, 9-13

Miscellaneous:

MODEL RULES OF PROF'L CONDUCT (2004). . . . . . . . . . 15
Rev. Proc. 84-58, 1984-2 C.B. 501. . . . . . . . . . 19
135 Cong. Rec. S13893-7, 1989 WL 186980 (daily ed. Oct. 24, 1989),
(Statement of Senator Pryor). . . . . . . . . . 20

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1189 T
(Judge Charles F. Lettow)

THOMAS H. McGANN and EVELYN G. McGANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

On January 7, 2008, the defendant, the United States, filed a cross-motion for summary judgment and supporting brief (hereinafter Def. Brief) asking this Court to dismiss the McGanns' complaint with prejudice because in an earlier action the Tax Court upheld the FPAA issued to Drake Oil Technology Partners (Drake Oil), a partnership in which the McGanns held an indirect interest. In the FPAA, the IRS determined (among other things) that Drake Oil had provided no evidence to show that its alleged transactions occurred in fact or in substance–*i.e.*, that Drake Oil engaged in a sham, which is a tax-motivated transaction under former Code § 6621(c)(3)(A)(v). This partnership-level determination resulted in the entire partner-level underpayment that the IRS assessed for the McGanns' 1983 taxable year. Because the underpayment was attributable to a tax-motivated transaction, the IRS properly assessed interest under § 6621(c)(1).

In their response, filed on February 8, 2008 (hereinafter Pl. Response), the McGanns assert: (A) the Tax Court's partnership-level decision could not have established that Drake Oil

engaged in a sham; (B) a Treasury Regulation shows that their underpayment cannot be attributed to a tax-motivated transaction; (C) a decision of the Fifth Circuit requires this Court to grant them a refund; and (D) it would be unfair to impose penalty interest on them for their delay in resolving their TEFRA case because the IRS never offered to settle it. The McGanns are wrong on every count.

*A. When the Tax Court dismissed the Vulcan case, it determined that Drake Oil's transactions did not occur in fact or in substance–i.e., that the transactions were a sham.*

Drake Oil petitioned the Tax Court to readjust the partnership items in the FPAA; but Drake Oil failed to prosecute, and the Tax Court dismissed the petition. *See* Order and Order of Dismissal and Decision, *Vulcan Oil Technology Partners et al. v. Comm'r*, No. 21530-87 (T.C. June 13, 2002) (Stip. Ex. 13 at 110). Code § 6226(h) provides: "the decision of the court dismissing the action shall be considered as its decision that the notice of final partnership administrative adjustment [FPAA] is correct . . . ." The FPAA determined that Drake Oil's transactions were a sham, and sham transactions must be ignored. Because the McGanns' entire 1983 underpayment results from ignoring deductions generated by Drake Oil, their underpayment is attributable to a tax motivated transaction, and under former Code § 6621(c)(1), the McGanns owe interest on that underpayment computed at 120% of the ordinary rate. *See* Def. Brief at 10-12.

*1. The Vulcan decision establishes that Drake Oil's transactions were a sham, and this Court never held to the contrary.*

The McGanns first seek to avoid the interest assessment by misreading the opinion in which this Court denied the defendant's earlier motion to dismiss their case for lack of

jurisdiction, *McGann v. United States*, 76 Fed. Cl. 745 (2007). At page 9 of Pl. Response they assert the following:

> [I]n its prior opinion in this case this Court addressed and rejected the government's attempt to stretch §6226(h) to "apply [to] more than just the adjustments in th [*sic*] FPAA, [but also] to give effect to [other] statement[s] of the FPAA." *McGann* at 756-757. The government offers no reason it should now be allowed to re-litigate that issue to expand the purported reach of §6226(h) past the limits already determined by the Court.

They even argue that this asserted holding "obviate[s] the government's contentions in its response and cross-motion." Pl. Response at 2.

In the words of Code § 6226(h), the Drake Oil FPAA "is correct." The McGanns, however, think this Court construed § 6226(h) to mean that the FPAA is not correct when its determinations are expressed in words rather than in numbers. They are attributing nonsense to the Court, and nothing in the opinion justifies them–certainly not the sentence they rewrite and then quote as support. Here is the sentence as it actually appears, restored to its place in the Court's reasoning (*McGann*, 76 Fed. Cl. at 756–emphasis both original and added; footnotes and citations omitted):

> [T]he government relies on I.R.C. § 6226(h) . . . . In that context, the government urges the court to apply more than just the adjustments of the FPAA, and, in addition, to give effect to the statement of the FPAA that "[i]t has not been established that the claimed deductions originated . . . in a transaction entered into for profit," . . . by treating that statement as a sufficient predicate for enhanced interest under former Section 6621(c). By this step, the government contends that the Tax Court's dismissal in *Vulcan Oil* builds in a finding under Section 183 that must *also* be applied, *without more*, in this proceeding. . . . Arguably, Section 183 would be implicated "[i]n the case of an activity *engaged in by an individual or an S corporation,"* . . . where a finding of a lack of profit motive is a necessary, but not a sufficient, condition for additional interest to have been imposed.

In this passage the Court acknowledged the FPAA's determination that Drake Oil did not enter its transactions for profit, and the Court did not dispute that the FPAA's determination "is correct" under Code § 6226(h). The Court later held, however, that § 183 cannot apply to partnerships. *See McGann,* 76 Fed. Cl. at 756-57. (In its motion to dismiss, the defendant had relied upon § 183 to establish the "tax motivated transaction" behind the McGanns' underpayment. *See* Treas. Reg. § 301.6621-2T, A-4.) The Court also held that the partnership-level decisions in *Vulcan* could not be applied *without more* to uphold assessment of § 6621(c) interest in this refund suit because the interest is an affected item that requires additional determinations at the partner level. *See McGann,* 76 Fed. Cl. at 757 ("[H]ere the tax-motivated-transaction finding could not be made directly in a TEFRA proceeding as a partnership item that would, without more, engender enhanced interest for the affected partner under former Section 6621(c)"). But the Court never limited the conclusive effect of § 6226(h) to the numerical adjustments of the FPAA or refused "to give effect to the [other] statement[s] of the FPAA."

As the Court stated: "[I]n a partnership-level proceeding, a court may indeed make determinations of partnership items that would, in turn, bear upon a subsequent determination of the applicability of enhanced interest under former Section 6621(c)." *McGann*, 76 Fed. Cl. at 754 (citing *Keener v. United States*, 76 Fed. Cl. 455, 469 (2007)). In *Vulcan*, the Tax Court determined that Drake Oil's transactions were a sham. The defendant's cross-motion for summary judgment relies upon that partnership-level determination to support its subsequent partner-level determination that the McGanns' underpayment is attributable to a sham. Despite

the McGanns' assertion, nothing in the Court's previous opinion prevents the defendant from doing so.[1]

2. *Despite the McGanns' quibbles with its phrasing, the FPAA determined that Drake Oil's transactions were a sham.*

The McGanns assert that the government cannot prevail even "[i]f the government could now raise additional grounds in support of its §6226(h) argument." Pl. Response at 9. They generally argue that: (1) the FPAA did not determine that Drake Oil's transactions were a sham because the FPAA introduced its findings with the clause "It has not been established that . . .";

---

[1] In an Order of February 5, 2008, the Court asked the parties to consider whether the defendant's cross-motion for summary judgment is "obviated by the . . . Court's prior decision . . . reported at 76 Fed. Cl. 745, 758-61." In the earlier proceeding the defendant argued that the Court lacked jurisdiction because: (1) the McGanns were seeking a refund on the ground that the Secretary had erroneously computed a "computational adjustment"; but (2) the McGanns had failed to file a timely claim under Code § 6230(c)(2)(A), which provides that such a claim "shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner." At pages 758-61 of 76 Fed. Cl., the Court determined that the notice of computational adjustment failed to provide the McGanns with information sufficient to trigger the 6-month statute of limitations.

The defendant agrees with the conclusion the McGanns state at page 2 of their response: "The McGanns . . . do not believe that [this determination] obviates the issues raised by the government in its response and cross-motion. Part C [of the *McGann* opinion, 76 Fed. Cl. at 758-61] appears to address only whether the McGanns' claim was timely filed and does not appear to go to the merits of that claim."

The validity of an assessment may depend upon a valid notice of deficiency, and the Court did notice a "superficial similarity" between a notice of computational adjustment and a notice of deficiency (76 Fed. Cl. at 760)–but the Court also realized that the deficiency procedures do not apply to assessments of interest under Code § 6621(c) (*see id*. at 760, n.28). *See also Field v. United States*, 381 F.3d 109, 113 (2d Cir. 2004). Furthermore, an assessment cannot depend upon a valid notice of computational adjustment because "there is no statutory provision requiring the issuance of a notice of computational adjustment . . . ." *Bradley v. Comm'r*, 100 T.C. 367, 372 (1993). Therefore the assessment in this case is valid despite the Court's determination that the notice of computational adjustment was invalid, and the Court's determination does not obviate the defendant's cross-motion for summary judgment.

and (2) the FPAA never used the word "sham." *See* Pl. Response at 6-10, 13-15. The FPAA states, in pertinent part (Stip. Ex. 4 at 29-30):

> It is determined that the deductions, reported by Drake Oil Technology (A TEFRA Partnership) on its 1983 partnership income tax return . . . are disallowed for the following reasons:
>
> (a) It has not been established that the underlying events, transactions and expenditures occurred in fact or in substance;
>
> . . . . [Several similarly-phrased grounds are omitted.]
>
> . . . .
>
> Additionally, the deductions are disallowed because there was no response received to requests to provide documents and other information to support the claimed deductions. . . .

According to the McGanns, Drake Oil's failure to establish the substance or existence of its transactions cannot prove that the transactions lacked substance or never occurred. They also assert that the FPAA made only one positive determination–that "there was no response received to requests to provide documents and other information"–and they insist that "failure to respond to document requests is simply not a tax motivated transaction." Pl. Response at 8; *see also id.* at 9-10, 14-15. The McGanns' assertion exalts form over substance and ignores well-established law.

Like the determinations in a notice of deficiency, an FPAA's determinations are presumed to be correct until a taxpayer offers evidence to the contrary. *See, e.g., Sealy Power, Ltd. v. Comm'r*, 46 F.3d 382, 385-86 (5th Cir. 1995); *Santa Monica Pictures, LLC v. Comm'r*, 89 T.C.M. (CCH) 1157, 1189 (2005). The IRS can begin a valid determination with the words "it has not been established that," and a taxpayer must offer evidence to establish what has not been

established; otherwise, a court will decide the issue against him. The defendant will quote only one example: *Brown v. Commissioner*, 56 T.C.M. (CCH) 638, 654-55 (1988) (citations omitted):

> The notice of deficiency stated, "It has not been established that partnership expenses have been incurred, or, if incurred, were ordinary and necessary expenses." That statement certainly puts into issue the deductibility of all claimed expenses, including advertising, and petitioners have the burden of disproving respondent's determination. Rule 142(a). The normal inference is that testimony of an absent witness, such as Mr. Davis, would be unfavorable to the party with the burden of proof. . . . We therefore find that petitioners have not met their burden of proving that the payments to the Advertising Account were for ordinary and necessary business expenses deductible in 1979.

The defendant could easily quote other examples, *e.g., Kretchmer v. Commissioner*, 57 T.C.M. (CCH) 441, 455 (1989), but this point requires no proof and should require no discussion. "In tax law, we should remember, substance rather than form determines tax consequences." *Cottage Sav. Ass'n v. Comm'r*, 499 U.S. 554, 570 (1991) (citations omitted).

Drake Oil had the burden of proving that its transactions occurred in fact and in substance. It offered no proof and defaulted. Consequently the Tax Court's dismissal order establishes that Drake Oil's transactions did not occur in fact or in substance.

The McGanns also suggest that Drake Oil's transactions cannot be a sham even if they never occurred because the FPAA does not use the word "sham." *See* Pl. Response at 13. But when a transaction lacks economic substance or never occurred, it constitutes a "sham" for purposes of Code § 6621(c) no matter what the IRS might have called it. For example, in *Estate of Carberry v. Commissioner*, 933 F.2d 1124 (2d Cir. 1991), the Tax Court had disallowed a partnership's allocation of deductions because it did "not have substantial economic effect," as Code § 704(b)(2) requires. The court also imposed penalty interest on the partner's resulting

deficiency under § 6621(c) because the deficiency was attributable to a sham. The Second Circuit affirmed for the following reason (933 F.2d at 1130, emphasis added):

> The Tax Court correctly concluded that its finding under section 704(b) that the special allocation lacked "substantial economic effect" *was equivalent to saying* that the allocation was without "economic substance," the definition of a sham.

In the present case, the Tax Court found that Drake Oil's transactions did not occur in fact or in substance. This finding is also equivalent to saying that the transactions lacked economic substance. The transactions were therefore a sham within the meaning of § 6621(c)(3)(A)(v).

*3. When it drafted its motion to dismiss Vulcan, the IRS did not amend Code § 6226(h) or make the FPAA any less "correct."*

In its cross-motion for summary judgment, the defendant set out a complete statement of the case. *See* Def. Brief at 3-9.[2] Among other things, the defendant stated: "in the motion to dismiss *Vulcan*, the IRS applied Code § 183 to permit certain deductions to the extent of Drake Oil's income." *Id*. at 7. The McGanns cite that fact and the underlying proposed findings to argue that "the *Vulcan Oil* Dismissal Order cannot be 'considered as [the court's] decision that the [FPAA] is correct' because the IRS intentionally altered the terms to be applied to the partners from those in the FPAA." Pl. Response at 12. The McGanns ignore both this Court's rulings and the governing statute.

[2] The defendant added a "Statement of the Case" to its brief in order to state the case. The McGanns, however, spend four pages of their response refuting "implied" arguments that they extract from that statement–an "Implied *Res Judicata* Argument" (Pl Response at 2-4), and an "apparent attempt" to impose Code § 6621(c) interest on the McGanns using internal IRS documents (*id*. at 4-5). Nevertheless, the McGanns realize that the defendant never raised the strawmen they knock down. *See id*. at 6 (emphasis added) ("the government argues *only* that it should be allowed to . . . impose § 6621(c) based on . . . other grounds . . .allegedly in the FPAA . . .").

In its earlier opinion, this Court rejected the defendant's argument that the Tax Court had adopted the terms of the IRS's motion to dismiss. It stated: "A court's grant of a motion is not an adoption of every argument the movant made in support of its motion. . . . The Tax Court did not address any substantive issues of tax law in its decision." *McGann*, 76 Fed. Cl. at 758. Accordingly, the Tax Court changed none of the grounds listed in the FPAA.

Code § 6226(h) also demonstrates that the Tax Court confirmed the FPAA when it adopted the IRS's calculations. The statute contains two provisions: "[1] the decision of the court dismissing the action shall be considered as its decision that the [FPAA] is correct, *and* [2] an appropriate order shall be entered in the records of the court." § 6226(h) (emphasis and numbering added). The Tax Court adopted the IRS's calculations as an appropriate order, and the dismissal is the court's decision that the FPAA is correct. Even if the IRS had wished to "alter[] the terms to be applied to the partners from those in the FPAA" as the McGanns assert, § 6226(h) would not have permitted it. In a TEFRA proceeding, only the court can modify an FPAA; and except to the extent the Tax Court's order did modify it, the Drake Oil FPAA "is correct" by virtue of § 6226(h). The IRS could not change the statute or the FPAA by filing a motion.

The Tax Court determined that Drake Oil's transactions were a sham. The McGanns cannot evade that partnership-level decision in this partner-level proceeding.

*B. Both Code § 6621(c) and Treas. Reg. § 301.6621-2T confirm that the McGanns' 1983 underpayment is attributable to denial of deductions claimed for Drake Oil's sham transactions.*

Though the Drake Oil transactions were a sham, the McGanns argue that their 1983 deficiency is not "attributable to" the sham because "the IRS's formula in Treas. Reg.

§301.6621-2T, A-5 . . . controls the outcome of the McGanns' case here" and somehow proves the contrary. Pl. Response at 12. The formula generally attributes to a tax-motivated transaction an underpayment equal to the difference between the following two amounts of tax: (1) the tax liability that reflects adjustments made for the tax-motivated transaction; and (2) the tax liability computed with adjustments "other than those with respect to items that are tax motivated." Treas. Reg. § 301.6221-2T, A-5. Using that formula, the defendant has shown that the McGanns' entire 1983 underpayment, $8,620, is attributable to the finding that Drake Oil's transactions were a sham. *See* Def. Brief at 12.

The McGanns insist that the defendant misused the formula. They state: "The government erroneously asserts that if 'sham' is one of the proposed bases for disallowing all of the deductions then (2) must be -0- because '[t]here can be no other adjustments when a finding of sham invalidates an entire transaction.' . . . The government cites no authority for this proposition because there is none." Pl. Response at 15.

The defendant refers the McGanns to the authority it cited on page 11 of Def. Brief (emphasis added): "Shams . . . lack economic reality and *must be ignored*. *See, e.g., Coltec. Indus., Inc. v. United States*, 454 F.3d 1340, 1352 (Fed. Cir. 2006)." If a transaction never occurred for purposes of tax law, it could have generated no tax attributes of any sort. This should be self-evident, but it is also a well-established legal principle. *See generally id.* at 1352-53 (citing cases and treatises). It is true that the FPAA, and consequently the Tax Court, determined that Drake Oil's transactions were not simply a sham; they also had other faults that do not constitute tax-motivated transactions. But to say the least, those other faults do not prevent the transactions from being a sham, and shams must be ignored. Therefore, when the

regulation's formula applies to a sham transaction, there will necessarily be no adjustments "other than those with respect to items that are tax motivated," and the adjustments in part (2) of the formula will always equal zero no matter how many other faults the sham transaction may have had.

Though the McGanns dispute the defendant's calculations, they suggest no "other" tax attributes of a sham transaction that the defendant could have taken into account. Instead, they repeat the conclusion that they have also employed as their argument: "Where the same deductions are disallowed for both TMT [tax-motivated transaction] and non-TMT bases (1) and (2) will always be the same. Therefore the amount of tax motivated underpayment will always be -0-." Pl. Response at 15. The McGanns are restating here in different words what they have often asserted elsewhere: the Code § 6621(c) penalty applies only to underpayments that are *solely* attributable to tax motivated transactions.[3]

The defendant has already explained that the McGanns cannot prevail unless they persuade this Court to amend Code § 6621(c) by inserting the word *solely*. *See* Def. Brief at 14-15. At page 16 of their response, the McGanns both deny and demonstrate that they are smuggling the word *solely* into the statute. The defendant will quote their statement with no change–except for emphasis of one word:

> Despite the government's protestations, the McGanns do not wish to change the language of either the statute or the regulation. The McGanns agree with the Fifth Circuit that under Treas. Reg. §301.6621-2T, A-5 the IRS cannot impose the §6621(c) punitive interest rate on a tax liability unless it is *solely* "attributable to"

[3] *See, e.g.,* pages 9-10 of plaintiffs' motion for summary judgment and supporting brief (Pl. Brief) (emphasis added): "'[A]ttributable to' [in Code § 6621(c)] is defined narrowly such that the specific TMT basis must be identified for each discrete dollar amount of disallowance and that TMT must be the *sole* basis for disallowance."

> a TMT. No change to the statute is necessary, this is simply the natural outcome of properly applying the IRS's own objective mathematical formula.

The McGanns cannot avoid using the word *solely* even while trying to deny that their case depends upon it.

### *C. The Fifth Circuit's Weiner opinion does not establish that Code § 6621(c) applies only to underpayments solely attributable to tax-motivated transactions.*

The McGanns try to support several of their arguments by relying upon *Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004), but it supports none of them.

#### *1. The Fifth Circuit did not decide Weiner by applying the formula in Treas. Reg. § 301.6621-2T, A-5.*

At page 16 of Pl. Response, the McGanns suggest that the Fifth Circuit adopted their understanding of Treas. Reg. § 301.6621-2T, A-5, in *Weiner* 389 F.3d at 160 n.8-9. They are wrong. In footnote 8 of *Weiner*, the Fifth Circuit summarizes a formula that determines the amount of an underpayment attributable to a *valuation overstatement* under former Code § 6659(a) and shows that it is similar to the formula applicable to tax-motivated transactions. *Weiner*'s footnote 9 refers to an earlier case, *Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988), in which the Tax Court refused to impose a penalty for a valuation overstatement.

The Tax Court denied Todd's credits and depreciation deductions because the underlying assets had not been placed in service during the year at issue; and for that reason, the Fifth Circuit found that the underpayment could not be attributed to a valuation overstatement. Consequently the regulation's formula showed that no part of Todd's underpayment was attributable to a valuation overstatement, but the formula did not determine the result of the *Todd* case. Instead, the result of the case determined the application of the formula. As the Fifth

Circuit put it: "Because the court had *already determined* that no portion of the disallowed deductions and credits were 'attributable to' the valuation overstatement, the two sides of the equation were equal." *Weiner*, 389 F.3d at 160 (emphasis added). Similarly, the Fifth Circuit did not apply the Treas. Reg. § 301.6621-2T formula to Weiner's underpayment in order to determine whether it was attributable to a tax-motivated transaction.

2. *Weiner does not hold that the Code § 6621(c) penalty is inapplicable if the FPAA contains any ground that is not a tax-motivated transaction.*

Although the Fifth Circuit did not decide *Weiner* by making calculations under Treas. Reg. § 301.6621-2T, A-5, it did cite the formula to support an analogy to the *Todd* case. In *Todd*, the court had "reasoned that the [Code § 6659(a) regulation] indicated that Congress did not intend for the penalty to apply *every* time valuation overstatement was at issue." *Weiner*, 389 F.3d at 161 (original emphasis). From that understanding of *Todd*, the court further reasoned as follows (*id* at 161-62, original emphasis, footnote omitted):

> On a theoretical level, the [§ 6621(c)] formula provides the same reinforcement for viewing "attributable to" *narrowly* in the § 6621(c) context. When so viewed, it follows that when the FPAA lists several *independent* reasons for disallowing the taxpayers' deductions, there is no way to determine, without additional superfluous litigation, whether the taxpayers' underpayment is "attributable to" a reason that also qualifies as a tax-motivated transaction (such as a sham).

From this passage and related passages the McGanns derive what they consider to be *Weiner*'s "holding"–an unusually complex holding (Pl Response at 18-19):

> [T]he Fifth Circuit's holding is more accurately summarized as: (i) where a TEFRA partnership item settlement is silent as to the grounds for the adjustments[,] the IRS and the courts look to the grounds stated in the related FPAA to determine if the §6621(c) punitive interest rate may be applied to any resulting underpayment of tax, and (ii) even where the FPAA contained separate, independent affirmative determinations for disallowing the same undifferentiated

> deductions, some of which are TMT's and some of which are not, the §6621(c) punitive interest rate cannot be imposed on any resulting tax underpayment.

This is, however, not *Weiner*'s holding–it is an argument based on *Weiner's dicta*. It would be the holding only if the Fifth Circuit had imposed Code § 6621(c) interest on Weiner after going behind the settlement and finding that the FPAA had listed only tax-motivated transactions as grounds for denying his deductions. Because the Fifth Circuit did no such thing, the discussion is not needed to explain the result. The court refused to impose the § 6621(c) penalty because it found that the underpayment resulted from an unexplained settlement and that the trial court had never attributed Weiner's underpayment to a tax-motivated transaction. *See Weiner*, 389 F.3d at 160. This explanation is enough to account for the court's refusal to apply the penalty.

Furthermore, if *Weiner* actually did hold what the McGanns say it holds, it establishes an irrational rule that no court could apply. A simple example will prove this point. Assume that an FPAA denies deductions either because of a single tax-motivated transaction or on several grounds, each of which is a tax-motivated transaction. Assume also that the taxpayer (like Weiner) files a TEFRA case and then executes a settlement agreement that specifies no ground for disallowing deductions. Under the McGanns' rule, this settlement agreement supports imposition of the penalty under Code § 6621(c), even though the government may have convinced the taxpayer to settle on grounds not mentioned in the FPAA–grounds that are not tax-motivated transactions. (A TEFRA proceeding is *de novo*, and a court has jurisdiction to determine every partnership adjustment, not just the ones listed in the FPAA. *See, e.g., Jade Trading, LLC v. United States*, 60 Fed. Cl. 558, 561 (2004).) It is a leap of logic to assume that a TEFRA settlement must result from grounds listed in the FPAA rather than, *e.g.*, from a

taxpayer's desire to stop paying attorney's fees. Unless the parties explain a settlement, a court cannot know why they settled unless it holds a trial on the issue.

The *Weiner* settlement replaced the FPAA as the ground for resolving the covered issues, and the settlement resulted in an underpayment that it did not explain. Accordingly, in the Fifth Circuit's view, the underpayment could not be attributed to a tax motivated transaction. The court could have decided the case without attempting to go behind the settlement–in fact, it could not have gone behind the settlement because there was no evidence in the record to show why the parties settled. Accordingly, the Fifth Circuit did not hold that a Code § 6621(c) penalty cannot apply if an FPAA denies partnership deductions on several grounds, some of which are not tax-motivated transactions. *Weiner* offers the McGanns no support.

Whatever *Weiner* may have held, however, *Weiner* is not binding precedent in this circuit–*Coltec* is. Under *Coltec*, if a transaction is a sham it must be ignored (*see* 454 F.3d at 1352); and if a transaction is ignored, any consequent underpayment results from ignoring the transaction–not from other grounds that might be mentioned in the FPAA. *See* pages 10-11, *supra*.

3. *The defendant did not misstate the facts of Weiner.*

The McGanns assert: "The government also *attempts to sway this Court* by making two *false statements* about the facts in *Weiner*." Pl. Response at 17 (emphasis added). If this charge were true, the defendant would have committed a serious ethical violation.[4] Therefore the defendant must respond to the charge, at least briefly.

---

[4] "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." MODEL RULES OF PROF'L CONDUCT R. 3.3(a)(1) (2004).

First (Pl. Response at 17) the McGanns slightly misquote the following portion of a paragraph on page 24 of Def. Brief:

> the *Weiner* underpayment arose [the McGanns omit the word *only*] from an unexplained settlement. Neither the parties nor a court had attributed the underpayment to any ground–either to one that would support imposition of [§6621(c)] penalty interest or to one that would not.

The McGanns assert (Pl. Response at 17): "While the first part of this statement is correct the second is blatantly false. As here, in both *Weiner* and *Kraemer* the government argued that the deductions were disallowed as shams based affirmative [*sic*] determinations in the FPAAs." Instead of understanding the defendant's second sentence as explaining the "unexplained settlement" of Weiner's TEFRA suit (mentioned in the immediately preceding sentence), the McGanns purport to understand it as an intentional misrepresentation of the government's arguments in Weiner's refund suit (which are mentioned nowhere in the paragraph). This is an odd way to read English prose.

Second, the McGanns quote the following clause from page 22 of Def. Brief: "the Kraemers conceded the §6621(c) issue before trial." They assert (Pl. Response at 17-18, footnotes omitted):

> Again, this statement is false. Prior to trial both Weiner and Kraemer conceded that they could not meet their burden to prove that the partnership activities had economic substance. But this was not a concession either that §6621(c) applied or that the partnership deductions were shams. In the Fifth Circuit sham requires a two-prong test: whether the partnership activities had economic substance and whether the partner had a proper profit motive.[5]

---

[5] The McGanns may be wrong about what the Fifth Circuit requires in order to prove a sham. *See Chamberlain v. Comm'r*, 67 T.C.M. (CCH) 2992, 2993-3 (1994) (emphasis added) ("Petitioners, however, contend that for a transaction to be considered a sham under section 6621(c)(3)(v) [*sic*] the transaction must be without economic substance and be entered into without a profit objective, citing *Heasley v. Commissioner, supra.* While, as discussed *infra,*

If the McGanns really believe that the defendant's statement is a "false representation[]" for which "there is no excuse" (Pl. Response at 18), they should file judicial-misconduct complaints against the Fifth Circuit judges who decided *Weiner* because they made the same "false representation" in their opinion. Concerning the earlier TEFRA proceedings, they stated (389 F.3d at 154, emphasis added):

> Both [trial] courts denied the taxpayers' summary judgment motions on the § 6621(c) argument and set the issue for bench trials. *The Kraemers conceded the issue before trial*, but Weiner presented evidence on the merits and the court ultimately concluded that the interest was improper and ruled in Weiner's favor.

Such are the "false representations" with which the McGanns say the defendant set out to "sway the Court" and for which they can imagine "no excuse." The defendant agrees with the McGanns to this extent: It will not even attempt to excuse its statements. They require no excuse.

*D. The McGanns are responsible for their interest bill: they could have stopped the running of Code § 6621(c) interest at any time, but they preferred to retain their wrongful 1983 tax gain long after the Tax Court had decided the issues against them.*

In their opening brief, the McGanns suggest that the IRS abused Code § 6621(c) by assessing interest against them for the entire period during which they retained the benefit of the

---

we reject their contention that there was a profit motive, we do not read the Fifth Circuit Court of Appeals' opinion in *Heasley* nor its opinion in [citation omitted] to stand for this proposition. *When a transaction is the simple product of smoke and mirrors, it is a factual sham, regardless whether the taxpayer may have thought that a profit might have been made. . . .* This is all that section 6621(c)(3)(v) [*sic*] requires"), *aff'd and rev'd on other grounds*, 66 F.3d 729 (5th Cir. 1995). The Tax Court found that Drake Oil's transactions did not occur "in fact," *i.e.*, that they were a factual sham.

Whatever the Fifth Circuit may believe, however, the Federal Circuit has held that a sham transaction must be ignored even if there is no proof that the taxpayer's subjective motive was tax avoidance. *See Coltec*, 454 F.3d at 1355.

deductions claimed on their 1983 tax returns–April 15, 1984, through March 23, 2003. Their TEFRA petition sat before the Tax Court from July 2, 1987, through June 13, 2002, when they defaulted. In their words, "TEFRA partnership-level cases offer a devil's playground for the IRS to again abuse its ability to impose §6621(c)." Pl. Brief at 10. The defendant pointed out that many of the *Vulcan* petitioners settled their TEFRA cases, but the McGanns did not settle theirs. Consequently, they could not complain that interest ran while they continued their (by then) pointless litigation. *See* Def. Brief at 20-21 (citing *Vulcan Oil Technology Partners v. Comm'r*, 110 T.C. 153 (1998)).

In their response, the McGanns again accuse the defendant of bad faith. They state (Pl. Response at 20, emphasis added):

> The government asserts that the McGanns "have chosen" to delay the litigation in the *Vulcan Oil* case instead of settling. . . . This assertion is *disingenuous* because (i) the IRS never proposed a partnership item settlement to the McGanns [footnote omitted],[6] and (ii) the government knows full well that the case was dismissed for failure to prosecute because the partnership had no active TMP to keep the partners apprised of the proceedings.

The McGanns ignore the facts. The IRS did make settlement proposals to at least some of Drake Oil's 1983 partners as early as 1987–the year Drake Oil's tax-matters partner filed a TEFRA petition. *See Vulcan*, 110 T.C. at 158. The IRS made additional proposals to Drake Oil's

---

[6] In their footnote (number 22) the McGanns admit that they cannot prove the IRS never proposed a settlement to them. They do try to infer that the IRS made no proposals from the fact that "any mention of settlement activities is conspicuously absent from the Declaration of Marion S. Friedman," attached to the defendant's brief. That declaration, however, mainly concerns the IRS's motion to dismiss; it is not a complete history of the *Vulcan* litigation. It could not have discussed settlement activities without becoming unwieldy–as the Tax Court's opinion demonstrates. *See* 110 T.C. at 155-59 (discussing the *Vulcan* settlement activities).

partners (and to the partners of other "Denver" partnerships) in late 1993 and early 1994, though on terms that were less generous. *Ibid*.

Drake Oil's original tax-matters partner, American Energy Resources, Inc. (AER), remained active until August 9, 1993, long after some of Drake Oil's partners had accepted the 1987 settlement proposal. (*See* DPF 13.) There is no evidence that AER's successor became inactive before 2001, when the IRS attorney was not able to reach him. (*See* DPF 14.) At any rate, Drake Oil's attorney, Declan J. O'Donnell, was filing court papers on Drake Oil's behalf as late as September 16, 1998–long after the 1993 and 1994 proposals. *See* Stoddart Decl., Ex. 1 at 23, *infra*. The McGanns cannot argue that they had no one to keep them apprised of the IRS's settlement activities.

Furthermore, the McGanns could have stopped the running of Code § 6621(c) interest at any time even if the IRS had never considered settling the TEFRA cases. If they had deposited with the IRS the amount of their estimated tax liability, they could have had the benefit of their TEFRA litigation (if they had won) without risking a large bill for interest. As the Federal Circuit has explained (*VanCanagan v. United States*, 231 F.3d 1349, 1353 (Fed. Cir. 2000)(emphasis added)):

> The concept of a deposit of estimated taxes has become a settled part of tax jurisprudence. Indeed, the IRS itself has provided procedures and requirements for taxpayers wishing to make such deposits. The IRS merely requires that the taxpayer designate the remittance "in writing as a deposit in the nature of a cash bond." Rev. Proc. 84-58, 1984-2 C.B. 501. When a taxpayer makes a deposit, *the taxpayer can obtain a refund on request and avoids interest and penalties on any tax subsequently assessed*. *Id.*

The plain words of Code § 6621(c) impose the interest on the McGanns. They cannot object that the interest ran during their TEFRA suit (1987 through 2002) because they held the

key to "the devil's playground" in their own hands. The defendant will repeat what it said at page 21 of Def. Brief, because it remains true despite the McGanns' objections:

> [A]s Senator Pryor explained (135 Cong. Rec. S13893-7): "Penalties should not discourage compliance with the tax laws. If a penalty is the same if a taxpayer is a little bit late or a lot late, taxpayers will always choose to be a lot late." The McGanns have chosen to be a lot late. They took the benefit of a sham transaction on their 1983 tax return. They let their TEFRA case languish from July 2, 1987, until they defaulted on June 13, 2002. After the 1992 *Krause* opinion demonstrated that the Elektra/Hemisphere transactions were shams, other *Vulcan* petitioners settled with the IRS; but the McGanns did not. They restored their benefit from the sham in 2003. Now, after nearly twenty years' use of a wrongful tax gain, they argue that they should pay no penalty whatsoever.

Congress enacted the Code § 6621(c) penalty and expects it to be assessed when it applies. It applies to the McGanns.

CONCLUSION

For the reasons given in the defendant's original brief and in this reply brief, the defendant asks the Court to dismiss the McGanns' complaint with prejudice.

Respectfully submitted,

s/ Robert Stoddart
ROBERT STODDART
Justice Department (Tax)
P. O. Box 26; Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-6445
FAX: (202) 514-9440

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

s/ Steven I. Frahm
Of counsel

March 3, 2008

APPENDIX[7]

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1189 T
(Judge Charles F. Lettow)

---

THOMAS H. McGANN and EVELYN G. McGANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DECLARATION OF ROBERT STODDART

---

I, Robert Stoddart, an a trial attorney employed by the U.S. Department of Justice. I have been assigned to defend this case. I make this declaration of my personal knowledge.

The attached Exhibit 1 is a true copy of excerpts from the docket sheet of *Drake Oil Technology Partners v. Commissioner*, No. 98-9025 (10th Cir.). I downloaded the docket sheet from Westlaw, 2000 WL 390336, by entering the "history" section of the webpage (the blue "H" at the top left of the screen) and clicking on the entry for No. 98-9025 under "Dockets."

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 3, 2008.

s/ Robert Stoddart
ROBERT STODDART

---

[7] The reader will find the necessary statutes and other non-case authorities set out in Appendix A of Def. Brief.

**[Exhibit 1]**
**This docket is current through 12/31/2003.**

**Court:** US COURT OF APPEALS FOR THE TENTH CIRCUIT

**Case Title:** DRAKE OIL TECH, ET AL v. CIR

**Appeal From:** COMMISSIONER OF INTERNAL REVENUE

**Filed On:** 09/03/1998

**CASE INFORMATION**

**Case Number:** 98-9025

**Fee Status:** PAID

**Case Type(s):** TAX COURT (AGENCY)

PETITION FOR REVIEW

**Nature Of Suit:** OTHER

**Key Nature of Suit:** APPEALS (030)

OTHER CASES

**Current Case(s):**

| Relationship: | Lead Docket: | Member Docket: | Start Date: | End Date: |
|---|---|---|---|---|
| COMPANION | 99- 9023 | 99- 9024 | 08/25/1999 | -- |
| RELATED | 98- 9016 | 98- 9025 | 09/04/1998 | -- |

**NAMES**

**Petitioner - Appellant:** DRAKE OIL TECHNOLOGY PARTNERS

**Type:** Petitioner - Appellant

**Attorney(s):** DECLAN J. O'DONNELL
1390 ADAMS ST.
DENVER, CO 80206
303-780-0077

**Petitioner - Appellant:** FRANK A. ACIERNO
**Type:** Petitioner - Appellant

Attorney(s): DECLAN J. O'DONNELL

**Respondent - Appellee:** COMMISSIONER OF INTERNAL REVENUE

**Type:** Respondent - Appellee

**Attorney(s):** STUART L. BROWN, CHIEF COUNSEL

INTERNAL REVENUE SERVICE BRANCH 4, TAX LITIGATION DIVISION

[Portions omitted]

9/16/98 [1163716] NOTICE OF APPEARANCE FILED BY DECLAN J. O'DONNELL IN 98-9025 AS ATTORNEY FOR DRAKE OIL TECH IN 98-9025 . CERT. OF INTERESTED PARTIES (Y/N): Y (LWB) [98-9025]

. . . .