IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1189 T
(Judge Charles F. Lettow)

---

THOMAS H. McGANN and EVELYN G. McGANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S SUPPLEMENTAL BRIEF

---

On March 10, 2008, the Court ordered the parties to discuss the following questions: (1) whether Code § 6226(h) makes an FPAA "correct" when a court dismisses a TEFRA petition for failure to prosecute, but also modifies the FPAA in its dismissal order; and (2) whether this Court may consider materials in the Tax Court's file to determine the Tax Court's reasons for modifying the FPAA when it dismissed *Vulcan Oil Technology Partners v. Commissioner*, No. 21530-87 (T.C.) (dismissal order entered June 13, 2002). Drake Oil was a petitioner in *Vulcan*, and the McGanns were indirect partners in Drake Oil.

*1. Under Code § 6226(h), when a court dismisses a TEFRA petition, the court's dismissal order constitutes a determination that the FPAA is correct; but this order, like any order, may also make other determinations.*

As the defendant showed at page 9 of its reply brief, Code § 6226(h) contains two provisions. The statute states that in a TEFRA case: "[1] the decision of the court dismissing the action shall be considered as its decision that the [FPAA] is correct, *and* [2] an appropriate order

shall be entered in the records of the court." (Numbering and emphasis added.) The first clause effectively inserts into every dismissal order a statement that the FPAA is correct. The second clause permits a court to exercise its wide discretion under § 6226(f) (scope of TEFRA judicial review) and to add to the dismissal order other provisions that may be appropriate in the circumstances without costing the FPAA its correctness.[1] This Court should not construe § 6226(h) to make the FPAA incorrect if the TEFRA dismissal order modifies the tax treatment of partnership items from those in the FPAA. Such a construction would either make the statute's second clause superfluous or repeal the first clause when the "appropriate order" does anything more than dismiss the TEFRA petition.

Federal courts do not need an instruction from Congress to know that they should enter an order of dismissal when they decide to dismiss a case. If the second clause of Code § 6226(h) does nothing more than require a dismissal order after a decision to dismiss, Congress could have omitted it without changing the meaning of the statute. Therefore this cannot be what Congress intended, and this Court may not infer such an intention: courts may not construe any portion of a statute into insignificance. The Supreme Court has often insisted upon this principle–for example, in *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted): "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"

---

[1] The IRS may learn more about a transaction after issuing an FPAA–for example, by litigation in related matters (as in this case). Under the defendant's view of Code § 6226(h), the government's dismissal motion can propose appropriate adjustments in the taxpayer's favor without jeopardizing the FPAA that the IRS spent its resources to issue and to defend. If this Court construes the statute otherwise, however, the government might hesitate to propose such adjustments in the future.

By dismissing the TEFRA petition in *Vulcan*, the Tax Court effectively entered an order stating that the FPAA is correct; the court also adopted a schedule of adjustments that changed some of the numbers in the FPAA. Both of these decisions must be understood as valid if both clauses of Code § 6226(h) are to have meaning. Accordingly, the Tax Court's order means that the FPAA is correct and that adjustments should be made to Drake Oil's partnership items in the amounts set out in the schedule. This Court may not read either of these determinations as nullifying the other on the ground that they might be considered "inconsistent" in light of information outside the Tax Court's order. The Tax Court may or may not have considered that information, and this Court cannot know what the Tax Court thought about the information. The schedule of adjustments simply lists the changed numbers; it does not explain why they were changed. *See* Stip. Ex. 13 at 110-11.

*2. This Court may not change the effect that Code § 6226(h) gives the Tax Court's dismissal order by attempting to determine the Tax Court's reasons for modifying the FPAA.*

Nothing in the Tax Court's file undermines the FPAA, and nothing in its order is inconsistent with the FPAA's legal determinations. The defendant will briefly consider some of the information available to the Tax Court, but must begin with a fundamental observation: *This Court has no jurisdiction to consider that information.*

Only during the Tax Court proceedings could the partnership items of Drake Oil be determined–including Drake Oil's deductions, the sources of its income, and the sham status of certain partnership transactions. *See* Code § 6221 ("the tax treatment of any partnership item . . . shall be determined at the partnership level"); *see also Keener v. United States*, 76 Fed. Cl. 455, 468 (2007) (application of sham-transaction doctrine "presents a partnership item") (citations

omitted), *appeal pending*, No. 2008-5004 (Fed. Cir.). The Tax Court issued an order of dismissal in *Vulcan*, and Congress determined that the Drake Oil FPAA "is correct" under those circumstances. *See* § 6226(h). Because the Tax Court's order referred to no extrinsic document (*e.g.*, a settlement) that could have resolved the partnership-level issues, this Court cannot understand the resolution of those issues by consulting documents other than the FPAA and the Tax Court's order. There are no other dispositive documents in this case.

The McGanns, however, suggest that the Tax Court's modifications are inconsistent with the Drake Oil FPAA, and that the FPAA therefore cannot be considered correct, at least to the extent of the alleged inconsistency. *See* Transcript of Hearing (March 7, 2008) (hereinafter "Tr.") at 11; page 13, *infra.*[2] But this is an argument that they could have raised before the Tax Court. That court served a copy of the IRS's motion to dismiss on the McGanns at their home address. *Compare* Jt. Stip. ¶ 22 & Ex. 6 at 58 (Tax Court's show-cause order was sent to 512 Westwind Dr., Berwyn, PA) *with* Stip. Ex. 13 at 75 (McGanns' address is 512 Westwind Dr., Berwyn, PA). If the McGanns believed that the IRS's proposed adjustments were inconsistent with determinations in the FPAA (including the determination that Drake Oil's deductions arose from sham transactions), they could have asked the Tax Court to strike the inconsistent determinations. The Tax Court also served the dismissal order on the McGanns. (*See* Stip. Ex. 13 at 112.) If they found the order ambiguous, they could have asked the court to reconsider it or to clarify it. After all, they were parties to the case, and the Tax Court was uniquely qualified to explain its own order. If the Tax Court refused their request, they could have appealed. This

---

[2] All cited pages of the Transcript are attached to this brief, downloaded from a WordPerfect disk purchased from the reporter.

Court should not be asked to speculate six years after the fact about the Tax Court's reasons for modifying the treatment of partnership items in the FPAA.

Because the McGanns failed to raise these questions in the TEFRA proceeding when they had the opportunity, they have waived them; and this Court cannot consider them in a refund suit. *See Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 378 (1940) (*res judicata* doctrine bars party from raising in a later case any point it could have raised in earlier litigation). Furthermore, Code § 7422(h) provides: "No action may be brought for a refund attributable to partnership items" with certain exceptions not applicable here. The McGanns seek a refund of § 6621(c) interest, which is an "affected item" and is based in part upon a partnership-item determination. As this Court has noted (*Keener*, 76 Fed. Cl. at 462):

> [I]t would appear that section 7422(h) precludes the court from considering, in partner-level proceedings, not only partnership items standing alone, but also partnership items that impact affected items otherwise before the court, such partnership items being what the court has termed the "partnership prong" of the affected item. Construing the statute in this fashion has the added value of effectuating, rather than defeating, the twin purposes of section 7422(h)–to promote judicial economy and consistency of decision. . . . [I]t averts the welter of conflicting decisions that might result should each partner, in pursuing affected items, be allowed to litigate in an individual refund action issues common to the partnership as a whole partnership.

Accordingly, both *res judicata* and Code § 7422(h) bar this Court from answering any partnership-level question that the Tax Court either did answer or could have answered if the McGanns had taken the trouble to ask it. If the Court finds otherwise, it will be redetermining partnership items under the guise of interpreting the Tax Court's order, and it will defeat a basic purpose of TEFRA–to "avert[] the welter of conflicting decisions that might result should each

partner, in pursuing affected items, be allowed to litigate in an individual refund action issues common to the partnership as a whole partnership." *Keener*, 76 Fed. Cl. at 462.

Nevertheless, if the Court could consider information outside the Tax Court's order, the Court would find that the FPAA's legal determinations are correct. For example, during the oral argument on March 7, 2008, the McGanns' attorney noted that the IRS recognized Drake Oil's income when it moved to dismiss *Vulcan*. Tr. at 7; page 12, *infra*. If the IRS recognized Drake Oil's income, he suggested, then the FPAA wrongly determined that Drake Oil's transactions were shams because sham transactions are not recognized; therefore, the FPAA's sham determination cannot be "correct." This reasoning ignores both the FPAA's terms and the law.

The FPAA states (Stip. Ex. 4 at 29-30, emphasis added)–

> It is determined that the *deductions*, reported by Drake Oil Technology (A TEFRA Partnership) on its 1983 partnership income tax return . . . are disallowed for the following reasons:
>
> (a) It has not been established that the *underlying* events, transactions and expenditures occurred in fact or in substance . . . .

The sham transactions are the ones that underlie Drake Oil's *deductions*. The FPAA made no sham determination about the transactions that generated Drake Oil's income. *See ibid.* Drake Oil's income comprised both investment interest and amounts received from other partnerships; Drake Oil had no income from its own (sham) business activities. *See* Declaration of Marion S. Friedman (Friedman Decl.), Ex. 1, Def.'s Cross-Mot. for Summ. J. with Br. in Supp. Thereof (Def. Brief) at 89, 90, & 91. It is not inconsistent to deny deductions from a partnership's sham transactions while recognizing its genuine income.

The law reinforces this factual conclusion. Courts have often required taxpayers to recognize real income associated with sham transactions. *See, e.g., Becker v. Comm'r*, 868 F.2d 298, 299 (8th Cir. 1989) (denying deductions from sham mining investment, but requiring recognition of associated income); *see also, e.g., Richardson v. Comm'r*, 509 F.3d 736, 741-43 (6th Cir. 2007) (ignoring a sham trust, but taxing its genuine income to its owner).[3]

Also during the oral argument, the Court suggested that Drake Oil's license-fee expense might not be a sham for reasons culled from the IRS's motion to dismiss *Vulcan* (*see* Tr. at 13-14; pages 15-16, *infra*); the McGanns' attorney agreed with the suggestion (*id.* at 17-18; pages 17-18, *infra*). The Court noticed, for example, that the IRS's motion to dismiss calls the expense "excessive," which suggested to the Court that part of the expense might have been genuine. *See* Tr. at 38-39; pages 19-20, *infra*, & Stip. Ex. 13 at 107, n.1. But if none of the expense had been genuine, it would all have been excessive *a fortiori*. The Court also speculated that part of the license-fee expense might have been paid. *Id*. at 39; page 20, *infra*. But as a matter of fact, none of it was paid. Drake Oil's license-fee expense was a sham.

The Tax Court examined Drake Oil's transactions in *Acierno v. Commissioner*, 74 T.C.M. (CCH) 738 (1997), *aff'd mem*., 185 F.3d 861 (3d Cir. 1999). The court found that Drake Oil was supposed to pay its license fees with a combination of cash and the partnership's promissory notes, but "Drake's purported debt obligations to [the lessor] with regard to the . . .

---

[3] *Cf. Nault v. United States*, 2008 WL 400260, *3- *4 (1st Cir. Feb. 15, 2008) (In TEFRA settlement, IRS could make concessions to taxpayer apparently recognizing transactions' economic substance while still insisting on a provision that they lacked economic substance). Surely the IRS could make a concession to Drake Oil's partners and also have Code § 6226(h) preserve the FPAA's sham determination. A statute deserves no less deference than a settlement.

technology license fees *were never reduced to written promissory notes*." *Id*. at 742 (emphasis added). Furthermore, according to Exhibit O of the IRS's motion to dismiss, Drake paid no cash toward the license-fee expense. Drake simply accrued the $18,155,000 expense on its books; it neither paid the expense nor obliged itself to pay the expense. *See* Def. Brief at 92.

Even apart from the FPAA's determination (which Code § 6226(h) renders "correct"), all indications are that Drake Oil's license-fee expense lacked economic substance and was a sham. The defendant stresses, however, that those indications are not evidence properly before this Court; they are irrelevant to any question within its jurisdiction. In this case, the Tax Court's order and the FPAA are the only documents that can determine Drake Oil's partnership items. This Court may consider only partner-level facts; it may not search the Tax Court's file for evidence that the Drake Oil partnership paid its bills.

One final point–if this Court were to interpret the *Vulcan* dismissal order by assuming that the Tax Court accepted statements in the IRS's motion and other materials in its file, this Court would have no principled way to adopt some of the statements and to reject others. The IRS's motion asked the Tax Court to adopt a schedule of adjustments "based on applying I.R.C. § 183 in accordance with this Court's opinion in Krause v. Commissioner, 99 T.C. 132 (1992)." Stip. Ex. 13 at 96. In *Krause*, the Tax Court held: "Losses of the partnerships are disallowed under section 183 . . . ." 99 T.C. at 176. If the Tax Court adopted the IRS's adjustments in *Vulcan* "in accordance with [its] opinion in Krause," then the Tax Court disallowed Drake Oil's deductions under § 183 and thus established that the deductions were attributable to a tax-motivated transaction for purposes of § 6621(c). *See* Temp. Treas. Reg. § 301.6621-2T, A-4. It would follow that the McGanns' entire underpayment is attributable to tax-motivated

transactions–not just because Drake Oil's deductions arose from sham transactions, but also because the deductions were disallowed under § 183.

In its earlier opinion, this Court held that Code § 183 cannot apply to partnerships. *See McGann v. United States*, 76 Fed. Cl. 745, 756-57 (2007). If that decision is correct, the Tax Court's *Vulcan* decision was wrong–but courts sometimes make wrong decisions. Unless the aggrieved party files a timely appeal, however, a wrong decision becomes final and binding. A party may not attack the decision collaterally in later litigation, even if the first court lacked jurisdiction. *See, e.g., Chicot County Drainage Dist.*, 308 U.S. at 376-77. Therefore, if this Court does look to the IRS's motion to determine why the Tax Court adopted the IRS's revised schedule of adjustments, the Court will have to accept that the Tax Court denied Drake Oil's deductions under § 183, whether the denial was right or wrong.

First, however, the Court would have to revise its earlier view of the Tax Court's dismissal order, which was this: "A court's grant of a motion is not an adoption of every argument the movant made in support of the motion. . . . The Tax Court did not address any substantive issues of tax law in its decision." *McGann*, 76 Fed. Cl. at 758. The Court's earlier view accords better with its jurisdiction: This Court cannot use extrinsic materials to read into the *Vulcan* order the answer to any question that the McGanns could have asked the Tax Court, but failed to ask–including questions about the sham nature of the transactions behind Drake Oil's deductions and the reasoning behind the Tax Court's decision.

CONCLUSION

For the reasons give in all of the defendant's briefs, the defendant asks the Court to dismiss the McGanns' complaint with prejudice.

Respectfully submitted,

s/Robert Stoddart
ROBERT STODDART
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-6445
FAX: (202) 514-9440
Robert.C.Stoddart@usdoj.gov

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

s/ Steven I. Frahm

March 20, 2008

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THOMAS & EVELYN MCGANN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Docket No.: 05-1189T |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

Chambers, Suite 605
National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Friday,
March 7, 2008

The parties met, pursuant to notice of the Court, at 2:00 p.m.

BEFORE: HONORABLE CHARLES F. LETTOW
Judge

APPEARANCES: (Via telephone)

For the Plaintiffs:

THOMAS REDDING, Esquire
SALLIE W. GLADNEY, Esquire
TERESA J. WOMACK, Esquire
Redding & Associates
P.O. Box 924328
Houston, Texas 77292
(713) 965-9244

For the Defendant:

ROBERT STODDART, Esquire
BART JEFFRESS, Esquire
U.S. Department of Justice
Tax Division
P.O. Box 26, Ben Franklin Station
Washington, D.C. 20044
(202) 307-6445

[7]

FPAA.

Also inconsistent --

THE COURT: Now --

MR. REDDING: I'm sorry, Your Honor, if I could finish that?

THE COURT: Yes, please. I'm sorry. Go ahead.

MR. REDDING: Also inconsistent with the concept of sham is the fact that the Court recognized and left in positive income of $3,189,395, leaving a net positive income to the partnership of $1,547,811. Obviously, it gave economic substance recognition to something, and that number is even inconsistent with Ms. Friedman's letter, I think, back in 2002, where it indicated that it was her intent to not leave the partners in a position of having to recognize positive income.

So the bottom line is I think it is impossible from either the decision or the FPAA to make a determination as to specifically what the adjustments were attributable to, what the ground was, taking us back to basically the same position that the settled cases in Weiner read.

THE COURT: All right. But let's just go back to page 111.

obligations."

MR. REDDING: I understand, Your Honor.

THE COURT: And then it says, "Not legitimate obligation to the partnership," and then the associated debt obligations did not constitute genuine debt obligations and are to be disregarded.

But as you say, other aspects were given treatment, and taken into account as partnership items passed through to the partners. Those two were not.

MR. REDDING: I agree with that, Your Honor.

THE COURT: All right. Where does that get us? Let's go back to our original question. How does 6226(h) deal with this situation?

MR. REDDING: My answer to that candidly is I'm not sure, but what I believe it does is that it means that you must take that Tax Court decision as sustaining the FPAA perhaps to the extent not inconsistent with the decision that was entered and the numbers that were entered in that decision.

THE COURT: Because they were different numbers than appeared in the FPAA. I think everybody agrees with that, I hope.

MR. REDDING: That is correct, Your Honor. And if that is the case, and if you are looking to that footnote, you know, you would have to go back to

Krouse and recognize the fact that the deductions were disallowed based on lack of profit motive under -- was it 162, and I think 174, and the issue that 183 by law does not apply at the partnership level, and therefore they still cannot be attributable to a tax-motivated transaction.

THE COURT: I'm just shaking my head.

MR. REDDING: Okay.

THE COURT: Trying to figure this out.

MR. REDDING: I think the overall analysis that the Fifth Circuit came to in Weiner, that when you look at the FPAA and the FPAA on its own terms do not sustain isn't sufficient to make it clear that it's attributable to a tax-motivated transaction, and the event bringing the case to a close, the settlement or in this case the decision, also do not make it clear and do not include the finding that it was attributable to a tax-motivated transaction, then you simply can't reach the required "attributable to" finding to support 6621(c).

THE COURT: Well, let's take another step back. Let's say for purposes of argument that the Court cannot look back to the FPAA because, obviously, adjustments were made by the Court when it entered its decision. So you can't just say the FPAA is correct.

You've got to look at what happened to produce the different results in the Court, and the difference here appears to be that set out in Footnote 1 of the government's motion at page 107, and the question is whether those explanations substituted for the FPAA produce a sham finding as a matter of law.

MR. REDDING: I still don't believe they do, Your Honor. If you narrow the question down to that, no deductions are allowable under Section 183, which is not applicable at the partnership level.

THE COURT: Well, let's just take it a step at a time.

MR. REDDING: Okay.

THE COURT: The license fees were excessive.

MR. REDDING: That's not a partnership item.

THE COURT: Well, that's --

MR. REDDING: I'm sorry. That is not a TMT by definition.

THE COURT: Yes, that's not a sham at all.

MR. REDDING: Right.

THE COURT: It's kind of a judgment about what the license fees realistically should have been.

MR. REDDING: And it's a recognition that the fees were paid.

THE COURT: Well, but they did not reflect

arms-length obligations. That also is not a sham to the Court's mind, not a sham determination. Would you agree with that, or is that wrong?

MR. REDDING: I agree with that, Your Honor.

THE COURT: Now we're going to the next step, those license fee obligations are not to be recognized as legitimate obligations of the partnership. It seems to the Court that that was based on the fact that they were excessive and not derived from an arms-length transaction.

MR. REDDING: I would agree with that analysis, Your Honor.

THE COURT: Then we go to the debt obligations and that they did not constitute genuine debt obligations and are to be disregarded. Now, if there is a sham transaction claim, how can you disregard part of what's going on and not the rest? That's the Court's question.

MR. REDDING: I don't think you can, Your Honor. I think when you look at that paragraph, it really all comes back down to a profit motive determination, or determinations under general business term, but not specifically that the transactions were shams.

THE COURT: All right.

MR. REDDING: In walking through that paragraph, there seems to be two different analyses: one, that footnote, one with regard to the license fees and one with regard to the debt.

THE COURT: Right.

MR. REDDING: I guess, to recap what I was trying to say is the arguments with regard to the license fees, I think, are in no way sustainable as a determination of attributable to something that was a tax-motivated transaction.

I can't make that statement as intellectually honestly definitive with regard to the debt obligations, but I don't read that as being conclusively a determination that it was a sham.

THE COURT: Well, all right. That's my question. What does the Court do in those circumstances where you just don't take the FPAA, something happened in the Tax Court to produce, and we have documentary evidence as to what happened, to produce a different result in the Tax Court, and let's just also take the fact that the interest is ambiguous, then what implications does that have for this proceeding where we have this enhanced interest because of tax-motivated transactions?

MR. REDDING: Well, my answer to that is

two-part. With regard to any portion of liability that is attributable to, because the enhanced interest applies only to the portion of the deficiency that is attributable to a TMT, I think there is nothing to sustain that argument with regard to the adjustments and the portion of the liability resulting from the adjustments to the license fee.

I would argue that it is a somewhat different argument with regard to the smaller adjustment on interest expense, but then come to the conclusion that it is still ambiguous, and where does ambiguous, and there is not a clear determination that it's based on a tax-motivated transaction, it does not sustain the imposition of Section 6621(c).

That brings us fully around, I think, to the analysis in Weiner and the proposition that when you apply the formula and when you look at a settlement that does not make clear that it's attributable to the TMT, then penalty interest cannot be imposed because you can't meet that "attributable to" requirement, and I think that that water argument may have to be applied to that last line with regard to the -- you know, taking it to the interest expense.

But the much cleaner argument clearly applies, and the much simpler argument, I won't say

They thought that was not a tax-motivated transaction back when they filed their first brief, and thought that FPAA had 23 separate reasons for denying the deduction.

Anyway, that's kind of long-winded and I would like to boil it down to the formula doesn't help them period, that's it.

THE COURT: All right. Let's take that argument regarding the formula and let's just put it to one side but keep it in mind, and now let's go to the footnote on page 107.

MR. STODDART: Of the stipulation.

THE COURT: Yes, the joint stipulation.

MR. STODDART: Okay.

THE COURT: And the big item of disallowance here for Drake was license fee.

MR. STODDART: Yes.

THE COURT: And the footnote says that's not allowed or the deduction for the license fee is not allowable because the license fees paid by the partnerships were excessive and did not reflect arms-length obligations and are not to be recognized as legitimate obligations of the partnerships.

To the Court, that is different from a sham transaction finding.

MR. STODDART: Well, Your Honor, I am not absolutely sure of that. It seems to me like it's another way of saying that these non-arms-length obligations lack economic substance.

THE COURT: Well.

MR. STODDART: It could be, well, it was set up so that they would never be paid.

THE COURT: Well, it might be that a part of it was.

MR. STODDART: It might be.

THE COURT: That is, that the excessive part.

MR. STODDART: Maybe.

THE COURT: But when you use a word like "excessive", it means just too much basically, and that has a negative implication, that is, that something might have been okay, but what they did was too much.

MR. STODDART: Well, we would have to look at the Krouse opinion and see what the Krouse Court held, and then we would have to hold that the Krouse Court's opinion and its holding was somehow adopted into the IRS's motion, and that the IRS's motion was adopted by the Tax Court as the reason for dismissing the Vulcan petition.