# In the United States Court of Federal Claims

No. 05-1189T

(Filed: April 25, 2008)

* * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **THOMAS H. McGANN, and EVELYN G. McGANN,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant. | Tax refund claim related to enhanced interest assessed under former I.R.C. § 6621(c) previously applicable to "tax motivated transactions" |

* * * * * * * * * * * * * * * * * * * * * * * * * *

Thomas E. Redding, Redding & Associates, P.C., Houston, TX for plaintiffs. With him on the briefs were Teresa J. Womack and Sallie W. Gladney, Redding & Associates, P.C., Houston, TX.

Robert C. Stoddart, Trial Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Nathan J. Hochman, Assistant Attorney General, David Gustafson, Chief, and Steven I. Frahm, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

The plaintiffs in this case, Thomas and Evelyn McGann, seek a refund of enhanced interest they paid under former 26 U.S.C. [I.R.C.] § 6621(c), a repealed provision that was applicable to "tax motivated transactions" ("TMTs"). The interest was assessed by the Internal Revenue Service ("IRS," "the Service," or "the government") after the conclusion of proceedings before the United States Tax Court involving a partnership in which Mr. McGann was an indirect partner. The interest rate applied was 120 percent of the regular underpayment rate as provided by former I.R.C. § 6621(c), rather than the interest rate typically pertinent to an underpayment of

tax in accord with §§ 6601(a) and 6621(a)(2).[1] The court previously denied a motion by the government to dismiss the McGanns' suit on grounds that their administrative claim for a refund had been filed after the short limitations period applicable to computational adjustments. *McGann v. United States*, 76 Fed. Cl. 745 (2007) (ruling that I.R.C. § 6230(c)(2)(A), prescribing a six-month limitations period for seeking a refund of taxes paid after a computational adjustment had been made by the Service, did not apply to the McGanns). The parties have now filed cross-motions for summary judgment coupled with extensive stipulations of fact. In essence, the court is conducting a trial on stipulated facts in a case that has notable parallels to prior precedents in the courts of appeals and the Tax Court.

**The Tax Equity and Fiscal Responsibility Act in a Nutshell**

This case turns on the effect at the partner level of partnership-level judicial proceedings that were conducted at the Tax Court. The discussion which follows thus depends upon the procedures for resolving the tax returns of partnerships instituted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324, 648-671 ("TEFRA") (codified in scattered sections of the I.R.C., including especially §§ 6621-6234). *See generally Prochorenko v. United States*, 243 F.3d 1359, 1363 (Fed. Cir. 2001); *Keener v. United States*, 76 Fed. Cl. 455, 467-70 (2007) (describing TEFRA procedures). In very broad terms, under TEFRA, which applies for tax years beginning after September 3, 1982, *see* I.R.C. § 6621 note, so-called partnership items are determined in partnership-level proceedings, *see* I.R.C. § 6621, and nonpartnership items are addressed at partner-level proceedings. *See AD Global Fund, LLC v. United States*, 481 F.3d 1351, 1352 (Fed. Cir. 2007); *Crnkovich v. United States*, 202 F.3d 1325, 1328-29 (Fed. Cir. 2000); *see also Bartimmo v. United States*, 525 F. Supp. 2d 879, 884-86 (S.D. Tex. 2007), *appeal dismissed*, No. 08-20060 (5th Cir. Mar. 12, 2008).

Once a tax return for a partnership is filed, if the IRS concludes that partnership items should be adjusted, it notifies the individual partners through a Notice of Final Partnership Administrative Adjustments ("FPAAs"), and the designated "tax matters partner," or, absent action by that person or entity, any "notice partner,"[2] then has the opportunity to challenge those adjustments in the Tax Court, this court, or a federal district court. I.R.C. § 6226(a)(1)-(3). Upon conclusion of a partnership proceeding in one of those judicial forums, the IRS has one year to assess additional tax liability against individual partners, I.R.C. § 6229(d)(2), and the partner may contest any such tax liability by paying the amount said to be due and filing an

[1]Former Section 6621(c) imposed the enhanced-interest rate on "any substantial underpayment attributable to tax motivated transactions." I.R.C. § 6621(c)(1) (1988). A "substantial underpayment" was any underpayment exceeding $1,000 per tax year. *Id.* § 6621(c)(2) (1988).

[2]The terms of the obligation to give notice to partners of proceedings are specified in I.R.C. § 6223(a). A notice partner is entitled to receive notification from the government of adjustments to the pertinent tax returns and consequent filings. *See* I.R.C. § 6223(a)(1)-(2).

administrative claim for a refund as required by I.R.C. § 7422(a). *See United States v. Clintwood Elkhorn Mining Co.*, __ U.S. __, 2008 WL 1721530, at *2-3 (2008). If the partner receives a rejection of, or no response to, the administrative claim, the partner may then file a refund action in this court or a federal district court. *Id.*, 2008 WL 1721530, at *2. In such a judicial action by an individual partner, the prior determinations respecting partnership items are conclusive. *See* I.R.C. § 7422(h); *Weiner v. United States*, 389 F.3d 152, 158-59 (5th Cir. 2004).

Hybrids termed "affected items" contain both partnership-level and partner-level components. Two types of affected items exist: so-called computational adjustments that only record a change in a partner's tax liability, and "substantive affected item[s that are] dependent on factual determinations to be made at the individual partner level." *Bartimmo*, 525 F. Supp. 2d at 884 (citing *Field v. United States*, 328 F.3d 58, 60 n.3 (2d Cir. 2003)); *see also Ertz v. Commissioner*, 93 T.C.M. (CCH) 696, 2007 WL 174133, at *14 (2007) ("[Affected items] may require findings of fact peculiar to a particular partner and as such cannot be determined in a partnership-level proceeding.").[3] The court previously determined that the instant case involved a substantive affected item, not a computational adjustment. *See McGann*, 76 Fed. Cl. at 752-58.

**FACTS**[4]

During tax year 1983, Mr. McGann was a general partner in McWal Company ("McWal Co."), also known as the George Walueff & Thomas McGann Partnership ("Walueff & McGann"), which in turn was a limited partner in Drake Oil Technology Partners ("Drake Oil"). Joint Stipulations ("Stip.") ¶¶ 3, 5. Drake Oil was one of seven Denver-based limited partnerships, known as the Elektra partnerships, formed with the general objective of investing in enhanced technology for the recovery of oil and natural gas. *Id.* ¶¶ 2, 3; *see also Vulcan Oil*

---

[3]In the partnership-level proceeding, a court may make determinations of partnership items that could bear upon a subsequent determination in a partner-level proceeding. *See Keener*, 76 Fed. Cl. at 469. Where a TMT is involved, as the Tax Court explained in *Ertz*,

> [t]he partnership item component is the character of the partnership's transactions; *i.e.*, whether the transactions were tax motivated. *See* [*River City Ranches #1 Ltd. v. Commissioner*, 401 F.3d 1136,] 1143-1144 [(9th Cir. 2005)]. The affected item components are what amount of the partner's underpayment of tax is attributable to the partnership's tax-motivated transactions and whether that underpayment is substantial.

2007 WL at 174133, at *15.

[4]The facts recited are taken from the parties' stipulations, except where otherwise noted. The parties appended thirteen exhibits to their joint stipulations, which exhibits were sequentially paginated. A citation to the exhibits will be made to "Stip. at __". Citations to the stipulations themselves will be made to "Stip. ¶ __".

*Tech. Partners v. Commissioner*, 110 T.C. 153, 154, 164 n.1 (1998), *aff'd sub nom. Drake Oil Tech. Partners v. Commissioner*, 211 F.3d 1277 (10th Cir. 2000) (Table, text in Westlaw).[5]

Drake Oil reported an ordinary loss of $19,698,934, including $23,198,105 of ordinary deductions, on its 1983 Form 1065 (Return of Partnership Income). *See* Stip. at 1 (Schedule K-1 for tax year 1983 issued by Drake Oil to McWal Co.); *see also McGann*, 76 Fed. Cl. at 747. On their timely-filed, joint individual 1983 federal income tax return, Mr. and Mrs. McGann recognized the Drake Oil-related gains and losses allocated to Mr. McGann on his 1983 Schedule K-1 from McWal Co., thereby reducing their taxes for 1983. Stip. ¶ 6. Mr. and Mrs. McGann reported an ordinary loss of $14,696, Mr. McGann's distributive share of the loss from Drake Oil as "passed through" McWal Co. to him. Stip. ¶ 6 and at 18 (Mr. and Mrs. McGann's 1983 tax return on Form 1040); *see also McGann*, 76 Fed. Cl. at 747.

After conducting an examination of Drake Oil for tax year 1983, the IRS ultimately disallowed all the deductions Drake Oil reported on its return. Stip. ¶ 11 and at 23-28 (Notice of Final Partnership Administrative Adjustment from IRS to Drake Oil (Apr. 6, 1987)), 33 (FPAA, Schedule of Deductions). The FPAA listed 23 reasons for the disallowance, Stip. at 29-32 (FPAA, Explanation of Adjustments), including that "[i]t has not been established that the underlying events, transactions, and expenditures occurred in fact or in substance," *id*. at 29 (item 1.(a)), and that "[i]t has not been established that the claimed deductions originated in a trade or business or in a transaction entered into for profit." *Id*. (item 1.(b)). These reasons would support a determination that either Drake Oil's transactions constituted a sham or reflected a tax-motivated transaction. However, other reasons set out in the FPAA would not give rise to a finding of a tax-motivated transaction, *viz*., that the claimed deductions "[w]ere not capital in nature" and that the "license fees claimed by the partnership qualify as research and experimental expenditures under Internal Revenue Code Section 174." Stip. at 29-30 (Explanation of Adjustments).

On July 2, 1987, an authorized representative of Drake Oil's tax matters partner filed a petition in the United States Tax Court, seeking review of the IRS's determinations as set forth in the FPAA. Stip. ¶ 12 and at 34-55 (Docket sheet for *Vulcan Oil Tech. Partners v. Commissioner*, No. 21530-87). In December 2001, the IRS filed a motion to dismiss for lack of prosecution on the grounds that Drake Oil's tax matters partner "had failed to perform the duties and responsibilities required . . . and such failure has precluded the . . . prosecution . . . of this case." Stip. ¶ 20 and at 94 (*Vulcan Oil* Dismissal Mot.). In its motion, the IRS put forward "proposed adjustments to partnership items in this case . . . computed based on I.R.C. § 183 in

---

[5]The seven partnerships were Vulcan Oil Technology Partners, Vanguard Oil Technology Partners, Drake Oil Technology Partners, Dillon Oil Technology Partners, Derringer Oil Technology Partners 1981, Derringer Oil Technology Partners 1982, and Crowne Oil Technology Partners. Stip. at 94-109 (Motion to Dismiss for Lack of Prosecution, *Vulcan Oil Tech. Partners v. Commissioner*, No. 21530-87 (Tax Court, filed Dec. 20, 2001)) ("*Vulcan Oil* Dismissal Mot.").

accordance with the opinion in *Krause*." Stip. ¶ 20 and at 94 (Vulcan Oil Dismissal Mot.). The citation to "*Krause*" was to *Krause v. Commissioner*, 99 T.C. 132 (1992), *aff'd sub nom. Hildebrand v. Commissioner*, 28 F.3d 1024 (10th Cir. 1994), which had been a lead case in the Tax Court addressing issues arising under I.R.C. § 183. *See McGann*, 76 Fed. Cl. at 747-48.[6]

On June 13, 2002, the Tax Court granted the IRS's motion to dismiss for lack of prosecution and dismissed the case. Stip. ¶ 25 and at 110-12 (Order of Dismissal and Decision, *Vulcan Oil*, No. 21530-87 (T.C. June 13, 2002) ("*Vulcan Oil* Dismissal Order")). The Tax Court's dismissal of the petition did not wholly ratify the FPAA. Rather, as part of its decision, the Tax Court ordered adjustments to Drake Oil's 1983 return that were identical to those requested by the IRS in its motion to dismiss. *Compare* Stip. at 111-12 (*Vulcan Oil* Dismissal Order), with Stip. at 94-109 (*Vulcan Oil* Dismissal Mot.). The adjustments disallowed deductions in the amount of $3,401,521 for claimed interest expense and $18,155,000 for a license fee, but restored deductions originally claimed by Drake Oil in 1983 of $156,350 for guaranteed payments, $8,583 for depreciation, and $1,476,651 for miscellaneous items. *See* Stip. at 111 (*Vulcan Oil* Dismissal Order).

On February 28, 2003, the IRS mailed the McGanns a letter transmitting Form 4549A, Income Tax Examination Changes, and Form 886-A, Explanation of Items. Stip. ¶ 31 and at 63-68 (Forms 4549A and 886-A). These materials notified the McGanns that the IRS was making adjustments to their 1983 income tax return "based on the Tax Court decision, Docket #21530-87, from the partnership, George C Walueff," *id*. at 66 (Form 4549A), modifying the tax return to show an increase of $25,888 in ordinary income with a resulting increase in tax liability of $8,620. *Id*. at 65 (Form 4549A). Form 4549A listed the increase in tax as "attributable [to] Tax Motivated Transactions [for which] TMT interest will accrue and be assessed at 120% of underpayment rate in accordance with IRC [§] 6621(c)." *Id*. at 66. However, it also showed "0.00" as the amount of "TMT Interest – computed 03/22/2003 on TMT underpayment." *Id*. On March 11, 2003, the IRS received a payment of $8,620 from Mr. and Mrs. McGann. Stip. ¶ 35 and at 69-73 (Form 4340 (Certificate of Assessments, Payments, and Other Specified Matters)).

---

[6] *Krause* addressed the claimed losses and deductions of two so-called "Wichita Partnerships" which had engaged in transactions somewhat similar to those of Drake Oil. I.R.C. § 183 pertains to "an activity engaged in by an individual or an S corporation," and it provides that "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in th[e] section." I.R.C. § 183(a).

Although partnerships were involved in *Krause*, so were the tax returns of an individual partner, Gary E. Krause. Some of the returns at issue in *Krause* antedated the enactment and applicability of TEFRA, *see McGann*, 76 Fed. Cl. at 752, and, prior to TEFRA, both partnership-level and partner-level items were subject to proceedings at the partner level. *See Keener*, 76 Fed. Cl. at 457-58.

On March 24, 2003, the IRS mailed Mr. and Mrs. McGann each a notice requesting payment in the total amount of $66,095.04, said to be comprised of $8,620.00 related to the "increase in tax because of examination action" and $57,475.04 in "interest charged." Stip. ¶ 32 and at 70 (Form 4340); *see also McGann*, 76 Fed. Cl. at 748. Each notice bore a partially handwritten notation that "[c]redit of $8,620.00 is being applied to your account. Your new balance due is $57,475.04." *McGann*, 76 Fed. Cl. at 748. The notice stated that "the penalty and interest charges on your account are explained on the following pages." *Id*. It referred to the $57,475.04 as "interest – IRC Section 6601," and stated that "the interest rates on underpayment and overpayment of taxes are as follows," listing the standard interest rates for underpayments applicable under I.R.C. §§ 6621(a)(1) and 6621(a)(2) for the time periods from October 1, 1988, through January 1, 2003, but not referring to the enhanced interest specified in former I.R.C. § 6621(c). *Id*.

As the court noted in its prior decision in this case, arithmetically, the stated interest amount of $57,475.04 could not have been derived from the interest rate or interest period stated in the notice. Instead, the IRS appeared actually to have calculated the interest due on the underpayment by (1) starting four and one-half years prior to the stated date, *i.e.*, on April 16, 1984, not October 1, 1988, (2) ending on March 24, 2003, and (3) using the higher interest rates established by former Section 6621(c), not the standard underpayment rates established by § 6621(a)(2). *McGann*, 76 Fed. Cl. at 749.

By April 21, 2003, Mr. and Mrs. McGann had paid the full amount of $57,475.04 sought by the IRS. Stip. ¶ 35. Slightly less than two years later, on April 15, 2005, they filed a claim for refund with the IRS, seeking $18,309.66, the difference between the interest attributable to the enhanced rate of interest under former Section 6621(c) and the standard interest rate for underpayments under I.R.C. § 6621(a)(2). Stip. ¶ 36. Failing to receive a response to this claim, Mr. and Mrs. McGann filed their complaint in this court on November 10, 2005. Stip. ¶ 37; Compl. ¶ 11; *see* I.R.C. § 6532(a)(1) (taxpayer required to wait six months before filing tax refund suit unless claim disallowed earlier); *Hamzik v. United States*, 64 Fed. Cl. 766, 768 (2005).

## PROCEDURAL HISTORY

In the earlier opinion and order, the court denied the government's motion to dismiss for lack of subject matter jurisdiction. *McGann*, 76 Fed. Cl. 745. The government had argued that Mr. and Mrs. McGann had filed their judicial action too late because it related to computational adjustments to individual tax returns due to partnership items, such that the six-month time limitation for seeking refunds provided in I.R.C. § 6230(c)(2)(A) applied and barred relief. *Id*. at 750-51. Mr. and Mrs. McGann urged the court instead to apply I.R.C. § 6511(a) which "establishes the quotidian statute of limitations for refund claims, and typically governs unless a shorter statute of limitations applies." *Id*. at 751. Section 6511(a) provides that refund claims must be filed within the later of two years from the date the liability was paid or three years from the date the return was filed. The court concluded that the predicates necessary for applying the

shorter statute of limitations in Section 6230(c)(2)(A) were not satisfied. Although the assessment of the enhanced interest at issue fell within the statutory definition of the term "tax," *id*. at 752, the assessment of enhanced interest did not reflect a partnership item that was addressed conclusively in a partnership-level determination by the Tax Court. A finding of a tax-motivated-transaction was not a partnership item that could, "without more, engender enhanced interest for the affected partner under Section 6621(c)." *Id*. at 757. Thus, it was a substantive affected item and could not have been the subject of a computational adjustment. *Id*. at 757-58. Moreover, the Tax Court in *Vulcan Oil* never specifically addressed whether the enhanced interest rate specified by former Section 6621(c) should be applied to the resulting underpayments of tax by individual partners; it was not enough that the government's motion to the Tax Court argued that it should be. *Id*. at 758 ("A court's grant of a motion is not an adoption of every argument the movant made in support of the motion."). In addition, as an alternative and independent ground for denying the government's motion to dismiss, the defective notice provided by the IRS to Mr. and Mrs. McGann was insufficient to trigger the six-month limitation period of I.R.C. § 6230(c)(2)(A) for filing refund claims. *Id*. at 761.

## STANDARD FOR DECISION

Summary judgment is appropriate when the pleadings and the parties' submissions "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The moving party carries the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). An issue is "genuine" only if it "may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. In ruling on a motion for summary judgment, a court must resolve all issues in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Corp.*, 475 U.S. 574, 587-88 (1986). If no rational trier of fact could find for the non-moving party, summary judgment may be appropriate. *Id*. at 587. When considering cross-motions for summary judgment, courts evaluate each motion on its own merits, and denial of both motions is appropriate if genuine disputes over material facts exist. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987).

Here, in ruling on the parties' cross-motions for summary judgment, the court has the benefit of the parties' extensive stipulations of fact.

## ANALYSIS

### *A. Provisions of Former § 6621(c) and Implementing Regulation*

Former Section 6621(c) has its roots in the Tax Reform Act of 1984, Pub. L. No. 98-369, 98 Stat. 494. As part of that Act, on July 18, 1984, Congress amended the Internal Revenue Code to provide that interest owed to the government accruing after December 31, 1984, relating

to "any substantial underpayment attributable to tax motivated transactions" would be at a higher interest rate. *See* Pub. L. No. 98-369*,* § 144, 98 Stat. at 682-84 (initially codified at I.R.C. § 6621(d), later redesignated as § 6621(c) by the Tax Reform Act of 1986, Pub. L. No. 99-514, § 1511(c)(1)(A), 100 Stat. 2085, 2744, and then subsequently repealed by the Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 7721(b), 103 Stat. 2106, 2395-98). The 1984 Act identified certain "tax motived transactions" and authorized the Treasury Secretary to identify additional "tax motivated transactions" by regulation. *See* Pub. L. No. 98-369, § 144(a), 98 Stat. at 683. The provision for enhanced interest was both prospective and retroactive in nature: the higher rate was applicable to interest accruing after December 31, 1984, attributable to an underpayment of tax due because of a "tax motivated transaction" whether or not the "tax motivated transaction" occurred before or after enactment. *See generally Demos v. Commissioner*, 68 T.C.M. (CCH) 209 (1994); *see also Kennedy v. Commissioner*, 876 F.2d 1251, 1256 (6th Cir. 1989); *DeMartino v. Commissioner*, 862 F.2d 400, 408-09 (2d Cir. 1988).

On December 19, 1989, Congress passed the Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, 103 Stat. 2106, Section 7721(b) of which repealed I.R.C. § 6621(c). *See* 103 Stat. at 2399. However, this repeal only applied to "returns the due date for which (determined without regard to extensions) is after December 31, 1989." Pub. L. No. 101-239, § 7721(c), 103 Stat. at 2400; *see also Weiner*, 389 F.3d at 159 n.7. As a consequence, notwithstanding the repeal, Congress provided that interest at the higher "tax motivated transaction" rate would continue to accrue after 1989 if the underlying "tax motivated transaction" occurred in a tax year for which the initial due date for the tax return was on or before December 31, 1989.

Interest at the higher rate under former Section 6621(c) was reserved for any "substantial underpayment attributable to tax motivated transactions." I.R.C. § 6621(c)(1) (1988). Classification of an activity as a tax-motivated transaction is not an issue unique to partners, partnerships, or TEFRA. *See*, *e.g.*, *Leslie v. Commissioner*, 146 F.3d 643, 645, 648 (9th Cir. 1998) (gold futures straddle transactions by individual taxpayers). Former Section 6621(c) defined "the term 'tax motivated transaction'" as meaning:

> (i) any valuation overstatement (within the meaning of section 6659(c)),
> (ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),
> (iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092),
> (iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and
> (v) any sham or fraudulent transaction.

I.R.C. § 6621(c)(3)(A)(i)-(v) (1988). The former section also gave the Secretary authority to specify other types of transactions that would fit within this rubric:

> The Secretary may by regulations specify other types of transactions which will be treated as tax motivated for purposes of this subsection and may by regulations provide that specified transactions being treated as tax motivated will no longer be so treated. In prescribing regulations under the preceding sentence, the Secretary shall take into account –
> (i) the ratio of tax benefits to cash invested,
> (ii) the methods of promoting the use of this type of transaction, and
> (iii) other relevant considerations.

I.R.C. § 6621(c)(3)(B) (1988). Statutorily, the effective date for types of transactions added by regulation had to be after the date the pertinent regulation was promulgated: "Any regulations prescribed under subparagraph (A)(iv) or (B) shall apply only to interest accruing after a date (specified in such regulations) which is after the date on which such regulations are prescribed." I.R.C. § 6621(c)(3)(C) (1988).

On December 26, 1984, the Secretary issued a temporary regulation which specified that "[a]ny deduction disallowed for any period under [S]ection 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit" was "considered to be attributable to tax motivated transactions." Temp. Treas. Reg. § 301.6621-2T, A-4 (added by *Increased Rate of Interest on Substantial Underpayments Attributable to Certain Tax Motivated Transactions*, 49 Fed. Reg. 50,390, 50,392 (Dec. 28, 1984)).

The Treasury Regulations thus introduced Section 183 of the Code into the TMT calculus, but specifically by reference to "an activity engaged in by an individual or an S corporation," not by a partnership. Temp. Treas. Reg. § 301.6621-2T, A-4. Section 183 explicitly sets out that same limitation. It covers "an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit." I.R.C. § 183(a). Section 183 was added to the Internal Revenue Code in 1969, *see* Tax Reform Act of 1969, Pub. L. No. 91-172, Tit. II, § 213(a), 83 Stat. 487, 571, and has been amended on a number of occasions thereafter, but never to expand coverage beyond applicability only to individuals and S corporations. Section 183 has, however, been construed to work in concert with I.R.C. § 162, which bears on allowable deductions for trade or business expenses, and I.R.C. § 212, which covers allowable deductions for expenses for production of income. *See e.g.*, *Carter v. Commissioner*, 645 F.2d 784 (9th Cir. 1981).

### B. *Effect of Tax Court's Ruling in* Vulcan Oil

The issue of whether to apply the enhanced interest rate of former Section 6621(c) in this case is complicated by the nature of the proceedings in *Vulcan Oil* in the Tax Court, which dismissed the partners' case for failure to prosecute, but in so doing, adopted the government's proffered concessions to the FPAA that had originally been issued for Drake Oil. As described above, when the Tax Court dismissed the *Vulcan Oil* case on June 13, 2002, it ordered adjustments to Drake Oil's 1983 return that were identical to those requested by the IRS in its motion to dismiss. *Compare* Stip. at 111-12, (*Vulcan Oil* Dismissal Order), *with* Stip. at 94-109 (*Vulcan Oil* Dismissal Mot.). The adjustments set out in the government's motion to dismiss in effect constituted concessions to the wholesale disallowances of partnership items contained in the FPAA. Significantly, the Tax Court did not provide any explanation for adopting the adjustment requested by the IRS, nor did it make any findings in that regard.

The effect of a decision to dismiss a petition for review of an FPAA is governed by 26 U.S.C. § 6226(h), which provides:

> If an action brought under this section is dismissed . . . the decision of the court dismissing the action shall be considered as its decision that the notice of final partnership administrative adjustment is correct, and an appropriate order shall be entered in the records of the court.

Because the Tax Court effectively modified the FPAA, the question arose during the hearing on the cross-motions in this case whether this court could look behind the Tax Court's decision, to sources such as the defendant's motion to dismiss, for an explanation of the Tax Court's decision to modify the FPAA. In that connection, the parties advised the court that no judicial precedent had addressed this situation.[7]

In an order issued immediately after the hearing, the court requested that the parties address in simultaneously filed supplemental briefs the following questions:

> (1) whether 26 U.S.C. § 6226(h) applies to a situation in which the Tax Court dismisses an action for failure to prosecute but modifies the tax treatment of partnership items from those shown in the FPAA; and
> (2) whether the court may look to the motion to dismiss for lack of prosecution and other materials in the Tax Court file to determine the Tax Court's reasons for modifying the treatment of partnership items in the FPAA.

The government argues that the first clause of I.R.C. § 6226(h) "effectively inserts into every dismissal order a statement that the FPAA is correct," while the second clause "permits a

[7]Similarly, the court has been unable to locate any judicial precedent squarely on point.

court to exercise its wide discretion under § 6226(f) (scope of TEFRA judicial review) and to add to the dismissal order other provisions that may be appropriate in the circumstances without costing the FPAA its correctness." Def.'s Supp. Br. at 2. The government contends that this court "should not construe § 6226(h) to make the FPAA incorrect if the TEFRA dismissal order modifies the tax treatment of partnership items from those in the FPAA." *Id*. As the government would have it,

> [b]y dismissing the TEFRA petition in *Vulcan*, the Tax Court effectively entered an order stating that the FPAA is correct; the court also adopted a schedule of adjustments that changed some of the numbers in the FPAA. Both of these decisions must be understood as valid if both clauses of Code § 6226(h) are to have meaning. . . . [The court's] order means that the FPAA is correct and that adjustments should be made to Drake Oil's partnership items in the amounts set out in the schedule. This [c]ourt may not read either of these determinations as nullifying the other on the ground that they might be considered "inconsistent" in light of information outside the Tax Court's order.

*Id*. at 3. The government sums its position by urging that this court does not have subject matter jurisdiction to consider anything other than the FPAA and Tax Court's order, and thus the court may not examine the grounds for the government's motion to the Tax Court to dismiss. *Id*.

Mr. and Mrs. McGann likewise argue that under Section 6226(h), "decisions entered pursuant to tax case dismissals affirm the amounts and grounds for adjustment in the FPAA," leaving "no leeway for entry of a decision that varies from the FPAA." Pls.' Supp. Br. at 4. They further argue there is "no impermissible variance in this case," *id.*, because the dismissal order is best understood as incorporating concessions made by the IRS in its motion to dismiss. They conclude that "although this appears technically contrary to § 6226(h)," logic supports that "[i]t is inconceivable that § 6226(h) was intended to prevent the IRS from unilaterally conceding a part of its adjustments." *Id.* at 6.

The plaintiffs also agree that because Section 6226(h) deems the FPAA to be correct and the basis for the *Vulcan Oil* dismissal order, any legal or factual arguments made by the Service in the motion to dismiss should not be considered as grounds for the partnership-item adjustments. Pls.' Supp. Br. at 6. They aver that "nothing in the [d]ismissal [o]rder provides any basis for interpreting the [d]ismissal [o]rder to have incorporated the IRS's arguments or explanations in the [motion to dismiss]." *Id*. at 6-7.

In light of these arguments by both parties, the court will adhere to its prior ruling that "a court's grant of a motion is not an adoption of every argument the movant made in support of the motion." *McGann*, 76 Fed. Cl. at 758. A footnote in the government's motion to dismiss before the Tax Court provided a brief explanation for the concession made by the Service, *see* Stip. at 107 n.1 (*Vulcan Oil* Dismissal Mot.), and that footnote referred both to Section 183 and to

*Krause*. *Id*. However, the Tax Court's "decision itself does not mention [S]ection 183 or *Krause*," *McGann*, 76 Fed. Cl. at 758, let alone adopt any findings or conclusions based on that statute or decision.

Accordingly, the court is left with a modified FPAA: as both parties agree, the FPAA is deemed to be correct, subject to, and modified by, the adjustments the Tax Court adopted from the government's concessions. The result is that the modified FPAA gives effect to some aspects of Drake Oil's transactions but not others. It disallows deductions for claimed interest expense and a license fee, but restores, contrary to the FPAA, deductions originally claimed by Drake Oil in 1983 for guaranteed payments, depreciation, and miscellaneous items. *See* Stip. at 111 (*Vulcan Oil* Dismissal Order).

*C. Effect of Temp. Treas. Reg. § 301.6621-2T, A*-5

The pertinent question then becomes one of how, if at all, former Section 6621(c) applies to the FPAA for Drake Oil as modified by the Tax Court, passed through McWal Co. to Mr. and Mrs. McGann. The starting point for addressing that question is found in Temp. Treas. Reg. § 301.6621-2T, which prescribes the manner of applying the enhanced rate of interest specified in Section 6621(c) to substantial underpayments attributable to certain tax-motivated transactions. *See* 49 Fed. Reg. 50,390 (Dec. 28, 1984) (adopting Temp. Treas. Reg. § 301.6621-2T). The temporary regulation takes the form of questions and answers. *Id*. at 50,391.[8] Question and Answer 5 focus on the requisite determination:

> Q-5. How is the amount of a tax motivated underpayment determined?
>
> A-5. Except as provided in A-6 of this section, the amount of a tax motivated underpayment is determined in the following manner:
>
> > (1) Calculate the amount of the tax liability for the taxable year as if all items of income, gain, loss, deduction, or credit, had been reported properly on the income tax return of the taxpayer ("total tax liability"); and
> >
> > (2) Without taking into account any adjustments to items of income, gain, loss, deduction, or credit that are attributable to tax motivated transactions (as defined in A-2 through A-4 of this section), calculate the amount of the tax liability for the taxable year as if all other items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of the taxpayer ("tax liability without regard to tax motivated transactions").

---

[8]This is the same temporary Treasury regulation that expanded the listing of TMTs in former Section 6621(c) to include a deduction disallowed under I.R.C. § 183. *See supra*, at 9.

> (3) The difference between the total tax liability and the tax liability without regard to tax motivated transactions is the amount of the tax motivated underpayment.

Temp. Treas. Reg. § 301.6621-2T, Q&A-5; 40 Fed. Reg. at 50,329. In effect, this temporary regulation applies the TMT-related enhanced interest to that part of a taxpayer's tax liability that remains after the non-TMT adjustments are considered.

In determining whether the IRS properly assessed tax-motivated interest under Section 6621(c), as regulated by Temp. Treas. Reg. § 301.6621-2T, Q&A-5, the court is guided by pertinent decisions of the courts of appeals and the Tax Court. Fundamental benchmarks for this inquiry are established by two decisions by courts of appeals, *Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988), and *Irom v. Commissioner*, 866 F.2d 545 (2d Cir. 1989). Subsequent decisions by the Tax Court in a trio of cases expand and illustrate analysis under those benchmarks. *See McCrary v. Commissioner*, 92 T.C. 827 (1989); *Rogers v. Commissioner*, 60 T.C.M. (CCH) 1386, 1990 WL 195716 (1990); *Schachter v. Commissioner*, 67 T.C.M. (CCH) 3092, 1994 WL 263329 (1994).

In *Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988), the Court of Appeals for the Fifth Circuit construed I.R.C. § 6659(a), which provides for an addition to the tax on an individual or a closely held corporation or personal service corporation, for an underpayment "attributable to a valuation overstatement." *Id*. That addition shall be "equal to the applicable percentage of the underpayment so attributable." I.R.C. § 6659(a). As noted by the Tax Court in the decision reviewed by the Fifth Circuit, computation of an underpayment under Section 6659 is essentially the same as that set forth in Temp. Treas. Reg. § 301.6621-2T, A-5 for the computation of an underpayment attributable to a tax motivated transaction under former Section 6621(c). *See Todd v. Commissioner*, 89 T.C. 912, 917-918 (1987). In *Todd*, the court of appeals traced the legislative history of Section 6659(a) to conclude that Congress intended it to operate in incremental fashion:

> *The portion of a tax underpayment that is attributable to a valuation overstatement will be determined after taking into account any other proper adjustments to tax liability*. Thus, the underpayment resulting from a valuation overstatement will be determined by comparing the taxpayer's (1) actual tax liability (*i.e.*, the tax liability that results from a proper valuation and which takes into account any other proper adjustments) with (2) actual tax liability as reduced by taking into account the valuation overstatement. The difference between these two amounts will be the underpayment that is attributable to the valuation overstatement.

*Todd*, 862 F.2d at 542-43. The court of appeals affirmed the Tax Court's determination that no portion of the Todds' tax underpayment was attributable to their valuation overstatements. In *Todd*, the taxpayers' actual tax liability was adjusted for their failure to place food containers in service during the relevant tax year. The court concluded that the Todds' valuation overstatements consequently "had no impact whatsoever on the amount of tax actually owed." *Id*. Applying the formula in the temporary regulation, there was no TMT-related remnant.[9]

*Todd* was examined by the Court of Appeals for the Second Circuit when it addressed the application of Section 6621(c) in *Irom v. Commissioner*, 866 F.2d 545 (2d Cir. 1989). In *Irom*, the Tax Court had ruled that a taxpayer did not meet the requirements for deduction of an advanced royalty. The Tax Court had refused to apply additional interest pursuant to Section 6621(c), even though, in the words of the court of appeals, "the finding of a deficiency on the royalty grounds . . . appears to have been inseparable from [the Tax Court's] finding that the taxpayer was not 'at risk' in the transaction," which would have been a ground for applying Section 6621(c). *Irom*, 866 F.2d at 547. The Second Circuit reversed and remanded the case to the Tax Court, observing that the two grounds for deficiency "appear[ed] to have been inseparable" and that additional interest under Section 6621(c) should be applied if that were indeed the case. *Id*. at 547-48. The court accepted the rationale of *Todd*, where "[t]he disallowance of the deduction was independent of and wholly separable from the alleged overvaluation," *id*. at 547, concluding that the subtraction formula used in *Todd* – that is, "that the amount of a deficiency 'attributable to' an overvaluation should be calculated only after subtracting deficiencies based on other grounds" – would be warranted if "none, or only a part, of Irom's deficiency [were] attributable to a transaction that was not 'at risk.'" *Id*. No subtraction would be warranted however, and thus additional interest would be applied, if the Tax Court found the two grounds for deficiency to be inseparable. *Id.* at 547-48.

*Todd* and *Irom* have guided the Tax Court in its resolution of TMT issues arising under former Section 6621(c). In *McCrary v. Commissioner*, 92 T.C. 827 (1989), taxpayers had entered into a lease of a master recording and had claimed deductions and investment tax credits resulting from the transaction. The Service disallowed the deductions and credits and determined that the consequential underpayment of tax was attributable to a tax-motivated transaction. In the Tax Court, the taxpayers conceded that the agreement regarding the master recording was not a lease and thus that the tax credit was not allowable, *id*. at 842, leaving the tax deficiencies, proposed penalties, and interest at issue. In an opinion by Judge Cohen with twelve other judges in agreement, the Tax Court focused on the application of the formula in the temporary tax regulation, determining underpayment of taxes attributable to a TMT "'after' taking account of 'any other proper adjustment to tax liability.'" *Id*. at 852 (quoting *Todd*, 862 F.2d at 544 (capitalization omitted)); *see also id*. at 860. The court concluded that the conceded underpayment was "not attributable to one of the tax-motivated transactions specified in

---

[9]*Todd* was followed by the Ninth Circuit in a case which arose on very similar facts. *See Gainer v. Commissioner*, 893 F.2d 225 (9th Cir. 1990) (shipping container not placed in service during the relevant tax year).

[S]ection 6621(c)." *Id*. at 858. The Tax Court reconciled *Todd* and *Irom* by concluding that:

> the Court of Appeals for the Second Circuit [in *Irom*] seems to have implicitly agreed with the application of the formula in *Todd* and in this case. Its distinction, however, should be observed in future cases where grounds for disallowing deductions or investment tax credits are inseparable and at least on[e] such ground is a tax-motivated transaction.

*Id*. at 860.

A dissent in *McCrary* by a single Tax Court judge essentially takes the position argued in the case at hand by the government. The dissenting judge would have concluded that where the government "determines an addition under [S]ection 6659, or [S]ection 6621(c), we are obliged to consider it, even if we are able to dispose of the underlying deficiency on an 'easier' ground." *McCrary*, 92 T.C. at 865 (Gerber, J., dissenting). Offering a differing explanation of the legislative history and policy behind Sections 6659 and 6621(c), the dissent opined that "[i]f anything, considering the crux of the abusive shelter program, we should give priority to grounds that support a valuation overstatement." *Id*. at 862-63. The dissenting judge did not cite or discuss the temporary Treasury regulation.

Similarly, in the instant case the government avers that in dismissing Drake Oil's petition in *Vulcan Oil*:

> the Tax Court effectively determined . . . that Drake Oil's 1983 transactions were a sham . . . . Their underpayment is therefore due to, caused by, or generated by a sham, which is a tax motivated transaction–*i.e.*, the underpayment is *attributable to* a tax motivated transaction in the plain meaning of the words. The underpayment is also attributable–in whole or in part–to other grounds listed in the FPAA, some of which are not tax motivated transactions; but there can never be a moment in which the entire underpayment is not attributable to a sham. In simple logic, if an underpayment is attributable to several grounds, it is also attributable to each of them.

Def.'s Br. at 14. The government argues that to ignore the ground that the underlying deficiency is attributable to a TMT would be "to rewrite Code § 6621(c)(1) . . . to limit the penalty to 'any substantial underpayment attributable [*solely*] to tax motivated transactions' . . . . If Congress had meant to limit the penalty to underpayments that are attributable solely to tax motivated transactions, it would have said so." *Id*. at 14-15.

In considering the government's argument, the court initially observes that the *Vulcan Oil* dismissal order by the Tax Court did *not* effectively determine that Drake Oil's 1983 transactions were a sham. Rather, of the 23 reasons listed for the disallowance of Drake Oil's deductions in the pre-dismissal FPAA, only some of those reasons would support a determination that Drake

Oil's transactions either constituted a sham or reflected a tax-motivated transaction, while other reasons would not give rise to a finding of a tax-motivated transaction. *See supra*, at 4-5. The Tax Court's dismissal for failure to prosecute adopted the concessions made in the government's motion to dismiss without providing any determination or making any finding that there was a tax-motivated transaction.

Indeed, the Tax Court's dismissal order in *Vulcan Oil* provided no explanation for its modification of the FPAA, which kept the disallowance of deductions for interest expense and a license fee but changed the FPAA to treat as proper deductions for guaranteed payments, depreciation, and miscellaneous items originally claimed by Drake Oil in its 1983 tax filings. Those changes taken at face value, and without looking behind the Tax Court's decision to try to discern a rationale for them, disprove that the Drake Oil transactions were a sham or without substance because the transactions were given some effect. And, the question whether the transactions were entered into for tax purposes and without an intent to earn a profit was simply not addressed by the Tax Court in its dismissal order. In sum, there were no findings by the Tax Court of a tax-motivated transaction.

The absence of such findings is critical. Instructively, the Tax Court followed *McCrary* in deciding *Rogers v. Commissioner*, 60 T.C.M. (CCH) 1386, 1990 WL 195716 (1990), and *Schachter v. Commissioner*, 67 T.C.M. (CCH) 3092, 1994 WL 263329 (1994). *Rogers* came before the Tax Court on stipulated facts regarding a leasing transaction for energy equipment, which raised issues very similar to those in *Todd*. *Schachter* involved an investor in a partnership formed to develop a community antenna television system in Lansing, Michigan, and an underpayment of taxes due to guaranteed payments was at issue. The Tax Court followed *Todd* and *McCrary* and held that interest under enhanced Section 6621(c) was not applicable. The McGanns' situation most closely parallels that considered by the Tax Court in *Schachter*, where both a "mélange of alleged grounds, some of which were 'tax-motivated' grounds – but others were not – prevent[ed the court] from saying, after [a] concession, that the underpayment was attributable to a particular ground." 1994 WL 263329, at *7. In *Schachter*, the Commissioner's deficiency notice, relying in part on the taxpayer's concession in a closing agreement of a disallowance, included:

> everything but the proverbial kitchen sink, both overall and with respect to three sets of specific items: Overall, the notice relied not only on lack of profit motive under [S]ection 183, but determined in the alternative that [the partnership] had not had the benefit of ownership or, in substance, a true economic investment . . . ; the notice also alleged a variety of specific grounds for the disallowance of depreciation (failure to establish cost, depreciable basis, fair market value or useful life, or the economic substance of the note included in the cost), interest (contingent character of the obligation on the note and failure to show interest paid or incurred or "for the purpose stated"), and other deductions (lack of substantiation, capitalizable, unreasonable, and excessive).

*Id*. In contrast to the situation in *Irom*, where "the ground for the disallowance appeared to be inseparable from the conclusion that the taxpayer was not 'at risk,'" "the potpourri of grounds in the statutory notice" supporting the disallowance of the taxpayers' losses in *Schachter* was "so disparate and disconnected that there [were] more than sufficient grounds on each issue that [were] not 'tax-motivated'" such that "no useful purpose would be served by a trial on these issues." *Id*.

So too here. Where deductions are disallowed on grounds that both could and could not support findings of a TMT, and at least some of those grounds are independent and separable, then Temp. Treas. Reg. § 301.6621-2T, A-5 requires an allocation, giving first effect to the non-TMT adjustments and then addressing the TMT adjustments. Application of the formula in Temp. Treas. Reg. § 301.6621-2T, A-5, is not possible in this case.

The Tax Court's dismissal order in *Vulcan Oil* and its modification of the FPAA in that context were not accompanied by findings respecting TMT items or adjustments. Here, as in *McCrary*, *Rogers*, and *Schachter*, it is too late to hold a trial on these issues. Given the stipulated record, there is no basis to apply the formula in Temp. Treas. Reg. § 301.6621-2T, A-5, to determine underpayments attributable to tax-motivated transactions and an enhanced rate of interest under former Section 6621(c) respecting those underpayments. The government is asking the court to override the temporary Treasury regulation and redetermine the priority for determining TMT-related adjustments compared to other adjustments, as the dissenting judge in *McCrary* would have done. The court declines that invitation.

Regarding the temporary Treasury regulation and the legislative intent behind Sections 6659 and 6621(c), the court will follow the lead of *Todd*, *Irom*, *McCrary*, and the other Tax Court cases discussed here. As the Fifth Circuit observed in *Todd*:

> it is probable that Congress was balancing competing policies when it determined how to apply [S]ection 6659. [It] may not have wanted to burden the Tax Court with deciding difficult valuation issues where a case could easily be decided on other grounds. [It] may have wanted to moderate the application of the [S]ection 6659 penalty so that it would not be imposed on taxpayers whose overvaluation was irrelevant to the determination of their actual tax liability. We cannot say . . . why Congress chose this test . . . . However, we remain convinced that the formula set out above represents Congress' intent for determining whether to impose the [S]ection 6659 addition to tax in any given case.

*Todd*, 862 F.2d at 544-45. The government's posture might have some validity if the temporary Treasury regulation had not been adopted because the court would then have to go back to the legislative history of the pertinent statutory sections, but, in the face of that regulation, it cannot

be accepted.[10]

This conclusion is bolstered by the decision in *Bartimmo*, 525 F. Supp. 2d 879. One of the plaintiffs in that case was a limited partner in Dillon Oil, another of the Elektra partnerships involved in the *Vulcan Oil* cases. Following the same dismissal order by the Tax Court in *Vulcan Oil* that is at issue in this case, the Service proceeded to adjust the Bartimmo plaintiffs' tax liabilities in accordance with the adjustments in the pertinent FPAAs, and the Service imposed enhanced interest under Section 6621(c). The Bartimmo plaintiffs paid the assessed amounts and sought a refund of the enhanced interest. The *Bartimmo* court granted summary judgment to the plaintiffs as a matter of law, finding that the IRS did not properly assess tax-motivated interest against plaintiffs "[b]ecause the FPAAs gave multiple, undifferentiated bases for disallowance, and the Tax Court never examined or made any determinations about the proposed bases for disallowance in the FPAAs." 525 F. Supp. 2d at 890. The court in *Bartimmo*

---

[10]At the hearing held in this case on March 7, 2008, the government cited the recent decision in *Nault v. United States*, 517 F.3d 2 (1st Cir. 2008), as indicating that concessions by the Service leading to adjustments of deductions disallowed in an FPAA did not preclude application of enhanced interest under former Section 6621(c). *See* Hr'g Tr. 27:14 to 29:13 (Mar. 7, 2008). *Nault*, however, involved a settlement agreement that resolved litigation over FPAAs in the Tax Court, and the settlement agreement explicitly provided "[t]hat the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v)." 517 F.3d at 5. The First Circuit held that the language of the settlement agreement provided an appropriate and adequate basis for imposing enhanced interest under former Section 6621(c): "Here, it was perfectly permissible for the IRS to insist upon language that declared the transactions to lack economic substance – perhaps anticipating claims plaintiffs such as Nault might make – while simultaneously making certain concessions to the taxpayers." 517 F.3d at 7. As the First Circuit put it, "[i]n the end, therefore, Nault remains confined to the language agreed in the settlement." *Id*. That unexceptionable result has no bearing on this case, which did not involve a settlement, let alone a settlement that included a finding of a TMT.

In a somewhat related vein, the government's post-hearing supplemental brief argues that Mr. and Mrs. McGann waived their arguments about application of enhanced interest under former Section 6621(c) "[b]ecause the McGanns failed to raise these questions in the TEFRA proceeding [before the Tax Court]." Def.'s Supp. Br. at 5. This argument is unavailing. Mr. and Mrs. McGann were not parties to the *Vulcan Oil* proceeding, although they could have been. Even though they were bound by the result because of the provisions of I.R.C. § 7422(h), neither they nor the absent tax matters partner were obliged to address factual predicates for application of former Section 6621(c), particularly where the Tax Court did not enter, or propose to enter, findings they did not want made. As the First Circuit said in *Nault*, "[i]t was incumbent upon the T[ax] M[atters] P[artner] to dispute any language that he did not wish included in the Tax Court decisions." 517 F.3d at 7. Otherwise, *Nault* illustrates that respecting the issue contested in this case, it was the government's obligation "to insist upon language that declared the transactions to [fall within the TMT provisions, in whole or in part]." *Id*.

likewise concluded that the reference to *Krause* and Section 183 in the government's motion to dismiss did not engender tax-motivated grounds where the Tax Court's dismissal order did not explicitly make such findings. *Id*. at 889. "[W]ithout a determination that the substantial underpayment of tax was attributable to one of the tax-motivated transactions expressly defined by statute," the Court held that the IRS's assessment of tax-motivated interest under Section 6621(c) was improper. *Id.* at 890.[11] The same reasoning holds true here. Mr. and Mrs. McGann are entitled to a refund of the enhanced interest they paid.

**CONCLUSION**

For the reasons stated, the court GRANTS plaintiffs' motion for summary judgment on stipulated facts and DENIES defendant's cross-motion. The Clerk is directed to enter final judgment for plaintiffs for refund of enhanced interest in the amount of $18,309.66. The judgment shall also specify that interest shall be paid to plaintiffs "at the overpayment rate established under [I.R.C. §] 6621," as provided in I.R.C. § 6611(a).

No costs.

It is so ORDERED.

s/ Charles F. Lettow
Judge

[11]This court concurs with the government that the government did not concede this case by filing and then dismissing an appeal in *Bartimmo*. *See* Def.'s Supp. Reply at 2.